PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (SBN 54752)
philip.warden@pillsburylaw.com
CLARK THIEL (SBN 190212)
clark.thiel@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: 415-983-1000
Facsimile: 415-983-1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
DEREK M. MAYOR (SBN 307171)
derek.mayor@pillsburylaw.com
2600 Capitol Avenue, Suite 300
Sacramento, CA 95816-5930
Telephone: 916-329-4700
Facsimile: 916-441-3583

KINGSLEY BOGARD
ROBERT E. KINGSLEY (SBN 59596)
Prosecuting Authority for Plaintiff
rkingsley@kblegal.us
600 Coolidge Drive
Suite 160
Folsom, CA 95630
Telephone: 916-932-2500

Attorneys for Plaintiff SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California corporation<br><br>Defendant. | Case No.<br><br>COMPLAINT FOR: (1) BREACH OF CONTRACT; (2) CALIFORNIA STATUTORY UNFAIR COMPETITION [CAL. BUS. & PROF. CODE §§ 17200 *et seq.*]; (3) FRAUD; AND (4) CALIFORNIA FALSE CLAIMS ACT [CAL. GOV'T CODE § 12650, *et seq.*]<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

1. Plaintiff, the Sacramento Regional Public Safety Communications Center d/b/a Sacramento Regional Fire/EMS Communications Center ("SRFECC"), is a California Joint Powers Authority ("JPA"), formed by: City of Sacramento ("Sacramento"), Sacramento Metropolitan Fire District ("SMFD"), City of Folsom ("Folsom"), and the Cosumnes Community Services District ("CCSD") (collectively referred to herein as "Member Agencies"). SRFECC also provides services to the following six volunteer fire agencies as contract entities: Courtland Fire Protection District, Herald Fire Protection District, Isleton Fire Protection District, River Delta Fire Protection District, Walnut Grove Fire Protection District, and Wilton Fire Protection District (collectively referred to herein as the "Contract Entities").

2. The SRFECC is responsible for providing public safety communications and dispatch services to its Member Agencies and Contract Entities.  These services include but are not limited to information technology for routing and dispatching 9-1-1 emergency fire and medical aid calls for the greater Sacramento region, which covers approximately 1,000 square miles, servicing approximately 1.5 million people, and is one of the nation's largest communication centers.  In 2017 alone, SRFECC dispatched emergency units over 204,000 times and answered over 350,000 emergency calls.

3. On or before March 2014, SRFECC initiated efforts to upgrade and modernize its Northrop Grumman legacy computer aided dispatch system ("Legacy COBOL CAD System"). On or around March 18, 2014, SRFECC issued a Request For Proposal ("RFP") seeking bids from software vendors that could design, deliver, install, implement, and integrate a Replacement CAD System (hereafter, either "Replacement CAD System" or "Project").

4. After receiving three competitive bids, SRFECC awarded the contract to a winning bidder, Defendant New World System Corporation ("New World"), which agreed to provide services and furnish licensed products, computer software and documentation, for the design, delivery, installation, implementation, and integration of a Replacement CAD System pursuant to a Software License and Services Agreement ("Agreement").

5. On or around November 6, 2015, SRFECC and New World entered into the Agreement. As part of the Agreement, New World was obligated to obtain and provide to the SRFECC a performance bond in a form acceptable to the SRFECC, which New World did. The performance bond obtained by New World (the "Performance Bond") was issued by New World and U.S. Specialty Insurance Company ("U.S. Specialty"). Among other things, the Performance Bond obligated U.S. Specialty such that, if New World failed to complete its performance on the Project or breached the terms set forth in the Agreement, U.S. Specialty would bear responsibility to the SRFECC for all damages (including liquidated damages) and other costs of the completion of the Project.

6. On or before the date the Agreement was executed, New World was acquired by Defendant Tyler Technologies, Inc. ("Tyler") (New World and Tyler are collectively referred to herein as "Defendants"), which became a party to the Agreement with SRFECC's consent.

