PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (SBN 54752)
philip.warden@pillsburylaw.com
CLARK THIEL (SBN 190212)
clark.thiel@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: 415-983-1000
Facsimile: 415-983-1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
SYDNEY A. WARD (SBN 312615)
sydney.ward@pillsburylaw.com
2600 Capitol Avenue, Suite 300
Sacramento, CA 95816-5930
Telephone: 916-329-4700
Facsimile: 916-441-3583

KINGSLEY BOGARD
ROBERT E. KINGSLEY (SBN 59596)
Prosecuting Authority for Plaintiff
rkingsley@kblegal.us
600 Coolidge Drive
Suite 160
Folsom, CA 95630
Telephone: 916-932-2500

Attorneys for Plaintiff SACRAMENTO REGIONAL
PUBLIC SAFETY COMMUNICATIONS CENTER
D/B/A SACRAMENTO REGIONAL FIRE/EMS
COMMUNICATIONS CENTER

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California corporation<br><br>Defendant. | Case No. 2:18-cv-01792-KJM-KJN<br><br>STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY ADJUDICATION<br><br>Date: August 24, 2018<br>Time: 10:00 a.m.<br>Courtroom: 3<br>Judge: Hon. Kimberly J. Mueller |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Pursuant to Local Rule 260 and Rule 56 of the Federal Rules of Civil Procedure, Plaintiff SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER ("SRFECC") submits this Separate Statement of Undisputed Facts in support of its Motion for Partial Summary Adjudication of the claims alleged in the Complaint [Dkt. 1] filed by Plaintiff against Defendant TYLER TECHNOLOGIES, INC. F/K/A NEW WORLD SYSTEMS CORPORATION ("Defendant," "Tyler," or "New World").

| | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | SRFECC is a California Joint Powers Authority ("JPA"), formed under and in accordance with the laws of the State of California, Title 1, Division 7, Chapter 5, Section 6500 et seq., of the California Government Code. | *See* Exh. 1, Declaration of Janice Parker ¶ 7 ("Parker Decl."); Declaration of Joseph Thuesen ("Thuesen Decl.") ¶ 12 |
| 2. | Its member agencies include the City of Sacramento, the Sacramento Metropolitan Fire District, the City of Folsom, and the Cosumnes Community Services District. | *See* Exh. 1, Parker Decl. ¶ 7<br><br>Thuesen Decl. ¶ 13 |
| 3. | SRFECC also provides services to the following six volunteer fire agencies as contract entities: Courtland Fire Protection District, Herald Fire Protection District, Isleton Fire Protection District, River Delta Fire Protection District, Walnut Grove Fire Protection District, and Wilton Fire Protection District. | *See* Exh. 1, Parker Decl. ¶ 7<br><br>Thuesen Decl. ¶ 14 |
| 4. | SRFECC provides emergency dispatch services for approximately 1.5 million people in the greater Sacramento area. | Thuesen Decl. ¶ 15 |
| 5. | It is one of the nation's largest fire and emergency medical services communication centers, providing public safety communications and dispatch services to the ten cities and districts, covering approximately 1,000 square miles. | Thuesen Decl. ¶ 16 |
| 6. | It is the sole dispatching agency for all 9-1-1 emergency fire and medical aid service calls in Sacramento County. | Thuesen Decl. ¶ 15 |
| 7. | In 2017 alone, SRFECC dispatched emergency units almost 205,000 times and answered over 350,000 emergency calls. | Thuesen Decl. ¶ 17 |
| 8. | Defendant Tyler Technologies Inc. is a Delaware | See Declaration of Patrick |

| | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | corporation qualified to do business in the State of California. | Kernan ("Kernan Decl.") ¶ 4, Exhibit 9 |
| 9. | Defendant entered into a merger agreement with New World Systems Corporation ("New World"), a Michigan corporation, under which Defendant acquired 100% of the outstanding stock of New World, on or around October 1, 2015. | Kernan Decl. ¶ 7, Exh. 12 |
| 10. | On or about November 17, 2015, Tyler completed the Merger and its acquisition of New World's stock. | Kernan Decl. ¶ 8 |
| 11. | New World filed a Certificate of Surrender of Right to Transact Intrastate Business with the Secretary of State of California on or around March 28, 2016. | Kernan Decl. ¶ 5, Exh. 10 |
| 12. | On or before March 2014, SRFECC initiated efforts to upgrade and modernize its Northrop Grumman legacy computer aided dispatch system ("Legacy COBOL CAD System"). | Thuesen Decl. ¶ 22 |
| 13. | On or around March 18, 2014, SRFECC issued a Request For Proposals ("RFP") seeking bids from software vendors that could deliver, install, implement, and integrate a Replacement CAD System (hereafter, either "Replacement CAD System" or "Project"). | Thuesen Decl. ¶ 25 |
| 14. | The RFP identified and described the features and functions of the Replacement CAD System and sought assurances that the vendor would deliver a CAD system meeting those Technical Requirements. | Exh. 13 (RFP), pp. 13, 15-17, 23, 55-173, Thuesen Decl. ¶ 26 |
| 15. | SRFECC received three competitive bids. | Thuesen Decl. ¶ 27 |
| 16. | It awarded the contract to the winning bidder, New World. | Thuesen Decl. ¶¶ 33-34 |
| 17. | Defendant agreed to provide services and furnish licensed products, computer software and documentation for the delivery, installation, implementation, and integration of a Replacement CAD System pursuant to a Software License and Services Agreement ("Agreement"). | *See* Exhibit 2 (Agreement), Declaration of Wendy Crosthwaite ("Crosthwaite Decl.") ¶ 8. |
| 18. | New World President Larry D. Leinweber signed the Agreement on behalf of New World on or around October 30, 2015. | *See* Exhibit 2, Crosthwaite Decl. ¶ 8. |
| 19. | Then-Chief Executive Director, Teresa Murray, signed the Agreement on behalf of SRFECC on or around November 6, 2015. | *See* Exhibit 2, Crosthwaite Decl. ¶ 8. |

| | **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 20. | On November 6, 2015, SRFECC consented to the stock acquisition of New World by Tyler Technologies, Inc. in consideration of Tyler's ratification of its obligations under the Agreement. | *See* Exhibit 3 (Consent), Crosthwaite Decl. ¶ 9. |
| 21. | Under the Agreement, Defendant promised to "design, deliver, install and integrate" a system that includes "(1) furnishing the Licensed Products; and (2) providing certain services described herein to **Customer**." | Exhibit 2, Recitation, p. 3 Crosthwaite Decl. ¶ 8. |
| 22. | The "Licensed Products" includes the Licensed Standard Software. | Exhibit 2 p. 8, Crosthwaite Decl. ¶ 8. |
| 23. | Defendant warranted that this system would meet the technical requirements of SRFECC's RFP that were marked "Fully Comply," as described in Exhibit N to the Agreement, i.e. existing software at a current customer's site for over one year. | Exhibit 2, Section 6.2, Crosthwaite Decl. ¶ 8. |
| 24. | Exhibit N provides that Defendant's response to SRFECC's RFP technical requirements is incorporated in the Agreement by reference. | Exhibit N of Exhibit 2 to Crosthwaite Decl. ¶ 8. |
| 25. | Defendant further agreed to "perform all of its obligations and provide all services and products to Customer as set forth in accordance with the timeline for the Project (see Exhibit D) and the provisions of this Agreement." | Exhibit 2, Section 4.1, Crosthwaite Decl. ¶ 8. |
| 26. | The Agreement specifies that "[t]ime is of the essence," and states that the parties must "strictly adhere to the timeline set forth in Exhibit D for the installation and integration of the System and shall strictly adhere to the timeline set forth for *each* milestone component (e.g. Installation) in Exhibit D, System Implementation Plan/GANTT Chart for that particular milestone component." | Exhibit 2 Sections 1.2-1.3<br><br>Crosthwaite Decl. ¶ 8. |
| 27. | Exhibit D provides that the "typical" implementation for a project "of this size and scope usually spans 18-24 months from contract signing through go live." | Exhibit D of Exhibit 2 to Crosthwaite Decl. ¶ 8. |
| 28. | The parties agreed that the Go-Live date would be November 6, 2017, or 24 months after execution of the Agreement. | House Decl. ¶¶ 14-16, Exhs. 4, 29, 31, 32 |
| 29. | After the start of the Project, Defendant failed to submit status reports each month as required by the Agreement. | House Decl. ¶ 18 |
| 30. | The few status reports that were provided were not timely, and contained false and misleading information | House Decl. ¶¶ 18-20, Exhs. 27-28 |

| | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | about Defendant's progress and Project completion. | |
| 31. | Because of these representations, SRFECC was led to believe that the project was progressing toward the anticipated Go-Live date, when in actuality, many components were not compliant. | House Decl. ¶ 18. |
| 32. | The November 6, 2017 Go-Live was cancelled. | House Decl. ¶¶ 30-31, Exh. 18 |
| 33. | SRFECC's staff and consultants continued to meet with Defendants to list the remaining open items required to be performed by Defendants before a new System Go-Live date could be scheduled. | House Decl. ¶ 33. |
| 34. | Because of the Go-Live cancellation, SRFECC sought assurances from Defendant that it would complete the Project in a timely manner. | House Decl. ¶ 37. |
| 35. | Mr. Flynn made a presentation to SRFECC on December 7, 2017. | House Decl. ¶¶ 38-41, Exh. 5 |
| 36. | During the presentation, Mr. Flynn admitted that "34 items . . . failed to comply with the RFP requirement[;] 41 items that are warranty items (i.e. not working as designed, and will be resolved in a future release)[;] 7 items that are requests for enhancement to the application; [and] 79 items that may have not met the RFP requirements." | House Decl. ¶¶ 38-42, Exh. 5 |
| 37. | Mr. Flynn also went on to state that there were a "handful of items" that did not align with its "product strategy" and "have been eliminated from consideration." He admitted that Defendant would never be able to provide software that met at least four technical requirements. | House Decl. ¶¶ 38-43, Exh. 5 |
| 38. | Mr. Flynn estimated that Defendant's recovery plan for the "completion of these items given the capacity of the development team" would take 33,900 hours – and that Defendant's capacity for the entire public safety segment of its customer base was limited to only 3,000 hours of development time per year. | House Decl. ¶¶ 38-43, Exh. 5 |
| 39. | Mr. Flynn estimated that Defendant could only commit between 1,500 to 2,000 hours per year to the SRFECC Project. | House Decl. ¶ 45 |
| 40. | This means it would take Defendant between 17 years (33,900 ÷ 2,000) and 22 years (33,900 ÷ 1,500) to deliver a partial CAD system. | House Decl. ¶ 45. |
| 41. | SRFECC's project manager Diane House continued to | House Decl. ¶ 6, 25, 46-52, |

| | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | work with Defendant's project manager David Bonini to determine the extent of the system's failure to comply. | Exh. 20. |
| 42. | Mr. Bonini and Ms. House exchanged a "reconciliation" spreadsheet where each inserted their comments on the RFP fails. | House Decl. ¶¶ 21-26, 28, 46, 50, Exhs. 22-24, 19, 26, 31, 20, 25, 6 |
| 43. | Ms. House and Mr. Bonini, in the final iteration of the reconciliation document, agreed that there was a total of 239 "Fail" RFP items. | House Decl. ¶¶ 50-51, Exhs. 25, 6 |
| 44. | Ms. House compared the 239 "Fail" RFP items to Defendant's response to the RFP and determined that 172 items that had been marked "Fully Comply" were failed items. | House Decl. ¶ 53, Exh. 7 |
| 45. | In responding to the RFP, each bidder was required to specify (concerning each RFP requirement) whether its Licensed Standard Software was: (1) Fully Comply; (2) Partially Comply; (3) Comply with Modifications; (4) Comply in Future; (5) Substitution; or (6) Exception. | Exh. 13 Section 2.7 (RFP), Thuesen Decl. ¶ 26 |
| 46. | A vendor Warranty of "Fully Comply" meant that the vendor's Licensed Standard Software currently provided the feature or functions as described in the RFP, and had been in use at existing client locations for a period of at least one (1) year from the date of proposal submission, not in beta testing. | See Exh. 14 (Response to RFP) Section 2.7, Thuesen Decl. ¶ 28 |
| 47. | On May 16, 2014, the date of its RFP response, New World falsely stated its system was "Fully Comply" for itemized technical requirements that did not comply. | See Exh. 14 (Response to RFP) Section 5, Thuesen Decl. ¶ 28  See House Decl. ¶ 53, Exh. 7 (identifying at least 172 items that were not "Fully Comply" that had been marked "Fully Comply"). |
| 48. | On November 6, 2015, Defendant warranted that its Licensed Standard Software met the items coded "Fully Comply" in New World's Response to SRFECC's RFP as described in Exhibit N to the Agreement, which incorporated New World's responses to the RFP technical requirements. | Exh. N to Exh. 2 (Agreement), Crosthwaite Decl. 8  See Exh. 14 (Response to RFP) Section 5, Thuesen Decl. ¶ 28 |
| 49. | At least 172 of these representations were false because years later Defendants admitted that their software did not "Fully Comply." | See Exh. 14 (Response to RFP) Section 5, Thuesen Decl. ¶ 28  See House Decl. ¶ 53, Exh. 7 (identifying at least 172 items that were not "Fully Comply" that had been marked "Fully |

| | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | | Comply"). |
| 50. | Had those 172 responses been recorded as not compliant, then SRFECC would not have awarded it the contract. | *See* Thuesen Decl. ¶¶ 41-44<br><br>House Decl. ¶¶ 72-79 |
| 51. | SRFECC agreed to pay New World $2,755,985 for delivery, implementation, and service of a replacement CAD system pursuant to a payment schedule set forth in Exhibit A of the Agreement. | Exhibit A of Exhibit 2, Crosthwaite ¶ 8. |
| 52. | On or around November 14, 2015, Defendant invoiced SRFECC $761,440.00 for pre-paid standard software maintenance services. | Declaration of Cindy Chao ("Chao Declaration") ¶ 14. |
| 53. | SRFECC paid Defendants $761,440.00 on or around December 9, 2015 pursuant to this invoice. | Chao Declaration ¶ 14. |
| 54. | On or around November 18, 2015, Defendants invoiced SRFECC $443,047.00, for Licensed Standard Software. | Chao Declaration ¶ 15. |
| 55. | On or around that same day, Defendants invoiced SRFECC a total of $194,524.76 for purported third-party products, services, and the performance bond. | Chao Declaration ¶ 16. |
| 56. | On or around December 9, 2015, SRFECC paid Defendants $443,047.00 and $194,524.76, respectively. | Chao Declaration ¶ 17. |
| 57. | On or around May 6, 2016, Defendants invoiced SRFECC $443,048.00 for Licensed Standard Software. On or around May 19, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. | Chao Declaration ¶ 18. |
| 58. | On or around September 15, 2016, Defendants invoiced SRFECC $158,164.00. On November 1, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. | Chao Declaration ¶ 19. |
| 59. | On or around October 12, 2016, Defendants invoiced SRFECC $28,969.50. On or around November 2, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. | Chao Declaration ¶ 20. |
| 60. | On or around January 31, 2017, Defendants invoiced SRFECC $98,900.00 for a progress payment for purportedly completing GANTT Step 4 – Install and Standard Configuration. On or around March 2, 2017, SRFECC paid Defendants the charged amount pursuant to this invoice. | Chao Declaration ¶ 21. |
| 61. | On or around August 30, 2017, Defendants invoiced SRFECC $300.00 for a purported third-party product. | Chao Declaration ¶ 22. |

| | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | On or around that same day, SRFECC paid this invoiced amount. | |
| 62. | Defendant has not certified that it has completed GANTT Steps 6, 8, or 10 nor invoiced SRFECC for same. | House Declaration ¶ 82. |
| 63. | To date, SRFECC has paid Defendants $2,128,393.26 | *See* Chao Decl. ¶ 14-22 (sum of payments equals $2,128,393.26). |
| 64. | SRFECC obtained the specifications for the equipment and related components Defendant required and installed them so that they were available for use in advance of Defendant's delivery of its system. | House Decl. ¶ 84. |
| 65. | SRFECC provided a consistent Project Manager over the course of the project (as opposed to Defendant's use of three different managers), a CAD Build team, an IT team, and the involvement of an executive team through SRFECC's Command Staff. | House Decl. ¶ 85. |
| 66. | The Project Manager and Command Staff engaged in weekly calls with Defendant, provided timely responses to Defendant's requests for information, coordinated with Defendant on an agreed-upon schedule, and provided timely input on the design and use of the system. | House Decl. ¶ 86. |
| 67. | SRFECC had qualified personnel available to be trained to use Defendant's system. | House Decl. ¶ 87. |
| 68. | SRFECC had a full CAD Build team participate in every training and configuration event. | House Decl. ¶ 88. |
| 69. | Each member of the Build team had a "backup" so that a full team was available at all times. | House Decl. ¶ 89. |
| 70. | SRFECC did not receive the Replacement CAD System that Defendant contracted to provide. | *See* House Decl. ¶¶ 45, 52, 54-71, 90.<br><br>*See* Thuesen Decl. ¶¶ 36-39, 45 |
| 71. | Because Defendant did not perform the contract, SRFECC has suffered the loss of the benefit of receiving the delivery, installation, implementation, and integration of the Replacement CAD System. | House Decl. ¶ 90.<br><br>Thuesen Decl. ¶ 45 |
| 72. | SRFECC must continue to rely for several more years (at minimum) on its Legacy COBOL CAD System, gradually exposing the SRFECC to greater risk that its | Thuesen Decl. ¶¶ 45, 20-24 |

-9-

| | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| | CAD system will "crash" in an environment where maintenance has become increasingly difficult due to programmer retirements and sheer age of the system. | |
| 73. | As a result of Defendant's breach, SRFECC will incur costs for the maintenance and upkeep of the existing Legacy COBOL CAD System in an amount that could range from $500,000 to $1,500,000. | Thuesen Decl. ¶ 46 |

Dated:  July 27, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP

By:  */s/ Philip S. Warden*
PHILIP S. WARDEN
ROBERT E. KINGSLEY, Prosecuting Authority
Attorneys for Plaintiff
SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER