PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (SBN 54752)
philip.warden@pillsburylaw.com
CLARK THIEL (SBN 190212)
clark.thiel@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: 415-983-1000
Facsimile:  415-983-1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
SYDNEY A. WARD (SBN 312615)
sydney.ward@pillsburylaw.com
2600 Capitol Avenue, Suite 300
Sacramento, CA 95816-5930
Telephone: 916-329-4700
Facsimile:  916-441-3583

KINGSLEY BOGARD LLP
ROBERT E. KINGSLEY (SBN 59596)
Prosecuting Authority for Plaintiff
rkingsley@kblegal.us
600 Coolidge Drive
Suite 160
Folsom, CA 95630
Telephone: 916-932-2500

Attorneys for Plaintiff SACRAMENTO REGIONAL
PUBLIC SAFETY COMMUNICATIONS CENTER
D/B/A SACRAMENTO REGIONAL FIRE/EMS
COMMUNICATIONS CENTER

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California corporation<br><br>Defendant. | Case No.  2:18-cv-01792-KJM<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY ADJUDICATION<br><br>Date:  August 24, 2018<br>Time:  10:00 a.m.<br>Courtroom:  3<br>Judge:  Hon. Kimberly J. Mueller |

# TABLE OF CONTENTS

Page

I. INTRODUCTION. ...............................................................................................................1

II. FACTUAL BACKGROUND. ............................................................................................1

    A. THE REQUEST FOR PROPOSALS. ....................................................................2

    B. DEFENDANT'S BREACH OF THE CONTRACT ......................................................3

    C. DEFENDANT'S MISREPRESENTATIONS. ..............................................................5

    D. SRFECC'S PERFORMANCE OF THE CONTRACT. ................................................6

    E. SRFECC's DAMAGES ........................................................................................8

III. STANDARD FOR SUMMARY JUDGMENT. ........................................................................8

IV. APPLICABLE LAW. ..........................................................................................................9

V. ARGUMENT. ....................................................................................................................10

    A. The Uncontroverted Facts Show That Defendant Breached the Contract to Provide the Replacement CAD Software. ....................................................10

        1. The existence of a contract is uncontroverted..................................................10

        2. SRFECC has performed its obligations under the contract, or is excused from performance............................................................................121

        3. Defendant has breached its obligations under the Agreement........................12

        4. SRFECC has been damaged by Defendant's breach. .....................................13

    B. The Uncontroverted Facts Show That Defendant Made False Statements...................14

VI. CONCLUSION. .................................................................................................................167

00098033.2                                                                                  -i-
MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PARTIAL SUMMARY ADJUDICATION
4823-6660-7725.v5                                                                         Case No.:  2:18-cv-01792-KJM-KJN

# TABLE OF AUTHORITIES

## **Cases**

*Alfred Dunhill, Ltd. v. Dunhill Compact Classics, Inc.*
   No. 88-55584, 1988 U.S. Dist. LEXIS 16711 (C.D. Cal. 1988) ............................................... 10, 11

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ..................................................................................................................... 9

*Arch Ins. Co. v. Sierra Equipment Rental, Inc.*
   No. 2:12-cv-00617, 2016 WL 4000932 (E.D. Cal. Jul. 25, 2016) ............................................... 10

*Ash v. Bank of Am. N.A.*
   No. 2:10-cv-02821, 2014 WL 301027 ........................................................................................ 14

*Bates v. Coronado Beach Co.*
   109 Cal. 160 (1895) ..................................................................................................................... 11

*Binder v. Aetna Life Ins. Co.*
   75 Cal. App. 4th 832 .................................................................................................................... 11

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ..................................................................................................................... 9

*Costello v. Roer*
   77 Cal. App. 2d 174 (1946) ......................................................................................................... 15

*Gemini Ins. Co. v. Western Marine Ins. Serv. Corp.*
   No. 2:10-cv-03172, 2016 WL 3418413 (E.D. Cal. June 22, 2016) ............................................. 10

*Giles v. GMAC*
   494 F.3d 865 (9th Cir. 2007) ....................................................................................................... 9

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*
   Nos. 2:10-cv2414, 2:12-cv-2457, 2016 WL 3213553 (E.D. Cal. June 8, 2016) ......................... 9

*Klinge v. Lutheran Charities Ass'n of St. Louis*
   523 F.2d 56 (8th Cir. 1975) ......................................................................................................... 9

*Meyer v. Benko*
   55 Cal. App. 3d 937 (1976) ......................................................................................................... 11

*Nedlloyd Lines B.V. v. Superior Court*
   3 Cal. 4th 459 (1992) .................................................................................................................. 10

*Richman v. Hartley*
   224 Cal. App. 4th 1182 (2014) .................................................................................................... 10

*Rivera v. Phillip Morris, Inc.*
   395 F.3d 1142 (9th Cir. 2005) ..................................................................................................... 9

**Statutes and Codes**

California Civil Code
    Section 1550.................................................................................................................... 10
    Section 1710.................................................................................................................... 14
    Section 9140(i)................................................................................................................ 10

California Government Code
    Title 1, Division 7, Chapter 5, Section 6500 et seq. ........................................................ 1

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 1 ............................................................................................................................ 1, 9
    Rule 56(a)...................................................................................................................... 8, 9

00098033.2                                                                                                                              -iii-
MEMORANDUM OF POINTS & AUTHORITIES ISO MOTION FOR PARTIAL SUMMARY ADJUDICATION
4823-6660-7725.v5                                                                  Case No.: 2:18-cv-01792-KJM-KJN

## I. INTRODUCTION.

Plaintiff, the Sacramento Regional Public Safety Communications Center d/b/a Sacramento Regional Fire/EMS Communications Center ("SRFECC"), moves for partial summary judgment on its breach of contract claim and on the element of false statement for its fraud claim. This matter has not yet been set for trial. Resolution by the Court of the undisputed claims herein will narrow any remaining issues for trial.

SRFECC moves for partial summary judgment early in the case because most facts are uncontroverted and therefore the case is ripe for summary judgment. Additionally, the breach of contract claim at issue here is a matter of urgency for the public. As set forth in the Complaint and below, the uncontroverted facts show that Defendant Tyler Technologies, Inc. unambiguously and unequivocally breached its contract with SRFECC to provide a replacement computer aided dispatch system used for routing first responders to the location of emergencies in the greater Sacramento region. This has caused SRFECC to continue to rely on a COBOL-based system that was procured in 1995. COBOL is an aging platform developed in 1959. As a result of its age and the retirement of experienced programmers, most COBOL-based CAD systems are being migrated to new platforms (e.g., Windows 10). Absent migration to a new platform or a software package, SRFECC risks a collapse of its Legacy System with limited programmer support to maintain it.

Defendant's conduct has put the lives of people and first responders who service the Sacramento region at risk. In an emergency, a delay of even seconds, let alone minutes, may be the difference between life and death. A swift resolution to this dispute is both possible and necessary. SRFECC therefore seeks to avail itself of the partial summary judgment procedure to "secure the just, speedy and inexpensive determination" of this action. Fed. R. Civ. P. 1.

## II. FACTUAL BACKGROUND.

SRFECC is a California Joint Powers Authority ("JPA"), formed under and in accordance with the laws of the State of California, Title 1, Division 7, Chapter 5, Section 6500 et seq., of the California Government Code. *See* Separate Statement of Undisputed Facts ("UF"), filed herewith, UF No. 1. Its member agencies include the City of Sacramento, the Sacramento Metropolitan Fire District, the City of Folsom, and the Cosumnes Community Services District (collectively referred to

-2-

1  herein as "Member Agencies"). *See* UF No. 2.  SRFECC also provides services to the following six
2  volunteer fire agencies as contract entities:  Courtland Fire Protection District, Herald Fire Protection
3  District, Isleton Fire Protection District, River Delta Fire Protection District, Walnut Grove Fire
4  Protection District, and Wilton Fire Protection District (collectively referred to herein as the
5  "Contract Entities").  *See* UF No. 3.

6        SRFECC provides emergency dispatch services for approximately 1.5 million people in the
7  greater Sacramento area.  UF No. 4.  It is one of the nation's largest fire and emergency medical
8  services communication centers, providing public safety communications and dispatch services to
9  the ten cities and districts named above, covering approximately 1,000 square miles.  UF No. 5.  It is
10 the sole dispatching agency for all 9-1-1 emergency fire and medical aid service calls in Sacramento
11 County.  UF No. 6.  In 2017 alone, SRFECC dispatched emergency units over 204,000 times and
12 answered over 350,000 emergency calls.  UF No. 7.

13       Defendant Tyler is a Delaware corporation qualified to do business in the State of California.
14 *See* UF No. 8.  Defendant entered into a merger agreement with New World Systems Corporation
15 ("New World"), a Michigan corporation, under which Defendant acquired 100% of the outstanding
16 stock of New World, on October 1, 2015.  The merger closed on November 17, 2015.  *See* UF No..9
17 New World filed a Certificate of Surrender of Right to Transact Intrastate Business with the
18 Secretary of State of California on or around March 28, 2016.  UF No. 11.

19       **A.**      **THE REQUEST FOR PROPOSALS.**

20       On or around March 2014, SRFECC initiated efforts to upgrade and modernize its Northrop
21 Grumman legacy computer aided dispatch system ("Legacy COBOL CAD System").  *See* UF No.
22 12.  On or around March 18, 2014, SRFECC issued a Request For Proposals ("RFP") seeking bids
23 from software vendors that could deliver, install, implement, and integrate a Replacement CAD
24 System (hereafter, either "Replacement CAD System" or "Project").  UF No. 13.

25       SRFECC received three competitive bids.  It awarded the contract to the winning bidder,
26 New World, which agreed to provide services and furnish licensed products, computer software and
27 documentation for the delivery, installation, implementation, and integration of a Replacement CAD
28 System pursuant to a Software License and Services Agreement ("Agreement").

**B.     DEFENDANT'S BREACH OF THE CONTRACT**

New World President Larry D. Leinweber signed the Agreement on behalf of New World on or around October 30, 2015.  *See* UF No. 18.  Also on October 30, 2015, Tyler Industries entered into a Merger Agreement with New World Systems under which Tyler would acquire 100% of the shares of New World Systems' outstanding stock.  *See* UF No. 9.

Then-Chief Executive Director, Teresa Murray, signed the Agreement on behalf of SRFECC on or around November 6, 2015.  *See* UF No. 19.

On November 6, 2015, at New World's request, pursuant to Section 19.7 of the Agreement, SRFECC consented to the stock acquisition of New World by Tyler Technologies, Inc. in consideration of Tyler's ratification of its obligations under the Agreement.  UF No. 20.  Shortly thereafter, on or about November 16, 2015, Tyler completed the Merger and its acquisition of New World's stock.  UF No. 10.

Under the Agreement, Defendant promised to "design, deliver, install and integrate" a system that includes "(1) furnishing the Licensed Products; and (2) providing certain services described herein to **Customer**."  UF No. 21.  The "Licensed Products" includes the Licensed Standard Software.  UF No. 22.  Defendant warranted that this system would meet the technical requirements of SRFECC's RFP that were marked "Fully Comply," as described in Exhibit N to the Agreement, i.e. existing software at a current customer's site for over one year.  UF No. 23.  Exhibit N provides that Defendant's response to SRFECC's RFP technical requirements is incorporated in the Agreement by reference.  UF No. 24.

Defendant further agreed to "perform all of its obligations and provide all services and products to Customer as set forth in accordance with the timeline for the Project (see Exhibit D) and the provisions of this Agreement."  UF No. 25.  The Agreement specifies that "[t]ime is of the essence," and states that the parties must "strictly adhere to the timeline set forth in Exhibit D for the installation and integration of the System and shall strictly adhere to the timeline set forth for *each* milestone component (e.g. Installation) in Exhibit D, System Implementation Plan/GANTT Chart for that particular milestone component."  UF No. 26 (emphasis added).  Exhibit D provides that the "typical" implementation for a project "of this size and scope usually spans 18-24 months from

contract signing through go live." UF No. 27.  As required by Exhibit D, the Parties established an agreed-upon Project Management Plan (the GANTT Chart).  *See* UF No. 28.  The parties agreed that the Go-Live date would be November 6, 2017, or 24 months after execution of the Agreement.  *See id.*

After the start of the Project, Defendant failed to submit status reports each month as required by the Agreement.  UF No. 29.  The few status reports that were provided were not timely, and contained false and misleading information about Defendant's progress and Project completion.  UF No. 30.  Defendant failed to make substantial progress toward completing the Project in a timely manner such that the contracted "Replacement CAD System" would Go-Live by the mutually agreed upon date of November 6, 2017.  *See* UF Nos. 31-32.

On September 1, 2017, Defendant's Vice President Kevin Flynn emailed SRFECC indicating that there were too many outstanding issues to meet the November 6, 2017 deadline.  *See* Declaration of Diane House ("House Decl.") ¶¶ 30-31, Ex. 8.  The November 6, 2017 Go-Live was cancelled.  UF No. 32.  SRFECC's staff and consultants continued to meet with Defendants to list the remaining open items required to be performed by Defendants before a new System Go-Live date could be scheduled.  UF No. 33.

During this process, SRFECC confirmed that (1) Defendants misrepresented the capabilities of its Licensed Standard Software as more fully described in Section C, *infra*, and (2) Defendants' RFP misrepresentations were a major factor in the Go-Live time delay – numerous RFP items would require Defendants to modify and/or create new software programs to provide the feature and functions as described in the RFP,  which Defendants had earlier certified to SRFECC as already in existence (at existing clients) for over a year's time prior to Defendants' RFP submittal.

Because of the Go-Live cancellation, SRFECC sought assurances from Defendant that it would complete the Project in a timely manner.  UF No. 34.  In response to the SRFECC's request for assurances, Mr. Flynn made a presentation to SRFECC on December 7, 2017.  UF No. 35.  During the presentation, Mr. Flynn admitted that "34 items . . . failed to comply with the RFP requirement[;] 41 items that are warranty items (i.e. not working as designed, and will be resolved in a future release)[;] 7 items that are requests for enhancement to the application; [and] 79 items that

may have not met the RFP requirements." UF No. 36. Mr. Flynn also went on to state that there were a "handful of items" that did not align with its "product strategy" and "have been eliminated from consideration." UF No. 37

Mr. Flynn estimated that Defendant's recovery plan for the "completion of these items given the capacity of the development team" would take 33,900 hours – and that Defendant's capacity for the entire public safety segment of its customer base was limited to only 3,000 hours of development time per year. UF No. 38 (This estimate was based on the "fails" that Defendant, not SRFECC, identified as project priorities.) Mr. Flynn estimated that Defendant could only commit between 1,500 to 2,000 hours per year to the SRFECC Project. UF No. 39. This means it would take Defendant between 17 years (33,900 ÷ 2,000) and 22 years (33,900 ÷ 1,500) to deliver a partial CAD system – Mr. Flynn admitted it could not meet a "handful" of requirements, meaning that SRFECC would <u>never</u> receive the complete, fully functional CAD system it had contracted for.

Following the presentation, SRFECC's project manager Diane House continued to work with Defendant's project manager David Bonini to determine both the extent of the system's failure to comply, and any potential resolution. UF No. 41. Because Mr. Flynn's presentation did not list the correct RFP technical requirement reference numbers corresponding to RFP "fails," Mr. Bonini and Ms. House had to ascertain the correct numbers. They also determined that Mr. Flynn had underestimated the number of RFP "fails" (which Mr. Flynn labeled "open"). *See* UF No. 41. Mr. Bonini and Ms. House exchanged a "reconciliation" spreadsheet where each inserted their comments on the RFP fails. UF No. 42. Ms. House and Mr. Bonini, in the final iteration of the reconciliation document, agreed that there was a total of 239 "Fail" RFP items. UF No. 43.

C.    **DEFENDANT'S MISREPRESENTATIONS.**

The RFP identified and specifically described the features and functions as described in the RFP (technical requirements) of the Replacement CAD System and sought assurances that the vendor would deliver a CAD system meeting those Technical Requirements. UF No. 14. Each bidder was required to specify (concerning each RFP requirement) whether its Licensed Standard Software was: (1) Fully Comply; (2) Partially Comply; (3) Comply with Modifications; (4) Comply in Future; (5) Substitution; or (6) Exception. UF No. 45. A vendor Warranty of "Fully Comply"

meant that the vendor's Licensed Standard Software currently provided the feature or functions as described in the RFP, and had been in use at existing client locations for a period of at least one (1) year from the date of proposal submission, not in beta testing.  UF No. 46.

On May 16, 2014, the date of its RFP response, New World falsely stated its system was "Fully Comply" for itemized technical requirements that did not comply.  UF No. 47.  On November 6, 2015, Defendant falsely warranted that its Licensed Standard Software met the items coded "Fully Comply" in New World's Response to SRFECC's RFP as described in Exhibit N to the Agreement, which incorporated New World's responses to the RFP technical requirements.  UF Nos. 48-49.

New World knew, at the time it submitted its bid, that it could not timely deliver, within an 18 to 24-month period, a Replacement CAD System that included all of the items it had marked "Fully Comply" in its RFP Response.  Mr. Flynn confirmed this fact on December 7, 2017 when he projected that it would take 17 to 22 years to deliver a partial version of the contracted-for system.  UF No. 40.

Defendant acknowledged and confirmed RFP Warranty "Fails" on numerous occasions, including (by way of illustration and not limitation) in multiple exchanges of the RFP File (the final copy of which is Exhibit 6); in a meeting agenda for the week of August 28, 2017, appointing two full days to review "Failed RFP Areas;" in the onsite visit on November 16, 2017 to review 82 RFP failed items (House Decl. ¶¶ 34-36); and in Mr. Flynn's presentation on December 7, 2017 (House Decl. Exh. 5).

Moreover, Defendant falsely represented its completion of certain milestones and RFP requirements throughout the process.  *See* UF Nos. 29-30.  Because of these representations, SRFECC was led to believe that the project was progressing toward the anticipated Go-Live date, when in actuality, many components were not compliant.  UF No. 31.

D. **SRFECC'S PERFORMANCE OF THE CONTRACT.**

SRFECC agreed to pay New World $2,755,985 for delivery, implementation, and service of a replacement CAD system pursuant to a payment schedule set forth in Exhibit A of the Agreement. UF No. 51. To date, SRFECC has paid Defendants $2,128,393.26 and has not yet received the Replacement CAD System that Defendants contracted to provide. UF Nos. 63, 70.

On or around November 14, 2015, Defendants invoiced SRFECC $761,440.00 for pre-paid standard software maintenance services. UF No. 52. SRFECC paid Defendants $761,440.00 on or around December 9, 2015 pursuant to this invoice. UF No. 53.

On or around November 18, 2015, Defendants invoiced SRFECC $443,047.00, for Licensed Standard Software. UF No. 54. On or around that same day, Defendants invoiced SRFECC a total of $194,524.76 for purported third-party products, services, and the performance bond. UF No. 55. On or around December 9, 2015, SRFECC paid Defendants $443,047.00 and $194,524.76, respectively. UF No. 56.

On or around May 6, 2016, Defendants invoiced SRFECC $443,048.00 for Licensed Standard Software. UF No. 57. On or around May 19, 2016, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. *Id.*

On or around September 15, 2016, Defendants invoiced SRFECC $158,164.00. UF No. 58. On November 1, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. *Id.*

On or around October 12, 2016, Defendants invoiced SRFECC $28,969.50. UF No. 59. On or around November 2, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. *Id.*

On or around January 31, 2017, Defendants invoiced SRFECC $98,900.00 for a progress payment for purportedly completing GANTT Step 4 – Install and Standard Configuration. UF No. 60. On or around March 2, 2017, SRFECC paid Defendants the charged amount pursuant to this invoice. *Id.*

On or around August 30, 2017, Defendants invoiced SRFECC $300.00 for a purported third-party product. UF No. 61. On or around that same day, SRFECC paid this invoiced amount. *Id.*

Defendant has not certified that it has completed GANTT Steps 6, 8, or 10 nor invoiced SRFECC for same. Consequently, payment for completion of those milestones is not due. UF no. 62.

In addition to payment, SRFECC also provided the equipment and personnel called for by the Agreement to facilitate Defendant's performance of the Contract. *See* Agreement, p. 8, Section 7 ("Customer Liaison and Customer Responsibilities"); UF Nos. 64-69. SRFECC obtained the

specifications for the equipment and related components Defendant required and installed them so that they were available for use in advance of Defendant's delivery of its system.  UF No. 64.  SRFECC provided a consistent Project Manager over the course of the project (as opposed to Defendant's use of three different managers), a CAD Build team, an IT team, and the involvement of an executive team through SRFECC's Command Staff.  UF No. 65. The Project Manager and Command Staff engaged in weekly calls with Defendant, provided timely responses to Defendant's requests for information, coordinated with Defendant on an agreed-upon schedule, and provided timely input on the design and use of the system.  UF No. 66.  SRFECC had qualified personnel available to be trained to use Defendant's system.  UF No. 67.  SRFECC had a full CAD Build team participate in every training and configuration event.  UF No. 68.  Each member of the Build team had a "backup" so that a full team was available at all times.  UF No. 69.

SRFECC performed its obligations under the contract.

### E. SRFECC's DAMAGES

As a direct and proximate result of Defendants' misconduct, SRFECC has suffered, and will continue to suffer, the loss of the benefit of receiving the delivery, installation, implementation, and integration of the Replacement CAD System for which SRFECC agreed to pay $2,755,985, of which SRFECC has already paid approximately $2,128,393.26.  *See* UF Nos. 63; 71.  SRFECC must either accept an extremely delayed, partial version of the system it contracted to receive, or it must re-start the RFP process and enter a contract with a new vendor.  Either option will cause SRFECC to rely for several more years (at minimum) on its Legacy COBOL CAD System, gradually exposing the SRFECC to greater risk that its CAD system will "crash" in an environment where maintenance has become increasingly difficult due to programmer retirements and sheer age of the system.  UF No. 72.

It is undisputed that SRFECC has been damaged by Defendant's failure to perform the contract.  The amount of SRFECC's damages may be determined at trial.

### III. STANDARD FOR SUMMARY JUDGMENT.

A party may move for summary judgment, "identifying each claim or defense—o*r part of each claim or defense*—on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis

added).  The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  "Once the moving party demonstrates the absence of a genuine issue of material fact, the nonmoving party must come forward with evidence creating a genuine issue of material fact." *Giles v. GMAC*, 494 F.3d 865, 872 (9th Cir. 2007).  "A mere scintilla of evidence supporting the non-moving party's position is insufficient." *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

By narrowing a case to triable issues, the motion for summary judgment promotes the judicious, cost-effective and efficient use of the courts and avoids wasteful trials.  *See Klinge v. Lutheran Charities Ass'n of St. Louis*, 523 F.2d 56, 61-62 (8th Cir. 1975); *Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, Nos. 2:10-cv2414, 2:12-cv-2457, 2016 WL 3213553, *23 (E.D. Cal. June 8, 2016).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1).

## IV.     APPLICABLE LAW.

This is a diversity action with California state law claims.  California law applies to this dispute.  SRFECC is a California joint powers authority, and the purpose of the Agreement was to provide a replacement CAD system for use in the greater Sacramento region, in service of the people of California.  Over the course of the contract, Defendant representatives in California met with SRFECC representatives, also in California, to discuss the progress of the project.

The Agreement also contains a choice-of-law provision that provides that the "laws of the State of California shall govern in connection with the formation, performance, and the legal enforcement of this Agreement."  Exhibit 2, Section 15 (Agreement) to Declaration of Wendy Crosthwaite ("Crosthwaite Decl.") "California courts broadly construe a contractual choice-of-law

provision, particularly when two sophisticated commercial parties agree to such a clause.  As a general rule, the parties' choice will apply to all claims arising from or related to the contract, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." *See Gemini Ins. Co. v. Western Marine Ins. Serv. Corp.*, No. 2:10-cv-03172, 2016 WL 3418413, *8 (E.D. Cal. June 22, 2016) (citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464 (1992)).

SRFECC's claims arise from the formation and performance of the Agreement.  Accordingly, California law governs SRFECC's claims for breach of contract and the false statement element of SRFECC's fraud claim.

## V. ARGUMENT.

### A. The Uncontroverted Facts Show That Defendant Breached the Contract to Provide the Replacement CAD Software.

Summary judgment is appropriate with respect to a breach of contract claim where, as here, the terms of the contract are unambiguous and the uncontroverted facts show that the defendant breached the contract.  *See Alfred Dunhill, Ltd. v. Dunhill Compact Classics, Inc.*, No. 88-55584, 1988 U.S. Dist. LEXIS 16711 *4 (C.D. Cal. 1988) (granting plaintiff's motion for partial summary judgment on a breach of contract claim where the court "can and does rule as a matter of law that the contract is unambiguous and has been breached by the defendant.").

To prevail on a breach of contract claim, a plaintiff must prove (1) the existence of a contract, (2) the plaintiff's performance of its obligations under the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff.  *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014).

#### 1. The existence of a contract is uncontroverted.

To prove the existence of a contract, a plaintiff must show:  (a) parties capable of contracting, (b) the parties' consent, (c) a lawful object, and (d) consideration.  Cal. Civ. Code § 1550.

SRFECC, Tyler, and New World were entities capable of contracting when the contract and consent agreement were executed on November 6, 2015.  UF Nos. 8, 11. Tyler and New World were corporations qualified to do business in California, and "[a] corporation has the power to enter into

contracts in conducting its activities." *Arch Ins. Co. v. Sierra Equipment Rental, Inc.*, No. 2:12-cv-00617, 2016 WL 4000932, *4 (E.D. Cal. Jul. 25, 2016) (citing Cal. Civ. Code § 9140(i); *Bates v. Coronado Beach Co.*, 109 Cal. 160, 162 (1895)).   SRFECC likewise has the ability to contract.  *See* Exhibit 1, Sections B-C (SRFECC is expressly authorized "to make and enter into contracts").

SRFECC, Tyler, and New World consented to the Agreement.  Consent may be manifested in writing, through speech, or by conduct, or implied through action or inaction.  *See Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850.  The existence of mutual consent is determined "by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe."  *Meyer v. Benko*, 55 Cal. App. 3d 937, 942-43 (1976).  Here, New World President Larry D. Leinweber and SRFECC Chief Executive Director Teresa Murray manifested New World's and SRFECC's consent by signing the Agreement.  *See* UF Nos. 18, 19.

On the same day, pursuant to Section 19.7 of the Agreement, SRFECC signed a Consent Agreement to the stock acquisition of New World by Tyler Technologies, Inc. in consideration for Tyler's ratification of its obligations under the Agreement between New World and SRFECC.  UF No. 20.  Tyler, as the successor corporation, assumed New World's rights and obligations under the Agreement, pursuant to Section 19.7 and law.  *See Alfred Dunhill, Ltd*, No. 88-55584, 1988 U.S. Dist. LEXIS 16711 *2 (successor corporation bound by contract signed by its predecessor where the contract was "explicitly deemed by the parties to be binding on the 'parties, their officers, their successors, and assigns'").

Tyler's conduct also manifests its consent.  Tyler has at all times acted as a party to the Agreement and requested (and received) the benefits of the contract.  For example, Tyler invoiced SRFECC according to the Agreement's Payment Schedule (Exhibit A to the Agreement) and has received payments pursuant to the Agreement.  UF Nos. 52-63.

The Agreement's lawful object was to obtain a replacement CAD system, and the Agreement was supported by consideration.  In exchange for the delivery and installation of the replacement CAD system, SRFECC agreed to the pricing and payment schedule set forth in Exhibit A to the Agreement, which obligated SRFECC to pay $2,755,985 for the replacement CAD system, its

implementation, and a 5-year SSMA period after expiration of the warranty.

### 2. SRFECC has performed its obligations under the contract, or is excused from performance.

SRFECC agreed to pay New World $2,755,985 for delivery, implementation, and service of a replacement CAD system pursuant to a payment schedule set forth in Exhibit A. UF No. 51. SRFECC has paid $1,904,599.00 to Defendants, pursuant to the schedule, and has also paid $223,794.26 (excluding taxes) for purported necessary third-party products and services, pursuant to the schedule. UF Nos. 52-63. Defendant has not certified that it has completed GANTT Steps 6, 8, or 10 nor invoiced SRFECC for same. UF No. 62. Consequently, payment for completion of those milestones is not due.

SRFECC has also fulfilled its obligations to provide the appropriate equipment, as directed by Defendant, and personnel to facilitate the replacement of its CAD system. UF Nos. 64-69.

### 3. Defendant has breached its obligations under the Agreement.

Defendant agreed to provide software that complied with the technical requirements it had designated "Fully Comply" in the Responses to the RFP by November 6, 2017. UF No. 28. However, by September 1, 2017, it was apparent that it could not meet this deadline, and the Go-Live date was cancelled. *See* UF No. 32. SRFECC sought assurances from Defendant that it could perform the contract. UF No. 34. Rather than provide assurances, Defendant's representative Mr. Flynn admitted that its software does not meet the technical requirements it contracted to provide and that it would take an additional 33,900 hours, over the next 17 to 22 years, for Defendant to resolve the non-compliant issues – except for those issues it could not resolve at all. *See* UF Nos. 35-40.

Following the presentation, Defendant's representative produced a document in collaboration with SRFECC that revealed that the number of agreed-upon "fails" totaled 239 items – a number far greater than that identified by Mr. Flynn during his December 17, 2017 presentation. UF no. 43. These failed items are critical elements of the software Defendant contracted to provide, as set forth in detail in Project Manager Diane House's declaration. House Decl. ¶¶ 53-71.

For instance, Defendant's system does not provide possible address matches when a

dispatcher types in a partial or misspelled street name or intersection; it does not provide a complete list of intersection possibilities; it does not provide latitudinal and longitudinal coordinates in the designated formats; it does not provide look-up aids for locations that sound alike, but are spelled differently; it does not provide support for identifying all possible matches for a commonplace name like "Starbucks"; it does not provide the type-ahead (predictive) functionality required by the Agreement; it does not provide the ability to retype an address without restarting from the beginning; it is not able to center the map on the address verified; it does not enable a dispatcher to run a query for locations by street name only; it does not display latitude and longitude coordinates; dispatchers cannot use the tab key to move through different fields; the system does not allow SRFECC to assign labels to different buttons or to configure field names. *Id.*

SRFECC requested these specific functions, among others, because it is critical to a dispatcher's ability to speedily locate and assign responding units to an emergency via the most efficient route possible. *Id.* If Defendant's system had been accepted and put into use, these failures would have impeded a dispatcher's ability to locate emergencies, resulting in increased call processing time and delayed response time, or possibly even a total failure to accurately locate the site of the emergency. *See id.*

Defendant's failure to perform the contract by November 6, 2017 constitutes a breach of the Agreement. Moreover, Defendant admitted that it would <u>never</u> be able to provide software that met at least four of the technical requirements it had warranted its software already met when the contract was entered. UF No. 37. The remaining items could only be met after approximately 17 to 22 years (after promising performance within 24 months). UF Nos. 38-40. Consequently, Defendant breached the contract.

**4.    SRFECC has been damaged by Defendant's breach.**

SRFECC has been harmed because it has paid for a replacement CAD system that it has not received. In addition, Defendant's conduct has jeopardized a timely and necessary upgrade to SRFECC's Legacy COBOL CAD System, which serves more than 1.5 million people in the greater Sacramento area. *See* UF Nos. 4, 12, 72. Defendant failed to provide the agreed-upon system by November 6, 2017, and according to Defendant's Vice President Kevin Flynn, SRFECC will never

receive the system Defendant agreed to provide. *See* UF Nos. 32, 37.  As a consequence, SRFECC must either accept an extremely delayed, partial version of the system it contracted to receive, or it must re-start the RFP process and enter a contract with a new vendor.  Either option will cause SRFECC to rely for several more years (at minimum) on its Legacy COBOL CAD System. UF No. 72.  Additionally, SRFECC will incur costs for the maintenance and upkeep of the existing Legacy COBOL CAD System in an amount that could range from $500,000 to $1,500,000.  UF No. 73.  In the meantime, it has paid Defendant $761,440 for *future* maintenance and service of the replacement CAD system, even though Defendant admits it cannot deliver a system that conforms to the contract. UF Nos. 52-53, 36-43.

Moreover, many of the technical requirements that were marked "Fully Comply" but weren't, were "mission critical" elements of the replacement CAD system.  House Decl. ¶¶ 53-71. Defendant's false representations were material because they misled SRFECC about its system's capabilities.

It is undisputed that SRFECC has been harmed by Defendant's failure to perform the contract.  The amount of SRFECC damages may be determined at trial.

**B.     The Uncontroverted Facts Show That Defendant Made False Statements.**

In California, a claim of fraud has five elements:  (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5) the plaintiff suffered resulting damages. *Ash v. Bank of Am. N.A.*, No. 2:10-cv-02821, 2014 WL 301027, *13 (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).  SRFECC seeks partial summary adjudication on the first element:  that Defendant made a false representation as to a past or existing material fact.  "The first element may consist of:  (a) a knowing false representation; (b) concealment or nondisclosure of facts; or (c) a promise made with no intent to perform." *Id.* (citing Cal. Civ. Code § 1710).

Here, New World made false statements in its Response to the Request for Proposal about the capabilities of its CAD system.  The Request for Proposal instructed each "Proposer" to provide

one of six possible responses to every described requirement, specification, and function in the RFP. UF No. 45. The response "Fully Compliant" indicates that the "system currently provides the feature or functions as described and is in use at existing client locations for a period of at least one year from the date of proposal submission, not in beta testing." UF No. 46.

The other potential responses allowed for a Proposer to indicate that their system provided "some portion" of the feature or function; that the system does not meet the requirement but can provide the capability "via a system modification;" that the request feature has been "specified for inclusion in a future release of the proposed system;" that the system provides "the same capability . . . in a different manner;" or that the system does not meet the requirement. Exh. 14 to Thuesen Decl. (Response to RFP Section 2.7 "Required Response Format.").

In response to most of the technical requirements described by SRFECC, Defendant indicated that its system, including the Licensed Standard Software, was "Fully Comply" – in other words, its system "currently" provided the feature or functions "as described" and in use at existing client locations for a period of at least one year. UF Nos. 46-47. However, over three years later, after the time for performance had come and gone, Defendant's representatives Mr. Flynn and Mr. Bonini separately confirmed that the Defendant system did not meet each of the technical requirements that had been marked "Fully Comply." UF Nos. 49, 43, 36-40. Mr. Bonini, after numerous consultations with Ms. House, agreed that there were 239 total RFP fails. UF No. 43. This agreed-upon list of RFP fails – when reviewed against Defendant's Response to the RFP – show that Defendant indicated that its system was "Fully Comply" with respect to one hundred seventy-two (172) technical requirements that it later admitted its system did not meet. UF No. 44. Since the response "Fully Comply" indicates that the Proposer's system meets the requirement as described and is in use by a client for a period of at least one year, Defendant's "Fully Comply" response to those 172 items – and subsequent incorporation of the Response in the Agreement – constitute false statements of past or existing fact.

These false statements were material. Each vendor received a score for its bid based on a weighted formula. House Decl. ¶ 73. Under this formula, each vendor's responses to the technical requirements of the RFP constituted 30% of its final score. *Id.* ¶ 75. Each response marked "Fully

1  Comply" received 3 points; "Compliant as Modified" responses received 2 points; "Partially
2  Compliant" responses received 1 point; and "Not Compliant" responses received 0 points. *Id.* ¶ 76.
3  Each technical requirement was also assigned an individual weight. *Id.* ¶ 77. SRFECC used a
4  spreadsheet to record and calculate each vendor's score. *Id.* ¶ 78. Using this spreadsheet, if the 172
5  items that were marked "Fully Comply" had been marked "Not Compliant," Defendant's total score
6  would have changed from the highest score to the lowest score of the competing bids. *Id.* On this
7  basis alone, Defendant would not have been awarded the contract. UF No. 50. Thus, these false
8  statements were material. *See Costello v. Roer*, 77 Cal. App. 2d 174, 178 (1946) ("A
9  misrepresentation is material if it would be likely to affect the conduct of a reasonable man with
10 reference to the transaction in question.").

Moreover, Defendant's false representations about the capabilities of its system directly relate to its failure to perform the contract. As set forth in detail in Project Manager Diane House's declaration, and described *supra*, the failed items that were falsely marked "Fully Comply" are critical to the operation of an effective emergency dispatch center. *See* House Decl. ¶¶ 53-71.

## VI.   CONCLUSION.

For the foregoing reasons, partial summary adjudication should be entered as to the element of false representation and as to Plaintiff's claim for breach of contract, with the amount of damages to be determined at trial.

Dated: July 27, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Philip S. Warden*
PHILIP S. WARDEN
ROBERT E. KINGSLEY, Prosecuting Authority
Attorneys for Plaintiff
SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER