Beth W. Petronio *(admitted pro hac vice)*
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5815
Fax: (214) 939-5849
beth.petronio@klgates.com

Malcolm Segal (SBN 075481)
John T. Kinn (SBN 130270)
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com
jkinn@segal-pc.com

Attorneys for Defendant TYLER
TECHNOLOGIES, INC., a Delaware
Corporation F/K/A NEW WORLD SYSTEMS
CORPORATION, a Surrendered California
corporation

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER,<br><br>                Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION,  a Surrendered California Corporation,<br><br>                Defendant. | Case No.: 2:18-1792-KJM-KJN<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE [RULES 9(B), 12(B)(6) AND 12(F)]**<br><br>Date:         September 21, 2018<br>Time:        10:00 a.m.<br>Judge:       Hon. Kimberly J. Mueller<br>Courtroom:  3 |

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

FACTUAL BACKGROUND ...................................................................................3

A.      The Request For Proposal ..........................................................................3

B.      The Agreement.............................................................................................4

C.      The Implementation ....................................................................................6

D.      The Notice of Breach and Complaint ........................................................7

ARGUMENT AND AUTHORITIES .....................................................................7

A.      SRFECC Has Not Alleged Fraud With Specificity ..................................8

B.      SRFECC's Statutory Unfair Competition Claim Also Fails....................14

C.      SRFECC's False Claims Act Claim Fails for Various Other Reasons ......16

D.      SRFECC Has Not Properly Plead A Breach of Contract ...........................18

E.      SRFECC's Allegations Regarding a Public Safety Threat Should Be Striken............19

CONCLUSION......................................................................................................20

DEFENDANT'S MEMO OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS & MOTION TO STRIKE

## TABLE OF AUTHORITIES

**Cases**

*Arriaga v. Orgil Int'l Greenhouses Corp.*,
  No. 04-cv-0217-LAB, 2007 WL 2904055 (S.D. Cal. Oct. 2, 2007) .............................................. 13

*Bankcard America v. Elliott*,
  No. 89-C-1246, 1994 WL 494843 (N. D. Ill. Sept. 8, 1994) ........................................................ 13

*Bardin v. Daimlerchrysler Corp.*,
  136 Cal. App. 4th 1255, 39 Cal. Rptr. 3d 634 (2006) ................................................................ 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................... 19

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ..................................................................................................... 8

*Bower v. Jones*,
  978 F.2d 1004 (7th Cir. 1992) ................................................................................................... 13

*Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ..................................................................................................... 9

*Celador Int'l, Ltd. v. Walt Disney Co.*,
  347 F. Supp. 2d 846 (C.D. Cal. 2004) ...................................................................................... 13

*Cholla Ready Mix, Inc. v. Civish*,
  382 F.3d 969 (9th Cir. 2004) ....................................................................................................... 9

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ............................................................................................ 15, 16

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir.2010) ........................................................................................................ 9

*Hagood v. Sonoma Cty. Water Agency*,
  81 F.3d 1465 (9th Cir. 1996) ..................................................................................................... 12

*Hands On Video Relay Servs., Inc. v. Am. Sign Language Servs. Corp.*,
  No. CIV S-090996 LDD/DAD, 2009 WL 8691614 (E.D. Cal. Aug. 12, 2009) ........................... 13

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ..................................................................................................... 16

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999) ..................................................................................................... 20

*Hindo v. University of Health Sciences/The Chicago Medical School*,
  65 F.3d 608 (7th Cir. 1995) ....................................................................................................... 12

*Hopper v. Anton*,
  91 F.3d 1261 (9th Cir. 1996) ..................................................................................................... 12

*Hsu v. Oz Optics Ltd.*,
   211 F.R.D. 615 (N.D. Cal. 2002) .................................................................................... 13

*Icasiano v. Allstate Ins. Co.*,
   103 F. Supp. 2d 1187 (N.D. Cal. 2000) ....................................................................... 13

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994)......................................................................................... 8

*In re Stac Elec. Sec. Litig.*,
   89 F.3d 1399 (9th Cir.1996)........................................................................................... 8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009).............................................................................. 8, 14, 15

*Krouse v. BAC Home Loans Servicing, LP*,
   No. 2:10-CV-03309-MCE-EF, 2011 WL 2367093 (E.D. Cal. June 9, 2011) .............................. 16

*Los Angeles Mem. Coliseum Comm. v. Insomniac, Inc.*,
   233 Cal. App. 4th 803 (2015)....................................................................................... 18

*Mat–Van, Inc. v. Sheldon Good & Co. Auctions*,
   No. 07–cv–912, 2007 WL 2206946 (S.D. Cal. July 27, 2007) ............................................. 13

*Pena v. McArthur*,
   889 F. Supp. 403 (E.D. Cal. 1994).............................................................................. 15

*Premiere Innovations, Inc. v. IWAS Indus., LLC*,
   No. 07–cv–1083, 2007 WL 2873442 (S.D. Cal. Sept. 28, 2007) ......................................... 13

*Rhenigans v. Smith*,
   161 Cal. 362 (1911)........................................................................................................ 12

*Richardson v. Reliance Nat'l Indemnity Co.*,
   No. C 99-2952 CRB, 2000 WL 284211 (N.D. Cal. March 9, 2000) ................................. 12, 13

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010)................................................................................. 14, 15

*Sipe v. Countrywide Bank*,
   690 F. Supp. 2d 1141 (E.D. Cal. 2010) ..................................................................... 13

*Smith v. Allstate Ins. Co.*,
   160 F. Supp. 2d 1150 (S.D. Cal. 2001) ...................................................................... 12

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008)..................................................................................... 15

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001)........................................................................................ 8

*United State v. Bourseau*,
   531 F.3d 1159 (9th Cir. 2008)...................................................................................... 16

iii

*Universal Studios Int'l B.V. v. Entertainment Television Network FZE*,
   CV 09-01348 GAF, 2009 WL 10675950 (N.D. Cal. Aug. 25, 2009) ........................................... 13

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................................. 8, 14

*Watts v. Allstate Indem. Co.*,
   No. S–08–1877, 2009 U.S. Dist. LEXIS 26618 (E.D. Cal. Mar. 31, 2009) ................................. 13

*Whittlestone Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ....................................................................................................... 20

*Wilkerson v. Butler*,
   229 F.R.D. 166 (E.D. Cal. 2005) ................................................................................................. 20

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................................................................... 7, 14, 15

Cal. Gov't Code §§ 12650, *et seq.* .............................................................................................. 7, 17

**Rules**

Federal Rules of Civil Procedure:

Rule 9(b) ............................................................................................................... 3, 8, 13-16

Rule 12(b)(6) ...................................................................................................................3, 8

Rule 12(f) ..........................................................................................................................19

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND MOTION TO STRIKE

**INTRODUCTION**

Plaintiff Sacramento Regional Public Safety Communications Center d/b/a Sacramento Regional Fire/EMS Communications Center ("Plaintiff" or "SRFECC") is improperly attempting to transform a disputed breach of contract claim into a False Claims Act/common law fraud case.  At most, this case is a disagreement about whether Defendant Tyler Technologies, Inc. ("Tyler") implemented a computer aided dispatch ("CAD") system for SRFECC consistent with a Software License and Services Agreement dated November 6, 2015 (the "Agreement") between SRFECC and Tyler's predecessor-in-interest, New World Systems Corporation ("New World").  Ignoring multiple key aspects of the Agreement, SRFECC's Complaint improperly leaps to the conclusion that, because the CAD system allegedly did not include certain functionality that SRFECC wanted, New World must have lied about the system's functionality during the extensive procurement process.  In doing so, however, SRFECC merely relies on unsupported, unexplained conclusory allegations that are insufficient as a matter of law to survive a motion to dismiss.

SRFECC's allegations are belied by common sense, the terms of the Agreement, and the project history.  In the context of the implementation of complex computer systems, a clear reading of the Complaint with all attached and referenced documents exposes the shortcomings of SRFECC's pleading.  New World responded to over 2000 individual line items in SRFECC's Request for Proposal ("RFP"), indicating whether its CAD system had the capability to perform the specified functionality.  Many of the line items contained only brief descriptions of the requested functionality—sometimes using just one word to describe SRFECC's desired functionality.  In responding, New World followed a commercially reasonable process to address the functional line items in context and consistent with industry practices.  New World used that framework to provide accurate information regarding whether its CAD system complied with the stated requirements.  New World also provided demonstrations of the system's functionality to SRFECC during the procurement process.  As the Agreement specifies, where New World provided a response of "Fully Comply," New World was committing that the functionality would be met by a combination of New World's existing CAD software, custom programming, and/or future enhancements.

/ / /

1

1    During the implementation, Tyler (having acquired New World) worked with SRFECC to

2  "build" the CAD system in SRFECC's environment.  It was only then that either party came to

3  understand that, as to a small subset of the thousands of functional line items, New World and

4  SRFECC had interpreted and understood a given functional description differently.  Tyler spent

5  extensive time addressing SRFECC's differing interpretations of the line items at issue, trying to

6  educate the agency on industry standards and providing reasonable alternatives to satisfy SRFECC's

7  unique preferences.  While Tyler's efforts with SRFECC may have exceeded normal client demands,

8  the need to reconcile differing interpretations of certain functional descriptions is not unusual in

9  implementations of this nature.

10    SRFECC refused to reciprocate Tyler's good faith efforts at cooperation, preventing the

11  parties from bringing SRFECC live on a robust CAD system that has been deployed at hundreds of

12  similar agencies across the country.  Instead, SRFECC insisted on enhancements and development

13  work that were outside of the Agreement.  SRFECC also remained rigidly adherent to its

14  interpretation of the RFP's requirements, even where that interpretation was inconsistent with

15  industry standards and not specifically stated in the RFP.  And, SRFECC began to put form over

16  substance in connection with the CAD system, focusing on issues such as font size rather than

17  overall system integrity and an ability to timely dispatch emergency services.

18    Notwithstanding the Complaint's gratuitous assertions about public safety,[1] SRFECC has

19  abandoned what had previously been framed as a software warranty claim,[2] and now asserts that

20  Tyler has committed fraud.  It is no coincidence that this transformation occurred only when

21  SRFECC realized the Agreement does not allow for it to receive a full refund based on its decision

22  to walk away from the project.  Regardless, this is not a fraud case.  New World's good faith

23  responses to the RFP cannot be false statements that give rise to a fraud claim.  If, in fact, certain

24  functionality is not available and cannot or will not be made available via an enhancements or

25  custom development, SRFECC has appropriate remedies in the Agreement.  The allegations of fraud

---

26  [1]    These gratuitous assertions are contradicted by other public statements made by SRFECC about the safety and
27  reliability of its current system.  As a result, Tyler requests, as detailed further below, that the Court strike the allegations
relating to the alleged public safety concern as inflammatory and unnecessary in the context of this case.

28  [2]    *See* Complaint Exhibit 8 (March 9, 2018 letter asserting breach of warranty claim).

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND MOTION TO STRIKE

1  and request for treble damages and penalties are efforts to coerce Tyler into refunding the full

2  contract amounts.

3  This tactic cannot survive legal scrutiny.  SRFECC's fraud allegations do not withstand

4  Federal Rule of Civil Procedure 9(b) and must be dismissed.  Moreover, SRFECC has failed to

5  adequately allege its other causes of action and dismissal under Federal Rule of Civil Procedure

6  12(b)(6) is also warranted.

7  ## FACTUAL BACKGROUND

8  SRFECC is responsible for fire and emergency dispatch services for the cities of Sacramento

9  and Folsom and various fire protection districts in the surrounding area.  Tyler is the largest software

10  company in the nation that focuses solely on providing integrated software and technology services

11  to the public sector.  Tyler's Public Safety division has implemented CAD systems for hundreds of

12  public entities, including various counties in and around Northern California.  On November 16,

13  2015, ten days after the Agreement was fully executed, Tyler acquired New World and succeeded to

14  the rights and obligations contained in various New World contracts, including the Agreement.

15  **A.    The Request For Proposal**

16  On March 18, 2014, SRFECC issued the RFP for a new CAD system.[3]  On May 16, 2014,

17  according to SRFECC, New World submitted its RFP response (the "RFP Response").[4]  The RFP

18  contained over 2000 line items of desired functionality and requested that New World specify

19  whether its proposed CAD system complied with the listed requirements.[5]  Many line items in the

20  RFP provided only very brief descriptions of the desired functionality, often using undefined terms

21  and sometimes employing only one word descriptions.[6]  New World exercised commercially

23  [3]    Complaint at ¶¶3, 19.

24  [4]    Complaint at ¶¶ 56, 59.  Despite attaching almost 200 pages of other exhibits, SRFECC's Complaint does not include a copy of either the RFP or the RFP Response, even though SRFECC's entire Complaint is predicated on allegedly false statements supposedly made in the RFP Response.  Instead, SRFECC has included two documents: (1) a December 2017 reconciliation report that purports to list the RFP items that are still being worked out and includes a number of comments between Tyler and SRFECC regarding the status of those line items; and (2) a chart prepared by SRFECC's attorneys that references the specific line items (by number only) of the RFP that SRFECC contends were "failed RFP items."  Complaint Exhibits 6 and 7.

27  [5]    *See* Complaint Exhibit 6 at p. 172.

28  [6]    *See, e.g.,* Complaint Exhibit 6 at p. 113 ("Fonts") and p. 123 ("Intersections").

3

1   reasonable efforts to respond to each line item of the RFP based on the information provided and

2   well-known industry standards.  In addition, during the procurement process, New World provided

3   specific demonstrations of the system and its functionality and facilitated visits by SRFECC to other

4   New World customer sites.

5   **B.    The Agreement**

6           Upon completion of the in-depth procurement process, SRFECC selected New World as the

7   winning bidder and, on November 6, 2015, SRFECC and New World entered into the Agreement.

8   The Agreement provided for a software license to the CAD system, along with related services for

9   its implementation, maintenance and support.[7]   The Agreement contained an express software

10  warranty that "items coded 'Fully Compliant' in New World's Response to Customer's RFP will be

11  met as described in Exhibit N."[8]  Exhibit N to the Agreement provided:

12          All items coded "Fully Complaint" (as qualified) in the New World Detail
            Response to Customer's RFP Questionnaire will be provided to Customer through
13          currently **existing Exhibit A software capabilities**, Customer's use of 3rd Party
            software, **custom programming** provided by New World **and/or future**
14          **enhancements** to Exhibit A software provided under Exhibit C.[9]

15

16          The only other warranties in the Agreement were that the "Licensed Products will perform as

17  specified in the user manuals based on the then-current release of the Licensed Software" and that

18  Tyler possesses the necessary intellectual property rights to license the software.[10]   Otherwise, the

19  Agreement "expressly disclaims any express or implied warranties."[11]   The Agreement provides

20  that, to the extent SRFECC contends that there has been a breach of warranty, New World will

21  [7]        *See generally* Complaint Exhibit 2 (Agreement).

22  [8]        Complaint Exhibit 2 at p. 28 (Agreement Section 6.3),

23  [9]        Complaint Exhibit 2 at p. 86 (Agreement, Exhibit N) (emphasis added).  SRFECC's Complaint cites a different
    definition of "Fully Compliant," which SRFECC contends can be found in the RFP (which is not attached to or
    incorporated into the Complaint).  Complaint at ¶ 55.  However, once the Agreement was executed, the Agreement,
24  including its definition of "Fully Compliant," expressly superseded the RFP Response.  *See* Complaint Exhibit 2 at p. 38
    (Agreement Section 19.1) ("This Agreement is the entire agreement between the parties and supersedes all other
25  communications, written or oral, between the parties relating to the subject matter of this Agreement."); *see also*
    Complaint Exhibit 2 at p. 86 (Agreement, Exhibit N) ("If the terms and conditions of the New World Detail Response to
26  the specifications of the RFP and this Agreement are in conflict, the governing terms and conditions shall be this
    Agreement.").

27  [10]       Complaint Exhibit 2 at pp. 28-29 (Agreement Section 6).

28  [11]       Complaint Exhibit 2 at p. 29 (Agreement Section 6.6).

4

"correct the defect so that it conforms to the warranties" and, only if New World is not able to do so, can SRFECC pursue actual damages for breach of a specific warranty item.[12]  New World's liability pursuant to the Agreement is limited, and SRFECC is contractually prohibited from recovering, under any legal theory, "special, incidental, consequential, or punitive damages, including lost profits."[13]  Although SRFECC has the right to terminate the Agreement, the termination provisions do not provide for a refund of amounts previously paid other than as provided for in the warranty provisions.[14]

As the Agreement recognizes, the process of implementing a CAD system for an entity like SRFECC, which services multiple districts, is complex and challenging.  Thus, while the Agreement acknowledges that "time is of the essence,"[15] the **Agreement does not actually provide a date certain by which the implementation of the CAD system will be completed**.  Instead, Exhibit D to the Agreement provides only a "sample Project Plan."[16]  The Agreement goes on to state that:

> The sample Project Plan dates are calculated based on generic assumptions about typical time frames for completing the tasks included in the plan.  **The actual project Schedule could differ significantly from the Sample Plan**.  The dates included in the sample Project Plan are for illustrative purposes only.

> An actual project plan with the appropriate tasks and schedule will be determined upon contract signing and more detailed discussions about the project can take place between Customer and [Tyler] staff.  **The availability of Customer resources to perform tasks, final determination of the overall task list, Customer scheduled constraints** (seasonal peak workloads, vacations, holidays, commitments of resources needed to support local events, etc.) **and the actual project start date must be determined**.  A typical implementation project of this size and scope usually spans 18-24 months from contract signing through go live.  **Based on unique Customer circumstances and/or Customer resources constraints, the actual project schedule could differ significantly**.[17]

/ / /

---

[12]    Complaint Exhibit 2 at p. 33 (Agreement Section 11.1).

[13]    Complaint Exhibit 2 at pp. 33-34 (Agreement Sections 11.2 and 11.3).

[14]    Complaint Exhibit 2 at p. 35 (Agreement Section 16.1).

[15]    Complaint Exhibit 2 at p. 25 (Agreement Section 1.3); Complaint at ¶ 24.

[16]    Complaint Exhibit 2 at p. 62 (Agreement, Exhibit D).  Again, although the other portions of the Agreement were included, SRFECC failed to attach the "sample Project Plan" referenced in Exhibit D.

[17]    *Id.* (emphasis added).

1   Thus, the Agreement contemplated a timeline that would be the subject of an ongoing discussion

2   between the parties and might be impacted by circumstances outside New World's control.

3   **C.     The Implementation**

4          Following its acquisition of New World, Tyler delivered software, services and invoices in

5   accordance with the terms of the Agreement.   In 2017, as the parties were engaged in

6   implementation activities, it became apparent to Tyler that SRFECC had expectations for the CAD

7   system that went beyond industry standards and exceeded the requirements of both the RFP and the

8   Agreement.   Despite multiple meetings between the project teams, SRFECC began to take the

9   categorical position that numerous RFP items were "Fails."[18]   Tyler disagreed with SRFECC's

10  assertions.

11         In yet another attempt to educate SRFECC on the scope of the Agreement and the options for

12  the project, in late 2017, Tyler gave a presentation that was designed for the SRFECC project team's

13  review.[19]   In this presentation, Tyler did not, as SRFECC's Complaint contends, agree that there

14  were 239 "Fail" items.[20]   Indeed, the exhibits to the Complaint undeniably establish that the parties

15  had not reached agreement on the alleged "Fail" items, and certainly had not "agreed-upon" a total

16  of 239.[21]   In multiple meetings, Tyler made its position clear that SRFECC's expectations were

17  inconsistent with industry standards and were not required by the Agreement.[22]   Nonetheless, Tyler

18  remained ready, willing and able to implement a state-of-the-art CAD system in accordance with the

19  Agreement.  SRFECC refused to move forward with Tyler at all, scrapping years of work.

20  / / /

21  / / /

22

23  [18]        Complaint at ¶ 29.

24  [19]        *See* Complaint Exhibit 5.

    [20]        Complaint Exhibit 5 at pp. 96-110.

25
    [21]        On its face, the Tyler presentation (Complaint Exhibit 5) references only 161 items and lists only 34 of those

26  items as "Fails," as SRFECC was using that term and for purposes of the exercise SRFECC was requiring.  *Id.* at p. 98.
    The December 2017 reconciliation (Complaint Exhibit 6) also references 34 as agreed (*Id.* at p. 172), while SRFECC's

27  Notice of Breach of Warranty (Complaint Exhibit 8) puts the number of alleged agreed "Fails" at 29.  *Id.* at p. 183.

    [22]        As noted, the Agreement expressly supersedes prior written communications, including the RFP.  Complaint

28  Exhibit 2 at pp. 38, 86 (Agreement Section 19.1, Exhibit N).

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND MOTION TO STRIKE

1    **D.      The Notice of Breach and Complaint**

2          On March 19, 2018, SRFECC's counsel sent Tyler a "Notice of Breach of Warranty" relying

3    on Sections 6.3 and 11.1 of the Agreement regarding software warranties and defects.[23]   SRFECC

4    rebuffed Tyler's multiple offers to address SRFECC's areas of dissatisfaction, implement solutions

5    consistent with the Agreement, and move toward go-live of a compliant CAD system.  On June 22,

6    2018, SRFECC filed this lawsuit.

7          Contrary to the position taken in its March 2018 notice letter, SRFECC's Complaint failed to

8    invoke the software warranty provisions and did not request actual damages related any specific

9    software warranty items, as contemplated by the Agreement.   Instead, SRFECC claimed an

10   undefined breach of contract and asserted fraud and False Claims Act claims, suggesting that New

11   World had lied to SRFECC regarding the functionality of the system in its RFP Response.

12   SRFECC's Complaint alleges no factual support for this scurrilous allegation.  SRFECC offers only

13   the bald conclusion that the alleged failure to provide the functionality SRFECC claims it contracted

14   for (a claim that Tyler adamantly disputes) establishes fraudulent intent.  This conclusory allegation

15   is not sufficient.

16         Moreover, SRFECC's Complaint suggests that Tyler has created a "dangerous and imminent

17   public safety problem."[24]   Tyler was and is, however, committed to providing the citizens of

18   Sacramento and surrounding areas with a state-of-the-art CAD system for emergency services, as set

19   forth in the Agreement.  The decision not to proceed to go live was entirely SRFECC's, and, by its

20   own admission, was based on its unilateral and unyielding assessment of software functionality such

21   as font size, software "bugs" that were to be fixed before go-live, or functionality that had not even

22   been the subject of testing at the time SRFECC chose to abandon the project.  The suggestion that

23   Tyler has created a threat to public safety is unfair and unfounded.

24                         **ARGUMENT AND AUTHORITIES**

25         SRFECC's Complaint asserts four causes of action: (1) Breach of Contract; (2) California

26   Statutory Unfair Competition (CAL. BUS. & PROF. CODE §§ 17200 *et seq.*) ("Statutory Unfair

27   ───────────────────────────────
     [23]      Complaint Exhibit 8 at pp. 181-85.

28   [24]      Complaint at ¶ 11.

                                        7

Competition"); (3) Fraud; and (4) California False Claims Act (CAL. GOV'T CODE §§ 12650, *et seq.*) ("False Claims Act").  SRFECC's Complaint fails to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for at least the following reasons:  (1) SRFECC has not alleged fraud with sufficient specificity to satisfy FRCP 9(b), which requires dismissal of its Fraud, False Claims Act and Statutory Unfair Competition claims; (2) SRFECC has failed to adequately plead its False Claims Act claim for various other reasons; (3) SRFECC's Statutory Unfair Competition claim fails in multiple additional respects; and (4) SRFECC has not adequately alleged a breach of contract.

**A.**    **SRFECC Has Not Alleged Fraud With Specificity**

Claims for fraud, violations of the False Claims Act, and Statutory Unfair Competition must each meet the requirements of Federal Rule of Civil Procedure 9(b) by pleading the elements of fraud with specificity.  *See U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (finding that, to the extent they are based on allegations of fraud, Statutory Unfair Competition claims are subject to the requirements of Rule 9(b)).

"[W]hen averments of fraud are made, the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations and citations omitted).  Rule 9(b) also serves "to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir.1996).

Allegations of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106.  For a complaint to satisfy the heightened pleading requirements of Rule 9(b), a "plaintiff must set forth more than the neutral facts necessary to identify the transaction. **The plaintiff must set forth what is false or misleading about a statement, and why it is false.**" *Id.* (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)

8

(emphasis added)); *see also Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citing *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir.2010)). Conclusory statements do not suffice as factual allegations "if those conclusions cannot reasonably be drawn from the facts alleged." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

Here, SRFECC's allegations of fraud fail to meet the heightened pleading standard because SRFECC has failed to identify what is allegedly false and why it is false. It is not sufficient for SRFECC to make only the conclusory assertion that the 172 RFP line items listed on Exhibit 7 were misrepresented to "Fully Comply." SRFECC must allege what, specifically, was false about New World's response of "Fully Comply" on each specific line item. To do so, in this context, SRFECC is obligated to plead precisely what it contends each line item meant and why a response of "Fully Comply" was false, *i.e.*, how New World's response was not fully compliant. SRFECC must do this in the context of the Agreement's definition of what an RFP response of "Fully Comply" meant, *i.e.*, that the system would deliver the desired functionality either through existing software, custom development, or future enhancements.[25] SRFECC makes no attempt to explain why ongoing development efforts or future enhancements would not make New World's RFP responses fully accurate.

Moreover, as noted, the Complaint Exhibits themselves indicate disagreement regarding the meaning and interpretation of many of the line items and whether the CAD system provided the specified functionality.[26] Tyler and SRFECC disagreed regarding the whether most of the 172 line items that are the subject of SRFECC's Complaint were actually compliant or not.[27] Put simply, SRFECC's fraud-based claims fail because they have not even attempted to explain what was false in the context of any specific RFP response, why it was false or how it was intentionally false.

---

[25]      Complaint Exhibit 2 at p. 86 (Agreement, Exhibit N).

[26]      *See generally* Complaint Exhibit 5 at pp. 96-110 (summarizing Tyler's position regarding whether various items were compliant); Complaint Exhibit 6 at pp. 111-72 (December 2017 reconciliation with significant discussion evidencing parties disagreement on what specific lines items meant); Complaint Exhibit 6 at p. 172 (summarizing the parties' disagreement on how to categorize various line items); Complaint Exhibit 8 at pp. 181-85 (summarizing the parties' disagreements regarding how to characterize line items).

[27]      *Id.*

9

1    The Complaint Exhibits contain a number of good examples to illustrate why SRFECC's

2    Complaint is deficient.  The alleged RFP response to line item number 190 on the December 2017

3    reconciliation is one such example.[28]  According to the December 2017 reconciliation, SRFECC's

4    requirement reads "Fonts," and New World responded "Fully Comply."  There is no context, much

5    less explanation from SRFECC, given for the term "Fonts" and certainly not sufficient information

6    to conclude that the response of "Fully Comply" was an intentionally fraudulent statement.  The

7    term "Fonts" could (and, apparently, did) mean different things to each party at the time of New

8    World's response.  Nowhere in the Complaint does SRFECC attempt to identify why or how the

9    response given was false, much less knowingly so.  Indeed, the December 2017 reconciliation

10   confirms that, once the parties got into the software implementation, it became clear that SRFECC's

11   interpretation of what type of font adjustments it wanted was different than New World's and

12   Tyler's.[29]  It is also clear that as of December 2017, Tyler was still attempting to resolve this issue

13   for SRFECC.[30]  In order to sufficiently plead a false statement, SRFECC must state what it believes

14   the term "Fonts" referred to in the RFP and how New World's response of "Fully Comply" was

15   intentionally false, *i.e.*, how did the system fail to comply with SRFECC's alleged functionality

16   requirement.

17       A number of similar line items on the December 2017 reconciliation are evidence of the

18   same problem:

19   - Line item 716 on the December 2017 reconciliation says "Intersections."[31]
       The December 2017 reconciliation indicates that the "Intersections are
20     working" with two exceptions and notes that more testing was necessary
       on those.[32]  These facts fall far short of supporting SRFECC's unilateral
21     conclusion that the original statement of "Fully Comply" was false when it
       was made.

22

23   - Line 2586 on the December 2017 reconciliation states that "Alert shall
       immediately wake up a monitor in standby mode and display call

24   ────────────────────────────────────────

25   [28]     *See* Complaint Exhibit 6 at p. 113 (including line number 190 in the project December 2017 reconciliation of open items); p. 177 (identifying line 190 as an item that was false).

26   [29]     *See* Complaint Exhibit 6 at p. 113 ("columns font can make bigger, but not title of the page/lists").

27   [30]     *Id.* ("Schedule a follow up discussion on this to determine what can/should be changed.")

28   [31]     Complaint Exhibit 6 at p. 123.

     [32]     *Id.*

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND MOTION TO STRIKE

information automatically."[33]    As the December 2017 reconciliation makes clear, there was not a meeting of the minds about what the terms "wake up" and "standby mode" meant.[34]    It is impossible to sufficiently allege a false statement based on a good faith response by New World in 2014 when SRFECC did not take a position on what specifically it meant by "standby mode" until 2017.[35]

- Another example where there is no false statement on the face of the Complaint is line item 707 on the December 2017 reconciliation.  That line requested certain functionality regarding the numeric addresses entered into the CAD system.  Tyler responded "Fully Comply."  As the December 2017 reconciliation notes, this capability was "in the works as an enhancement."  No false statement occurred and SRFECC has failed to adequately allege one.

- SRFECC also alleges fraud based on New World's response to functional requirements that are stated as a request that New World "explain their system's ability" to do certain things.[36]  By responding "Fully Comply," New World acknowledged that it could explain how their CAD system addresses the issue.  SRFECC has made no effort to explain how and why this response could possibly constitute an intentionally fraudulent statement.

- In addition, over 50 of the 172 line items that SRFECC complaints about are warranty items that Tyler identified as "bugs" in the software that Tyler committed to fix prior to system go live.[37]  SRFECC has not and cannot allege a false statement was made in 2014 regarding line items that were designed as RFP-compliant, did not work as designed during the initial phase of SRFECC's implementation, and were in the process of being fixed by Tyler when SRFECC terminated the Agreement.

Put simply, SRFECC has not and cannot plead with specificity false statements in the RFP Response.  Instead, SRFECC can assert at most a good-faith difference of interpretation about what the RFP's "description" conveyed and what would comply with a given functional line item.

Moreover, even if SRFECC could identify a response in the RFP was simply wrong, that still would not be enough to allege **intentional** fraud.  As the Ninth Circuit has stated:

---

[33]    Complaint Exhibit 6 at p. 160.

[34]    *Id.* (questioning how "waking" and "standby mode" were intended to be defined).

[35]    *Id.* (further defining "standby mode" as "sleep mode").

[36]    *See, e.g.*, Complaint Exhibit 6 at p. 137, line 1287.

[37]    Complaint Exhibit 7 at p. 117-19, line items 120-172; *see also* Complaint Exhibit 6 at p. 172 (identifying 54 items as "warranty" items); Complaint Exhibit 5 at p. 98 (identifying 41 warranty items that were "not working as designed, and will be resolved in future release").

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE

> The requisite intent is the **knowing presentation of what is known to be false, as opposed to innocent mistake or mere negligence**.  Bad math is no fraud, proof of mistakes is not evidence that one is a cheat, and the common failings of engineers and other scientists are not culpable under the [False Claims Act].  The statutory phrase known to be false does not mean scientifically untrue; **it means a lie.**

*Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1478-79 (9th Cir. 1996) (internal quotations and citations omitted, emphasis added); *see also Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996); *Hindo v. University of Health Sciences/The Chicago Medical School*, 65 F.3d 608, 613 (7th Cir. 1995).  If errors existed in the RFP Response—and SRFECC has not identified any such errors, it has only offered conclusory opinions and interpretations—those errors alone are not sufficient to support a fraud claim.  SRFECC is obligated, when alleging fraud, to provide facts beyond mere errors or negligence to support the allegation that a knowingly false statement was made.

In addition, SRFECC's allegation that Tyler "knew, at the time it submitted its bid, that it could not timely deliver" a system that "included all of the items it had marked 'Fully Comply' in its RFP Response within an 18 to 24-month period" cannot give rise to a fraud claim.[38]  First, as noted, the Agreement does not actually agree to a specific contract completion date or even to the 18 to 24-month period referenced in SRFECC's Complaint.  Instead, the Agreement expressly states:

> A typical implementation project of this size and scope usually spans 18-24 months from contract signing through go live.  **Based on unique Customer circumstances and/or Customer resources constraints, the actual project schedule could differ significantly**.[39]

Second, there is no basis to look to alleged post-Agreement results or statements in an effort to prove falsity.  A "mere failure to perform on a contract does not constitute fraud." *Richardson v. Reliance Nat'l Indemnity Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *4 (N.D. Cal. March 9, 2000) (citing *Rhenigans v. Smith*, 161 Cal. 362, 366 (1911).  SRFECC cannot even allege a failure to perform, much less transform such a hypothetical failure into the basis for its fraud-based claims.

/ / /

---

[38]     Complaint at ¶ 58.

[39]     Complaint Exhibit 2 at p. 62 (Agreement, Exhibit D).  SRFECC's Complaint does not allege any basis for an agreement on the "timing" of the implementation beyond that expressed in Exhibit D to the Agreement.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE

Indeed, in *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153-54 (S.D. Cal. 2001), the Court rejected an effort to use "the alleged breach of contract" as "evidence that [defendant] never intended to honor the contract, thereby committing fraud."  As the court noted:

> Such an assumption is unwarranted because it contradicts the heightened pleading requirements of Rule 9(b) and would allow "every breach of contract [to] support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise."

*Smith*, 160 F. Supp. 2d at 153-54 (citing *Richardson*, 2000 WL 284211, at *5).  This makes sense.  Were it otherwise, "anyone with a breach of contract claim [could allege] tort damages by alleging that the promises broken were never intended to be performed."  *Bankcard America v. Elliott*, No. 89-C-1246, 1994 WL 494843, at *4 (N. D. Ill. Sept. 8, 1994) (quoting *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)).

The vast majority of California courts are in accord with *Smith* and *Richardson*, and agree that "a failure to perform under a contract is insufficient evidence" of fraud.  *Arriaga v. Orgil Int'l Greenhouses Corp.*, No. 04-cv-0217-LAB, 2007 WL 2904055, at * 5 (S.D. Cal. Oct. 2, 2007); *see also Premiere Innovations, Inc. v. IWAS Indus.,* LLC, No. 07–cv–1083, 2007 WL 2873442 (S.D. Cal. Sept. 28, 2007), *Mat–Van, Inc. v. Sheldon Good & Co. Auctions*, No. 07–cv–912, 2007 WL 2206946 (S.D. Cal. July 27, 2007), *Celador Int'l, Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 856 (C.D. Cal. 2004); *Hsu v. Oz Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002); *Icasiano v. Allstate Ins. Co.*, 103 F. Supp. 2d 1187, 1191–92 (N.D. Cal. 2000); *Universal Studios Int'l B.V. v. Entertainment Television Network FZE*, CV 09-01348 GAF, 2009 WL 10675950, at *3 (N.D. Cal. Aug. 25, 2009).[40]

SRFECC's conclusory and unsupported allegations of fraud are simply insufficient to properly plead fraud with specificity, as required by Federal Rule 9(b).  As a result, this Court should

---

[40]    *But see Watts v. Allstate Indem. Co.*, No. S–08–1877, 2009 U.S. Dist. LEXIS 26618 (E.D. Cal. Mar. 31, 2009) and *Hands On Video Relay Servs., Inc. v. Am. Sign Language Servs. Corp.*, No. CIV S-090996 LDD/DAD, 2009 WL 8691614 (E.D. Cal. Aug. 12, 2009).  The same judge authored both decisions and, in doing so, parted ways with the vast majority of courts in California.  While that court recognized that Rule 9(b) requires allegations regarding what is false or misleading about a statement (*see, e.g. GlenFed*, 42 F.3d at 1548), it stopped short of requiring heightened pleading with respect to fraudulent *intent*, even in cases of promissory fraud.  These cases are in the minority and are distinguishable on their facts.  Even if these cases were to apply to this circumstance, SRFECC's Complaint falls short because if fails to allege what is false in any given New World RFP response and why it is false.

1  dismiss SRFECC's fraud-based claims, including common law fraud, Statutory Unfair Competition,

2  and False Claims Act.

3  **B.    SRFECC's Statutory Unfair Competition Claim Also Fails**

4          SRFECC's Statutory Unfair Competition claim fails in multiple other respects as well.  In

5  fact, SRFECC's claim looks nothing like a proper claim under California's Unfair Competition Law

6  ("UCL").  Cal. Bus. & Prof. Code § 17200 defines unfair competition as "any unlawful, unfair or

7  fraudulent business act or practice[.]"  "[The UCL] is written in the disjunctive, establishing 'three

8  varieties of unfair competition.'"  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035,

9  1043 (9th Cir. 2010).  SRFECC's Complaint fails to allege a business act or practice that falls within

10  any of the three categories of conduct that the UCL prohibits.[41]

11         First, because SRFECC's Complaint "alleges a unified course of fraudulent conduct,"

12  SRFECC's failure to satisfy Rule 9(b) is fatal to its entire Statutory Unfair Competition claim.  As

13  noted above, Rule 9(b) applies to allegations of "fraudulent" conduct under the UCL.  *See also*

14  *Kearns*, 567 F.3d at 1125.  There can be no doubt that SRFECC's claim fails to the extent it

15  specifically invokes the UCL's "fraudulent" conduct prohibition.  *See Sipe v. Countrywide Bank*,

16  690 F. Supp. 2d 1141, 1158–59 (E.D. Cal. 2010) ("[T]o the extent Plaintiff asserts a UCL claim that

17  is based on or grounded in fraud, it must meet the requirements of Rule 9(b)").  However, a claim

18  that "alleges a unified course of fraudulent conduct" must satisfy Rule 9(b) "as a ***whole***."  *Kearns*,

19  567 F.3d at 1127 (citing *Vess*, 317 F.3d at 1102 (emphasis added)).  In *Kearns*, the Ninth Circuit

20  affirmed dismissal of a plaintiff's "entire complaint" because it "allege[d] a unified course of

21  fraudulent conduct" in which the defendants "knowingly misrepresented [certain facts] to the public

22  . . . with an intent to induce reliance and defraud consumers."  *Id.*  There, despite recognizing that

23  "[e]ach prong of the UCL is a separate and distinct theory of liability . . . offer[ing] an independent

24  / / /

25

26  [41]      It is especially telling that SRFECC's claim does not identify any particular conduct as independently unlawful,
unfair, *or* fraudulent.  Instead, SRFECC merely incorporates the rest of its pleadings and vaguely alleges that Tyler
27  "fail[ed] to fulfill [its] contractual agreements," wrongfully asserted that it was "capable of performing [its] obligations .
. . in a timely manner[,]" and gave "greater consideration to [its] own interests than to those of SRFECC and the
28  public[.]"  Complaint at ¶¶ 49, 51.

14

1  basis for relief" the Court expressly rejected the plaintiff's invitation to "evaluate his complaint

2  under the unfairness prong of the UCL[.]"  *Id.*

3          Because SRFECC's Statutory Unfair Competition claim—like the rest of its Complaint—

4  focuses on an alleged course of fraudulent conduct, the entire claim fails under Rule 9(b) regardless

5  of which UCL prong applies.

6          Second, even if parts of SRFECC's Complaint survive Rule 9(b), SRFECC nonetheless fails

7  to state a claim under the UCL's unlawfulness prong.  The only potential violation of any law

8  alleged by SRFECC's claim is Tyler's supposed breach of contract.[42]  "A breach of contract may

9  form the predicate for a section 17200 claim, **provided it also constitutes conduct that is unlawful,**

10 **or unfair, or fraudulent.**"  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir.

11 2008) (emphasis added) (citation omitted).  However, the failure to plead "that the breaches of

12 contract are independently unlawful, unfair, or fraudulent" defeats such a claim.  *Id.*  *See also*

13 *Shroyer*, 622 F.3d at 1044 ("In other words, a common law violation such as breach of contract is

14 insufficient . . . . Because [plaintiff] does not go beyond alleging a violation of common law, he fails

15 to state a claim under the unlawful prong of § 17200.").  And, as with Rule 9(b), a conclusory

16 allegation of unlawful, unfair or fraudulent conduct is not sufficient.  *Pena v. McArthur*, 889 F.

17 Supp. 403, 407-08 (E.D. Cal. 1994) (a "complaint's mere allegation that defendants had engaged in

18 certain unlawful practices in the past and may do so in the future was not enough to state a cause of

19 action under § 17200.").  Here, there is no basis to suggest that any alleged breach of contract by

20 Tyler also constituted an independently unlawful act.  SRFECC cannot properly assert such a claim.

21         Finally, SRFECC's Complaint also fails to state a claim under the UCL's unfairness prong.

22 "[T]he proper definition of 'unfair' conduct against consumers 'is currently in flux' among

23 California courts."  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).  One of

24 two prevailing tests might apply:  (1) "'unfair' conduct occurs when that practice 'offends an

25 established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or

---

26

[42]      SRFECC's UCL claim does not incorporate or refer to its False Claims Act claim, which follows its UCL claim.
27 *See* Complaint at ¶¶ 49 (only incorporating "paragraphs 1 through 48").  However, to the extent SRFECC's False Claims
   Act claim somehow underlies its UCL claim, the UCL claim fails because the predicate False Claims Act claim fails as
28 detailed above.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND MOTION TO STRIKE

1  substantially injurious to consumers'"; and (2) "'unfair' means 'conduct that threatens an incipient

2  violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects

3  are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

4  competition[,]' such that "any finding of unfairness to competitors under section 17200 be tethered

5  to some legislatively declared policy or proof of some actual or threatened impact on competition."

6  *Id*. at 1169–70.  Regardless of which test applies, SRFECC fails to state a claim for unfairness

7  because it has "neither alleged that [Tyler's] actions violated a public policy, nor . . . tethered [its]

8  claim of unfairness to a constitutional or statutory provision or regulation carrying out such a

9  statutory policy[.]"  *Krouse v. BAC Home Loans Servicing, LP*, No. 2:10-CV-03309-MCE-EF, 2011

10  WL 2367093, at *6 (E.D. Cal. June 9, 2011); *see Davis*, 691 F.3d at 1170 ("[Plaintiff] fails to state a

11  claim under either definition . . . . [W]e will affirm a judgment of dismissal where the complaint fails

12  to allege facts showing that a business practice is unfair." (citing *Bardin v. Daimlerchrysler Corp.*,

13  136 Cal. App. 4th 1255, 39 Cal. Rptr. 3d 634, 644 (2006)).  Under these circumstances, SRFECC

14  cannot make any allegation of an independent violation of public policy.  SRFECC's UCL claim is

15  simply not proper or applicable in this circumstance.

16  **C.      SRFECC's False Claims Act Claim Fails for Various Other Reasons**

17      Even if SRFECC had met the heightened Rule 9(b) pleading standards (it has not),

18  SRFECC's False Claims Act claim fails for a variety of other reasons as well.  First, liability under

19  the False Claims Act is subject to an additional "judicially-imposed requirement that the false

20  statement of claim be material."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785

21  (4th Cir. 1999); *see also United State v. Bourseau*, 531 F.3d 1159, 1171 (9th Cir. 2008) (noting that

22  the FCA requires a false statement "that was material to the decision-making process").

23      Here, SRFECC has failed entirely to allege materiality.  At most, Tyler agreed, for the

24  purposes discussions with SRFECC regarding how to proceed with implementation, that 34 line

25  items in the RFP were "Fails".[43]  Nowhere in the Complaint does SRFECC attempt to explain how

26  the alleged "Fail" of 34 items—less than 1.1% of the over 2000 RFP line items—could be

---

[43]      Tyler disputes that even these allegedly admitted "Fails" were breaches of the Agreement or knowingly false statements.

16

1    considered material.  Nor does SRFECC attempt to explain how any of the allegedly "Failed" items

2    are independently or collectively material.  For example, SRFECC has given no explanation for how

3    SRFECC's interpretation of the "Font" requirement was material to a contract intended to permit

4    safe and efficient dispatch of emergency services to individuals in and around Sacramento.

5        Second, neither SRFECC nor its counsel has standing under the False Claims Act.  SRFECC

6    lacks standing because the False Claims Act is limited to false claims issued to the state or a political

7    subdivision.  CAL. GOV'T. CODE §§ 12650(b)(1), 12651.  On the face of the statute, "'[p]olitical

8    subdivision' includes any city, city and county, county, tax or assessment district, or other legally

9    authorized local governmental entity with jurisdictional boundaries."  CAL. GOV'T. CODE §

10    12650(b)(6).  Here, SRFECC is a joint powers authority created to provide communication and

11    dispatch services to any member agency.[44]  SRFECC is not a political subdivision with

12    "jurisdictional boundaries."  A public agency that provides public safety services may join the

13    SRFECC with approval and payment of an entry fee and annual contribution.[45]  In addition to

14    member agencies, SRFECC may also provide services to other contracting entities.[46]  Based on the

15    plain language of the statute, SRFECC does not have standing to bring the claim.

16        SRFECC's counsel also lacks standing to prosecute this action.  California Government Code

17    section 12652 limits standing to file a claim pursuant to the False Claims Act to three prosecutors:

18    (1) the Attorney General, (2) a "qui tam" plaintiff, and (3) a prosecuting authority.  SRFECC's

19    counsel is not the Attorney General and SRFECC did not file this action as a "qui tam" plaintiff.

20    SRFECC's counsel also does not qualify as a "prosecuting authority."  A "'[p]rosecuting authority'

21    refers to the county counsel, city attorney, or **other local government official** charged with

22    investigating, filing, and conducting civil legal proceedings on behalf of, or in the name of, a

23    particular political subdivision."  CAL. GOV'T. CODE § 12650(b)(8).

24        Plaintiff alleges that "[t]he SRFECC has passed a resolution that formally endows its general

25    counsel, Kingsley Bogard LLP and Mr. Robert Kingsley, with prosecuting authority under the

---

44      Complaint Exhibit 1 at p. 3.

45      Complaint Exhibit 1 at p. 8.

46      *Id.* at pp. 3-4.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND MOTION TO STRIKE

1   California False Claims Act." This is yet another SRFECC effort at contortion to manipulate this

2   lawsuit into a platform for alleging fraud. SRFECC's private attorney is not a "local government

3   official" as required by the statute. Under a similar circumstance, at least one court has held that the

4   statutory requirements were not satisfied. *See Los Angeles Mem. Coliseum Comm. v. Insomniac,*

5   *Inc.*, 233 Cal. App. 4th 803, 822 (2015) ("because plaintiffs were not alleged to be among the

6   governmental persons or entities specifically authorized to bring suit under the False Claims Act,

7   plaintiffs lacked standing to prosecute a cause of action against defendants for violation of that

8   law."). Because counsel is not a "local government official," specific statutory authority is not

9   present here and the False Claims Act claim should be dismissed.

10  **D.**     **SRFECC Has Not Properly Plead A Breach of Contract**

11        SRFECC's Complaint also fails to adequately allege a specific breach of contract. In fact,

12   the word "breach" does not appear anywhere in the specific claim for relief.[47] SRFECC does not

13   point to any specific section of the Agreement that has allegedly been breached. Instead, SRFECC's

14   claim merely states that Tyler submitted invoices "despite having knowledge that it was not capable

15   of completing the Project in a timely manner."[48] Such an allegation does not state a breach claim,

16   and Tyler is genuinely left to guess how it breached the Agreement.

17        First, to the extent that "knowledge of not being capable of completing the Project in a timely

18   manner" is the alleged breach, SRFECC cannot identify a contract provision associated with such

19   allegation. Indeed, the Agreement does not contain a provision committing to a specific completion

20   date that could serve as the basis of a breach of contract claim. Instead, the Agreement provides:

21 
22        A typical implementation project of this size and scope usually spans 18-24
            months from contract signing through go live. **Based on unique Customer**
23            **circumstances and/or Customer resources constraints, the actual project**
            **schedule could differ significantly**.[49]

24        Second, although SRFECC originally presented this as a breach of software warranty

25   dispute,[50] SRFECC's Complaint does not assert any such breach. To the extent that SRFECC has a

26   [47]      Complaint at ¶¶ 36-48.

27   [48]      Complaint at ¶¶ 39-45.

   [49]      Complaint Exhibit 2 at p. 62 (Agreement, Exhibit D) (emphasis added).

28   [50]      *See* Complaint Exhibit 8 at pp. 180-85 (SRFECC's Notice of Breach of Warranty).

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND MOTION TO STRIKE

claim for breach of warranty, it would be governed by sections 6 and 11 of the Agreement and the limitation of liabilities and other provisions found therein. SRFECC has not asserted such a claim in its Complaint. Nor has SRFECC alleged that Tyler's submission of invoices to SRFECC for specific payments constituted a breach of the Agreement. SRFECC has not identified any provision of the Agreement that Tyler allegedly breach by submitting invoices (especially when those invoices were paid without dispute).

SRFECC's breach of contract claim is so deficiently plead that Tyler is forced to parse its vague language to guess which provision(s) of the Agreement SRFECC is basing its claim on.[51] Even giving SRFECC the benefit of the doubt, no allegation identifying the specific breach can be found in the Complaint. In short, SRFECC has not properly stated a breach of contract claim.

**E.    SRFECC's Allegations Regarding a Public Safety Threat Should Be Stricken**

Pursuant to Federal Rule of Civil Procedure 12(f), this Court may strike any portion of a pleading that is "redundant, immaterial, impertinent or scandalous matter." Here, SRFECC has alleged that New World's conduct in connection with the RFP has created a "dangerous and imminent public safety problem."[52] However, on June 26, 2018, just four days after suit was filed, SRFECC's interim executive director Joe Thuesen stated: "Since [Tyler's] current software does not provide the capabilities we contracted for and the company has refused to refund monies paid to date, our lawsuit seeks a refund and damages on behalf of our fire agency members and our local taxpayers. **In the meantime, our existing dispatch software can reliably meet our emergency dispatch needs while we restart the process to modernize this computer aided dispatch system**."[53]

/ / /

---

[51]    In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id.* at 555.

[52]    Complaint at ¶ 11.

[53]    S. Stanton, *Sacramento Bee* article dated July 26, 2018 available at https://www.sacbee.com/latest-news/article213796684.html (emphasis added). For this purpose, the Court can take judicial notice of the publicly-available article. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (holding that it is appropriate to take judicial notice of news articles on motion to dismiss);

19

1   Mr. Thuesen's statement is directly contrary to the allegations SRFECC has made to this

2   Court that a "dangerous and imminent public safety problem" exists.[54]   The allegations, which

3   include a suggestion that this contractual dispute presents a potential "life and death" situation for

4   citizens of Sacramento,[55] are both impertinent and scandalous.   The allegations appear to be

5   designed to paint Tyler as a villain, improperly damaging Tyler's business representation in an effort

6   to extort a refund and hoping to influence the Court to expedite this matter.   "A 'scandalous' matter

7   improperly casts a derogatory light on someone, usually a party."   *Wilkerson v. Butler*, 229 F.R.D.

8   166, 170 (E.D. Cal. 2005).   Scandalous allegations can be stricken if they "may cause the objecting

9   party prejudice."   *Id.*   The allegation that Tyler is putting lives at risk is scandalous and

10   unnecessarily prejudicial to Tyler.   "Impertinent matter consists of statements that do not pertain,

11   and are not necessary, to the issue in question."   *Whittlestone Inc. v. Handi-Craft Co.*, 618 F.3d 970,

12   974 (9th Cir. 2010).   The allegation that Tyler's conduct has created a public safety threat is

13   impertinent and unnecessary to the alleged breach of contract (and even the improper allegations of

14   fraud).   For these reasons, the Court should strike paragraph 11 and the last portion of Paragraph 53

15   of the Complaint[56] alleging any perceived "threat" to public safety.

16   <u>**CONCLUSION**</u>

17   WHEREFORE, Tyler respectfully requests, for the reasons articulated herein, that the Court

18   grant this motion and dismiss SRFECC's claims in this action, strike Paragraphs 11 and 53 of the

19   Complaint, and grant Tyler such other and further relief to which it may be entitled.

20   Dated:  July 31, 2018.                              **K&L GATES LLP**

21

22                                                      By:      /s/ Beth W. Petronio

23                                                               BETH W. PETRONIO *(admitted pro hac vice)*
                                                                 Attorneys for Defendant TYLER TECHNOLOGIES,
24                                                               INC.

25

26   ─────────────────
     [54]       Complaint at ¶ 11.

27   [55]       *Id.*

28   [56]       Specifically, the portion of Paragraph 53 to be stricken would include the language "and continue to create an
     imminent danger to the public, even death."

─────────────────
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND MOTION TO STRIKE

Dated:  July 31, 2018.                    **SEGAL & ASSOCIATES, PC**


                                  By:    /s/ Malcolm Segal_____
                                         MALCOLM SEGAL
                                         Attorneys for Defendant TYLER TECHNOLOGIES,
                                         INC.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
AND MOTION TO STRIKE