Beth W. Petronio *(admitted pro hac vice)*
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5815
Fax: (214) 939-5849
beth.petronio@klgates.com

Malcolm Segal (SBN 075481)
John T. Kinn (SBN 130270)
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com
jkinn@segal-pc.com

Attorneys for Defendant TYLER
TECHNOLOGIES, INC., a Delaware
Corporation F/K/A NEW WORLD SYSTEMS
CORPORATION, a Surrendered California
corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER, <br><br> Plaintiff, <br><br> vs. <br><br> TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California Corporation, <br><br> Defendant. | Case No.: 2:18-1792-KJM-KJN <br><br> **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION** <br><br> Date: September 19, 2018 <br> Time: 2:00 pm <br> Judge: Hon. Kimberly J. Mueller <br> Courtroom: 3 |

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................1

**FACTUAL BACKGROUND**..................................................................................2

A.    The Request For Proposal ........................................................................3

B.    The Agreement...........................................................................................4

C.    The Implementation ..................................................................................6

D.    The Notice Of Breach And Complaint .....................................................9

**ARGUMENT AND AUTHORITIES** .....................................................................10

A.    Summary Judgment Is Premature and
       Discovery is Required Under Rule 56(d).................................................10

B.    Fact Issues Also Preclude Summary Judgment .......................................11

       a.   SRFECC Cannot Prevail On Its Breach of Contract Claim.............11

            i.    The Agreement Did Not Require Performance
                  By November 6, 2017 ..........................................................12

            ii.   Material Disputes Exists Regarding The
                  Technical Requirements........................................................14

                  1.   The Interpretation Of The Technical Items Is Disputed ...............14

                  2.   Whether Tyler Complied With The Agreement
                       Is Also Disputed..........................................................16

                  3.   SRFECC Improperly Ignores the Warranty Provisions.................17

       b.   Summary Judgment Must Be Denied On The False
            Statement Element Of SRFECC's Fraud Claims..................................18

**CONCLUSION** ....................................................................................................20

DEFENDANT'S MEMORANDUM OF IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................ 11

*Bear Brand Hosiery Co. v. Tights, Inc.*,
    605 F.2d 723 (4th Cir. 1979) ......................................................................................... 16

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*,
    323 F.3d 767 (9th Cir. 2003) .................................................................................... 10, 11

*Castaneda v. Dura-Vent Corp.*,
    648 F.2d 612 (9th Cir. 1981) ......................................................................................... 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................ 10, 11, 15

*Cisneros v. Neubarth*,
    No. 1:11-cv-01297-LJO, 2013 WL 3992120 (E.D. Cal. Aug. 2, 2013) ......................... 10

*Hagood v. Sonoma Cty. Water Agency*,
    81 F.3d 1465 (9th Cir. 1996) .................................................................................... 18, 19

*Moore v. Hubbard*,
    No. CIVS-06-2187-FCD, 2009 WL 688897 (E.D. Cal. Mar.13, 2009) ......................... 10

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*,
    701 F.2d 95 (9th Cir. 1983) ........................................................................................... 16

*Singleton v. Hedgepath*,
    No. 1:08-cv-00095-AWI, 2010 WL 4630801 (E.D. Cal. Nov. 8, 2010) ........................ 10

*Tatum v. City and Cty. of San Francisco*,
    441 F.3d 1090 (9th Cir. 2006) ....................................................................................... 10

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) ................................................................... 15

*U.S. ex rel. Dick v. Long Island Lighting Co.*,
    912 F.2d 13 (2nd Cir. 1990) ........................................................................................... 18

*U.S. ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
    No. CV 14-088850-JFW, 2017 WL 8793222 (C.D. Cal. Dec. 29, 2017) ...................... 18

*Wang v. FMC Corp.*,
    975 F.2d 1412 (9th Cir. 1992) ....................................................................................... 18

**Other Authorities**

FED. R. CIV. P. 56(a) ................................................................................................ 11

FED. R. CIV. P. 56(d) ............................................................................................... 10

FED. R. CIV. P. 56(e) ................................................................................................ 11

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

## INTRODUCTION

Plaintiff Sacramento Regional Public Safety Communications Center d/b/a Sacramento Regional Fire/EMS Communications Center's ("Plaintiff" or "SRFECC") Motion for Partial Summary Adjudication (the "Motion") is premature and improperly seeks summary judgment well before any discovery has occurred. This Court can deny the Motion on this basis alone and order the parties to engage in discovery. In addition, virtually every material fact is disputed here, which also requires the Court to deny the Motion.

At most, this case is a disagreement about whether Defendant Tyler Technologies, Inc. ("Tyler") implemented a computer aided dispatch ("CAD") system for SRFECC consistent with a Software License and Services Agreement dated November 6, 2015 (the "Agreement") between SRFECC and Tyler's predecessor-in-interest, New World Systems Corporation ("New World"). SRFECC's Motion ignores multiple key aspects of the Agreement and asks the Court to conclude, improperly and without the benefit of even basic discovery, that Tyler failed to meet certain complex technical requirements in the Agreement and that Tyler's predecessor New World lied about the system's functionality from the outset.

New World responded to over 2000 individual line items in SRFECC's Request for Proposal ("RFP") to indicate whether its CAD system had the capability to perform the functionality outlined in the RFP. Most of the line items contained only brief statements of the requested functionality. In responding, New World expressly advised SRFECC that it was responding based on its own interpretations of those technical requirements, which might differ from SRFECC's intentions. New World followed a commercially reasonable process to identify whether its CAD system complied with the stated requirements and provided multiple demonstrations of the software.

Following the RFP process, SRFECC and New World negotiated and then executed the Agreement, which provided that SRFECC would purchase a "Commercial Off-the-Shelf," or "COTS," version of the CAD software—pre-existing, standard software that would be implemented at SRFECC with only minimal modifications. For approximately 18 months, Tyler (having acquired New World) worked with SRFECC to "build" the CAD system in SRFECC's environment. In or

1

around August 2017, SRFECC identified a number of items that it believed had "Failed" functional testing. Tyler immediately and consistently disagreed with SRFECC's characterization of the items as "Fails," and detailed technical discussions continued. SRFECC's representatives provided details regarding how they were interpreting the RFP's language and, for the first time, explained certain additional and/or specific expectations for the software. During these discussions, it became clear that SRFECC was interpreting a number of the technical requirements in a manner that was not Tyler's understanding of either industry standard and/or what was required by the Agreement. SRFECC's interpretations required significant modifications that would have been costly and time consuming. SRFECC consistently refused to acknowledge that its requests were more akin to a fully-customized system than a COTS system.

Despite a fundamental dispute regarding the scope of the Agreement and differing interpretations of the RFP's requirements, SRFECC now contends that the Court should, as a matter of law, (i) adopt SRFECC's unilateral interpretation of the Agreement and the RFP; (ii) conclude that Tyler is in breach of the Agreement; and (iii) determine that New World lied during the RFP process. SRFECC's "evidence," however, consists of self-serving, conclusory statements that cannot support a grant of summary judgment. As established in Tyler's own evidence, the parties had fundamental disagreements regarding how to interpret and implement the requirements of the Agreement, creating inherent fact issues that preclude summary judgment.

## FACTUAL BACKGROUND

SRFECC is responsible for fire and emergency dispatch services for the cities of Sacramento and Folsom and various fire protection districts in the surrounding area.[1] Tyler is the largest software company in the nation that focuses solely on providing integrated software and related technology services to the public sector.[2] Tyler's Public Safety division has implemented CAD systems for hundreds of public entities, including various counties in and around Northern California.[3] On November 16, 2015, ten days after the Agreement was fully executed, Tyler acquired New World and succeeded to its rights and obligations in the Agreement.

---

[1] See SRFECC's Statement of Undisputed Facts Nos. 1-4.
[2] Declaration of Kevin Flynn ("Flynn Dec.") at ¶ 5.
[3] Id.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

**A.     The Request For Proposal**

On March 18, 2014, SRFECC issued the RFP for a new CAD system.[4]  The RFP expressly noted that the "purpose of the project is to replace the existing Computer Aided Dispatching system and Mobile Data System in use at SRFECC with a Commercial Off The Shelf (COTS) solution. Customizations or enhancements to the product in order to comply with requirements of this RFP shall be identified and priced separately."[5]  The RFP contained over 2000 line items of desired functionality and requested that New World specify whether its proposed CAD system complied with the listed requirements.[6]  The technical requirements contained brief descriptions of the desired functionality, often using undefined terms and sometimes employing only one-word descriptions.[7]

On May 16, 2014, New World submitted its RFP response (the "RFP Response").[8]  With regard to the technical specifications, New World's RFP Response expressly stated:

> Our response to your software specifications is based on our interpretation of each feature or requirement.  Our response will be accurate in a high percentage of cases. Occasionally, however, our interpretation does not coincide with the prospect's intention.  A demonstration of our software will further assure the SRFECC that New World can meet and/or exceed your requirements.[9]

In responding to the RFP, New World exercised commercially reasonable efforts to respond to each line item of the RFP based on the information provided in the RFP and well-known industry standards.[10]  In addition, during the 18-month procurement process, New World provided numerous demonstrations of the system and its functionality (at least one of which followed a script SRFECC provided to New World) and facilitated visits by SRFECC to other New World customer sites so that SRFECC could observe the software in action.[11]  Upon completion of the in-depth procurement process, SRFECC selected New World as the winning bidder.[12]  According to the RFP, only a

---

[4]      Exhibit 13.  All references to Exhibits are references to the exhibits attached to SRFECC's Motion.
[5]      Exhibit 13 at p. 6.  Item 5.2.1 of the RFP also specifically acknowledges "the intention of SRFECC to purchase primarily 'off-the-shelf' or basic CAD software functionality, requiring the minimum amount of modifications in order to support necessary functions and interfaces…[.]"  *Id.* at p. 61.
[6]      Exhibit 13 at pp. 16, 23, 55-173.
[7]      Exhibit 13 at pp. 55-173.
[8]      Exhibit 14.
[9]      Exhibit 14 at p. 47.
[10]     Declaration of Craig Nelson ("Nelson Dec.") at ¶ 13.
[11]     Nelson Dec. at ¶¶ 14-19.
[12]     *See* SRFECC's Undisputed Fact No. 16.

3

1  portion of the scoring and award process was based on New World's responses to technical

2  requirements; SRFECC also performed an overall analysis of each vendor's responsiveness,

3  management capabilities, cost proposals, and demonstrations of their software product.[13]

4  **B.    The Agreement**

5          On November 6, 2015, SRFECC and New World entered into the Agreement.[14]   The

6  Agreement provided for a standard software license for New World's CAD system, along with

7  related services for its implementation, maintenance and support.[15]   The Agreement recognized that

8  this was a COTS project and obligated New World to provide only the standard software and certain

9  "Standard Software Enhancements and/or Customer Software" that were expressly outlined in

10  Exhibit B-3 to the Agreement.[16]  For modifications or enhancements, the Agreement contemplated

11  an analysis and assessment to verify the scope of each modification and a revised cost and timing

12  estimate for such modification.[17]   Based on the revised estimate, SRFECC could determine whether

13  it intended to proceed with the requested modification.[18]   Exhibit B-3 to the Agreement expressly

14  provided that SRFECC would "be reasonable and flexible in not attempting to design the

15  modifications to be more extensive than called for in the scope (cost and schedule) of this project."[19]

16  Exhibit B-3 to the Agreement also provided that SRFECC "agrees to cooperate in not making

17  modifications and enhancements too extensive."[20]

18          The Agreement contained an express software warranty that warranted that "items coded

19  'Fully Compliant' in New World's Response to Customer's RFP will be met as described in Exhibit

20  N."[21] Exhibit N to the Agreement provided:

21          All items coded "Fully Complaint" (as qualified) in the New World Detail
22          Response to Customer's RFP Questionnaire will be provided to Customer through

23  _____

24  [13]     Exhibit 13 at pp. 19-22; *see also* Nelson Dec. at ¶¶ 20, 25 (noting that the RFP selection process, which SRFECC controlled, was the subject of some controversy between the fire chiefs and the team managing the RFP scoring, which may have impacted how the RFP was awarded).

25  [14]     Exhibit 2.
    [15]     *See generally* Exhibit 2.

26  [16]     Exhibit 2 at p. 37.
    [17]     *Id.* at p. 38.

27  [18]     *Id.*
    [19]     *Id.*

28  [20]     Exhibit 2 at p. 38.
    [21]     Exhibit 2 at p. 12.

4

currently **existing Exhibit A software capabilities**, Customer's use of 3rd Party software, **custom programming** provided by New World **and/or future enhancements** to Exhibit A software provided under Exhibit C.[22]

Exhibit N of the Agreement also expressly stated: "If the terms and conditions of the New World Detail Response to the specifications of the RFP and this Agreement are in conflict, the governing terms and conditions shall be this Agreement."[23]   In addition, Section 19.1 of the Agreement provides: "This Agreement is the entire agreement between the parties and supersedes all other communications, written or oral, between the parties relating to the subject matter of this Agreement."[24]   Thus, once the Agreement was executed, the definition of "Fully Compliant" in the Agreement superseded the one found in the RFP.

The only other warranties in the Agreement were that the "Licensed Products will perform as specified in the user manuals based on the then-current release of the Licensed Software" and that New World possessed the necessary intellectual property rights to license the software.[25]   Otherwise, the Agreement "expressly disclaims any express or implied warranties."[26]

The Agreement provided that, to the extent SRFECC contended that there has been a breach of warranty, New World would "correct the defect so that it conforms to the warranties" and, only if New World was not able to do so, could SRFECC pursue actual damages for breach of a specific warranty item.[27]   Although SRFECC had the right to terminate the Agreement, the termination provisions did not provide for a refund of amounts previously paid other than as provided for in the warranty provisions.[28]

As the Agreement recognizes, the process of implementing a CAD system for an entity like SRFECC, which services multiple districts, is complex and challenging.  Thus, while the Agreement generally acknowledged that "time is of the essence,"[29] the Agreement did not actually provide a

---

[22]   Exhibit 2 at p. 70 (emphasis added).
[23]   Exhibit 2 at p. 70.
[24]   Exhibit 2 at p. 22; *see also* Exhibit 2 at p. 23 (acknowledging that the Agreement was the product of "mutual" drafting and was "negotiated and discussed" between the parties).
[25]   Exhibit 2 at pp. 12-13.
[26]   Exhibit 2 at p.13.
[27]   Exhibit 2 at p. 17.  New World's liability pursuant to the Agreement is limited, and SRFECC is contractually prohibited from recovering, under any legal theory, "special, incidental, consequential, or punitive damages, including lost profits." Exhibit 2 at pp. 17-18.
[28]   Exhibit 2 at p. 19.
[29]   Exhibit 2 at p. 9.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

date certain by which the implementation of the CAD system would be completed.  Instead, Exhibit D to the Agreement provided a "sample Project Plan."[30]  The Agreement stated:

> The sample Project Plan dates are calculated based on generic assumptions about typical time frames for completing the tasks included in the plan.  **The actual project Schedule could differ significantly from the Sample Plan**.  The dates included in the sample Project Plan are for illustrative purposes only.

> An actual project plan with the appropriate tasks and schedule will be determined upon contract signing and more detailed discussions about the project can take place between Customer and [Tyler] staff.  **The availability of Customer resources to perform tasks, final determination of the overall task list, Customer scheduled constraints** (seasonal peak workloads, vacations, holidays, commitments of resources needed to support local events, etc.) **and the actual project start date must be determined**.  A typical implementation project of this size and scope usually spans 18-24 months from contract signing through go live.  **Based on unique Customer circumstances and/or Customer resources constraints, the actual project schedule could differ significantly**.[31]

Thus, the Agreement contemplated a timeline that would be the subject of an ongoing discussion between the parties and might be impacted by circumstances outside New World's control.

**C.**   **The Implementation**

Following its acquisition of New World, Tyler began to deliver software, services and invoices in accordance with the terms of the Agreement.  In 2017, as the parties were engaged in implementation activities, it became apparent to Tyler that SRFECC had expectations that went beyond a COTS system, were not industry standard, and were inconsistent with the requirements of both the RFP and the Agreement.[32]  In August 2017, following the functional testing process described in the RFP Response,[33] SRFECC began circulating a spreadsheet listing 2065 technical requirements from the RFP and characterizing a number of the requirements as "Fails."[34]  Although Tyler disagreed with the substantive suggestion that any item had "Failed" in the way SRFECC was using the term, Tyler adopted SRFECC's semantics to streamline the conversation and focus on addressing the issues SRFECC had identified so that the parties could move towards go-live.[35]

---

[30]   Exhibit 2 at p. 46.
[31]   *Id.* (emphasis added).
[32]   Flynn Dec. ¶ 10.
[33]   Exhibit 14 at pp. 233-42.
[34]   Exhibit 24.
[35]   Flynn Dec. at ¶ 17.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

For the next several months, representatives of Tyler and SRFECC participated in multiple meetings and calls so that SRFECC could try to clarify its perspective on the technical requirements at issue.[36]   During these discussions, SRFECC's representatives provided additional details regarding how they were interpreting the RFP's language and, for the first time, explained to Tyler certain additional and/or specific expectations for the software.[37]   Tyler's representatives frequently explained that what SRFECC was describing was not a COTS system.[38]   SRFECC's interpretations expanded the scope of the Agreement, would have required more than minor modifications, and would have been costly and time consuming.[39]

For example, SRFECC wanted their end users to be able to change the fonts on their individual workstations.[40]   Tyler's CAD software allows the end user to change the fonts on the vast majority of the workstation screens.[41]   A small percentage of the time, however, permitting an end user to change the font would actually alter the integrity of the software itself.[42]   As a result, Tyler's CAD system is not designed to allow for those alterations.   SRFECC ignored Tyler's feedback, and insisted that Tyler's CAD software "Failed" this requirement because it did not provide 100% font-configurability.[43]   In instances like this, where the requested modification was so outside the industry norm and market demand, and/or where it threatened the integrity of the software itself, Tyler advised SRFECC that it could not modify the software to meet SRFECC's request.[44]

In order to attempt to address SRFECC's other issues, Tyler requested that SRFECC prioritize the so-called "Fails" so that Tyler could develop a plan to address the most important issues first.[45]   In addition, Tyler suggested that, as is common in software implementations of this nature, the most important modifications be addressed prior to go-live and other, less critical issues be addressed in due course after the system went live.[46]   SRFECC refused both suggestions, instead

---

[36]   *Id.* at ¶ 18.
[37]   Flynn Dec. at ¶ 19.
[38]   *Id.*
[39]   *Id.*
[40]   Flynn Dec. at ¶ 28.
[41]   *Id.*
[42]   *Id.*
[43]   Flynn Dec. at ¶ 28.
[44]   *Id.*
[45]   Flynn Dec. at ¶ 21.
[46]   *Id.*

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

contending that all of the issues SRFECC identified as "Fails" had to be addressed prior to go-live.[47] To Tyler, this all-or-nothing suggestion was the functional equivalent of requiring an almost fully customized CAD system for SRFECC, which was well beyond the scope of the Agreement.

In September 2017, the parties jointly agreed that the previously scheduled November 6, 2017 go-live would need to be postponed.[48]  In agreeing to the postponement, SRFECC's Executive Director Teresa Murray stated: "[W]e understand we need to push the go live date" and "we understand Tyler/New World will be collaborating internally on a new project schedule with a timeline which will be presented to SRFECC at a date yet to be determined."[49]

In December 2017, in yet another attempt to educate SRFECC on the scope of the Agreement and the options for the project, Tyler prepared a PowerPoint presentation for the SRFECC project team.[50]  In this presentation, Tyler did not, as SRFECC contends, agree that there were 239 "Fail" items.  Instead, as the presentation makes clear, Tyler believed there were only 161 items even at issue.[51]  Of these, 41 were warranty items that represented "bugs" in the software that were being fixed prior to go-live; seven were significant enhancement requests; and 79 were items that SRFECC claimed were "Fails" and Tyler disagreed.[52]  Of the 161 items in Tyler's presentation, only 34 of those were items that Tyler agreed did not meet the RFP requirements based on SRFECC's additional explanation of how it was interpreting those requirements.[53]  Tyler agreed to characterize them as "fails" only based on extensive discussions between Tyler's subject matter experts and SRFECC's representatives over the course of the implementation, after the completion of functional testing and the exhaustive process of discussing the functionality in painstaking detail.[54]  The list of

---

[47]    *Id.* at ¶ 22.
[48]    Exhibit 18.
[49]    *Id.*
[50]    Exhibit 5; Flynn Dec. at ¶¶ 24-34.
[51]    Flynn Dec. at ¶ 25.  SRFECC's suggestion that Tyler agreed that 239 items "Failed" the RFP requirements is actually quite surprising given the fact that all of the contemporaneous evidence attached to SRFECC's Motion contradicts that fact.  For example, Exhibit 6—a document drafted by SRFECC—expressly acknowledges that there were only 34 items "agreed to by TNW."  Multiple later exhibits make reference to these 34.  *See, e.g.,* Exhibit 20, p. 3.  Even SRFECC's initial notice of breach letter to Tyler referenced only 29 items as "agreed."  Exhibit 8.
[52]    Flynn Dec. at ¶¶ 25-27.
[53]    Flynn Dec. at ¶ 29.
[54]    *Id.*

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

1   "agreed fails" was later reduced to 29 by agreement.[55]  With regard to those items, Tyler was either

2   already developing the functionality for release in upcoming software updates or agreed to devote

3   time and resources to develop functionality that SRFECC was requesting.[56]

4          Tyler's presentation also attempted to prioritize all of the 161 items SRFECC had put at

5   issue.[57]  In an effort to be a good partner to SRFECC, Tyler did not limit its analysis and effort to the

6   34 (later 29) items Tyler agreed to address.  Instead, Tyler prioritized and attempted to estimate how

7   much development and enhancement time would be required for all 161 items.[58]  The purpose, from

8   Tyler's perspective, was to educate SRFECC on the level of time and effort it would take to develop

9   the nuanced, customized specifications SRFECC requested.[59]  Tyler wanted SRFECC to understand

10  that what they were requesting was more of a custom-built CAD system and was inconsistent with

11  the primary purpose of the Agreement—the purchase of a COTS system with minimal

12  modifications.[60]

13         Tyler's presentation was also intended to emphasize to SRFECC the concept of "continuous

14  improvement," which is standard in the software industry.[61]  Clients routinely go-live and then

15  continue to receive additional software updates, features and functionality through planned new

16  releases and/ or specific development efforts.[62]  Tyler hoped that SRFECC would appreciate the

17  benefits of this model and recognize the negative, unnecessary impacts of their all-or-nothing

18  approach.[63]  SRFECC, however, persisted in its position and apparently mistook Tyler's presentation

19  to mean that Tyler could not provide the CAD system in a timely matter.

20  **D.**    **The Notice Of Breach And Complaint**

21         On March 19, 2018, SRFECC's counsel sent Tyler a "Notice of Breach of Warranty" relying

22  on Sections 6.3 and 11.1 of the Agreement regarding software warranties and defects.[64]  On June 22,

---

[55]        Declaration of David Bonini ("Bonini Dec.") at ¶ 16; *see also* SRFECC's Notice of Breach letter to Tyler sent on March 19, 2018, which identified the number of agreed-upon "Fails" as 29.  Exhibit 8.
[56]        Flynn Dec. at ¶ 31.
[57]        Flynn Dec. at ¶ 32.
[58]        *Id.*
[59]        Flynn Dec. at ¶ 33.
[60]        *Id.*
[61]        Flynn Dec at ¶35.
[62]        *Id.*
[63]        *Id.*
[64]        Exhibit 8.

2018, SRFECC filed this lawsuit.  Contrary to the position taken in its March 2018 notice letter, SRFECC's Complaint did not invoke the software warranty provisions.  Instead, SRFECC claimed an undefined breach of contract and asserted fraud and False Claims Act claims, suggesting that New World had lied to SRFECC regarding the functionality of the system in its RFP Response.

## ARGUMENT AND AUTHORITIES

### A.    Summary Judgment Is Premature And Discovery Is Required Under Rule 56(d)

SRFECC's Motion was filed a mere 35 days after the Complaint was filed, four days *before* Tyler responded to the Complaint with a Motion to Dismiss, and two months before the Rule 16 scheduling conference with the Court.   Rule 56(d) prevents an opposing party from being "railroaded" by a premature motion for summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Where a summary judgment motion is filed early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts freely grant a Rule 56(d) motion.  *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003).  Indeed, in similar circumstances, courts in this District have routinely denied summary judgment motions as premature.  *See, e.g., Moore v. Hubbard,* No. CIVS-06-2187-FCD, 2009 WL 688897 at *1 (E.D. Cal. Mar.13, 2009) ("Plaintiff's [summary judgment] motion is premature, as discovery has not yet begun, defendants have not yet filed an answer and the court has yet to issue a discovery and scheduling order.   Thus, defendants have not been given an opportunity to discover any facts or information necessary in drafting an opposition.   Thus, plaintiff's motion is denied as premature.   Furthermore, defendants have filed a motion to dismiss, which is properly before the court."); *Singleton v. Hedgepath*, No. 1:08-cv-00095-AWI, 2010 WL 4630801 (E.D. Cal. Nov. 8, 2010) (denying as premature a motion for summary judgment filed nine days after defendant responded to the complaint); *Cisneros v. Neubarth*, No. 1:11-cv-01297-LJO, 2013 WL 3992120 (E.D. Cal. Aug. 2, 2013) (denying as premature a motion for summary judgment filed prior to the defendants' responsive pleading).

To comply with Rule 56(d), Tyler must identify specific facts that further discovery would reveal and explain why those facts would preclude summary judgment.  FED. R. CIV. P. 56(d); *Tatum v. City and Cty. of San Francisco*, 441 F.3d 1090, 1100-01 (9th Cir. 2006); *see also* Local Rule

10

260(b).   A lesser showing of specificity is permitted before *any* discovery has taken place. *Burlington*, 323 F.3d at 774-75.   Here, as detailed in Tyler's separately filed Rule 56(d) Request to Continue Plaintiff's Motion for Partial Summary Adjudication and the supporting Declaration of Beth W. Petronio, Tyler can establish the need for numerous depositions of SFRECC and third-party witnesses and the production of various documents that are within SRFECC's exclusive control.   As a result, the Motion should be denied as premature or, at the very least, deferred until discovery has been conducted.

**B.     Fact Issues Also Preclude Summary Judgment**

Summary judgment should also be denied because, as established by the evidence submitted with the Motion and this Opposition, virtually every material fact at issue here is in dispute. Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.   *Celotex*, 477 U.S. at 322-23.

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"   *Id*. at 324 (quoting then-Fed. R. Civ. P. 56(e)).   In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-movant's favor.   *Anderson*, 477 U.S. at 255.   Here, summary judgment is not proper because, with the exception of the existence of an Agreement, all of the material facts are in dispute.

**a.   SRFECC Cannot Prevail On Its Breach of Contract Claim**

SRFECC's summary judgment argument on the breach of contract claim appears based on two specific assertions.   First, SRFECC contends that "Defendant's failure to perform the contract by November 6, 2017 constitutes a breach of the Agreement."[65]   Second, SRFECC contends that

---

[65]        SRFECC's Memorandum of Points and Authorities in Support of Motion for Partial Summary Adjudication (the "Brief") at p. 13.  As noted in Tyler's Motion to Dismiss, SRFECC's Complaint does not actually allege a specific breach and certainly does not articulate the breach claim outlined in SRFECC's Brief.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

Tyler failed to "provide software that complied with the technical requirements it had designated 'Fully Comply' in the Response to the RFP."[66]   There are genuine issues of fact with regard to both of these alleged breaches that preclude summary judgment.   Moreover, SRFECC's breach claim entirely ignores the warranty provisions of the Agreement, which make clear that SRFECC's breach claim is misplaced.

### i.   The Agreement Did Not Require Performance By November 6, 2017

Contrary to SRFECC's assertion, the Agreement did not require that Tyler deliver a CAD system by November 6, 2017.   In fact, while the Agreement acknowledges that "time is of the essence,"[67] the Agreement intentionally does not state a date certain by which the implementation of the CAD system will be completed.   Instead, Exhibit D to the Agreement provides only a "sample Project Plan."[68]   The Agreement goes on to state: "The actual project Schedule could differ significantly from the Sample Plan" and the Sample Plan is "illustrative" only.[69]   The Agreement also notes that a "typical implementation project of this size and scope usually spans 18-24 months from contract signing through go live," but notes that "the actual project schedule could differ significantly."[70]

Although the project teams targeted an initial go-live date of November 6, 2017, that date was a target in the parties' Project Plan and not a contractually-mandated deadline.[71]   Deadlines of that nature often change based on each individual customer's unique circumstances, resource constraints and requirements, as contemplated by the Agreement.[72]

Moreover, the Agreement certainly does not contemplate that all 2000+ technical requirements referred to in the RFP would be completed by November 6, 2017, as SRFECC contends.[73]   Instead, as noted, Exhibit N to the Agreement provided that "Fully Compliant" items would be provided through existing software, custom programming or future enhancements.[74]   The

---

[66]     SRFECC's Brief at p. 12.
[67]     Exhibit 2 at p. 9.
[68]     Exhibit 2 at p. 46.
[69]     *Id.*
[70]     *Id.* (emphasis added).
[71]     Nelson Dec. at ¶ 22.
[72]     *Id.*
[73]     SRFECC Brief at p. 12.
[74]     Exhibit 2 at p. 70.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

1    fact that the Agreement expressly contemplates certain software capabilities to be provided in future

2    enhancements belies the suggestion that a failure to provide those capabilities by November 6,

3    2017—or any other adjusted go-live date—constituted a breach of contract.[75]

4           Even if there had been a specific contractual requirement that the CAD implementation be

5    completed by November 6, 2017, the parties later modified that date by mutual agreement.   In

6    September 2017, the parties jointly agreed that the previously-scheduled November 6, 2017 go-live

7    would be postponed.[76]   In agreeing to the postponement, SRFECC's Executive Director Teresa

8    Murray stated: "[W]e understand we need to push the go live date" and "we understand Tyler/New

9    World will be collaborating internally on a new project schedule with a timeline which will be

10   presented to SRFECC at a date yet to be determined."[77]

11          SRFECC's suggestion that Tyler would require an additional 17 years and 40,000 hours to

12   deliver the COTS-based CAD software required under the Agreement is misleading.  The estimates

13   in Tyler's December 2017 presentation represent the level of effort it would have taken for Tyler to

14   develop the nuanced, customized specifications SRFECC requested for all 161 items SRFECC had

15   put at issue—the majority of which were outside the scope of the Agreement and not agreed to by

16   Tyler.[78]

17          Again, the parties' Agreement did not require a completely customized CAD system.

18   Instead, the Agreement contemplated a COTS-based CAD system with minimal modifications.[79]  If,

19   for example, Tyler had been required to develop modifications/enhancements for only the 34 (later

20   29) items that Tyler was willing to treat as within the scope of the Agreement, the development

21   effort would have taken far less time.[80]  Indeed, Tyler's presentation was projecting a June 2018 go-

22   live and continuous improvement thereafter.[81]  This was not only in compliance with the Agreement,

23

24   ────────────────────

   [75]       The fallacy of SRFECC's Motion is evidenced in its citation to a different definition of "Fully Compliant,"
25   which is found in the RFP.  SRFECC's Brief at p. 5-6.  Once the Agreement was executed, however, the Agreement's
     definition of "Fully Compliant" expressly superseded the RFP. Exhibit 2 at pp. 22, 70.
26   [76]       Exhibit 18.
     [77]       *Id.*
27   [78]       Flynn Dec. at ¶ 33.
     [79]       Exhibit 13 at p. 6; Exhibit 2 at pp. 37-38.
28   [80]       Flynn Dec. at ¶ 33.
     [81]       Exhibit 5 at p. 103.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

it was consistent with standard industry practices and norms.[82]   And, had SRFECC been willing to prioritize items it believed were more critical, those modifications could have been accelerated.[83]

Because SRFECC cannot establish, as a matter of law, that Tyler was contractually obligated to provide the CAD system, as SRFECC has unilaterally defined it, by November 6, 2017, SRFECC's Motion must be denied.  At the very least, there is a genuine issue of material fact about what the parties' agreed would be timely performance of the Agreement, and summary judgment cannot be granted.

### ii.   Material Disputes Exists Regarding The Technical Requirements

SRFECC's second stated basis for its breach of contract claim is the suggestion that Tyler failed to "provide software that complied with the technical requirements it had designated 'Fully Comply' in the Response to the RFP."[84]   Summary judgment on this basis cannot be granted because there are material disputes regarding (1) what was actually required by the Agreement; and (2) whether Tyler's CAD system complied with those requirements.

### 1.   The Interpretation Of The Technical Items Is Disputed

SRFECC's Motion makes no effort whatsoever to address 158 of the 172 technical requirements SRFECC has put at issue.  SRFECC merely points to the technical requirement in the RFP, providing no context for those requirements and stating only, in a completely conclusory fashion, that Tyler did not comply.[85]   With regard to 14 of the technical requirements, SRFECC's Motion provides only the after-the-fact testimony of Ms. House, who undisputedly had no involvement in the drafting of the technical requirements and was not employed by SRFECC when the RFP was issued or when the Agreement was executed.[86]   Ms. House purports to explain what

---

[82]      Flynn Dec. at ¶ 35.
[83]      Flynn Dec. at ¶ 33.
[84]      SRFECC's Brief at p. 12.
[85]      See SRFECC's Brief at pp. 12-13.
[86]      See Declaration of Sherrill Diane House (the "House Dec.") at ¶ 11 (stating that Ms. House's first involvement with the project was in May 2016).

14

those 14 technical items required based on her after-acquired knowledge.[87]  Even without additional

evidence from Tyler, SRFECC's Motion fails to carry its burden to establish any breach.[88]  In any

event, the Declaration of Tyler's Kevin Flynn addresses in detail those 14 technical items identified

by Ms. House and establishes why Tyler believed that its CAD system complied and/or why the

desired functionality was outside the scope of the Agreement.[89]

With respect to all 172 items, the specific meaning and interpretation of the technical

requirements were disputed between the parties.[90]  For months, the parties' technical experts worked

to reconcile the parties' differing interpretations of the technical requirements.[91]   The parties

exchanged multiple drafts of a detailed, line-item spreadsheet that expressed both parties'

interpretations and questions.[92]  Only with the benefit of these additional discussions was Tyler able

to understand the functionality SRFECC was requesting.[93]

Differing interpretations of the technical requirements should not have come as a surprise to

SRFECC in this context.  Tyler's RFP Response expressly warned that: "Our response to your

software specifications is based on **our interpretation** of each feature or requirement.  Our response

will be accurate in a high percentage of cases.  **Occasionally, however, our interpretation does not**

---

[87]     House Dec. at ¶¶ 53-71.  Ms. House's declaration confirms that the technical requirements in the RFP were subject to multiple interpretations and that SRFECC's interpretations were only made clear after subsequent discussions. For example, Requirement 5.2.5.6.F.b. states "[u]pon entry of the incident location, the CAD application software shall provide a look-up to the geographic database (geofile) to validate the location of the incident.  The process shall facilitate validation of the incident's location.  The location/geofile must support multiple "aliases" for: Intersections."  Exhibit 13, p. 78.  As evidenced by Ms. House's declaration, SRFECC's complaint about these requirements was that Tyler's look-up functionality allegedly did not have the ability to address "multiple venues" at a given location, which SRFECC referred to as "community codes."  House Dec. ¶ 61.  The RFP does not mention the possibility of multiple venues at a given location or the use of "community codes."  Exhibit 13 at p. 78.

[88]     *See Celotex*, 477 U.S. at 323 (noting that the party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that parties cannot rely solely on conclusory allegations unsupported by factual data).  *See also* Defendant's Objections to Evidence Submitted in Support of Plaintiff's Motion for Partial Summary Judgment filed simultaneously herewith.

[89]     Flynn Dec. at ¶¶ 40-52.

[90]     Flynn Dec. at ¶¶ 17, 19, 25.

[91]     Flynn Dec. at ¶ 18.

[92]     Flynn Dec. at ¶ 23; *see also generally* Exhibit 5 at p. 3 (summarizing Tyler's position regarding whether various items were compliant); *see also generally* Exhibit 6 (December 2017 reconciliation with significant discussion evidencing parties disagreement on what specific lines items meant); Exhibit 6 at p. 62 (summarizing the parties' disagreement on how to categorize various line items); Exhibit 8 (summarizing the parties' disagreements).

[93]     Flynn Dec. at ¶¶ 19, 29.

**coincide with the prospect's intention**."[94]   Because there are genuine issues of fact about the interpretation of each technical requirement at issue, summary judgment is precluded.

At the very least, the technical requirements must be considered ambiguous.  "In contract cases, summary judgment is appropriate only if the contract or the contract provision in question is unambiguous."  *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981), citing *Bear Brand Hosiery Co. v. Tights, Inc.*, 605 F.2d 723, 726 (4th Cir. 1979).   The rationale for the proposition is simple: "ambiguity in a contract raises a question of intent, which is a question of fact precluding summary judgment."  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983).  SRFECC's Motion should be denied for this additional reason.

### 2.   Whether Tyler Complied With The Agreement Is Also Disputed

There are also genuine issues of material fact regarding whether Tyler actually complied with the technical requirements and with the Agreement generally.   Importantly, with respect to the technical requirements, the Agreement provides that Tyler provide the items identified as "Fully Compliant" through existing software, custom development or future enhancements.[95]   Because Tyler could have (and would have) provided technical requirements through custom development and enhancement efforts, Tyler did not breach the Agreement.[96]

SRFECC's argument that Tyler failed to comply is premised on two key, but unsupportable, allegations.  First, SRFECC alleges that Tyler "agreed" that 239 items "failed" to comply with the RFP.  Tyler's own testimony, however, and every piece of contemporaneous evidence (including documents SRFECC has submitted to the Court) dispute this assertion.   Representatives of Tyler made clear to SRFECC at every point in the process that Tyler disagreed with SRFECC's characterization of anything as a "Fail."[97]   At most, the parties discussed "agreement" on only 34 (and later 29) items.[98]   Even for those items, Tyler's "agreement" was based on extensive

---

[94]     Exhibit 14 at p. 47 (emphasis added).
[95]     Exhibit 2 at p. 70.
[96]     *See generally* Exhibit 5.
[97]     Flynn Dec. at ¶ 17, 25; Bonini Dec. at ¶ 15.
[98]     *See, e.g.,* Exhibit 5 (listing the "agreed" items as 34); *see also* Exhibit 6, p. 62. (listing the number of agreed upon items as 34); Exhibit 20 (also identifying only 34 items as agreed).  SRFECC's Notice of Breach letter to Tyler, sent on March 19, 2018, identified the number of agreed-upon "Fails" as 29.  Exhibit 8.  *See also* Bonini Dec. at ¶ 16 (indicating that Ms. House agreed that 5 of the 34 of the "agreed" items would not be considered "Fails").

discussions between Tyler's subject matter experts and SRFECC's representatives over the course of the implementation, and specifically after the completion of functional testing.[99]  Tyler still disputed whether these items were "Fails" and certainly did not agree that any breach had occurred by virtue of the status of those items.[100]

Second, SRFECC points to Tyler's December 2017 PowerPoint to suggest that Tyler could not have delivered a compliant CAD system for another 17 to 22 years.  That characterization, however, grossly oversimplifies (if not misrepresents) the PowerPoint and what Tyler was attempting to communicate to SRFECC.

It is undisputed that the Agreement required Tyler to provide SFRECC with an off-the-shelf, pre-existing software package with minimal specific enhancements and/or modifications.[101]  Tyler believed that the functionality that SRFECC was requesting and the way in which SRFECC was interpreting the RFP requirements was outside the scope of the contracted-for COTS system.[102]  Tyler's goal in presenting the PowerPoint was to highlight for SRFECC that they were essentially insisting on a custom-built system instead.[103]  Tyler wanted SRFECC to go live in the short term and continue to enhance the software through a process known in the industry as "continuous improvement."[104]  This process would have permitted SRFECC to obtain the additional functionality it desired.  In light of the multiple factual disputes regarding whether Tyler's functionality met the requirements of the Agreement, summary judgment should be denied.

### 3.   SRFECC Improperly Ignores The Warranty Provisions

In asserting its breach claim, SRFECC entirely ignores the Agreement's warranty provisions and the remedies provided for therein.  As noted, the Agreement's provision regarding software performance is tied to the definition of "Fully Compliant."  Thus, a breach of warranty exists only if something coded "Fully Compliant" cannot be provided through existing software, custom development, or future enhancements.  If that circumstance exists, the Agreement provides that

---

[99]     Flynn Dec. at ¶ 29.
[100]    Flynn Dec. at ¶ 31.
[101]    Flynn Dec. at ¶¶ 8-9; Exhibit 2 at pp. 37-38; Exhibit 13 at p. 61.
[102]    Flynn Dec. at ¶ 10.
[103]    Flynn Dec. at ¶ 34.
[104]    Flynn Dec. at ¶¶ 34-35.

Tyler will "correct the defect so that it conforms to the warranties" and, only if Tyler is not able to do so, SRFECC can pursue actual damages for breach of a specific warranty item.[105]  Tyler's liability pursuant to the Agreement is limited, and SRFECC is contractually prohibited from recovering, under any legal theory, "special, incidental, consequential, or punitive damages, including lost profits."[106]  Although SRFECC has the right to terminate the Agreement, the termination provisions do not provide for a refund of amounts previously paid other than as provided for in the warranty provisions.[107]  SRFECC's "breach" claim, however, ignores these contractually-mandated remedies, instead attempting to manufacture a separate basis for breach and damages not contemplated by the Agreement.  For this additional reason, SRFECC's Motion should be denied.

**b.  Summary Judgment Must Be Denied On The False Statement Element Of SRFECC's Fraud Claims**

In order to prevail on summary judgment on the "false statement" element of its fraud claims, SRFECC must prove an "objectively false" statement was made.  *See, e.g., U.S. ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, No. CV 14-088850-JFW, 2017 WL 8793222, at *6 (C.D. Cal. Dec. 29, 2017).  The Ninth Circuit has cautioned that falsity "does not mean scientifically untrue," rather, it means "a lie."  *Wang v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir. 1992).  And, with regard to SRFECC's False Claims Act claim specifically, numerous courts have recognized that the Act is concerned with ferreting out wrongdoing, not addressing technical or scientific errors.  *Id.,* citing *U.S. ex rel. Dick v. Long Island Lighting Co.,* 912 F.2d 13, 18 (2nd Cir. 1990).  "Bad math is no fraud, proof of mistakes is not evidence that one is a cheat, and the common failings of engineers and other scientists are not culpable under the [False Claims Act]."  *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1478-79 (9th Cir. 1996).

Based on these facts, there is no basis to conclude that any false statements whatsoever were made.  New World's statements that certain aspects of the software were "Fully Complaint" were accurate based on New World's interpretation of the RFP, SRFECC was on notice that New World's interpretations may be different that SRFECC's, and the Agreement provided that "Fully Compliant"

---

[105]  Exhibit 2 at p. 17.
[106]  Exhibit 2 at pp. 17-18.
[107]  Exhibit 2 at p. 19.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

included an ability to perform through future development efforts.  There was nothing "objectively false" about New World's responses.  At the very least, there is a fact issue about whether any specific response to the RFP was actually "false."

The technical requirements in the RFP contained brief descriptions of the desired functionality, often using undefined terms and sometimes employing only one word descriptions.[108] In responding to the RFP, New World made clear that it was responding "based on [its own] interpretation of each feature or requirement" and that the response would be "accurate in a high percentage of cases."[109]  Moreover, New World warned SRFECC that "occasionally" New World's interpretation will "not coincide with [SRFECC's] intention."[110]  SRFECC was clearly on notice that New World's responses were based on New World's subjective belief and understanding about the over 2000 technical requirements described in the RFP.  And, SRFECC was advised that New World's responses might not be entirely accurate, as compared to SRFECC's expectations).  Even if a small percentage of the responses were actually made in error, those errors do not constitute a false statement.  *See Hagood*, 81 F.3d at 1478-79.

Consistent with its statements in the RFP Response, New World exercised commercially reasonable efforts to respond to each line item of the RFP based on the information provided in the RFP and well-known industry standards.[111]  In addition, to ensure that SRFECC understood the functionality of New World's CAD system, New World provided numerous demonstrations of the system to SRFECC.[112]  New World also facilitated visits by SRFECC to other New World customer sites so that SRFECC could observe the software in action.[113]  And, SRFECC's representatives attended various trade shows at which the software was demonstrated and SRFECC had access to New World's other customers that were live on the system.[114]  All of this activity took place prior to the execution of the Agreement, establishing that SRFECC was actually well aware of—or at least had been given the opportunity to make itself aware of—the functionality it was purchasing when

---

[108]    *See* Exhibit 13 at pp. 55-173.
[109]    Exhibit 14 at p. 47.
[110]    *Id.*
[111]    Nelson Dec. at ¶ 13.
[112]    Nelson Dec. at ¶¶ 14-19.
[113]    *Id.*
[114]    *Id.*

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

1    the Agreement was executed.  Given SRFECC's knowledge, none of the statements made by New

2    World in its RFP response were false statements.  At the very least, fact issues exists regarding what

3    SRFECC knew when it executed the Agreement.

4         Moreover, once the Agreement was executed, the parties expressly agreed that New World's

5    RFP responses of "Fully Compliant" would mean that New World's CAD system either had the

6    functionality currently or that Tyler would provide it through "custom programming" or "future

7    enhancements."[115]  Because Tyler was actually capable of providing additional functionality through

8    "custom programming" and/or "future enhancements," there is nothing "false" about a response of

9    "Fully Compliant."

10        In any event, SRFECC has not met its burden to establish the false statement element as a

11   matter of law.  As noted, SRFECC has failed to explain how 158 of the 172 technical requirements

12   were falsely represented as "Fully Compliant."   Instead, SRFECC simply makes the conclusory

13   allegation that these items did not comply and therefore, a response of "Fully Compliant" was

14   false.[116]   This conclusory and self-serving assertion is not sufficient for summary judgment

15   purposes.  In addition, as established above, there are genuine issues of material fact about whether

16   Tyler actually complied with the technical requirements such that summary judgment would not be

17   appropriate.[117]  For all of these reasons, summary judgment should be denied.

18                                        **CONCLUSION**

19        WHEREFORE, Tyler respectfully requests, for the reasons articulated herein, that the Court

20   deny SRFECC's Motion and grant Tyler such other and further relief to which it may be entitled.

21

22   [115]    Exhibit 2 at p. 7.
     [116]    SRFECC's Brief at p. 15.  Tyler's Motion to Dismiss asserts that SRFECC's lack of specificity in connection
23   with the fraud allegations justifies dismissal pursuant to Federal Rule 9(b).
     [117]    An example of the technical requirements at issue underscores why SRFECC's assertions of false statements
24   fail.  Requirement 5.2.5.6.C.a. in the RFP states:

25        The CAD system may also in addition to soundex utilize other appropriate look-up aids such as type ahead.  If
          type ahead is utilized, the system shall only display as possible matches those streets on which the numeric
26        address that has been entered is a valid address (i.e., if the initial entry is 175 S. MA -- the type ahead drop
          down would not show S. Main St, unless 175 was a valid address on S. Main St.).  Exhibit 13 at p. 77

27   Based on the use of the terms "may" and "if" and "appropriate look-up aids such as type ahead," type ahead was not
     required by the RFP.  Tyler's system included "other look-up aids" and did comply with the RFP.  Flynn Dec. at ¶42.
28   Only later did SRFECC insist that the CAD system "must be able to provide type ahead functionality."  House Dec. at ¶
     57.  No false statement was made.  *See also* Flynn Dec. ¶¶ 41-52 for additional specific examples.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY ADJUDICATION

Dated:  September 7, 2018           **K&L GATES LLP**

                                By:    /s/ Beth W. Petronio_____
                                       BETH W. PETRONIO *(admitted pro hac vice)*
                                       Attorneys for Defendant TYLER TECHNOLOGIES,
                                       INC.

Dated:  September 7, 2018           **SEGAL & ASSOCIATES, PC**

                                By:    /s/ Malcolm Segal_____
                                       MALCOLM SEGAL
                                       Attorneys for Defendant TYLER TECHNOLOGIES,
                                       INC.