Beth W. Petronio *(admitted pro hac vice)*
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5815
Fax: (214) 939-5849
beth.petronio@klgates.com

Malcolm Segal (SBN 075481)
John T. Kinn (SBN 130270)
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com
jkinn@segal-pc.com

Attorneys for Defendant TYLER TECHNOLOGIES, INC., a Delaware Corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER,<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California Corporation,<br><br>Defendant. | Case No.: 2:18-1792-KJM-KJN<br><br>**DEFENDANT'S RESPONSE TO STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>Date: September 19, 2018<br>Time: 2:00 pm<br>Judge: Hon. Kimberly J. Mueller<br>Courtroom: 3 |

Pursuant to Local Rule 260 and Rule 56 of the Federal Rules of Civil Procedure, Defendant Tyler Technologies, Inc. ("Tyler") submits this Response to Plaintiff Sacramento Regional Public Safety Communications Center d/b/a Sacramento Regional Fire/EMS Communications Center's ("SRFECC") Statement of Undisputed Facts in Support of Motion for Partial Summary Adjudication (the "Motion") [Dkt. No. 10-1].

| | UNDISPUTED FACT | RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 1. | SRFECC is a California Joint Powers Authority ("JPA"), formed under and in accordance with the laws of the State of California, Title 1, Division 7, Chapter 5, Section 6500 et seq., of the California Government Code. | Undisputed |
| 2. | Its member agencies include the City of Sacramento, the Sacramento Metropolitan Fire District, the City of Folsom, and the Cosumnes Community Services District. | Undisputed |
| 3. | SRFECC also provides services to the following six volunteer fire agencies as contract entities: Courtland Fire Protection District, Herald Fire Protection District, Isleton Fire Protection District, River Delta Fire Protection District, Walnut Grove Fire Protection District, and Wilton Fire Protection District. | Undisputed |
| 4. | SRFECC provides emergency dispatch services for approximately 1.5 million people in the greater Sacramento area. | Undisputed |
| 5. | It is one of the nation's largest fire and emergency medical services communication centers, providing public safety communications and dispatch services to the ten cities and districts, covering approximately 1,000 square miles. | Undisputed |
| 6. | It is the sole dispatching agency for all 9-1-1 emergency fire and medical aid service calls in Sacramento County. | Undisputed |
| 7. | In 2017 alone, SRFECC dispatched emergency units almost 205,000 times and answered over 350,000 emergency calls. | Undisputed |

| | | |
|---|---|---|
| 8. | Defendant Tyler Technologies Inc. is a Delaware corporation qualified to do business in the State of California. | Undisputed |
| 9. | Defendant entered into a merger agreement with New World Systems Corporation ("New World"), a Michigan corporation, under which Defendant acquired 100% of the outstanding stock of New World, on or around October 1, 2015. | Undisputed |
| 10. | On or about November 17, 2015, Tyler completed the Merger and its acquisition of New World's stock. | Undisputed |
| 11. | New World filed a Certificate of Surrender of Right to Transact Intrastate Business with the Secretary of State of California on or around March 28, 2016. | Undisputed |
| 12. | On or before March 2014, SRFECC initiated efforts to upgrade and modernize its Northrop Grumman legacy computer aided dispatch system ("Legacy COBOL CAD System"). | Disputed. Declaration of Craig Nelson ("Nelson Dec.") at ¶ 7. |
| 13. | On or around March 18, 2014, SRFECC issued a Request For Proposals ("RFP") seeking bids from software vendors that could deliver, install, implement, and integrate a Replacement CAD System (hereafter, either "Replacement CAD System" or "Project"). | Disputed. The RFP (Exhibit 13 to the Motion) speaks for itself. Declaration of Kevin Flynn ("Flynn Dec.") at ¶¶ 9-13, 23, 28-35, 42-58; Declaration of David Bonini ("Bonini Dec.") at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 6, 14, and 24. |
| 14. | The RFP identified and described the features and functions of the Replacement CAD System and sought assurances that the vendor would deliver a CAD system meeting those Technical Requirements. | Disputed. The RFP (Exhibit 13 to the Motion) speaks for itself. Flynn Dec. at ¶¶ 9-13, 23, 28-35, 42-58; Bonini Dec. at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 6, 14, and 24. |
| 15. | SRFECC received three competitive bids. | Undisputed |
| 16. | It awarded the contract to the winning bidder, New World. | Undisputed |

| | | |
|---|---|---|
| 17. | Defendant agreed to provide services and furnish licensed products, computer software and documentation for the delivery, installation, implementation, and integration of a Replacement CAD System pursuant to a Software License and Services Agreement ("Agreement"). | Disputed. The Agreement (Exhibit 2) speaks for itself. Flynn Dec. at ¶¶ 9-13, 23, 28-35, 42-58; Bonini Dec. at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 6, 14, and 24. |
| 18. | New World President Larry D. Leinweber signed the Agreement on behalf of New World on or around October 30, 2015. | Undisputed |
| 19. | Then-Chief Executive Director, Teresa Murray, signed the Agreement on behalf of SRFECC on or around November 6, 2015. | Undisputed |
| 20. | On November 6, 2015, SRFECC consented to the stock acquisition of New World by Tyler Technologies, Inc. in consideration of Tyler's ratification of its obligations under the Agreement. | Undisputed |
| 21. | Under the Agreement, Defendant promised to "design, deliver, install and integrate" a system that includes "(1) furnishing the Licensed Products; and (2) providing certain services described herein to Customer." | It is undisputed that Exhibit 2, p. 3 contains the quoted language. What Tyler "promised" to do based on that language is in dispute. Flynn Dec. at ¶¶ 9-13, 23, 28-35, 42-58; Bonini Dec. at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 6, 14, and 24. |
| 22. | The "Licensed Products" includes the Licensed Standard Software. | It is undisputed that Exhibit 2, p. 8 defines the quoted language as stated. |
| 23. | Defendant warranted that this system would meet the technical requirements of SRFECC's RFP that were marked "Fully Comply," as described in Exhibit N to the Agreement, i.e. existing software at a current customer's site for over one year. | Disputed. Exhibit 2, p. 70. |
| 24. | Exhibit N provides that Defendant's response to SRFECC's RFP technical requirements is incorporated in the Agreement by reference. | It is undisputed that Exhibit 2, p. 70 incorporates by reference the technical responses to the RFP. *See also* Exhibit 2, p. 22. |

| | | |
|---|---|---|
| 25. | Defendant further agreed to "perform all of its obligations and provide all services and products to Customer as set forth in accordance with the timeline for the Project (see Exhibit D) and the provisions of this Agreement." | It is undisputed that Exhibit 2, p.11 contains the quoted language. It is disputed what that language required. Exhibit 2, pp. 22, 46, 70; Nelson Dec. at ¶ 22; Exhibit 18. |
| 26. | The Agreement specifies that "[t]ime is of the essence," and states that the parties must "strictly adhere to the timeline set forth in Exhibit D for the installation and integration of the System and shall strictly adhere to the timeline set forth for each milestone component (e.g. Installation) in Exhibit D, System Implementation Plan/GANTT Chart for that particular milestone component." | It is undisputed that Exhibit 2, p. 9 contains the quoted language. It is disputed what that language required. Exhibit 2, pp. 22, 46, 70; Nelson Dec. at ¶ 22; Exhibit 18. |
| 27. | Exhibit D provides that the "typical" implementation for a project "of this size and scope usually spans 18-24 months from contract signing through go live." | It is undisputed that Exhibit 2, p. 70 contains the quoted language. It is disputed what that language required. Exhibit 2, pp. 22, 46, 70; Nelson Dec. at ¶ 22; Exhibit 18. |
| 28. | The parties agreed that the Go-Live date would be November 6, 2017, or 24 months after execution of the Agreement. | Disputed. Exhibit 2, pp. 22, 46, 70; Nelson Dec. at ¶ 22; Exhibit 18. |
| 29. | After the start of the Project, Defendant failed to submit status reports each month as required by the Agreement. | Disputed. Flynn Dec. at ¶ 14, 15, 18-20. |
| 30. | The few status reports that were provided were not timely, and contained false and misleading information about Defendants' progress and Project completion. | Disputed. Flynn Dec. at ¶ 14, 15, 18-20. |
| 31. | Because of these representations, SRFECC was led to believe that the project was progressing toward the anticipated Go-Live date, when in actuality, many components were not compliant. | Disputed. Flynn Dec. at ¶ 14, 15, 18-20; *see also* Flynn Dec. at ¶¶ 9-13, 23, 28-35, 42-58; Bonini Dec. at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 6, 14, and 24. |
| 32. | The November 6, 2017 Go-Live was cancelled. | Disputed. Exhibit 18; Flynn Dec. at ¶ 26. |

| | | |
|---|---|---|
| 33. | SRFECC's staff and consultants continued to meet with Defendants to list the remaining open items required to be performed by Defendants before a new System Go-Live date could be scheduled. | Undisputed that the parties continued to meet to discuss open items after the go-live was postponed by mutual agreement, but disputed that these open items "were required to be performed" by Defendant before a new go-live date could be scheduled.  Flynn Dec. at ¶ 9-13, 23, 25-39; Exhibits 2, 13, 14. |
| 34. | Because of the Go-Live cancellation, SRFECC sought assurances from Defendant that it would complete the Project in a timely manner. | Disputed.  Exhibit 18; Flynn Dec. at ¶¶ 23, 25-39. |
| 35. | Mr. Flynn made a presentation to SRFECC on December 7, 2017. | Undisputed. |
| 36. | During the presentation, Mr. Flynn admitted that "34 items . . . failed to comply with the RFP requirement[;] 41 items that are warranty items (i.e. not working as designed, and will be resolved in a future release)[;] 7 items that are requests for enhancement to the application; [and] 79 items that may have not met the RFP requirements." | It is undisputed that Exhibit 5 contains the referenced quotations, but disputed as to the context, meaning and interpretation of the presentation.  Exhibit 5, Flynn Dec. at ¶¶ 28-40. |
| 37. | Mr. Flynn also went on to state that there were a "handful of items" that did not align with its "product strategy" and "have been eliminated from consideration."  He admitted that Defendant would never be able to provide software that met at least four technical requirements. | It is undisputed that Exhibit 5 contains the referenced quotations, but this allegation is otherwise disputed.  Exhibit 5, Flynn Dec. at ¶¶ 28-40. |
| 38. | Mr. Flynn estimated that Defendant's recovery plan for the "completion of these items given the capacity of the development team" would take 33,900 hours – and that Defendant's capacity for the entire public safety segment of its customer base was limited to only 3,000 hours of development time per year. | Disputed.  Flynn Dec. at ¶¶ 37-38. |
| 39. | Mr. Flynn estimated that Defendant could only commit between 1,500 to 2,000 hours per year to the SRFECC Project. | Disputed. Flynn Dec. at ¶¶ 37-38. |

DEFENDANT'S RESPONSE TO STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY ADJUDICATION

| # | Fact | Response |
|---|---|---|
| 40. | This means it would take Defendant between 17 years (33,900 ÷ 2,000) and 22 years (33,900 ÷ 1,500) to deliver a partial CAD system. | Disputed. Flynn Dec. at ¶¶ 37-38. |
| 41. | SRFECC's project manager Diane House continued to work with Defendant's project manager David Bonini to determine the extent of the system's failure to comply. | Disputed. Bonini Dec. at ¶¶ 15-16. |
| 42. | Mr. Bonini and Ms. House exchanged a "reconciliation" spreadsheet where each inserted their comments on the RFP fails. | Disputed. Bonini Dec. at ¶¶ 15-16. |
| 43. | Ms. House and Mr. Bonini, in the final iteration of the reconciliation document, agreed that there was a total of 239 "Fail" RFP items. | Disputed. Bonini Dec. at ¶¶ 15-16; Flynn Dec. at ¶¶ 24-16, 41-42; Exhibits 6, 8, 20. |
| 44. | Ms. House compared the 239 "Fail" RFP items to Defendant's response to the RFP and determined that 172 items that had been marked "Fully Comply" were failed items. | Disputed. Flynn Dec. at ¶¶ 41-43. |
| 45. | In responding to the RFP, each bidder was required to specify (concerning each RFP requirement) whether its Licensed Standard Software was: (1) Fully Comply; (2) Partially Comply; (3) Comply with Modifications; (4) Comply in Future; (5) Substitution; or (6) Exception. | It is undisputed that the RFP contains the cited language. Exhibit 14, pp. 20-21. |
| 46. | A vendor Warranty of "Fully Comply" meant that the vendor's Licensed Standard Software currently provided the feature or functions as described in the RFP, and had been in use at existing client locations for a period of at least one (1) year from the date of proposal submission, not in beta testing. | Disputed. Exhibit 2, p. 22, 70. |
| 47. | On May 16, 2014, the date of its RFP response, New World falsely stated its system was "Fully Comply" for itemized technical requirements that did not comply. | Disputed. Nelson Dec. at ¶¶ 12-13, 26; Flynn Dec. at ¶¶ 41-57. |
| 48. | On November 6, 2015, Defendant warranted that its Licensed Standard Software met the items coded "Fully Comply" in New World's Response to SRFECC's RFP as described in Exhibit N to the Agreement, which incorporated New World's responses to the RFP technical requirements. | Disputed. Exhibit 2, p. 12, 22, 70. |
| 49. | At least 172 of these representations were false because years later Defendants admitted that their software did not "Fully Comply." | Disputed. Nelson Dec. at ¶¶ 12-13, 26; Flynn Dec. at ¶¶ 41-57; Bonini Dec. at ¶¶ 15-16. |
| 50. | Had those 172 responses been recorded as not compliant, then SRFECC would not have awarded it the contract. | Disputed. Nelson Dec. at ¶¶ 20, 25; Flynn Dec. at ¶ 43; Exhibit 13, p. 19-22. |

| | | |
|---|---|---|
| 51. | SRFECC agreed to pay New World $2,755,985 for delivery, implementation, and service of a replacement CAD system pursuant to a payment schedule set forth in Exhibit A of the Agreement. | It is undisputed that SRFECC agreed to pay $2,755,985 per the Agreement. What the Agreement required is in dispute.  Flynn Dec. at ¶¶ 9-13, 23, 28-35, 42-58; Bonini Dec. at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 2, 6, 14, and 24. |
| 52. | On or around November 14, 2015, Defendant invoiced SRFECC $761,440.00 for pre-paid standard software maintenance services. | Undisputed |
| 53. | SRFECC paid Defendants $761,440.00 on or around December 9, 2015 pursuant to this invoice. | Undisputed |
| 54. | On or around November 18, 2015, Defendants invoiced SRFECC $443,047.00, for Licensed Standard Software. | Undisputed |
| 55. | On or around that same day, Defendants invoiced SRFECC a total of $194,524.76 for purported third-party products, services, and the performance bond. | Undisputed |
| 56. | On or around December 9, 2015, SRFECC paid Defendants $443,047.00 and $194,524.76, respectively. | Undisputed |
| 57. | On or around May 6, 2016, Defendants invoiced SRFECC $443,048.00 for Licensed Standard Software.  On or around May 19, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. | Undisputed |
| 58. | On or around September 15, 2016, Defendants invoiced SRFECC $158,164.00.  On November 1, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. | Undisputed |
| 59. | On or around October 12, 2016, Defendants invoiced SRFECC $28,969.50.  On or around November 2, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. | Undisputed |
| 60. | On or around January 31, 2017, Defendants invoiced SRFECC $98,900.00 for a progress payment for purportedly completing GANTT Step 4 – Install and Standard Configuration.  On or around March 2, 2017, | Undisputed |
| 61. | On or around August 30, 2017, Defendants invoiced SRFECC $300.00 for a purported third-party product.  On or around that same day, SRFECC paid this invoiced amount. | Undisputed |

| | | |
|---|---|---|
| 62. | Defendant has not certified that it has completed GANTT Steps 6, 8, or 10 nor invoiced SRFECC for same. | It is undisputed that Tyler did not invoice SRFECC for all of Tyler's services. |
| 63. | To date, SRFECC has paid Defendants $2,128,393.26 | Undisputed that SRFECC has paid Tyler at least $2,128,393.26. |
| 64. | SRFECC obtained the specifications for the equipment and related components Defendant required and installed them so that they were available for use in advance of Defendant's delivery of its system. | Undisputed, but Exhibit 2 speaks for itself as to the specific requirements. |
| 65. | SRFECC provided a consistent Project Manager over the course of the project (as opposed to Defendant's use of three different managers), a CAD Build team, an IT team, and the involvement of an executive team through SRFECC's Command Staff. | Disputed. Flynn Dec. at ¶¶ 7, 15-16; Nelson Dec. at ¶ 11. |
| 66. | The Project Manager and Command Staff engaged in weekly calls with Defendant, provided timely responses to Defendant's requests for information, coordinated with Defendant on an agreed-upon schedule, and provided timely input on the design and use of the system. | Disputed. Flynn Dec. at ¶ 7; Nelson Dec. at ¶ 11. |
| 67. | SRFECC had qualified personnel available to be trained to use Defendant's system. | Disputed. Flynn Dec. at ¶¶ 15-17; Nelson Dec. at ¶ 11. |
| 68. | SRFECC had a full CAD Build team participate in every training and configuration event. | Disputed. Flynn Dec. at ¶¶ 15-17. |
| 69. | Each member of the Build team had a "backup" so that a full team was available at all times. | Disputed. Flynn Dec. at ¶¶ 15-17. |
| 70. | SRFECC did not receive the Replacement CAD System that Defendant contracted to provide. | Disputed. Exhibits 2, 6, 13, 14, 20, 24; Flynn Dec. at ¶¶ 9-13, 15-17, 23, 28-35, 42-58; Nelson Dec. at ¶¶ 12-13. |
| 71. | Because Defendant did not perform the contract, SRFECC has suffered the loss of the benefit of receiving the delivery, installation, implementation, and integration of the Replacement CAD System. | Disputed. Exhibits 2, 6, 13, 14, 20, 24; Flynn Dec. at ¶¶ 9-13, 15-17, 23, 28-35, 42-58; Nelson Dec. at ¶¶ 12-13. |

| | | |
|---|---|---|
| 72. | SRFECC must continue to rely for several more years (at minimum) on its Legacy COBOL CAD System, gradually exposing the SRFECC to greater risk that its CAD system will "crash" in an environment where maintenance has become increasingly difficult due to programmer retirements and sheer age of the system. | Disputed. Exhibits 2, 13, 14, 20, 24; Flynn Dec. at ¶¶ 9-13, 15-17, 23, 28-35, 42-58; Nelson Dec. at ¶¶ 12-13. |
| 73. | As a result of Defendant's breach, SRFECC will incur costs for the maintenance and upkeep of the existing Legacy COBOL CAD System in an amount that could range from $500,000 to $1,500,000. | Disputed. Exhibits 2, 6, 13, 14, 20, 24; Flynn Dec. at ¶¶ 9-13, 15-17, 23, 28-35, 42-58; Nelson Dec. at ¶¶ 12-13. |

Dated:  September 7, 2018                **K&L GATES LLP**

                                By:    /s/ Beth W. Petronio_____
                                       BETH W. PETRONIO *(admitted pro hac vice)*
                                       Attorneys for Defendant TYLER TECHNOLOGIES, INC.

Dated:  September 7, 2018                **SEGAL & ASSOCIATES, PC**

                                By:    /s/ Malcolm Segal_____
                                       MALCOLM SEGAL
                                       Attorneys for Defendant TYLER TECHNOLOGIES, INC.