Beth W. Petronio *(pro hac vice granted)*
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX  75201
Telephone:  (214) 939-5815
Fax:  (214) 939-5849
beth.petronio@klgates.com

Malcolm Segal (SBN 075481)
John T. Kinn (SBN 130270)
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA  95814
Telephone:  (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com

Attorneys for Defendant TYLER TECHNOLOGIES, INC., a Delaware Corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER,<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION,  a Surrendered California Corporation,<br><br>T             Defendant. | Case No.: 2:18-1792-KJM-KJN<br><br>**DECLARATION OF CRAIG NELSON IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>Date:         September 19, 2018<br>Time:        2:00 pm<br>Judge:      Hon. Kimberly J. Mueller<br>Courtroom:  3 |

DECLARATION OF CRAIG NELSON

501747558 v6

## DECLARATION

I, Craig Nelson, declare as follows:

1. I am the Vice President of Sales for the Public Safety Division of Defendant Tyler Technologies, Inc. ("Tyler").

2. I have personal knowledge of the statements in this declaration and, if called as a witness, I would and could testify competently thereto from personal knowledge, except as to matters stated on information and belief, which I believe to be true. Defined terms used herein have the meaning provided in Tyler's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Adjudication.

3. I have a Bachelor of Science in Accounting from the University of Santa Clara. For more than twenty-five years, I have served in a professional capacity in the public safety software industry, in either a sales or operational role. From 1985 to 1992, I was employed in sales at IBM. From 1992 to 2002, I was employed by Tiburon, Inc. During that time, I served as a Sales Representative (1992-1994), Vice President of Sales (1994-1998 and 2000-2002), and Vice President of Field Operations (1998-2000). During my time as Vice President of Sales at Tiburon, I managed the sales team and individuals with responsibility for the preparation of RFPs ("Requests for Proposals") reported to me.

4. During 2002 to 2006, I was the Vice President of Sales at VisionAIR. In that role, I managed the sales team and individuals with responsibility for the preparation of RFPs reported to me. In addition, during that time, I also spent approximately 6 months as Vice President of Operations for VisonAIR.

5. Beginning in 2006, I became employed by New World Systems Corporation. For 10 years, I served as Regional Vice President for the West division. In 2015, New World was acquired by Tyler. Since 2016, I have been the Vice President of Sales for Tyler's Public Safety Division. In that role, I manage the sales team and individuals with responsibility for the preparation of RFPs report to me. From 2006 to 2018, the teams and individuals I managed were responsible for selling New World's computer assisted dispatch ("CAD") systems and related software. The sales process

1

DECLARATION IN SUPPORT OF OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION TO VACATE THIS COURT'S AUGUST 6, 2018 MINUTE ORDER

501747558 v6

involved at least one or more of the following: attending trade shows, making outreach to clients, fielding inquires from clients, participating in procurement processes by responding to and submitting bids, coordinating software demonstrations, and helping to facilitate the contract negotiation process after being selected by the client.

6.     In 2014, I was involved in the CAD sales efforts with Plaintiff Sacramento Regional Public Safety Communication Center d/b/a Sacramento Regional Fire/EMS Communications Center ("SRFECC").  At that time, I did not have direct responsibility for RFPs, but I was aware of and am knowledgeable about the RFP that SRFECC issued, the response submitted by New World in connection with SRFECC's search for a new CAD system, and the subsequent procurement process. Copies of the RFP and New World's response are attached to SRFECC's motion as Exhibits 13 and 14, respectively.

7.     Prior to SRFECC issuing the RFP, sometime in 2013, I met with Teresa Murray, who I understood to be the Chief Executive Director for SRFECC.  I had known Ms. Murray when she was employed in a similar role in Roseville, California.  Roseville had implemented New World's CAD system, and Ms. Murray was familiar with the system's functionality, and had supervised its implementation in Roseville.  During our 2013 meeting, Ms. Murray indicated that SRFECC had been attempting for several years to replace its COBAL-based CAD system.  It is my understanding and belief that SRFECC had issued multiple prior RFPs, and had even awarded the work to at least one vendor as a result of those prior efforts, but had never actually executed a contract for a new system because there was reluctance on the part of the dispatchers to change to a new system.

8.     At my 2013 meeting with her, Ms. Murray indicated to me that SRFECC would be issuing another RFP and that she expected either New World or TriTech, a New World competitor, to win the bid.  She indicated that she was familiar with TriTech's CAD system based on an implementation in Yolo County, California.

9.     At this same meeting, Ms. Murray indicated that the SRFECC dispatchers did not want to change from their existing CAD system and were reluctant to implement a new system.  She suggested that Bob Rausch, a colleague of mine at New World who was involved in the Roseville sales effort, and I would need to help her convince the dispatchers that a new system was needed.

1 Based on her suggestion, and as a result of a meeting requested and coordinated by her, Bob and I spent two full days with the dispatchers in an effort to understand their needs and attempt to explain to them why they should upgrade their legacy system.

10. As part of this meeting, we also provided a high-level description of the New World CAD system, and explained the benefits of a commercial off the shelf, or COTS, system, like the New World CAD system. When I first reviewed SRFECC's March 2014 RFP, I noted that SRFECC had indeed described an expectation for a COTS solution, as well as functionality that aligned with at least some of the high-level descriptions Mr. Rausch and I had provided.

11. Ms. Murray also indicated to me, at this same meeting, that SRFECC had limited technical resources and knowledge. As a result, I called Bruce Kelling, the founder of Athena Networks, from Ms. Murray's office and suggested on that phone call that SRFECC hire Athena to provide technical consulting expertise. It is my understanding that SRFECC did in fact enter into a contract with Athena to assist them with certain technical aspects of moving to a new system. Later, Athena's role expanded to include consulting regarding project management.

12. On May 16, 2014, New World submitted a response to SRFECC's RFP, which provided significant details about New World's CAD system. Michael Hargrove, who reported to me, was the individual at New World who directly supervised the team providing New World's response to each of the over 2000 specific technical requests in the RFP. Kathy Fant was also responsible for coordinating the responses to the technical requests. I was generally aware of the substance of the RFP response, but did not have primary responsibility for preparing or submitting it.

13. Based on my extensive experience in the industry, it is common practice when responding to an RFP to evaluate each functional requirement in the context of industry standards, market norms and generally established client expectations. This is especially true where RFPs contain only limited language describing the technical functional requirements. At the time, New World had extensive experience implementing similar CAD systems at similar agencies across the country. New World's responses were based on its extensive experience. Nonetheless, New World's RFP Response recognized the possibility that New World's interpretation of various functional requirements might differ. As a result, New World's RFP Response (Exhibit 14 to SRFECC's

1 Motion) expressly stated: "Our response to your software specifications is based on our interpretation of each feature or requirement. Our response will be accurate in a high percentage of cases. Occasionally, however, our interpretation does not coincide with the prospect's intention. A demonstration of our software will further assure the SRFECC that New World can meet and/or exceed your requirements." Exhibit 14, p. 47.

14. Nearly 18 months passed before SRFECC awarded the project to New World and executed the contract with New World on November 6, 2015. During those 18 months, SRFECC conducted a significant amount of due diligence in order to understand the functionality of New World's CAD system. That due diligence included New World providing multiple demonstrations of the software's functionality, New World arranging for and SRFECC conducting site visits to other jurisdictions that had implemented New World's CAD system, and numerous other calls and meetings between New World and SRFECC representatives that were organized in response to follow-up inquiries from SRFECC.

15. For example, beginning on July 25, 2014, New World provided three full days of demonstrations of certain technical capabilities. These demonstrations were recorded by video. New World loaded mobile software directly onto one of SRFECC's mobile data terminals in order to do the demonstrations. We provided both SRFECC-scripted demonstrations of specific functionality and also engaged in extensive discussions regarding implementation, data conversions and interfaces. During the demonstrations, representatives of SRFECC stated that New World was the only vendor that followed SRFECC's demonstration script to the exact letter.

16. In December 2014, New World did another demonstration in order to provide clarification on specific functionality in response to follow-up questions from SRFECC. I believe this demonstration occurred via WebEx.

17. On May 18 and 19, 2015, New World did another software demonstration on-site at SRFECC in order to address technical items of specific interest to SRFECC. This session was recorded on videotape.

18. Prior to November 2015, representatives of SRFECC also visited Roseville and Kern County, which were two jurisdictions that had recently implemented New World's CAD system. It is my

4

DECLARATION OF CRAIG NELSON

501747558 v6

understanding that during these site visits, SRFECC was able to review the system's functionality as implemented in a live system. It is my understanding that numerous representatives of SRFECC, including Linda Luis, Joyce Starosciak, Matt Wooden, Wendy Crosthwaite, and Teresa Murray, had direct interaction and exchanges with individuals responsible for the New World CAD system implemented in Roseville. In addition, one of the individuals that had been directly involved in the implementation of Roseville's CAD system, Lisa Smelser, was hired by SRFECC in order to assist with SRFECC's CAD implementation.

19. In addition, on June 30, 2015, Bob Rausch and I provided several SRFECC representatives with additional demonstrations regarding New World's CAD system at New World's booth at the National Emergency Number Association (NENA) conference. My recollection is that Linda Luis, Matt Wooden and Brad Dorset were at the NENA conference on behalf of SRFECC. In August 2015, representatives of SRFECC also attended demonstrations of New World's software at the APCO International conference. I believe the SRFECC representatives that attended this event were Sara Roush, Chuck Moody, and Joyce Starosciak. During these events, SRFECC's representatives had access to New World's existing CAD clients and had the opportunity to discuss any questions regarding the technical functionality of New World's CAD system.

20. I was in attendance at the SRFECC board meeting when SRFECC announced that it was awarding the RFP to New World. At that meeting Linda Luis stated to me that "dispatch didn't vote for" New World, but that the fire chiefs wanted to go with New World. I was also later told by Teresa Murray that the fire chiefs did not want to award the bid to New World, but that Ms. Murray had convinced them to do so. While I was pleased we had been awarded the bid, I was also a bit concerned about whether New World had prevailed based on the preferences of the SRFECC executives without the support of their end users. Implementations where end users are not fully supportive often lead to "buyer's remorse" and inconsistent expectations for implementation.

21. After New World and SRFECC executed their agreement for a new CAD system on November 6, 2015, I remained involved with SRFECC in a limited role in order to help keep a positive client relationship. That is a traditional transition for me to make given my role as a sales executive.

22. After the Agreement was executed, the Tyler and SRFECC teams put together an initial project plan, which targeted a go-live date of November 6, 2017. That date was a target and not a contractually-mandated deadline. Go-live dates often change based on each individual client's unique circumstances, resource constraints and requirements, as contemplated by the Agreement.

23. As things progressed with the implementation, I learned that SRFECC began to challenge certain functionality of the system as it was being implemented. In or around December 2017, I reached out to Brian Diemer, Assistant Chief of the Roseville Fire Department, and requested that Chief Diemer broker a meeting between Tyler (by this point Tyler has purchased New World) and the SRFECC fire chiefs. I felt it would be useful to engage the fire chiefs directly because they were not typically involved in the day-to-day discussions about the system's functionality. I thought Tyler might be able to remind them about the nature of the COTS-based system they had purchased, and explain how significant the deviations that SRFECC's technical team was insisting on actually were.

24. Bryan Proctor, Greg Sebastian, and Chief Diemer and I met with Assistant Chief Maurice Johnson of the Sacramento Metropolitan Fire District and Deputy Chief Chris Costamagna of the Sacramento Fire Department in mid-to-late December 2017. At that meeting, we suggested that they participate in site visits, again, to Roseville and Kern County in order to see the software operating live. During our meeting with the chiefs, they indicated that they had lost confidence in Teresa Murray. The chiefs indicated that they would get more involved directly in the implementation. It is my understanding that the chiefs visited Roseville, but that they did not go to Kern County.

25. In addition, it is my recollection that, at that meeting, the chiefs indicated that, during the RFP selection process, Ms. Murray had tried to rush a vote through and take more control of the vote for herself and her staff, as opposed to the fire chiefs. The chiefs indicated that they had stepped into the process and redistributed how the votes were cast and counted. To me, this seemed to be in line with the comment Linda Luis made to me at the board meeting when the bid was awarded to New World. As a result, I believe that the contract was awarded to New World based on more than just the specific scoring of the technical requirements in the RFP Response done at the project-team level.

26. I understand that SFRECC has accused New World of lying to SRFECC in the New World RFP Response. I am not aware of any effort or intent by anyone at New World, including the RFP team, to mislead SRFECC or mischaracterize the functional abilities of our software. Instead, I believe that both New World and later Tyler were responsive to SRFECC's needs and attempted to provide the information requested to their best ability and based on their reasonable, good faith understanding of what was being requested.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this the 6TH day of September, 2018, at TROY, MI.

_____
CRAIG NELSON