Beth W. Petronio (pro hac vice granted)
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5815
Fax: (214) 939-5849
beth.petronio@klgates.com

Malcolm Segal (SBN 075481)
John T. Kinn (SBN 130270)
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com

Attorneys for Defendant TYLER TECHNOLOGIES, INC., a Delaware Corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER,<br><br>            Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California Corporation,<br><br>T            Defendant. | Case No.: 2:18-1792-KJM-KJN<br><br>**DECLARATION OF DAVID BONINI IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION**<br><br>Date:   September 19, 2018<br>Time:   2:00 pm<br>Judge:  Hon. Kimberly J. Mueller<br>Courtroom: 3 |

# DECLARATION

I, David Bonini, declare as follows:

1. I am a Project Manager in the Public Safety Division of Defendant Tyler Technologies, Inc. ("Tyler").

2. I have personal knowledge of the statements in this declaration and, if called as a witness, I would and could testify competently thereto from personal knowledge, except as to matters stated on information and belief, which I believe to be true.

3. I have more than 27 years of public safety experience both as a practitioner and in private industry. I have served in the roles of Project Manager, Program Manager, Operations Manager (Software Development, Project Management and Support), Public Safety Dispatcher, Community Services Officer and Jailer. I am a PMI Certified Project Management Professional.

4. Prior to my employment with Tyler, I was employed as a Program Manager in the Security Government and Infrastructure division of Hexagon Safety and Infrastructure (formerly known as Intergraph). I acted as Senior Project Manager for several large-scale, enterprise-wide projects. From September 2012 to November 2012, I served as a consultant and Project Manager for Tiburon, Inc. in its Total Command CAD/Mobile Communications/Mapping division. I also served as the General Manger of Software Operations for Data911 between 2001 and 2006. Prior to 2001, I was employed in various public safety positions with the City of Pinole, California, including 911 dispatcher.

5. I joined Tyler in the role of Project Manager in October 2016. My primary responsibility as a Project Manager is managing software implementation and upgrade projects involving Tyler's computer assisted dispatch ("CAD") software and related modules. This includes coordinating the efforts of Tyler, the client and third-party vendors, project scheduling, risk identification and mitigation, and facilitating the exchange of information between and among project teams. I have broad experience in project management, operations management, business process consulting, quality assurance and change management.

6. In July 2017, I became the Project Manager in connection with Plaintiff Sacramento Regional Public Safety Communication Center d/b/a Sacramento Regional Fire/EMS Communications Center's ("SRFECC") implementation of Tyler's CAD system. Prior to that time, the project manager had been Jim Lucas. Mr. Lucas had significant experience in major project implementations of this nature, but it was my understanding that neither SRFECC nor Mr. Lucas felt encouraged by the state of their working relationship. Tyler offered to change project managers from Mr. Lucas to me in an effort to be a good partner and help the project continue in a productive way.

7. When I joined the project, SRFECC and Tyler had been working on the implementation of the CAD system for approximately 18 months. Shortly before I joined, SRFECC had started challenging particular aspects of the project. My primary responsibility when I took over as Project Manager was to process SRFECC's concerns and to move the project forward in an efficient and effective manner. To do so, I participated in regular in-person and telephone meetings with representatives of SRFECC. We frequently met multiple times daily and/or weekly and were in regular contact over the course of the next five months. I viewed my role, in part, to be a neutral messenger between SRFECC and Tyler. My goal was not to challenge SRFECC, but instead to take their feedback and deliver it to the appropriate representatives at Tyler, and vice versa.

8. In early August 2017, shortly after I took over as Project Manager, SRFECC's project manager, Diane House, sent me a spreadsheet that included 2065 line items that represented the technical specifications from SRFECC's Request for Proposal ("RFP") issued in March 2014. That spreadsheet is attached to SRFECC's Motion as Exhibit 24. At the time, based on the email Ms. House sent with the spreadsheet (Exhibit 22), SRFECC was taking the position that only 571 of the line items complied with the RFP, 508 were "failures," 205 required testing, and 107 required additional mobile configuration to determine compliance.

9. Following receipt of this document, and for the next several months, I participated in multiple meetings with Ms. House and other representatives of SRFECC to discuss the technical requirements on this list. As part of those efforts, I spent three weeks on site at SRFECC going

1 through each technical requirement in detail. In addition, I typically participated in project calls with
2 other individuals from Tyler and representatives of SRFECC at least twice a week.

3 10. During those discussions, SRFECC agreed that a large number of the 508 items that had been
4 originally identified as "failures" were not, in fact, "failures." I continued to discuss other items on
5 the list with Ms. House and others at SRFECC. Tyler adopted the term "Fail," "Failed" or "Failure"
6 because that was the term SRFECC employed. I was aware that other representatives of Tyler,
7 including Larry Piper and Kevin Flynn, told SRFECC that Tyler did not agree with SRFECC's
8 characterizations of specific items as "Fails," and did not believe that SRFECC's interpretation of
9 the technical requirements was industry standard, required by the RFP, or mandated by the parties'
10 Agreement.

11 11. The parties' disagreements and ongoing discussions are documented on the various versions
12 of the spreadsheet attached to SRFECC's Motion. The exchanges were even more numerous than
13 what is reflected in those exhibits, but the exhibits are representative of the back-and-forth engaged
14 in by the parties  Those spreadsheets contain numerous comments from both parties regarding the
15 technical requirements and frequently establish that the parties' interpretations of the technical
16 requirements were different, and that Tyler disagreed with SRFECC's classifications.

17 12. It was clear to me that Tyler only came to understand—and could only have come to
18 understand—SRFECC's interpretation of the RFP requirements at issue through these extensive
19 exchanges of information and additional perspective. Although Tyler disagreed with SRFECC's
20 interpretations of what the Agreement required, Tyler agreed to provide SRFECC with certain
21 additional functionality in order to appease our customer. In instances where we agreed to provide
22 the specific functionality, we did not dispute SRFECC's listing of these items as "Fails" because the
23 issue was being addressed by providing additional enhancements or development. Tyler did not
24 believe that these enhancements were required by the parties' Agreement, but agreed to provide
25 them nonetheless.

26 13. During a number of my meetings with Ms. House and others, I requested that SRFECC
27 prioritize the specific functionality that it deemed to be most important so that Tyler could address
28 those issues first.

3
DECLARATION OF DAVID BONINI

501772458 v6

14. On December 7, 2017, Tyler's Kevin Flynn presented a PowerPoint to SRFECC that attempted to address the outstanding items on SRFECC's spreadsheet that remained in dispute between the parties. That PowerPoint is Exhibit 5 to SRFECC's Motion. It was my understanding that Tyler's development team and various individuals that reported to Mr. Flynn discussed and analyzed each of the technical requirements with representatives of SRFECC.

15. On December 13, 2017, I had another call with Ms. House to again review SRFECC's spreadsheet of technical requirements. At that time, SRFECC was taking the position that 239 RFP items had failed. I allowed SRFECC to characterize any item it wanted to as a "Fail" and did not try to talk SRFECC out of that position. I did not, however, state that Tyler agreed that the 239 were fails. After permitting SRFECC to list any item they wanted as a "Fail" on their spreadsheet, I would ask how Tyler could address the issue. By doing so, I was merely permitting the client to categorize the items in whatever way it wanted. I was not agreeing to that characterization or admitting that Tyler could not or had not complied with the parties' Agreement. Indeed, at least SRFECC's own Exhibit 25 reflects the various categories the items were grouped into based on Tyler's insistence that SRFECC's "Fail" designation did not equate to a single meaning. Instead, Tyler insisted that many "Fail" items represented, for example, warranty issues that would be addressed prior to go-live, or functionality that Tyler provided but that SRFECC wanted to function in another way.

16. During these discussions with Ms. House, we discussed the 34 items that had been identified in Mr. Flynn's PowerPoint as being in "non-compliance" with the RFP. For five of those items, Ms. House admitted that New World had only marked those RFP requirements as "Partially Comply" or "Substitute." As a result, Ms. House admitted those 5 items would not be considered "Fails."

1 | I declare under penalty of perjury under the laws of the State of California that the foregoing is true
2 | and correct.
3 | Executed this the __6__ day of September, 2018, at __PINOLE, CA__

_____
DAVID BONINI