PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (SBN 54752)
philip.warden@pillsburylaw.com
CLARK THIEL (SBN 190212)
clark.thiel@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:  415-983-1000
Facsimile:  415-983-1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
SYDNEY A. WARD (SBN 312615)
sydney.ward@pillsburylaw.com
2600 Capitol Avenue, Suite 300
Sacramento, CA 95816-5830
Telephone:  916-329-4700
Facsimile:  916-441-3583

KINGSLEY BOGARD, LLP
ROBERT E. KINGSLEY (SBN 59596)
Prosecuting Authority for Plaintiff
rkingsley@kblegal.us
600 Coolidge Drive
Suite 160
Folsom, CA 95630
Telephone:  916-932-2500

Attorneys for Plaintiff SACRAMENTO REGIONAL
PUBLIC SAFETY COMMUNICATIONS CENTER
D/B/A SACRAMENTO REGIONAL FIRE/EMS
COMMUNICATIONS CENTER

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California corporation<br><br>Defendant. | Case No.  2:18-cv-01792-KJM-KJN<br><br>OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE<br><br>Date:  September 19, 2018<br>Time:  10:00 a.m.<br>Courtroom:  3<br>Judge:  Hon. Kimberly J. Mueller |

1

**TABLE OF CONTENTS**

2
**Page**

3   I.   INTRODUCTION ...........................................................................................................1

4   II.  LEGAL STANDARD.....................................................................................................1

5        A.   Legal Standard for a Rule 12(b)(6) Motion to Dismiss Allegations Subject to
             Federal Rule of Civil Procedure 8. ....................................................................1
6

7        B.   Legal Standard for a 12(b)(6) Motion to Dismiss Allegations of Fraud Subject
             to Federal Rule of Civil Procedure 9(b)...........................................................2

8        C.   Legal Standard for a 12(f) Motion to Strike .....................................................2

9   III. ARGUMENT .................................................................................................................3

10       A.   The Court should disregard the factual matter pleaded by Plaintiff. .............3

11       B.   The complaint pleads sufficient facts to state a plausible claim for relief and
             cognizable legal theory. ....................................................................................4
12
            1.   The complaint adequately pleads a claim for breach of contract (First
13               Cause of Action). .................................................................................4

14          2.   The complaint adequately pleads a claim for fraud (Third Cause of
                 Action). ...............................................................................................8
15
               a.   Plaintiff adequately alleges that Defendant make a false
16                  representation. ..........................................................................8

17             b.   The Complaint adequately alleges that Defendant knew its
                    representations were false when they were made and intended to
18                  deceive Plaintiff in making the representations. ...................12

19          3.   The complaint adequately pleads a claim for violation of the False
                 Claims Act (Fourth Cause of Action). ..............................................13
20
            4.   The complaint adequately pleads a claim for violation of the UCL
21               (Second Cause of Action). .................................................................17

22       C.   The motion to strike should be denied because the allegations in the complaint
             are not scandalous or impertinent. .................................................................19
23
     IV.  CONCLUSION.............................................................................................................20
24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

## <u>Cases</u>

3

4

*Allison v. Cal. Adult Auth.*,
   419 F.2d 822 (9th Cir. 1969) ................................................................. 13

5

6

*Amini Innov. Corp. v. McFerran Home Furnishings, Inc.*,
   301 F.R.D. 487 (C.D. Cal. 2014) ............................................................ 3

7

8

*Arpin v. Santa Clara Valley Transp. Agency*,
   261 F.3d 912 (9th Cir. 2001) .............................................................. 2, 4

9

*ASARCO, LLC v. Union Pac. R.R. Co.*,
   765 F.3d 999 (9th Cir. 2014) ......................................................... 2, 7, 11

10

11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 1

12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................. 1

13

14

*City of Pomona v. Superior Court*,
   89 Cal. App. 4th 793 (2001) ........................................................... 14, 15

15

16

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ............................................................... 10

17

*Cortina v. Goya Foods, Inc.*,
   94 F. Supp. 3d 1174 (S.D. Cal. 2015) ................................................... 20

18

19

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ............................................................ 2, 7

20

21

*Del Puerto Water Dist. v. U.S. Bureau of Reclamation*,
   271 F. Supp. 2d 1224 (E.D. Cal. 2003) ........................................... 4, 7, 20

22

*Epstein v. Washington Energy Co.*,
   83 F.3d 1136 (9th Cir. 1996) ............................................................... 11

23

24

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ............................................................................ 2, 7

25

26

*Ferguson v. JPMorgan Chase Bank, N.A.*,
   No. 2:14-CV-00328, 2014 WL 2118527 (E.D. Cal. 2014) .......................... 7

27

*Freeman v. ABC Legal Servs., Inc.*,
   877 F. Supp. 2d 919 (N.D. Cal. 2012) .................................................... 3

28

-ii-

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984) ...................................................................................................... 1

*In re 2TheMart.com, Inc. Securities Litigation*,
    114 F. Supp. 2d 955 (C.D. Cal. 2000) ................................................................... 2, 3

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994), *superseded by statute on other grounds as stated in*
    *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) .................................................... 9, 10

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) ................................................................................................. 8

*London v. Wells Fargo Bank, N.A.*,
    2018 WL 621262 (E.D. Cal. 2018) ............................................................................ 19

*Los Angeles Memorial Coliseum Committee v. Insomniac, Inc.*,
    233 Cal. App. 4th 803 (2015) .............................................................................. 16, 17

*Mack v. South Bay Beer Distributors*,
    798 F.2d 1279 (9th Cir. 1986) ..................................................................................... 7

*McMillan v. Lowe's Home Ctrs., LLC*,
    No. 1:15-CV-00695, 2016 WL 2346941 (E.D. Cal. 2016).......................................... 12

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ..................................................................................... 12

*Oracle Amer., Inc. v. Micron Tech., Inc.*,
    817 F. Supp. 2d 1128 (N.D. Cal. 2011) ................................................................. 3, 20

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)...................................................................................................... 7

*Quigley v. Am. Claims Services, Inc.*,
    No. 2:13-cv-01766, 2014 WL 258844 (E.D. Cal. 2014) ..................................... passim

*S.E.C. v. Sands*,
    902 F. Supp. 1149 (C.D. Cal. 1995) ............................................................................ 3

*Salazar v. Honest Tea, Inc.*,
    74 F. Supp. 3d 1304 (E.D. Cal. 2014)........................................................................ 10

*San Francisco Unified Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc.*,
    182 Cal. App. 4th 438 (2010) .............................................................................. 14, 15

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ..................................................................................... 7

-iii-

*Sierra View Local Health Care District v. Influence Health, Inc.*,
 No. 1:15-cv-00689, 2017 WL 220304 (E.D. Cal. 2017) ............................................. 17

*Starr v. Baca*,
 652 F.3d 1202 (9th Cir. 2011) ...................................................................... 1, 2

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
 245 F.3d 1048 (2001)........................................................................................ 10

*U.S. v. Bourseau*,
 531 F.3d 1159 (9th Cir. 2008) ........................................................................ 14

*United States v. Center for Emp. Training*,
 No. 2:13-cv-01697, 2016 WL 4210052 (E.D. Cal. 2016) ............................... 7

*Usher v. City of Los Angeles*,
 828 F.2d 556 (9th Cir. 1987) ........................................................................... 2

*Vincent v. PNC Mortg., Inc.*,
 2014 WL 2766116 (E.D.Cal. 2014)......................................................... 5, 6, 19

*Whittlestone, Inc. v. Handi-Craft Co.*,
 618 F.3d 970 (9th Cir. 2010) ........................................................................... 2

*Wilkerson v. Butler*,
 229 F.R.D. 166 (E.D. Cal. 2005) .................................................................... 19

**<u>Statutes</u>**

California Government Code
 Section 6500.................................................................................................. 16
 Section 6502.................................................................................................. 16
 Section 12650 ("California False Claims Act").............................. 13, 14, 15, 16
 Section 12650(b)(6) ...................................................................................... 15
 Section 12650(b)(8) ...................................................................................... 17

**<u>Other Authorities</u>**

Federal Rules of Civil Procedure
 Rule 8 ............................................................................................................ 1
 Rule 9 ........................................................................................................ 2, 12
 Rule 9(b) ........................................................................................ 2, 10, 14, 18
 Rule 10(c)....................................................................................................... 2
 Rule 12(b)(6)................................................................................................... 1
 Rule 12(f) ....................................................................................................... 2

1    Plaintiff, the Sacramento Regional Public Safety Communications Center d/b/a Sacramento

2    Regional Fire/EMS Communications Center ("SRFECC") hereby submits its Opposition to

3    Defendant's Motion to Dismiss and Motion to Strike the Complaint filed by Defendant Tyler

4    Technologies, Inc. ("Defendant," "Tyler," or "New World").

5    **I.    INTRODUCTION**

6    Plaintiff filed its Complaint on June 22, 2018 ("Complaint").  Plaintiff filed a Motion for

7    Partial Summary Adjudication on its breach of contract claim and the element of false representation

8    of its fraud claim on July 27, 2018 ("MPSA").  The following week Defendant filed the instant

9    motion to dismiss for failure to state a claim and motion to strike "impertinent and scandalous"

10   material from the Complaint ("MTD").  On its own motion, the Court scheduled the hearings for

11   both motions to occur on the same day.

12   **II.   LEGAL STANDARD**

13   **A.    Legal Standard for a Rule 12(b)(6) Motion to Dismiss Allegations Subject to
            Federal Rule of Civil Procedure 8.**

14   The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded support a

15   plausible claim for relief.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "[This]

16   does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-

17   unlawfully-harmed-me accusation" or "formulaic recitation[s] of the elements of a cause of action."

18   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  The complaint must contain

19   "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

20   defend itself effectively" and when "taken as true must plausibly suggest an entitlement to relief."

21   *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

22   Accordingly, testing the sufficiency of the complaint is a "context-specific task that requires

23   the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  The inquiry

24   "focuses on the interplay between the factual allegations of the complaint and the dispositive issues

25   of law in the action."  *Quigley v. Am. Claims Services, Inc.*, No. 2:13-cv-01766, 2014 WL 258844, at

26   *2 (E.D. Cal. 2014) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

27   In making this "context-specific evaluation," the court "'must presume all factual allegations

28   of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party.'"  *Id.*

-1-

1  (quoting *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)); *see also Erickson v.*
2  *Pardus*, 551 U.S. 89, 94 (2007); *Starr*, 652 F.3d at 1216-17.
3       The court cannot consider matters outside the pleadings in ruling on a 12(b)(6) motion, with
4  limited exceptions.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.
5  2001).  The court can augment the facts from the body of the complaint with documents
6  incorporated by reference into the complaint, matters of public record, and facts susceptible to
7  judicial notice.  *See* Fed. R. Civ. Proc. 10(c); *Quigley*, 2014 WL 258844 at *2 n.2; *Coto Settlement v.*
8  *Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d
9  999, 1008-09 n.2 (9th Cir. 2014).

10       **B.   Legal Standard for a 12(b)(6) Motion to Dismiss Allegations of Fraud Subject to**
          **Federal Rule of Civil Procedure 9(b).**
11
12       Allegations of fraud are subject to a higher standard and must be pleaded with particularity to
13  survive a motion to dismiss under 12(b)(6).  *See* Fed. R. Civ. Proc. 9(b).  Under Rule 9(b), a
14  complaint alleging fraud or mistake "must state with particularity the circumstances constituting the
15  fraud."  *See Quigley*, 2014 WL 258844 at *4.  The complaint must "be specific enough to give
16  defendants notice of the particular misconduct . . . so that they can defend against the charge and not
17  just deny that they have done anything wrong."  *Id.*  The heightened pleading standard does not
18  apply to allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind," (Fed.
19  R. Civ. Proc. 9), which may be alleged generally.  *Quigley*, 2014 WL 258844 at *4.

20       **C.   Legal Standard for a 12(f) Motion to Strike**
21       A motion to strike under Rule 12(f) may be made to have stricken from a pleading "an
22  insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  F.R.C.P.
23  12(f).  The allegations to be struck must fit one of the specified categories.  *See Whittlestone, Inc. v.*
24  *Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010) (e.g., Rule 12(f) does not authorize district
25  courts to strike claims for damages on the ground that such claims are precluded as a matter of law).
26  "Impertinent" has been defined as "allegations that are not responsive or irrelevant to the issues that
27  arise in the action and which are inadmissible as evidence."  *See In re 2TheMart.com, Inc. Securities*
28  *Litigation*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).  "'Scandalous' includes allegations that cast a

-2-

cruelly derogatory light on a party or other person." *See id.*[1]

"Courts generally disfavor motions to strike because striking is such a drastic remedy." *See Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012) (motions to strike are infrequently granted). Accordingly, motions to strike "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Oracle Amer., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1131-32 (N.D. Cal. 2011) (quotations omitted). "A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Id.* The court must view the pleading under attack in the light more favorable to the pleader when ruling upon a motion to strike, and the grounds for the motion to strike must appear on the face of the pleading or from matter which the court may judicially notice. *See Amini Innov. Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 489 (C.D. Cal. 2014); *S.E.C. v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995).

## III.    ARGUMENT

### A.    The Court should disregard the unsupported factual matter pleaded by Plaintiff.

The first seven pages of Defendant's Motion to Dismiss contain unsupported factual allegations that are not proper for consideration on a motion to dismiss. *See, e.g.,* Compl. 1:17-25 (claiming that Defendant "followed a commercially reasonable process to address the functional line items in context and consistent with industry practices" and "used that framework to provide accurate information regarding whether its CAD system complied with the stated requirements," some of which used "just one word" to describe the functionality); *id.* 2:10-13 (claiming that Defendant only came to understand that a "small subset" of thousands of line items and "interpreted and understood" a description differently during implementation and that SRFECC "insisted on enhancements and development work that were outside of the Agreement"); *id.* 3:21-4:2 (claiming, without support or explanation, that Defendant "exercised commercially reasonable efforts to respond to each line item of the RFP based on the information provided and well-known [but unidentified] industry standards"); *id.* 6:5-10 (claiming that SRFECC began to take the "categorical

---

[1] Defendant does not contend that the allegations are immaterial or constitute an insufficient defense. Accordingly, Plaintiff will not address the legal standard for striking such allegations here.

1  position that numerous RFP items were fails" and that it had expectations that went "beyond

2  industry standards" and "exceeded the requirements" of the RFP); *id.* 6:17-19 (asserting that the

3  parties had not reached agreement on the failed RFP requirements and that Tyler remained willing to

4  implement a CAD system that complied with the Agreement); *id.* 7:19-22 (asserting that the decision

5  not to go live was entirely SRFECC's based on "its unilateral and unyielding assessment of software

6  functionality" that inappropriately focused on trivial requirements).  Not only are these statements

7  unsupported by anything in the complaint or the record, but many of them are false.

8  These unsupported statements should not be considered in evaluating the sufficiency of the

9  complaint.  Unless the court treats a motion to dismiss as one for summary judgment, extraneous

10  evidence should not be considered in ruling on a motion to dismiss.  *See Arpin v. Santa Clara Valley*

11  *Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001); *see also Del Puerto Water Dist. v. U.S. Bureau*

12  *of Reclamation*, 271 F. Supp. 2d 1224, 1233 n.4 (E.D. Cal. 2003) (material outside the complaint,

13  e.g., facts presented in briefs, affidavits or discovery materials, cannot be considered on a motion to

14  dismiss unless the court converts the 12(b)(6) motion into a summary judgment motion).  If the

15  Court were to treat Defendant's motion as one for summary judgment, Defendant would not be

16  entitled to relief because Defendant provides no evidence in support of its arguments.

17  **B.   The complaint pleads sufficient facts to state a plausible claim for relief and cognizable legal theory.**

18
19  **1.   The complaint adequately pleads a claim for breach of contract (First Cause of Action).**

20  Plaintiff sufficiently states a claim for breach of contract.  Plaintiff properly alleges the

21  existence of a contract, its own performance under the contract, that Defendant breached the

22  contract, and that as a result of Defendant's breach, Plaintiff suffered damages.  Specifically, the

23  Complaint contains the following allegations:

24  - Plaintiff issued a Request for Proposal for bids from software vendors that could design,

25  deliver, install, implement, and integrate a Replacement CAD System and awarded the

26  contract to Defendant as the winning bidder.  Compl. ¶¶ 3-4, 20, 21.

27  - Defendant agreed to provide services and furnish licensed products, computer software and

28  documentation, for the design, delivery, installation, implementation, and integration of a

Replacement CAD System pursuant to a Software License and Services Agreement.  *Id.* ¶ 4.
The parties entered the Agreement on or around November 6, 2015.  *Id.* ¶¶ 5-7, 23, 37.

- As required under the Agreement, the parties established a Project Management Plan (the "GANTT Chart") in accordance with Exhibit D of the Agreement.  *See id.* ¶ 24.  The GANTT Chart is an exhibit to the Complaint, and sets November 6, 2017 as the date the system would "Go-Live."  *See id.* ¶¶ 24-25, Exh. 4 p.95.  Section 1.2 of the Agreement requires the parties to strictly adhere to the timeline set forth in the GANTT Chart.  Compl. Exh. 2 p.25.

- The "Go-Live" date was cancelled, Compl. ¶ 27, and when Plaintiff sought assurances that Defendant would complete the Project in a timely manner, Defendant informed Plaintiff that it would take 17-22 years after the agreed-upon date to deliver a partial version of the system Defendant had contracted to provide.  *See id.* ¶¶ 7, 27-28, 31-33.

- Plaintiff has paid $2,128,393.26 under the Agreement and did not receive the Replacement CAD system that Defendant contracted to provide.  *Id.* ¶¶ 7, 38-46.  In addition, Defendant failed to meet agreed-upon milestones or to provide timely monthly status reports.  *Id.* ¶¶ 7, 25.  Representatives for Defendant and Plaintiff agreed that there were at least 239 items that Defendant's system failed to meet.  *Id.* ¶ 29, Exh. 6.

- SRFECC has incurred damages, including incurring costs associated with implementing the agreement and seeking to enforce it and costs for continued maintenance of its current system, and anticipated costs to obtain a replacement. *Id.* ¶ 47.

These allegations set forth facts in support of each element of breach of contract and therefore sufficiently assert a plausible claim for relief.  *See Vincent v. PNC Mortg., Inc.*, No. 14-cv-00833, 2014 WL2766116 *5-6 (E.D. Cal. 2014).

Defendant argues that the Complaint does not adequately allege breach because it "merely states that Tyler submitted invoices 'despite having knowledge that it was not capable of completing the Project in a timely manner.'"  MTD 18:12-15.  Plaintiff is not sure why Defendant singled out this paragraph as a deficient statement of "breach," since that paragraph of the Complaint is not directed at the element of breach per se, but rather to the elements of Plaintiff's performance and

injury and to Defendant's bad faith.

The Complaint contains numerous other allegations that relate to the element of breach.  For example, the paragraph immediately following the allegation cited by Defendant states that "SRFECC has paid Defendants $2,128,393.26 and has not yet received the Replacement CAD System that Defendants contracted to provide."  Compl. ¶ 46.  The Complaint alleges the purpose of the agreement (to provide services and furnish licensed products, computer software and documentation for the design, delivery, installation, implementation, and integration of a Replacement CAD System (*id.* ¶ 4)), alleges that the Replacement CAD System was not provided (*id.* ¶ 46), and identifies specific items that Defendant agreed its system did not meet (*id.* ¶¶ 28-30, Exhs. 28-30).  The exhibits to the Complaint set out the numerous items that Defendant *agrees* its system did not meet by the Go-Live date.  *See id.* ¶¶ 28-30, Exh. 5 (PowerPoint presentation created by Defendant, admitting numerous failures); Exh. 6 (spreadsheet jointly created by Defendant and Plaintiff enumerating agreed-upon fails); Exh. 7 (document created by Plaintiff identifying items from Exhibit 6 that were falsely marked "Fully Comply" in Defendant's Response to the RFP).

Defendant next argues that the Complaint is insufficient because it does not point to any specific section of the Agreement that has allegedly been breached.  Defendant cites to no authority that holds that a breach of contract claim must point to specific provisions of a contract to withstand a motion to dismiss.[2]  But this line of argument is even more specious given that at the time Defendant filed its motion to dismiss, Plaintiff had already filed a motion for partial summary adjudication (ECF No. 10) that sets forth in detail the legal and evidentiary basis for its breach of contract claim, including specific provisions of the contract.[3]

Even if the Court were to find that the allegations in the Complaint were deficient, the Court can properly consider both this Opposition and the other filings on record in this case to supplement

---

[2] Indeed, the case law is to the contrary.  *See Vincent v. PNC Mortg., Inc.*, 2014 WL 2766116, at *6 (E.D.Cal. 2014) (breach was adequately alleged even when contract was not specifically identified in the complaint and was not attached as an exhibit where the allegations described the breaches claimed).

[3] Moreover, the Complaint does allege breach of specific provisions.  For example, the Complaint alleges that the Agreement incorporated Defendant's Response to the Request for Proposal.  *See* Compl. ¶ 22.  The Complaint also alleges that Defendant admitted that its system did not conform to at least 239 of the technical requirements in the RFP.  *Id.* ¶ 29.

-6-

1  the allegations in the Complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (courts may

2  consider later filings and exhibits in deciding whether a pleading withstands a motion to dismiss);

3  *Pegram v. Herdrich*, 530 U.S. 211, 230 (2000) (Plaintiff's briefing can clarify allegations in

4  complaint); *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041-42 (9th Cir. 2010)

5  (same); *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1037 (9th Cir. 2010) (court may

6  consider materials incorporated into the complaint or matters of public record on a motion to

7  dismiss); *see ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1008 n.2 (9th Cir. 2014)

8  (document filed with bankruptcy court can be considered on a motion to dismiss because it is a

9  publicly available record); *Ferguson v. JPMorgan Chase Bank, N.A*., No. 2:14-CV-00328, 2014 WL

10  2118527, at *4 (E.D. Cal. 2014) (court can consider documents on record in the pending action

11  without taking judicial notice); *Del Puerto Water Dist.*, 271 F. Supp. 2d at 1232-34 (a court may

12  consider pleadings, orders, and other papers filed with the court or records of administrative bodies

13  on a motion to dismiss) (citing *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir.

14  1986).[4]

15      Therefore, to the extent Defendant claims it "genuinely is left to guess how it breached the

16  agreement," Plaintiff specifically points it to the Motion for Partial Summary Adjudication in its

17  entirety (which was on file before Defendant filed the instant motion), and specifically directs its

18  attention to Part V, Section A, Subsection 3, where it explains that Defendant breached the

19  agreement to provide software by November 6, 2017 that complied with the technical requirements

20  designated "Fully Comply" in the Responses to the RFP.  ECF No. 10-13.  The Undisputed Facts

21  likewise specifically identify provisions of the Agreement breached by Defendant.  *See* ECF No. 10-

22  1, UF Nos. 21-32 (noting that Defendant violated Sections 1.2-1.3, 4.1, 6.2, the Recitation on p. 3,

23  and Exhibit N, incorporating its responses to the RFP).

24      Defendant does not argue that Plaintiff has not sufficiently alleged any other element of its

25  breach of contract claim.  Accordingly, Defendant's motion to dismiss for failure to state a claim for

26

27  _____

[4] The court can also consider material not filed with the complaint if its authenticity is not contested

28  and the complaint relies on it.  *See United States v. Center for Emp. Training*, No. 2:13-cv-01697, 2016 WL 4210052 *2 (E.D. Cal. 2016) (the court need not take judicial notice of documents referenced in the complaint to consider them on a motion to dismiss).

breach of contract should be denied.

**2.    The complaint adequately pleads a claim for fraud (Third Cause of Action).**

To plead a claim for fraud, a plaintiff must state with particularity the circumstances constituting the fraud. *Quigley*, 2014 WL 258844 at *5. In California, a claim for fraud consists of the following elements:

> (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5) the plaintiff suffered resulting damages.

*Id.* (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)). Defendant contends that Plaintiff failed to adequately allege the first three elements of its fraud claim.

**a.    Plaintiff adequately alleges that Defendant make a false representation.**

Defendant argues that the Complaint conclusorily alleges that the 172 RFP technical requirements identified in Exhibit 7 were misrepresented as "Fully Comply." *See* MTD 9:7-9. Defendant contends that in order to state a claim for fraud, Plaintiff must allege "precisely what it contends each line item meant and why a response of 'Fully Comply' was false" and must explain the context of what the definition of "Fully Comply" meant and why ongoing development efforts would not "make" responses fully accurate. *See* MTD 9:12-15.

First, Plaintiff does allege exactly what the definition of "Fully Comply" meant in the RFP. Paragraph 55 explains:

> The RFP identified and specifically described the features and functions ("Technical Requirements") of the Replacement CAD System and sought assurances that the vendor would deliver a CAD system meeting those Technical Requirements. Each bidder was required to specify, concerning each requirement, whether its Licensed Software was Fully Comply, Partially Comply, Comply with Modifications, Comply in Future, Substitution, or Exception. **A response of "Fully Comply" meant that the vendor's Licensed Standard Software currently provided the feature (or functions as described), and had been in use at existing client locations for a period of at least one (1) year from the date of proposal submission, not in beta testing.**

Compl. ¶ 55 (emphasis added). Defendant's representations in the RFP concerned existing or past

-8-

facts, not representations regarding what it would do in the future.

Defendant's argument that Plaintiff must plead what each technical requirement meant to state a claim for fraud likewise lacks merit.  The Complaint identifies each misrepresentation by technical requirement number (Compl. ¶¶ 28-30, 64-65, Exh. 7);[5] and it alleges that the response "Fully Comply" was false because Defendant's system did not "Fully Comply," meaning that Defendant's system did not "currently provide[] the feature (or functions as described), and had [not] been in use at existing client locations for a period of at least one (1) year from the date of the proposal submission, not in beta testing" (*id.* ¶¶ 55, 59), and instead, Defendants would need "to modify and/or create new software programs to provide features which Defendants had earlier Warranted (certified) to SRFECC as already in existence (at existing clients) for over a year's time prior to Defendants' RFP submittal" (*id.* ¶ 27).

The case cited by Defendant, *GlenFed*, demonstrates the sufficiency of these allegations.  *See* MTD 8:24-9:5.  In *GlenFed*, the court sought to illustrate how the "requisite particularity might be supplied with great simplicity" by presenting the following hypothetical:

> [A] plaintiff might allege that he bought a house from defendant, that defendant assured him that it was in perfect shape, and that in fact the house turned out to be built on landfill . . . plaintiff could simply set forth these facts (presumably along with time and place), allege scienter in conclusory fashion, and be in compliance with Rule 9(b).  We agree that such a pleading would satisfy the rule.  Since 'in perfect shape' and 'built on landfill' are at least arguably inconsistent, plaintiff would have set forth the most central 'circumstance constituting fraud' – namely that what defendant said was false.  Notably, the statement would have been just as false when defendant uttered it as when plaintiff discovered the truth.  The house was *always* defective because it was *always* built on landfill.

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 428-29 n.6 (9th Cir. 2001) (Private Securities Litigation Reform Act altered pre-Act pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter).  Here, like the hypothetical house in *GlenFed*, Defendant's software is built on a landfill – that is, whereas Defendant represented that its existing software provided certain functions and features described in

---

[5] The text of each technical requirement in the RFP is set forth in Exhs. 13 and 14 to Plaintiff's Motion for Partial Summary Adjudication (ECF No. 10-5).

1    Defendant's response to the RFP, in actuality it did not possess such software and would need "to

2    modify and/or create new software programs to provide features which Defendants had earlier

3    Warranted (certified) to SRFECC as already in existence (at existing clients) for over a year's time

4    prior to Defendants' RFP submittal" (Compl. ¶ 27). In essence, our hypothetical seller sold a house

5    that it did not in fact possess.

6          Plaintiff has identified where the misrepresentations appear (*see, e.g., id.* ¶¶ 56, 59),

7    including the specific RFP numbers corresponding to the misrepresentations (*see, e.g., id.* ¶¶ 30, 64-

8    65, Exh. 7), when the misrepresentations were made (*see, e.g., id.* ¶¶ 56, 59), and the basis for its

9    claim that the misrepresentations were false (*see, e.g., id.* ¶¶ 30, 64-65, Exh. 7) (Defendant

10   represented that its Licensed Standard Software, in use at existing client locations for a period of at

11   least one year prior to its response to the RFP, met at least 172 technical requirements that it later

12   admitted its software did not meet).  This is sufficient to plead a claim for fraud.  *See, e.g., Salazar v.*

13   *Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1316 (E.D. Cal. 2014) (denying motion to dismiss where

14   complaint identifies the misrepresentations, the basis for the claim of misrepresentation, where the

15   misrepresentations appear, and the relevant time period the representations were made).

16         Defendant contends, without support, that Plaintiff must plead the technical explanation for

17   how Defendant's software failed to meet each of the 172 technical requirements.  Defendant

18   provides no legal support for this argument.[6]  Additionally, Defendant ignores the fact that the

19   Complaint alleges that Defendant has acknowledged and does not dispute that its software does not

20   meet each of the 172 technical requirements set forth in Exhibit 7.  *See* Compl. ¶¶ 28-30, 64-65, Exh.

21   7.  Indeed, Defendant falsely contends that "Tyler and SRFECC disagreed regarding whether most

22

23   [6] Indeed, Defendant cites a case that expressly rejects such reasoning.  *See U.S. ex rel. Lee v.*
     *SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (2001) (holding that Rule 9(b) does not require
     plaintiff to allege, in detail, all facts supporting each and every instance of falsified laboratory
24   testing; rather, the complaint must be specific enough to give defendants notice of the particular
     misconduct alleged to constitute the fraud charged so that they can defend against the charge and not
25   just deny they have done anything wrong, suggesting that plaintiff could satisfy such requirements
     by describing the types of tests implicated in the alleged fraud, employees who performed the tests,
26   or providing details on dates, times, or places the tests were conducted) (citing *Cooper v. Pickett*,
     137 F.3d 616, 627 (9th Cir. 1997) (Where complaint asserting claims of improper revenue
27   recognition identified (i) some of the specific customers defrauded, (ii) the type of conduct at issue,
     (iii) the general time frame in which the conduct occurred, and (iv) why the conduct was fraudulent,
28   it was 'not fatal to the complaint that it [did] not describe in detail a single specific transaction . . . by
     customer, amount, and precise method.')).

1   of the 172 line items that are the subject of SRFECC's Complaint were actually compliant or not."

2   *See* MTD 9:20-21.  This assertion contradicts the Complaint, which alleges that Defendant's

3   representative David Bonini met with Plaintiff's representative Diane House, and together they

4   concluded that Defendant's system failed to meet the 239 items in Exhibit 6.  Compl. ¶ 29.  These

5   items include the 172 items that were falsely marked "Fully Comply."  *Id.* ¶ 30.  The Court should

6   disregard Defendant's unsupported factual assertions, particularly where they dispute the allegations

7   of the Complaint, which must be accepted as true on a motion to dismiss, and must resolve any

8   ambiguity in Plaintiff's favor.  *See ASARCO*, 765 F.3d at 1008-09; *Epstein v. Washington Energy*

9   *Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

10          Defendant identifies a few one-word descriptors from Exhibit 6 and argues that these

11   statements cannot constitute a basis for fraud because there is not sufficient context to identify what

12   is false about Defendant's response to those descriptors.  *See* MTD 10:1-11:21.  First, Plaintiff points

13   out that Exhibit 7 is the document that identifies the technical requirements falsely marked "Fully

14   Comply," whereas Exhibit 6 is the list of all the technical requirements identified to date that

15   Defendant's representative agrees are failed items.  *See* Compl. ¶¶ 29-30.  Secondly, the words that

16   Defendant identifies are not the text of the RFP technical requirement.  Defendant's argument is

17   puzzling, because Defendant has its own copy of the RFP, as well as its response to the RFP, so it

18   knows that these single words are not the text of the technical requirement.  Moreover, a copy of the

19   RFP and Defendant's response to the RFP are Exhibits 13 and 14 to Plaintiff's Motion for Partial

20   Summary Adjudication, to which Defendant's counsel has ready access.  In any event, Defendant's

21   arguments based on these cherry-picked one word descriptors do not set forth the actual text of the

22   technical requirements that Defendant falsely represented were "Fully Comply" or that Defendant's

23   system failed to meet, and consequently Defendant's arguments from pages 10 to 11 are based on

24   the faulty premise that Exhibit 6 or Exhibit 7 set forth the text of the RFP.[7]

25   _____

26   [7] Plaintiff further notes that Defendant seeks to argue, in the examples it provides, that there was
disagreement between the parties on whether a technical requirement was met, by pointing to
exchanges between the parties from August 2017 reflected in Exhibit 6.  But Exhibit 6 is a working

27   document that evolved over time.  Defendant ignores the fact that its representative David Bonini
confirmed to Plaintiff in December 2017 that it agreed with Plaintiff that its system did not meet

28   these technical requirements, superseding any purported disagreement that predated the final
exchange.  *See* Compl. ¶ 29.  This is further confirmed by the Declaration of Sherrill Diane House in

1    While Plaintiff need not describe each of the 172 fails – nor is there sufficient space to do so

2    – Plaintiff notes that its Motion for Partial Summary Adjudication, and papers filed therewith,

3    explain the significance of several failed items.  For instance, even though Defendant asserted that

4    its system was "Fully Comply" with respect to Technical Requirement 5.2.5.6 B (*see* Compl. Exh. 7,

5    p. 176, Item No. 41), Defendant's system does not meet this requirement.  *See* House Decl. ¶ 61

6    (ECF 10-2).  This requirement allows a 9-1-1 dispatcher to view lists of intersection possibilities

7    when he or she types in a location, e.g., when a dispatcher types in "Cal/Fair," two intersections

8    should appear:  one for the intersection of California and Fair Oaks in Fair Oaks and one for the

9    intersection of California and Fair Oaks in Carmichael.  *Id.*  Defendant's system does not present the

10   two options.  *Id.*  This is a significant problem because there are hundreds of intersections in

11   multiple venues in Sacramento County, which could significantly delay emergency response times –

12   or worse, result in a dispatch to the wrong location entirely – if Defendant's software were used.  *See*

13   *id.* ¶ 54-55, 71.

14          **b.    The Complaint adequately alleges that Defendant knew its**
              **representations were false when they were made and intended to**
15            **deceive Plaintiff in making the representations.**

16          The Complaint further alleges that Defendant knew the representations were false when they

17   were made, and intended to deceive Plaintiff in making the representations.  *See e.g.,* Compl. ¶¶ 9,

18   10, 56, 58, 59, 61-63, 72-72.  This is sufficient to plead scienter.  *See McMillan v. Lowe's Home*

19   *Ctrs., LLC*, No. 1:15-CV-00695, 2016 WL 2346941, at *7 (E.D. Cal. 2016).  The heightened

20   pleading standard does not apply to allegations of "[m]alice, intent, knowledge, and other conditions

21   of a person's mind," (Fed. R. Civ. Proc. 9), which may be alleged generally.  *Odom v. Microsoft*

22   *Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) (scienter may be alleged generally); *Quigley*, 2014 WL

23   258844 at *4.

24          Defendant does not argue that any of these allegations are insufficient; rather, Defendant

25   argues that (1) a mere failure to perform on a contract or (2) "bad math" or innocent error is not

26   fraud.  *See* MTD 11:22-14:2.  While this could be true, it is not relevant here.  First, as stated above,

27

28   Support of Plaintiff's Motion for Partial Summary Adjudication.  *See* ECF No. 10-2, House Decl. ¶¶
     21-28; 38-52.

1   the Complaint alleges that Defendant deliberately misrepresented its capabilities in order to be

2   selected as the vendor for the project. *See, e.g.,* Compl. ¶ 9.  It does not allege that Defendant made

3   an innocent mistake or merely failed to perform.  It alleges that Defendant knowingly and falsely

4   represented past and present facts, i.e., that its software currently provided the feature or functions as

5   described and in use at existing client locations for a period of at least one year from the date of its

6   response. *See, e.g., id.* ¶¶ 9, 10, 55-56, 58, 59, 61-63, 72-72.  Any subsequent acts or statements by

7   Defendant do not alter the fact that these representations were false when made.

8          Moreover, Defendant's argument that its representations were not intentionally false is not

9   relevant on a motion to dismiss.  Knowledge and intent may be alleged generally. *Quigley*, 2014

10  WL 258844 at *4.  By arguing that Defendant lacked intent because any false statement was the

11  result of a mistake, Defendant is attacking Plaintiff's ability to prove scienter, which is not relevant

12  in a ruling on a 12(b)(6) motion. *See Allison v. Cal. Adult Auth.*, 419 F.2d 822, 823 (9th Cir. 1969)

13  (ability to prove allegations not at issue on a motion to dismiss).

14         Plaintiff also points out that Defendant incorrectly asserts in this section that there was not a

15  specific contract completion date and that Defendant did not agree to perform the contract within 18-

16  24 months. *See* MTD 12:14-19.  To the contrary, the Complaint alleges that Defendant agreed the

17  system would Go-Live by November 6, 2017, which was within 24 months of when the Agreement

18  was executed. *See* Compl. ¶¶ 25, 57, Exh. 4.  Plaintiff also incorrectly asserts, on page 11, that

19  Defendant promised to fix over 50 of the failed items before the Go-Live date, apparently based on

20  the assertion in Defendant's PowerPoint that the items would be "resolved in a future release." *See*

21  MTD 11:14-18.  This is not equivalent to fixing the items before the "Go-Live" date, which had

22  already passed when this presentation was given. *See* Compl. ¶¶ 25, 27-29.  Additionally, Defendant

23  admitted that its proposed resolution would take between 17-22 years, and would not resolve all the

24  issues that had been identified. *See* Compl. ¶¶ 31-32.

25         **3.    The complaint adequately pleads a claim for violation of the False Claims
              Act (Fourth Cause of Action).**

26

27         Defendant argues that Plaintiff has not adequately plead a claim for violation of the

28  California False Claims Act because (1) it has not adequately alleged fraud; (2) because the fraud

-13-

1   alleged in the Complaint is not material; (3) and because SRFECC does not have standing to sue

2   under the California False Claims Act.  *See* MTD 16:17-17:5.

3       Defendant's first argument is derivative of its attack on Plaintiff's fraud claim and is not set

4   forth separately in its motion to dismiss.  For the reasons described above in Section B.2 of Part III,

5   Plaintiff has alleged fraud with sufficient particularity to survive the heightened pleading standard of

6   Rule 9(b), assuming Rule 9(b) applies to allegations of violations of the California False Claims Act.

7       Defendant next argues that liability under the federal False Claims Act is subject to a

8   requirement that the false statement be material, citing to a case from the Fourth Circuit which is not

9   controlling here, and to a Ninth Circuit case that is in a different procedural posture and does not

10  discuss pleading standards.  *See* MTD 16:18-22 (citing *U.S. v. Bourseau*, 531 F.3d 1159, 1174 (9th

11  Cir. 2008) (affirming trial court's award of over $15 million in penalties to the government).

12      Plaintiff has adequately alleged materiality.[8]  In *City of Pomona v. Superior Court*, 89 Cal.

13  App. 4th 793, 805 (2001), the appellate court reversed the trial court's order sustaining the

14  defendant's demurrer for failure to state a claim for violation of the CFCA.  The complaint alleged

15  that defendants, which manufacture and supply pipes and other distribution parts for use in

16  municipal water systems, falsely recited the specifications of their products in their catalogues and

17  sales materials; that by providing these misrepresentations, defendants "intended to and 'very

18  natural[ly]' did induce the city to contract with the distributors for purchase of [their] parts"; and that

19  had the city known that the statements were false, it would not have made the contracts, and had the

20  city known that the parts did not conform to the descriptions, it would not have paid the distributors.

21  *City of Pomona*, 89 Cal. App. 4th at 797-800.  Here, the Complaint alleges that Defendant

22  misrepresented the features and functionality of its Replacement CAD System to induce Plaintiff to

23  enter the Agreement and to obtain payments thereunder (*see, e.g.,* Compl. ¶¶ 10, 56, 72-73); that

24  Defendant knew it was unable to provide a system that conformed to the Agreement within the time

25  contracted for, in a timely manner, or at all (*see, e.g., id.* ¶¶ 10, 57-58, 72); that Defendant

26

27  [8] In *San Francisco Unified Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc.*, 182 Cal. App. 4th
    438, 454 (2010), the court noted that the CFCA does not expressly require a showing of materiality
    for imposition of a penalty for submission of a false claim, but recognized that other state courts
28  have applied a materiality requirement, following the practice of courts deciding violations of the
    federal False Claims Act.

-14-

1   nonetheless presented claims for payment to Plaintiff (*see, e.g., id.* ¶¶ 10, 39-45, 63, 72-74); that

2   Plaintiff relied on Defendant's misrepresentations and would not have entered the Agreement if it

3   had known the representations were false (*see, e.g., id.* ¶¶ 37, 60, 66-67); and that Plaintiff paid

4   money it would not have paid if it had known the falsity of Defendant's representations (*see, e.g., id.*

5   ¶ 73).  This Court should find, as the appellate court did in *City of Pomona*, that this is sufficient to

6   plead materiality.

7           To the extent Defendant argues that anything more is required, Defendant is applying the

8   wrong standard for a motion to dismiss.  *See Laidlaw Transit, Inc.*, 182 Cal. App. 4th at 456-57

9   (holding that allegations of contractual breaches that relate to the safety of the products or services

10  contracted for are "clearly of sufficient seriousness to satisfy the materiality element at the demurrer

11  stage" and declining to delineate a more stringent standard, noting the distinction between the

12  pleading stage and adjudication on the merits).  In any event, to the extent any additional

13  particularity is required, Plaintiff's Motion for Partial Summary Adjudication sets forth in detail the

14  evidence and legal basis for its fraud claims.  *See, e.g.,* Memorandum of Points & Authorities in

15  Support of MPSA 12:27-14:15; 15:26-16:14 (ECF No. 10-13); Declaration of Sherill Diane House in

16  Support of MPSA ¶¶ 53-71 (ECF No. 10-2).

17          Defendant's final argument, that Plaintiff lacks standing to bring a claim for violation of the

18  False Claims Act, similarly lacks merit.  The CFCA authorizes the state or a political subdivision of

19  the state to prosecute violations.  The CFCA defines the term "political subdivision" to include "any

20  city, city and county, county, tax or assessment district, or other legally authorized local government

21  entity with jurisdictional boundaries."  Cal. Gov. Code § 12650(b)(6).  This definition was intended

22  "to sweep as broadly as possible to encompass every possible local authority using local funds" and

23  to differentiate between political entities which are "wholly state funded."  *See* S. Comm. on

24  Judiciary, 1987-1988 Sess., File on AB 1441, Analysis by David Huebner Appended to Testimony

25  on May 6, 1987 before Cal. Assemb. Comm. on the Judiciary.

26          A joint powers authority such as Plaintiff qualifies as a political subdivision under the CFCA.

27  A joint powers authority is created by agreement between two or more public agencies (e.g., cities,

28  counties, public corporations, or public districts) and is itself considered a public agency.  *See* Gov.

-15-

1  Code §§ 6500, 6502.  The joint powers authority may jointly exercise any power common to the

2  member agencies, including, but not limited to, the authority to levy a fee, assessment, or tax.  *See*

3  Gov. Code § 6502.

4          Plaintiff is a joint powers authority created under Government Code Article I, Chapter 5,

5  Division 7, Title 1, Sections 6500 *et seq.  See* Compl. Exh. 1 p. 2.  Defendant nevertheless argues

6  that it does not have standing to bring a claim under the CFCA because public agencies can join it,

7  subject to approval and payment of requisite fees, or because it may enter into contracts with non-

8  member entities to provide services.  *See* MTD 17:10-15.  Defendant's argument is premised on the

9  theory that consequently the JPA does not have jurisdictional boundaries, but does not cite to any

10  case law that so holds or to any statutory or legislative language in support of its position.

11          By contrast, the Complaint sets forth where Plaintiff operates and the limits of its authority.

12  Plaintiff is a joint powers authority whose constituent members are public agencies.  Compl. Exh. 1

13  p.2.  The Complaint alleges that the JPA members are the City of Sacramento, the City of Folsom,

14  the Sacramento Metropolitan Fire District, and the Cosumnes Community Services District, and that

15  Plaintiff currently provides services by contract to other fire protection districts within the County of

16  Sacramento.  *See* Compl. ¶¶ 1-2, 12, 19.  Defendant does not contend that these public agencies do

17  not have jurisdictional boundaries, nor does Defendant argue that the JPA's authority is unlimited.

18  Plaintiff's authority is subject to the Joint Powers Agreement and to the same restrictions imposed

19  by law on its member districts and cities.  *See* Compl. Exh. 1 p. 5.  Defendant does not explain any

20  basis for distinguishing a joint powers authority from any other political subdivision with standing

21  under the California False Claims Act.

22          Defendant further argues that Plaintiff lacks standing to prosecute this action because its

23  general counsel, Mr. Robert Kingsley, is not a prosecuting authority under the False Claims Act,

24  citing *Los Angeles Memorial Coliseum Committee v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 822

25  (2015).  *See* MTD 17:16-18:9.  This case does not support Defendant's argument.  In *Coliseum*, the

26  court sustained a demurrer because the complaint failed to allege that any entity had standing as a

27  prosecuting authority within the meaning of the CFCA and instead argued that the CFCA does not

28  limit them to using only prosecutorial authorities to pursue their claims.  *See Coliseum Committee*,

-16-

1   233 Cal. App. 4th at 820, 837.  Unlike in *Coliseum*, the Complaint here expressly alleges that

2   SRFECC is a political subdivision with the authority to prosecute this action in its own name in

3   order to perform all acts necessary to fulfill its mandate, which includes the duty to provide 9-1-1

4   communications and emergency dispatch services for fire and medical aid calls within its

5   jurisdiction, *see* Compl. ¶ 12; that it has the authority to direct its general counsel, Mr. Robert

6   Kingsley, and outside counsel, Pillsbury Winthrop Shaw Pittman LLP, to prosecute this action on its

7   behalf under the CFCA, *id.* ¶ 13; and that it passed a resolution formally endowing Mr. Kingsley and

8   his law firm with prosecuting authority under the CFCA, *id.* ¶ 14.

9           These allegations are more than sufficient to allege standing under the CFCA.  In *Sierra View*

10  *Local Health Care District v. Influence Health, Inc.*, No. 1:15-cv-00689, 2017 WL 220304 *5-6

11  (E.D. Cal. 2017), the court held that a local hospital district had standing to sue under the CFCA

12  where it alleged that its Board of Directors, CEO, and CFO are authorized to investigate, file, and

13  conduct legal proceedings on its behalf as the district's prosecuting authorities.  The court rejected

14  the defendant's argument the hospital district lacked standing and that it could not properly allege

15  that its CEO or CFO constitute prosecuting authorities.  *See id.* *3, 6.  Under the CFCA,

16  "'prosecuting authority' refers to the county counsel, city attorney, or other local government official

17  charged with investigating, filing, and conducting civil legal proceedings on behalf of, or in the

18  name of, a particular political subdivision."  Gov. Code § 12650(b)(8).  The court reasoned that the

19  phrase "other local government official" must be read broadly "to permit political subdivisions to

20  independently pursue lost funds without requiring involvement from external government officials,

21  thereby minimizing barriers for recovery of public funds."  *Id.*  Accordingly, the phrase "other local

22  government official" should be read broadly here.  The Joint Powers Agreement expressly empowers

23  SRFECC to enter into contracts to carry out its mandate; the power to enforce these contracts by

24  judicial recourse is concomitant with that power.  Accordingly, SRFECC and its general counsel Mr.

25  Robert Kinglsey have standing to prosecute this action.

26          **4.      The complaint adequately pleads a claim for violation of the UCL
                       (Second Cause of Action).**

27

28      Defendant argues that the Complaint fails to allege any unlawful, unfair, or fraudulent

-17-

business act or practice.  *See* MTD 14:9-10.  Defendant's argument that the Complaint fails to describe an unlawful, unfair, or fraudulent business act or practice is derivative of its attack on Plaintiff's fraud allegations.  For the reasons described above in Section B.2 of Part III, Plaintiff has alleged fraud with sufficient particularity to survive the heightened pleading standard of Rule 9(b).  Accordingly, Plaintiff has also adequately alleged a violation of the UCL under each of the three prongs.

Nevertheless, because Defendant proceeds to separately argue that the allegations do not set forth "unfair" conduct, Plaintiff will address this argument here.

The Complaint alleges that Defendant falsely represented that its Replacement CAD System, currently in use at existing client locations, met a number of technical requirements that it did not actually meet; agreed to provide a Replacement CAD System conforming to specified technical requirements by November 6, 2017, when it knew it could not or would not do so; falsely represented its progress towards completion of the Project during the contract period, or failed to report at all on its progress as required by the Agreement; refused to provide by a future date a Replacement CAD System that conformed to the parties' Agreement; and charged SRFECC money for a Replacement CAD System, including future maintenance costs, that it knew it could not, or would not, provide, and retained that money even after failing to provide the Replacement CAD System.  *See* Compl. ¶¶ 9, 10, 24-33, 39-46, 51-52, 55-63, 72-74.  The Complaint alleges that these acts independently constitute fraud, breach of contract, and a violation of the CFCA.

The courts have provided several definitions of "unfair" business acts or practices:  (1) "an act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits . . . and is not an injury the consumers themselves could reasonably have avoided"; (2) "unfair business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or (3) an unfair business practice means 'the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions."  *See Vincent*, 2014 WL 2766116 at *8 (quotations and citations omitted).

Defendant does not address the first test of unfairness, but argues in conclusory fashion that

-18-

the Complaint fails to allege a violation of public policy under the second and third tests.  Defendant is incorrect.  Even absent claims for fraud or violation of the CFCA, the Complaint sets forth a bad faith breach of contract, which constitutes an unfair business act or practice.  *See, e.g., London v. Wells Fargo Bank, N.A.*, 2018 WL 621262 *12 (E.D. Cal. 2018) (business conduct that offends public policy of honoring contract agreements that is substantially injurious to consumers, e.g., home foreclosure, constitutes a violation of the UCL).  Here, Plaintiff has alleged a bad faith breach of contract that has resulted in substantial injury and consequently Plaintiff has adequately alleged a violation of the UCL, independent of its fraud and CFCA claims.

### C.  The motion to strike should be denied because the allegations in the complaint are not scandalous or impertinent.

Defendant argues that the allegation that Defendant's breach of contract and misconduct have "created a dangerous and imminent public safety problem" should be stricken as scandalous and impertinent because it is prejudicial to Defendant and is not necessary to the issue in question.  *See* MTD 20:1-15.

To support its position, Defendant cites to a case where the court granted an unopposed motion to dismiss an allegation that a physician acted unprofessionally by giving a patient her biopsy results at her place of work, because it was immaterial to the patient's claims alleging that the physician willfully omitted medical information.  *See Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005).  This case is inapposite.  Defendant does not seek to strike the allegation that Defendant's conduct has created a dangerous and imminent public safety problem because it is immaterial.  Even if it did, this case is clearly distinguishable.  Here, the allegation that Defendant's conduct has created a dangerous and imminent public safety problem is related to the issues of injury, damages, and the wrongfulness of Defendant's conduct.  By contrast, the location of a doctor's conversation with a patient is unrelated to her claims for omission of medical information.  *Id.*

Because motions to strike "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation," the Court should deny Defendant's motion.  *See Oracle Amer., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128,

-19-

1131-32 (N.D. Cal. 2011) (quotations omitted).  As explained above, the allegation that Defendant's breach and misconduct has created a dangerous and imminent public safety problem are related to the subject matter of the litigation.  Moreover, though Defendant asserts that the allegation is prejudicial, this is true of any allegation of improper conduct.  Defendant fails to explain how the allegation is unduly prejudicial such that a motion to strike is warranted.  *See Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015).

Finally, Defendant seeks judicial notice of a newspaper article in order to dispute the allegations in the complaint that Defendant's breach and misconduct "created a dangerous and imminent public safety problem."  However, a judicially noticed fact must be one that is not subject to reasonable dispute.  *See Del Puerto Water Dist.*, 271 F. Supp. 2d at 1232-33 (denying judicial notice of press releases that address disputed facts).  Accordingly, Defendant's request for judicial notice should be denied.

## IV.   CONCLUSION

For the reasons herein, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss, or in the alternative, grant Plaintiff leave to amend.

Dated:  September 7, 2018                PILLSBURY WINTHROP SHAW PITTMAN LLP


                                        */s/ Philip S. Warden*

                                By:     PHILIP S. WARDEN
                                        ROBERT E. KINGSLEY, Prosecuting Authority
                                        Attorneys for Plaintiff
                                        SACRAMENTO REGIONAL PUBLIC SAFETY
                                        COMMUNICATIONS CENTER D/B/A
                                        SACRAMENTO REGIONAL FIRE/EMS
                                        COMMUNICATIONS CENTER