1   PILLSBURY WINTHROP SHAW PITTMAN LLP
    PHILIP S. WARDEN (SBN 54752)
2   philip.warden@pillsburylaw.com
    CLARK THIEL (SBN 190212)
3   clark.thiel@pillsburylaw.com
    Four Embarcadero Center, 22nd Floor
4   San Francisco, CA 94111-5998
    Telephone:  415-983-1000
5   Facsimile:  415-983-1200

6   PILLSBURY WINTHROP SHAW PITTMAN LLP
    SYDNEY A. WARD (SBN 312615)
7   sydney.ward@pillsburylaw.com
    2600 Capitol Avenue, Suite 300
8   Sacramento, CA 95816-5930
    Telephone:  916-329-4700
9   Facsimile:  916-441-3583

10  KINGSLEY BOGARD, LLP
    ROBERT E. KINGSLEY (SBN 59596)
11  Prosecuting Authority for Plaintiff
    rkingsley@kblegal.us
12  600 Coolidge Drive
    Suite 160
13  Folsom, CA 95630
    Telephone:  916-932-2500
14
    Attorneys for Plaintiff SACRAMENTO REGIONAL
15  PUBLIC SAFETY COMMUNICATIONS CENTER
    D/B/A SACRAMENTO REGIONAL FIRE/EMS
16  COMMUNICATIONS CENTER

17              **UNITED STATES DISTRICT COURT**

18             **EASTERN DISTRICT OF CALIFORNIA**

19

20  SACRAMENTO REGIONAL PUBLIC           Case No.  2:18-cv-01792-KJM-KJN
    SAFETY COMMUNICATIONS CENTER
21  D/B/A SACRAMENTO REGIONAL            REPLY BRIEF IN SUPPORT OF
    FIRE/EMS COMMUNICATIONS CENTER       PLAINTIFF'S MOTION FOR PARTIAL
22                                       SUMMARY ADJUDICATION
                Plaintiff,
23                                       Date:  September 19, 2018
         vs.                             Time:  2:00 p.m.
24                                       Courtroom:  3
    TYLER TECHNOLOGIES, INC., a Delaware Judge:  Hon. Kimberly J. Mueller
25  corporation F/K/A NEW WORLD SYSTEMS
    CORPORATION, a Surrendered California
26  corporation

27              Defendant.

28

Plaintiff, the Sacramento Regional Public Safety Communications Center d/b/a Sacramento Regional Fire/EMS Communications Center ("SRFECC" or "Plaintiff"), submits the following reply brief in support of its Motion for Partial Summary Adjudication.

## I.      BREACH OF CONTRACT

### A.      The uncontroverted facts establish each element necessary to find a breach of contract, and thus Plaintiff is entitled to judgment as a matter of law.

Plaintiff sets forth facts which establish (1) the existence of a contract; (2) Plaintiff's performance, or excuse from performance, under the contract; (3) Defendant's breach of the contract; (4) that Plaintiff was damaged by Defendant's breach.  *See* Pl. Mem. (ECF Dkt. No. 10-13).  Defendant's Opposition responds only to the element of breach.

Plaintiff provided admissible evidence concerning the existence of a contract, which Defendant does not dispute.  *See* Pl. Reply to Defendant's Opp. to Pl. UF Nos. 16-20 ("Pl. Reply UF").  Plaintiff likewise established that it fulfilled its obligations under the contract, or was excused from doing so.  *See* Pl. Mem. 12:3-12; Pl. Reply UF Nos. 52-69.  Defendant does not dispute that Plaintiff paid its invoices, or that it acquired and installed the equipment required under the contract. *Id.*  Though Defendant purports to dispute that Plaintiff fulfilled other obligations, such as providing a consistent Project Manager, coordinating with Defendant on an agreed-upon schedule, or providing timely input or qualified personnel, Defendant fails to identify any admissible evidence to create a genuine dispute concerning these facts.  *See* Pl. Reply UF Nos. 64-69.  Nor does Defendant attempt to argue in its Opposition Memorandum that Plaintiff failed to perform under the contract.

Plaintiff has also established the elements of breach and damage.  Plaintiff has set forth evidence that establishes (1) Defendant agreed to provide a Replacement CAD System that complies with the Technical Requirements in Defendant's Response to Plaintiff's Request for Proposal ("RFP")[1]; (2) that Defendant agreed that it would adhere to the schedule agreed upon by the parties, which scheduled the Replacement CAD System to "Go Live" on November 6, 2017[2]; (3) that the November 6, 2017 "Go Live" date was cancelled[3]; (4) that Defendant's representative Mr. Kevin

---

[1] Exhibit 2, Section 6.3, p.12; Exhibit N to Exhibit 2, p. 26, 45; Pl. UF No. 23-24
[2] Pl. Reply UF Nos. 25-28; Exhibit 2, Sections 1.2, 1.3, 4.1, and Exhibit D thereto: pp. 9, 11, 46; House Decl. ¶¶ 14-16; Exhibits 31-32.
[3] Exhibit 18; Pl. Reply UF No. 32-33; House Decl. ¶¶ 30-31.

1  Flynn gave a PowerPoint presentation in December 2017, which acknowledged that there were "34
2  items that failed to comply with the RFP requirement . . . 41 items that are warranty items (i.e. not
3  working as designed, and will be resolved in a future release[;] 7 items that are requests for
4  enhancement to the application[;] 79 items that may not [sic] met the RFP requirements, but are
5  deemed necessary by SRFECC, and have been estimated by Tyler"[4]; (5) that the presentation further
6  acknowledged that the "approximate effort" associated with addressing just 102 of the 161 items
7  would require 33,900 hours of development and that Defendant's Development Team "has
8  approximately 3000 hours available annually for the development and enhancement of the CAD
9  software related to customer and project related items across our full customer base"[5]; (6) that the
10  presentation also stated that "[a] handful of items do not align with the long term product strategy of
11  the CAD and/or Mobile software, and have not been requested by any other agencies in our
12  customer base.  These have been eliminated from consideration.  These items are listed in Appendix
13  C"[6]; (7) that following the presentation Plaintiff's representative Diane House and Defendant's
14  representative David Bonini reviewed the Excel spreadsheet that the parties had been using to list
15  each technical requirement, and together they identified 239 items that did not meet the technical
16  requirements[7]; (8) that Plaintiff has not received the Replacement CAD system Defendant agreed to
17  provide[8]; and (9) that Plaintiff has been harmed because it has not received the benefit of its contract,
18  and must continue to rely on its current system which is costly and difficult to maintain.[9]

19       Because Plaintiff has set forth facts that are not subject to genuine dispute, and which entitle
20  it to judgment as a matter of law, the burden shifts to Defendant to come forward with evidence
21  creating a genuine issue of material fact concerning any element of Plaintiff's breach of contract
22  claim.  *See Giles v. GMAC*, 494 F.3d 865, 872 (9th Cir. 2007).  As discussed below, Defendant has
23  failed to meet this burden.

24       **B.       Defendant failed to show a genuine dispute as to any fact material to the breach**

25

---

26  [4] Exh. 5, p.3; Pl. Reply UF No. 36.
   [5] Exh. 5 pp. 6-7; Pl. Reply UF No. 38.
27  [6] Exh. 5 p.7, 15; Pl. Reply UF No. 37.
   [7] Pl. Reply UF Nos. 41-43.
28  [8] Pl. Reply UF No. 70.
   [9] Pl. Reply UF Nos. 71-73.

REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION
4814-1784-2546.v2                                                              Case No.:  2:18-cv-01792-KJM-KJN

element of the breach of contract claim.

Defendant proffers three arguments for why it feels that Plaintiff is not entitled to summary judgment on its breach of contract claim, all related to the element of breach.  *See* Defendant's Opposition to Plaintiff's Motion for Partial Summary Adjudication (ECF Dkt. No. 39-1) ("Def. Opp.") Table of Contents.  Neither the facts nor the law support Defendant's arguments.

### 1. Defendant fails to show a genuine dispute as to whether it was required to deliver a compliant CAD system by November 6, 2017.

Defendant argues that it did not breach the contract because it was not required to provide a compliant CAD system by November 6, 2017.  *See* Def. Opp. 5:21-6:13.  Specifically, Defendant argues that it did not breach the Agreement by failing to provide a compliant system by the Go-Live date because, even though the Agreement "generally" stated that "time is of the essence," the Agreement "contemplated a timeline that would be the subject of an ongoing discussion" and therefore its failure to perform by the date the parties agreed on did not constitute a breach of contract.  *See id.*

This interpretation ignores the plain language of the contract.  The contract requires Defendant to "perform all of its obligations and provide all services and products to Customer as set forth in accordance with the timeline for the Project (see Exhibit D) and the provisions of this Agreement."  UF No. 25 (Exhibit 2, p.11 Section 4.1).  Exhibit D states that it attaches a sample Gantt Chart and project plan, "for illustrative purposes," and provides that the parties would agree on an "actual project plan with the appropriate tasks and schedule . . . upon contract signing and more detailed discussions about the project can take place between **Customer** and **New World** staff," based on a consideration of a range of issues, including the customer's schedule constraints (seasonal peak workloads, vacations, holidays, commitments of resources needed to support local events, etc.).  Exhibit D to Exhibit 2, p. 46.  Exhibit D concludes with the italicized words:  *Insert Gantt.*  Exhibit D expressly states that parties would agree on an actual project plan, with an appropriate plan and schedule, based on the needs of the project.  It does not contemplate a fluid timeline, to be changed without the consent or consultation with the other party.

The other provisions of the contract are consistent with Exhibit D.  The Agreement expressly

-4-

1   states that "[t]ime is of the essence," and that the parties must "strictly adhere to the timeline set

2   forth in Exhibit D for the installation and integration of the System and shall strictly adhere to the

3   timeline set forth for each milestone component (e.g. Installation) in Exhibit D, System

4   Implementation Plan/GANTT Chart for that particular milestone component."  UF No. 26.  The

5   project schedule was not a set of guidelines or suggestions; it was an obligation of the contract.

6          Eschewing the plain meaning of the contract, Defendant presents a theory that would require

7   this Court to find that there was no date certain by which Defendant had to perform and that the time

8   for performance was within Defendant's sole discretion.  Defendant cites to no source of law that

9   empowers a party to a contract to unilaterally set its own deadline for performance, and thereafter to

10   change it at whim.

11          *In any event*, even if Defendant were correct that it was not required to provide the agreed-

12   upon Replacement CAD System by November 6, 2017, Plaintiff is still entitled to prevail on its

13   breach of contract claim.  Two months after the Go-Live date was cancelled, Defendant's

14   representative proposed a recovery plan that anticipated it would take 33,900 hours to resolve just

15   some of the items (e.g., items that "failed to comply with the RFP requirement," or that were "not

16   working as designed," or that "may have not met the RFP requirements," but NOT items that it

17   characterized as "enhancements," the "handful" of items it would never provide, or the 40+ items

18   that it disagreed were "non-compliant" and "assumed" would be completed prior to a future Go-Live

19   date).  *See* Exhibit 5, pp. 3, 6, 7, 9.  Defendant explained that its Development Team only had a total

20   of 3,000 hours a year *across its entire customer base* to devote to development and enhancement of

21   CAD software for customer projects.  *Id.* p. 7.  Even assuming it would dedicate the full 3,000 hours

22   to a single customer, this means it would take Defendant approximately 17-22 years to provide a

23   partially compliant CAD system (almost two decades after it agreed to perform).

24          Defendant makes much of the disclaimer that its assertion that a "typical implementation

25   project of this size and scope usually spans 18-24 months from contract signing through go live" is

26   qualified by the provision that "the actual project schedule could differ significantly," but fails to cite

27   to any source of law that holds that a party can defend against a breach of contract claim because it

28   may be able to remedy a breach sometime within the next twenty years.  In any event, the actual

-5-

1   project schedule the parties agreed upon did not, in fact, differ from the "typical" implementation,

2   because it set the go-live date as November 6, 2017, which was within 24 months from contract

3   signing.  *See* House Decl. ¶¶ 14-16; Pl. UF No. 28; Exhs. 4, 29, 31, 32.

4          **2.      Defendant fails to show a genuine dispute as to whether it failed to
                  provide a compliant CAD system by November 6, 2017, or any date
5                  certain thereafter.**

6          Defendant argues that whether it breached the contract is subject to dispute because the

7   technical requirements can be interpreted differently.  However, the Court need not decide the

8   meaning of each (or any) technical requirement to decide this case.  Defendant admitted that its

9   Replacement CAD System did not conform to the Agreement.  Its attempt now to read ambiguity

10  into the contract, or to complain about the specifications its system was required to meet, is a red

11  herring.  The undisputed fact remains that Defendant acknowledged that its Replacement CAD

12  System did not conform to the parties' agreement.

13         Plaintiff has set forth admissible evidence of Defendant's admissions.  The first principal

14  piece of evidence is Defendant's PowerPoint presentation, discussed above, contained in the record

15  as Exhibit 5.  Defendant concedes the authenticity of this exhibit.  Defendant's representative Mr.

16  Kevin Flynn presented this PowerPoint to Plaintiff two months after the go-live date was cancelled.

17  In it, Mr. Flynn proposes different recovery plans to resolve the 161 problems identified with

18  Defendant's software by Plaintiff during the "extensive" functional and RFP compliance testing

19  process, and the subsequent meetings between the parties' subject matter experts and on-site visit.

20  Defendant characterized these "items" (also referred to as "modifications" on page 4 and "functional

21  changes" on page 3) as follows:  "34 items that failed to comply with the RFP requirement (out of a

22  2000+ original requirements); 41 items that are warranty items (i.e. not working as designed, and

23  will be resolved in a future release); 7 items that are requests for enhancement to the application; 79

24  items that may have not met the RFP requirements, but are deemed necessary by SRFECC, and have

25  been estimated by Tyler."

26         These characterizations acknowledge, at a minimum, that there were 34 items that failed to

27  comply with the RFP requirement and that there were 41 items that were "not working as designed"

28  and that Tyler agreed to resolve in the future.  Defendant's assertion in his declaration that he merely

1    adopted Plaintiff's use of the word "fail" in order to appease Plaintiff is undermined by the language

2    of the document itself and by his declaration.  In his declaration, he admits that the functionality for

3    these items was required by the Agreement when he explains that Defendant's proposed resolution

4    was to agree to provide the functionality for the 34 failed items free of cost, "consistent with our

5    Agreement."  Flynn Decl. ¶ 35.  He did not say that they were "enhancements" not covered by the

6    RFP that needed to be priced separately under the contract.

7         If Defendant did not agree that these items were failures (i.e., because of a difference of

8    opinion regarding what the Agreement required), it could have classified these items in the

9    presentation as "enhancements" to the system not covered by the RFP, or as items that "*may* have

10   not met the RFP requirements," but that Plaintiff nevertheless deemed necessary, as was done for

11   other items.  Indeed, Defendant's presentation does in fact express disagreement with Plaintiff's

12   categorization of 40+ items as non-compliant.  *See* Exhibit 5, p. 9 (explaining why those items were

13   excluded from the list and recovery plan).  Nowhere in the presentation does Defendant dispute that

14   34 items failed to comply with the RFP or that there were 41 items that were not working as

15   designed.  Mr. Flynn's post-hoc explanation – that he did not mean "failed" when he said "failed" –

16   does not create a triable issue of material fact.  Moreover, following the presentation, Ms. House

17   emailed Larry Piper and David Bonini and asked them to provide Plaintiff with "the list of RFP

18   items that Tyler agreed are failures[.]  Kevin indicated in his presentation there were 34 of those."

19   *See* Exh. 20, p. 2-3.  Mr. Bonini responded with a list of item numbers.  *Id.*  He did not qualify or

20   otherwise dispute that Defendant agreed these were failures.  *See id.*

21        In addition, following this presentation, Mr. Bonini and Ms. House reviewed the spreadsheet

22   the parties had been exchanging to track the Replacement CAD System's compliance with the RFP.

23   House Decl. ¶ 50.  Because Mr. Bonini was having computer problems, he asked Ms. House to enter

24   changes to the document as they discussed them.  *Id.*  At the conclusion of the call, Ms. House sent

25   him an updated copy of the spreadsheet, which identifies 239 items that both Plaintiff and Defendant

26   agreed did not meet the technical requirements.  *Id.*  ¶¶ 50-52.  Mr. Bonini now contends that in his

27   role as Project Manager, he acted as a "neutral messenger between SRFECC and Tyler" and that his

28   goal was "not to challenge" SRFECC," but merely to serve as the conduit between Plaintiff and "the

-7-

1  appropriate representatives at Tyler."  Bonini Decl. ¶ 7.[10]  Accordingly, he contends that he did not

2  state that Tyler agreed that the 239 items were fails (notably, Mr. Bonini avoids stating whether or

3  not he stated that *he* agreed that the 239 items were fails).  Bonini Decl. ¶ 15.  Instead, Mr. Bonini

4  asserts that he "permit[ted]" Plaintiff to characterize any item it wanted as a fail, and did not try to

5  talk Plaintiff out of that position.  *Id.*  Whether this is sufficient to create a genuine dispute as to

6  whether Mr. Bonini agreed with Plaintiff's identification of 239 items as "Fails" is immaterial.

7  Defendant has failed to raise any genuine factual dispute with regard to whether Defendant admitted

8  that its Replacement CAD System failed to meet 34 [or 29] technical requirements and that 41

9  requirements did not work as required.

10              **3.      Defendant fails to show why the warranty provisions preclude partial
                         summary adjudication of the claims at issue here.**

11              Defendant argues that it had an unlimited amount of time to provide a Replacement CAD

12  System that complied with the Agreement.  Specifically, Defendant maintains that Exhibit N

13  contains a contract provision that provides that non-compliant software is not actually non-compliant

14  so long as Defendant maintains that it has the ability to provide compliant software at some point in

15  the future.  *See* Def. Opp. 17:20-21.  As set forth in Part I.B.1 above, Defendant ignores the plain

16  language of the contract, which requires Defendant to "perform all of its obligations and provide all

17  services and products to Customer as set forth in accordance with the timeline for the Project (see

18  Exhibit D) and the provisions of this Agreement."  UF No. 25 (Exhibit 2, p.11 Section 4.1).  Exhibit

19  N does not determine when performance is due, and there is nothing that precludes Plaintiff from

20  recovering for breach if Defendant fails to perform.

21              In addition, Defendant cites to no provision of the contract, and provides no facts or evidence

22  to support its argument that this dispute is (1) a warranty issue, or (2) that Plaintiff somehow violated

23  the warranty provisions.  More than three months after the cancellation of the go-live date,

24  Defendant proposed a recovery plan for the project that would take two decades and (presumably)

25

26  [10] Contrast with his testimony at paragraph 9, where he admits that he participated in multiple
    meetings with Ms. House and other representatives at SRFECC to discuss the technical

27  requirements, including spending three weeks on site going through each requirement in detail, and
    participating in twice-weekly conference calls.  Indeed, even though he states that he was merely a

28  messenger, these meetings somehow resulted in SRFECC agreeing to significantly reduce the
    number of items from "failed" items to not-failed items.

                                                                                                        -8-

1  more money.  *See* Exhibit 5, pp. 3, 6, 7, 9.  Even if applicable, the warranty provision only provides

2  a period of 30 days for Defendant to correct any non-conformity.  *See* Exh. 2, p. 17.  This time has

3  long since passed.

4          **4.**        **Plaintiff is entitled to summary adjudication of its breach of contract**

                    **claim.**

5

6          Plaintiff has set forth facts which are undisputed and which entitle it to relief under the law.

7  Defendant has failed to come forward with evidence creating a genuine issue of material fact

8  concerning any element of Plaintiff's breach of contract claim.  Consequently, Plaintiff is entitled to

9  summary adjudication of its breach of contract claim.  *See Giles v. GMAC*, 494 F.3d 865, 872 (9th

10  Cir. 2007).

11  **II.**      **FALSE STATEMENT**

12          **A.**        **The uncontroverted facts establish that Defendant made a false representation**

                    **as to a past or existing material fact.**

13          The only other issue that the Court is asked to decide on this motion is whether Defendant

14  made any representation as to a past or existing material fact that was false.  Plaintiff has provided a

15  copy of Defendant's Response to its Request for Proposal (Exh. 14), and Defendant does not contest

16  the authenticity of this document.  Defendant does not dispute that the RFP instructed each bidder to

17  specify (with respect to each RFP requirement) whether its Licensed Standard Software was:  (1)

18  Fully Comply; (2) Partially Comply; (3) Comply with Modifications; (4) Comply in Future; (5)

19  Substitution; or (6) Exception.  *See* Exh. 14, p. 20 Section 2.7; Pl. Reply UF No. 45.  Nor does

20  Defendant dispute that the RFP defines a response of "Fully Comply" or "Fully Compliant" to mean

21  that "The system currently provides the feature or functions as described and is in use at existing

22  client locations for a period of at least one year from the date of proposal submission, not in beta

23  testing."  *See* Exh. 14, p. 20 Section 2.7; Pl. Reply UF No. 46.  Defendant also admitted in its

24  PowerPoint presentation, and subsequent confirming email, that 34 items failed to comply with the

25  RFP requirements.  Mr. Bonini attests this was later reduced to 29.  Bonini Decl. ¶ 16.  The exact

26  number does not change the outcome:  Defendant represented that its software "currently" provided

27  the feature or functions as described in specific technical requirements, and that it was in use at

28  existing client locations for a period of at least one year prior to the submission of its bid.  Defendant

-9-

admitted, almost three years later, that not only did its system not meet those requirements, but also that it would take 17-22 years for it to develop software that did.  These were representations as to past and existing material facts that Defendant admitted were false.

Defendant bases its opposition to summary adjudication on this claim on four weak arguments.  First, Defendant argues that no false statement was made in 2014, because in 2015, it signed a contract that changed the definition of Fully Comply.  This argument fails as a matter of logic.  If a person represents on Monday that he owns a blue car, and he does not, the statement is false.  It does not become true because he purchases a blue car on Wednesday.  Nor does it become true if he changes the definition of "own" on Wednesday to mean "will own in the future."

Defendant also argues that Plaintiff must also prove intent or knowledge.  Plaintiff specifically did not seek summary adjudication on the element of scienter.  This is left for trial.

Defendant also argues that there is a fact question as to what Plaintiff knew at the time the Agreement was executed.  Plaintiff's knowledge is not relevant to whether Defendant made a false statement.  It is relevant to reliance, which is not at issue on this motion.

Finally, Defendant argues that Plaintiff cannot prevail without proving that all 172 false statements are false.  Plaintiff disagrees.  The Court can find that Defendant made one false statement or twenty.  Even accepting Defendant's contention that at most it admitted that there were 29 items that failed to meet the RFP requirement, of these there are at least six described in Diane House's declaration that were falsely marked "Fully Comply."  House Decl. ¶¶ 57-60, 64-66, 70 (describing materiality of Defendant's failure to meet technical requirements 5.2.5.6.C.a; 5.2.5.6.D; 5.2.5.6.F.c; 5.2.5.6.I; 5.2.5.6.T; 5.2.2C.f).  Consequently, Plaintiff has proffered evidence demonstrating that there is no genuine dispute over whether Defendant made false representations concerning the functions and features of its existing COTS system.

III.   CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court grant its motion for partial summary adjudication of its breach of contract claim and the element of false statement in its fraud claim.

REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION
4814-1784-2546.v2                                                                    Case No.:  2:18-cv-01792-KJM-KJN

1

2      Dated:  September 14, 2018                    PILLSBURY WINTHROP SHAW
                                                     PITTMAN LLP

3                                                    /s/ Philip S. Warden

4                                          By:   _____
                                                 PHILIP S. WARDEN
5                                                ROBERT E. KINGSLEY, Prosecuting
                                                 Authority
6                                                Attorneys for Plaintiff
                                                 SACRAMENTO REGIONAL PUBLIC
7                                                SAFETY COMMUNICATIONS CENTER
                                                 D/B/A SACRAMENTO REGIONAL
8                                                FIRE/EMS COMMUNICATIONS
                                                 CENTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-