7. After more than two years into the Project, SRFECC has paid Defendants **$2,128,393.26** for a Replacement CAD System that does not conform to the Agreement. Defendants have failed to meet their Project milestones, they have failed to fulfill even basic requirements such as providing SRFECC timely monthly status reports, and they misrepresented their capabilities as part of the RFP process. Indeed, according to Defendants' own representative, Tyler's senior officer and Vice President Kevin Flynn ("Mr. Flynn"), who was at all times the authorized representative of Tyler, it will take Defendants 17-22 years just to deliver a partial and incomplete portion of the Replacement CAD System that Defendants contracted to provide, and which SRFECC (and the Greater Sacramento region) so desperately needs and was expecting to Go-Live to replace its Legacy COBOL CAD System by November 6, 2017.

8. SRFECC has since been informed and believes Defendants have a custom and practice of failing to perform on their contracts with other government agencies and entities.

9. Defendants deliberately misrepresented their capabilities to SRFECC as part of the RFP process, and submitted to SRFECC documents containing misleading and false information, for the purpose of being selected as the vendor for the Project.

10. Defendants were aware that they could not perform their obligations under the Agreement in a timely manner, or at all, but nevertheless intentionally and fraudulently misrepresented itself to SRFECC and proceeded to submit invoices, Project Management Workbooks, reports, and other related documents to SRFECC that contained false information. Defendants also accepted substantial payments totaling **$2,128,393.26** from SRFECC for a Project they knew that they would never be able to complete in a timely manner.

11. To date, SRFECC's damages extend well beyond what they have paid to Defendants. Defendants' breaches and misconduct have not only injured SRFECC, they have created a dangerous and imminent public safety problem for the greater Sacramento area. Defendants' misrepresentations and deception have delayed the entire Project more than two years. Defendants' failures have now necessitated a restart of the Project, causing the greater Sacramento area to continue to rely for several more years on its Legacy COBOL CAD System, gradually making the situation worse with age. In effect, Defendants' conduct has put the lives of people and first responders who service the Sacramento region at risk. In an emergency, a delay of even seconds, let alone minutes, that could have been avoided with a modern CAD System, may be the difference between life and death.

## PARTIES

12. The SRFECC is a JPA formed under and in accordance with the laws of the State of California, Title 1, Division 7, Chapter 5, Section 6500 et seq., of the California Government Code. The SRFECC is a political subdivision with the authority to prosecute this action in its own name in order to perform all acts necessary to fulfill its mandate, which includes the duty to provide 9-1-1 communications and emergency dispatch services for fire and medical aid calls within its jurisdiction. This includes, by way of illustration and not limitation, the authority to prosecute violations of the California False Claims Act. A true and correct copy of the JPA Agreement is attached hereto as <u>Exhibit 1</u>, and is incorporated by reference.

13. The SRFECC has the authority to direct its general counsel, Mr. Robert Kingsley, and outside counsel, Pillsbury Winthrop Shaw Pittman LLP, to prosecute this action on its behalf under the California False Claims Act.

14. The SRFECC has passed a resolution that formally endows its general counsel, Kingsley Bogard LLP and Mr. Robert Kingsley, with prosecuting authority under the California False Claims Act.

15. SRFECC is informed and believes, and on that basis alleges, that Defendant Tyler is a Delaware corporation qualified to do business and doing business in the State of California.

16. SRFECC is informed and believes, and on that basis alleges, that Defendant New World is a Michigan corporation no longer qualified to do business in the State of California.

## JURISDICTION AND VENUE

17. The Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332 in that SRFECC and Defendants are citizens of different states and the amount in controversy exceeds the jurisdictional requirement.

18. Venue is proper in this Court pursuant to the terms of the Agreement and 28 U.S.C. § 1391(b)(2) in that this Complaint is brought in the judicial district in which substantially all of the events giving rise to the Complaint occurred.

## THE PROJECT AND REQUEST FOR PROPOSALS

19. SRFECC dispatches all 9-1-1 emergency fire and medical aid service calls in Sacramento County.  On or around March 18, 2014, SRFECC issued an RFP for the Project.

20. On or around March 24, 2015, SRFECC awarded the Project to New World over two other competing firms with close bids.

## THE CONTRACT

21. On or around November 6, 2015, SRFECC and New World entered into the Agreement.  A true and correct copy of the Agreement is attached hereto as <u>Exhibit 2</u>, and is incorporated by reference.

22. Attached to the Agreement and incorporated therein are the following twenty Exhibits: A (Pricing and Payment Schedule: System and Support Services), B-1 (New World Recommended: Licensed Software and Documentation), B-2 (New World Recommended: System Hardware Components and Configuration), B-3 (New World Recommended: Interfaces with System Software), B-4 (New World Recommended: Decision Support System (DSS) Third Party

1  Software License and Implementation Services), B-5 (New World Recommended: System
2  Training Plan), C (Project Management, Implementation and Training Support Services), D
3  (References a System Implementation Plan/GANTT Chart/Scope of Work which was to be
4  determined after contract signing and discussion with Customer), E (Standard Software
5  Maintenance Agreement (SSMA)), F (Confidentiality Agreement for Third Parties), G (Escrow of
6  Source Code Software), H (System Change Order Process), I (System Change Orders), J (Periodic
7  System Testing Criteria and Procedures and Final System Acceptance), K (New World Insurance
8  Requirements), L-1 (New World Performance Bond), L-2 (Performance Bond), M (New World
9  Travel Policy), and N (Incorporation by Reference of New World's Response to Customer's RFP
10  Software Specifications).

## THE CONSENT AGREEMENT

23.   On or around November 6, 2015, SRFECC signed a Consent Agreement pursuant to Section 19.7 of the Agreement.  Pursuant to the terms of the Consent Agreement, SRFECC consented "to the stock acquisition of New World by Tyler Technologies, Inc. and the resulting Change of Control Event."  A true and correct copy of the Consent Agreement is attached hereto as Exhibit 3.

## TYLER'S FAILURE OF PERFORMANCE AND BREACH OF THE CONTRACT

24.   Pursuant to Section 1.3 of the Agreement, "Time is of the essence in the performance of each Party's obligations under this Agreement."  Pursuant to Section 1.2 of the Agreement "[b]oth Customer and New World shall strictly adhere to the timeline set forth in Exhibit D for the installation and integration of the System and shall strictly adhere to the timeline set forth for each milestone component (e.g. Installation) in Exhibit D, System Implementation Plan/GANTT Chart for that particular milestone component."  As required by Exhibit D, the Parties established an agreed-upon Project Management Plan (the GANTT Chart).  (See Exhibit 4, dated September 8, 2016.)

25.   After the start of the Project, Defendants failed to submit timely monthly status reports as required by the Agreement.  Defendants further failed to make substantial progress

toward completing the Project in a timely manner such that the contracted "Replacement CAD System" would Go-Live by the mutually agreed upon date of November 6, 2017.

26. Defendants submitted multiple reports throughout the Project that contained false and misleading information about Defendants' progress and estimated Project completion.

**TYLER'S DECEMBER 2017 MEETING AND PRESENTATION TO SRFECC**

27. The November 6, 2017 Go-Live was cancelled, and the SRFECC's staff and consultants continued to meet with Defendants to list the remaining open items required to be performed by Defendants before a new System Go-Live date could be scheduled. During this process, SRFECC confirmed that:

- Defendants misrepresented the capabilities of its Licensed Standard Software as more fully described in paragraph 30, *infra*; and

- Defendants' RFP misrepresentations are a major factor in the Go-Live time delay. Numerous RFP items identified as "Fail" would require Defendants to modify and/or create new software programs to provide features which Defendants had earlier Warranted (certified) to SRFECC as already in existence (at existing clients) for over a year's time prior to Defendants' RFP submittal.

28. Because of the Go-Live cancellation, SRFECC sought assurances from Defendants that it would complete the Project in a timely manner. In response to the SRFECC's request for assurances, Mr. Flynn made a presentation to SRFECC on December 7, 2017. A true and correct copy of the Power Point presentation by Mr. Flynn is attached hereto as Exhibit 5.

29. Mr. Flynn's PowerPoint incorrectly represented the number of "Fail" items (which Mr. Flynn labeled "Open"), and the RFP Technical Requirement reference numbers associated with the "Fail" items. As a result, the Project Managers for the SRFECC and Tyler (Ms. Diane House and Mr. David Bonini, respectively) met to reconcile the status of "Fail" items. The parties' agreed-upon list of the "Fail" RFP items is memorialized in a document, a true and correct copy of which is attached as Exhibit 6, which identifies a total of 239 "Fail" RFP items.

30. Based on the agreed-upon list of 239 "Fail" RFP items, SRFECC created Exhibit 7, which lists only those "Fail" RFP items which Defendants designated "Fully Comply" in their RFP

1  response.  Those one hundred seventy-two (172) RFP Warranty "Fails" are set forth in Exhibit 7, a

2  true and correct copy of which is attached hereto.

3        31.    According to Mr. Flynn, it would take 33,900 additional development hours to

4  address not all of the RFP "Fails," but only those RFP items that Defendants, not SRFECC, had

5  identified as Project priorities.

6        32.    According to Mr. Flynn, Tyler's CAD Development Team has available to it

7  approximately 3,000 hours each year (across their entire public safety customer base) to develop

8  and enhance its Licensed Standard Software for CAD.  Mr. Flynn, on behalf of Tyler, could not

9  commit the entire 3,000 hours per year to satisfy SRFECC requirements.  Mr. Flynn estimated that

10  Defendants could commit between 1,500 and 2,000 hours per year to SRFECC open items.  At this

11  rate of "development," it would take between 16.95 years (33,900 ÷ 2,000) and 22.6 years (33,900

12  ÷ 1,500) to deliver a partial CAD system.

13        33.    According to Mr. Flynn, even after 20+ years, Defendants still could not deliver a

14  complete, fully functional version of the CAD system that Defendants contracted to provide to

15  SRFECC.

**NOTICE OF BREACH OF WARRANTY**

17        34.    On March 19, 2018, by and through counsel, SRFECC sent Tyler a Notice of Breach

18  of Warranty.   A true and correct copy of the Notice, excluding attachments, is attached hereto as

19  Exhibit 8.

**NOTICE OF DEFAULT**

21        35.    By and through counsel, SRFECC sent Tyler and its Surety, Tokio Marine HCC,

22  Notices of Default.  True and correct copies of the Notices are attached hereto as Exhibits 9A and

23  9B.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract, Against All Defendants)**

26        36.    SRFECC refers to and incorporates by reference paragraphs 1 through 35 above as

27  though fully set forth herein.

28

37. SRFECC entered into the Agreement with New World in reliance on their RFP response. On November 6, 2015, SRFECC consented to the Change of Control from New World to Tyler. (See Exhibit 3.)

38. SRFECC has performed all obligations and conditions required of it pursuant to the terms of the Agreement, except as said performance has been waived, excused or prevented by Tyler or New World.

39. On or around November 14, 2015, Defendants invoiced SRFECC $761,440.00 for five years of pre-paid standard software maintenance services, despite having knowledge that it was not capable of completing the Project in a timely manner. SRFECC paid Defendants $761,440.00 on or around December 9, 2015 pursuant to this invoice.

40. On or around November 18, 2015, Defendants invoiced SRFECC $443,047.00, for Licensed Standard Software, despite having knowledge that it was not capable of completing the Project in a timely manner. On or around that same day, Defendants invoiced SRFECC a total of $194,524.76 (and $13,374.76) for purported third-party products, services, and the performance bond, despite having knowledge that it was not capable of completing the Project in a timely manner. On or around December 9, 2015, SRFECC paid Defendants $443,047.00 and $194,524.76 (plus $13,374.76 in taxes), respectively.

41. On or around May 6, 2016, Defendants invoiced SRFECC $443,048.00 for Licensed Standard Software, despite having knowledge that it was not capable of completing the Project in a timely manner. On or around June 22, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice.

42. On or around September 15, 2016, Defendants invoiced SRFECC $158,164.00 for a progress payment for purportedly completing GANTT Step 3 – Approval of the Project Plan, despite having knowledge that it was not capable of completing the Project in a timely manner. On November 1, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice.

43. On or around October 12, 2016, Defendants invoiced SRFECC $28,969.50 (and $2,269.50 in taxes) for a purported third-party licensed product, despite having knowledge that it

was not capable of completing the Project in a timely manner.  On or around November 2, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice.

44. On or around January 31, 2017, Defendants invoiced SRFECC $98,900.00 for a progress payment for purportedly completing GANTT Step 4 – Install and Standard Configuration, despite having knowledge that it was not capable of completing the Project in a timely manner. On or around March 1, 2017, SRFECC paid Defendants the charged amount pursuant to this invoice.

45. On or around August 24, 2017, Defendants invoiced SRFECC $300.00 for a purported third-party product, despite having knowledge that it was not capable of completing the Project in a timely manner.  On or around that same day, SRFECC paid this invoiced amount.

46. To date, SRFECC has paid Defendants $2,128,393.26 and has not yet received the Replacement CAD System that Defendants contracted to provide.

47. SRFECC has also done everything reasonable to try to mitigate its damages. SRFECC's damages also include:

- As specified by Defendants, purchased hardware that may not be compatible with an equivalent future CAD system (approximately $500,000);
- Amounts paid for RFP consulting (approximately $100,000);
- Legal fees and costs associated with the RFP process and contract negotiations between SRFECC and New World (approximately $100,000);
- Legal fees and costs associated with drafting legal documents associated with Defendants' breach ($70,000 through the end of April 2018);
- Costs associated with SRFECC issuing a new RFP (approximately $200,000);
- Legal fees and costs associated with enforcing the Agreement and drafting this Complaint ($75,000);
- The costs associated with obtaining an equivalent future CAD system, features, and components according to the same specifications (approximately $4,000,000.00);
- Costs associated with upkeep and maintenance on the existing Legacy COBOL CAD System ($500,000.00 to $1,500,000.00);

- SRFECC's Project consultant fees necessary for this Project with Defendants ($150,000.00 to $200,000.00); and,
- Overtime wages paid to employees of Member Agencies for CAD build time incurred as a result of Defendants' delays and incompetence ($150,000 to $200,000).

48. These damages are in addition to other damages in amounts to be proven at trial.

WHEREFORE, the SRFECC prays for judgment as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

**(Statutory Unfair Competition: Cal. Bus. & Prof. Code Section 17200 et seq., Against All Defendants)**

49. SRFECC refers to and incorporates by reference paragraphs 1 through 48 above as though fully set forth herein.

50. SRFECC has suffered significant losses on account of Defendants' action and inaction. Defendants' conduct has jeopardized a timely and necessary upgrade to SRFECC's Legacy COBOL CAD System, which serves more than 1.5 million people in the greater Sacramento area.

51. Defendants have repeatedly engaged in violations of California's Unfair Competition Laws, Bus. & Prof. Code § 17200 et seq., by:

- Failing to fulfill their contractual agreements made pursuant to the RFP process;
- Wrongfully, unreasonably, and without justification asserting that they were and are capable of performing their obligations under the Agreement in a timely manner; and,
- Giving greater consideration to their own interests than to those of SRFECC and the public and first responders it serves.

52. Defendants did these things and committed the acts alleged above without adequate justification in law or fact, and Defendants' acts are those of a business acting in bad faith and thus constitute violations of California's Unfair Competition Laws.

53. As a direct and proximate result of Defendants' misconduct, SRFECC has suffered, and will continue to suffer, the loss of the benefit of receiving the design, delivery, installation, implementation, and integration of the Replacement CAD System for which SRFECC paid

Defendants approximately $2,128,393.26, as well as other amounts to be determined at trial and, unless enjoined from doing so, Defendants will likely continue to engage in unfair business tactics in dealing with SRFECC and other public agencies seeking assistance with their public safety systems, and continue to create an imminent danger to the public, even death.

WHEREFORE, the SRFECC prays for judgment as hereinafter set forth.

## THIRD CLAIM FOR RELIEF

## (FRAUD)

54. SRFECC refers to and incorporates by reference paragraphs 1 through 53 above as though fully set forth herein.

55. The RFP identified and specifically described the features and functions ("Technical Requirements") of the Replacement CAD System and sought assurances that the vendor would deliver a CAD system meeting those Technical Requirements. Each bidder was required to specify (concerning each RFP requirement) whether its Licensed Standard Software was: (1) Fully Comply; (2) Partially Comply; (3) Comply with Modifications; (4) Comply in Future; (5) Substitution; or (6) Exception.  A vendor Warranty of "Fully Comply" meant that the vendor's Licensed Standard Software currently provided the feature (or functions as described), and had been in use at existing client locations for a period of at least one (1) year from the date of proposal submission, not in beta testing.

56. On or around May 16, 2014, New World submitted a bid that misrepresented the capabilities of its Licensed Standard Software and falsely warranted (certified) that many of its Licensed Standard Software features were "Fully Comply" with the RFP requirements.

57. The parties mutually agreed the Center's Replacement CAD System would Go-Live by November 6, 2017. This agreement was memorialized in the GANTT Chart that is attached as Exhibit 4).

58. New World knew, at the time it submitted its bid, that it could not timely deliver a Replacement CAD System that included all of the items it had marked "Fully Comply" in its RFP Response within an 18 to 24-month period. Mr. Flynn confirmed this fact on December 7, 2017 when he described "development" hours available.

59. On May 16, 2014, the date of its RFP response, New World intentionally misrepresented the capabilities of its Licensed Standard Software in the RFP by marking "Fully Comply" on itemized technical requirements that did not comply in order to win the bid.

60. SRFECC justifiably relied on Defendants' representations that Defendants would provide software that met the Technical Requirements described in the RFP when it accepted New World's bid and when it entered the Agreement for the purchase of the Replacement CAD System.

61. On May 16, 2014, New World falsely warranted that its Licensed Standard Software met the items coded "Fully Comply" in New World's Response to SRFECC's RFP as described in Exhibit N to the Agreement.

62. On November 6, 2015, New World/Tyler falsely warranted that its Licensed Standard Software met the items coded "Fully Comply" in New World's Response to SRFECC's RFP as described in Exhibit N to the Agreement.

63. Defendants intentionally misrepresented the capabilities of Licensed Standard Software when it entered the Agreement and Consent Agreement with SRFECC in order to induce SRFECC to enter the Agreement with Defendants and pay Defendants money under the Agreement.

64. New World/Tyler acknowledged and confirmed RFP Warranty "Fails" on numerous occasions, including (by way of illustration and not limitation) in multiple exchanges of the RFP File (the final copy of which is Exhibit 6); in a meeting agenda for the week of August 28, 2017, appointing two full days to review "Failed RFP Areas"; in the onsite visit on November 16, 2017 to review 82 RFP failed items; and in Mr. Flynn's presentation on December 7, 2017 (Exhibit 5).

65. Of the 239 agreed-upon fails (Exhibit 6), Exhibit 7 identifies one hundred seventy-two (172) RFP Warranty Fails that New World/Tyler misrepresented as "Fully Comply."

66. SRFECC reasonably relied on New World's/Tyler's false representations regarding the capabilities of Defendants' Licensed Standard Software when it accepted New World's bid and when it entered the Agreement and Consent Agreement with them.

67. SRFECC would not have accepted the bid or entered the Agreement if it had known the representations therein were false.

68. To date, SRFECC has been harmed because it has paid Defendants $2,128,393.26 and has not received the Replacement CAD System that Defendants contracted to provide. SRFECC also has expended considerable funds that it would not have spent if Defendants had not made misrepresentations, such as is alleged in paragraph 47:

- As specified by Defendants, purchased hardware that may not be compatible with a replacement CAD system (approximately $500,000);
- Amounts paid for RFP consulting (approximately $100,000);
- Legal fees and costs associated with the RFP process and contract negotiations between SRFECC and New World (approximately $100,000);
- Legal fees and costs associated with drafting legal documents associated with Defendants' breach ($70,000 through the end of April 2018);
- Costs associated with SRFECC issuing a new RFP (approximately $200,000);
- Legal fees and costs associated with enforcing the Agreement and drafting this Complaint ($35,000);
- The costs associated with obtaining an equivalent future CAD system, features, and components according to the same specifications (approximately $4,000,000.00);
- Costs associated with upkeep and maintenance on existing Legacy COBOL CAD system ($500,000.00 to $1,500,000.00);
- SRFECC's Project consultant fees necessary for this Project with Defendants ($150,000.00 to $200,000.00); and,
- Overtime wages paid to employees of Member Agencies for CAD build time incurred as a result of Defendants' delays and incompetence ($150,000 to $200,000).

69. Furthermore, as a result of Defendants' misrepresentations, SRFECC has suffered, and will continue to suffer, the loss of the benefit of receiving the design, delivery, installation, implementation, and integration of a modernized Replacement CAD System for which SRFECC paid Defendants approximately **$2,128,393.26**, as well as other amounts to be determined at trial.

## FOURTH CLAIM FOR RELIEF

**(Violation of the California False Claims Act**

**California Government Code Section 12651 et seq., Against All Defendants)**

70. SRFECC refers to and incorporates by reference paragraphs 1 through 69 above as though fully set forth herein.

71. This is a claim for treble damages and forfeitures under the False Claims Act, Cal. Gov't Code §§12650 et seq.

72. Through the acts described above, Defendants, their agents and employees, knowingly presented and caused to be presented false and fraudulent claims to the SRFECC, a government agency, and knowingly failed to disclose material facts, in order to obtain payment and approval from the SRFECC. Defendants also misrepresented services and deliverables they would provide to SRFECC. But in fact defendants knew they were unable to provide pursuant to the Agreement.

73. As part of the bidding process, Defendants made false representations about the capabilities of its Licensed Standard Software.  SRFECC, unaware of the falsity of the claims made and submitted by Defendants, their agents, and employees, and as a result thereof, paid money that it otherwise would not have paid.

74. On account of the Agreement and RFP process, including "Project" milestones, Defendants knowingly presented or caused to be presented to SRFECC false claims for approval, thereby violating Gov. Code §§12651(a)(1).  Defendants, their agents or employees,' had actual knowledge, deliberate ignorance of the truth or falsity, or acted in reckless disregard for truth or falsity, when Defendants submitted a bid pursuant to the RFP process, entered the Agreement, and submitted claims for milestone payments and invoices for third-party licensed products.

75. The False Claims Act violations by Defendants, as alleged above, have been the proximate cause of damages to SRFECC in an amount that is not less than $2,400,000.00.  By reason of Defendants' violations of the False Claims Act, the SRFECC is entitled to recover treble damages.  In addition to treble damages, the SRFECC is entitled to recover a civil penalty of up to $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each of

the individual false claims committed by Defendants.  The precise amount of the SRFECC's damages on account of Defendants' violations of the False Claims Act are not precisely known at this time, but equal or exceed $2,400,000.00.  The SRFECC is continuing to investigate Defendants' violations of the False Claims Act and will seek leave of Court to amend this Complaint to state the precise amount of its damages when known.

WHEREFORE, the SRFECC prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, the SRFECC prays for relief as follows:

76.   With respect to the First Claim for Relief for damages, including but not limited to cost to complete, cost to cover, cost of repair, and liquidated damages, and interest that Tyler owes the SRFECC, all in an amount to be proven at trial;

77.   With respect to the Second Claim for Relief for restitution of monies paid to Defendants as a result of Defendants' unfair competition practices, plus interest, all according to proof at the time of trial; and for a permanent injunction, enjoining Defendants from engaging in such unfair competition and business practices;

78.   With respect to the Third Claim for Relief for compensatory and punitive damages, in an amount to be proven at trial;

79.   With respect to the Fourth Claim for Relief for damages of monies in an amount that is not less $2,400,000, plus interest, in addition to treble damages, and a civil penalty of up to $11,000 for each of the individual false claims committed by Defendants;

80.   For reasonable attorneys' fees incurred by SRFECC in this Action, and

///
///
///
///
///
///
///
///

81. For such other and further relief as the Court deems just and proper.

Dated:  June 22, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Philip S. Warden*
PHILIP S. WARDEN
ROBERT E. KINGSLEY, Prosecuting Authority
Attorneys for Plaintiff
SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER