PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (SBN 54752)
philip.warden@pillsburylaw.com
CLARK THIEL (SBN 190212)
clark.thiel@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:  415-983-1000
Facsimile:  415-983-1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
SYDNEY A. WARD (SBN 312615)
sydney.ward@pillsburylaw.com
2600 Capitol Avenue, Suite 300
Sacramento, CA 95816-5930
Telephone:  916-329-4700
Facsimile:  916-441-3583

KINGSLEY BOGARD, LLP
ROBERT E. KINGSLEY (SBN 59596)
Prosecuting Authority for Plaintiff
rkingsley@kblegal.us
600 Coolidge Drive
Suite 160
Folsom, CA 95630
Telephone:  916-932-2500

Attorneys for Plaintiff SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California corporation<br><br>Defendant. | Case No.  2:18-cv-01792-KJM-KJN<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT TYLER TECHNOLOGIES, INC.'S SEPARATE STATEMENT OF DISPUTED FACTS REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION<br><br>Date:           September 19, 2018<br>Time:          2:00 pm<br>Courtroom:  3<br>Judge:         Hon. Kimberly J. Mueller |

| | DISPUTED FACT | SUPPORTING EVIDENCE | PLAINTIFF'S RESPONSE |
|---|---|---|---|
| 1. | Tyler is the largest software company in the nation that focuses solely on providing integrated software and related technology services to the public sector. | Declaration of Kevin Flynn Declaration ("Flynn Dec.") at ¶5 | Undisputed for the purposes of this motion, but not material.[1] |
| 2. | Tyler's Public Safety division has implemented CAD systems for hundreds of public entities, including various counties in and around Northern California. | Flynn Dec. at ¶5 | Undisputed for the purposes of this motion, but not material. |
| 3. | On March 18, 2014, SRFECC issued the RFP for a new CAD system. | Exhibit 13. All references to Exhibits are references to the exhibits attached to SRFECC 's Motion. | Undisputed. *See* Plaintiff's Statement of Undisputed Facts UF No. 13. |
| 4. | The RFP expressly noted that the "purpose of the project is to replace the existing Computer Aided Dispatching system and Mobile Data System in use at SRFECC with a Commercial Off The Shelf (COTS) solution. Customizations or enhancements to the product in order to comply with requirements of this RFP shall be identified and priced separately." | Exhibit 13 at p. 6 | Undisputed, except that there is a typo ("system" should be capitalized). |
| 5. | Item 5.2.1 of the RFP also specifically acknowledges "the intention of SRFECC to purchase primarily 'off-the-shelf or basic CAD software functionality, requiring the minimum amount of modifications in order to support necessary functions and interfaces... [.]" | Exhibit 13 at p. 61 | Undisputed, except that Defendant omits the next and final sentence: "However, to ensure that the Vendor's Software meets a minimum set of requirements, this section specifies the minimum functions that must be supported by the CAD software." |
| 6. | The RFP contained over 2000 line items of desired functionality and requested that New World specify | Exhibit 13 at pp. 16, 23, 55-173. | Undisputed. *See* Pl. UF No. 45. Specifically, the RFP instructed bidders to provide |

---

[1] Local Rule 260 permits Defendant to "file a concise 'Statement of Disputed Facts' . . . as to which there is a genuine issue precluding summary judgment or adjudication." Defendant ignores this stricture and instead includes a number of facts, such as this one, that do not present a genuine issue that would preclude summary adjudication in Plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (A fact is "material" it if might affect the outcome of the claim under the governing substantive law, and a factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

| | | | |
|---|---|---|---|
| | whether its proposed CAD system complied with the listed requirements. | | responses "indicating compliance with every described requirement, specification and function" using specifically enumerated and defined responses: Fully Compliant, Partially Compliant, Will Comply with Modification, Will Comply in a Future Release, Substitution, and Exception. Exhibit 13 at p. 16. |
| 7. | The technical requirements contained brief descriptions of the desired functionality, often using undefined terms and sometimes employing only one-word descriptions. | Exhibit 13 at pp. 55-173. | Undisputed that some technical requirements contain brief descriptions and that the RFP uses some words without defining them. Defendant fails to identify any undefined "terms" it refers to.<br><br>Defendant's statement that the technical requirements sometimes employ only one-word descriptions is not supported by the cited evidence. Even accepting this as true, it is not material.<br><br>Defendant has failed to direct the Court's attention to any specific, triable facts by "citing to particular parts of materials in the record" pursuant to Federal Rule of Civil Procedure Rule 56(c)(1)(A). |
| 8. | With regard to the technical specifications, New World's RFP Response expressly stated "Our response to your software specifications is based on our interpretation of each feature or requirement. Our response will be accurate in a high percentage of cases. Occasionally, however, our interpretation does not coincide with the prospect's intention. A demonstration of our software will further assure the SRFECC that New World can meet and/or exceed your requirements." | Exhibit 14 at p. 47. | Undisputed, but not material. Defendant acknowledges that it provided demonstrations of its system (see, e.g., Def. UF No. 10). More importantly, Defendant admitted that its system failed to conform to a number of RFP requirements. *See, e.g.,* Def. UF No. 48-49 (acknowledging it agreed that its system did not comply with the Technical Requirements); Pl. UF Nos. 36, 44. |

-3-

| # | | | |
|---|---|---|---|
| 9. | In responding to the RFP, New World exercised commercially reasonable efforts to respond to each line item of the RFP based on the information provided in the RFP and well-known industry standards. | Declaration of Craig Nelson ("Nelson Dec.") at ¶13. | Unsupported. The cited paragraph states that New World's responses were "based on its extensive experience" "implementing similar CAD systems." Even this claim was unsupported. Nelson was not responsible for and did not prepare Defendant's response to the RFP. Nelson Decl. ¶¶ 5-6. Defendant has not identified any specific, triable facts that are subject to a genuine dispute or supported by particular parts of the record.<br><br>Not material. Whether New World's "efforts" in responding to the RFP were "commercially reasonable" or based on unspecified industry standards is not material to whether Defendant performed the contract or made false statements (scienter is not at issue in this motion).<br><br>*See* Obj. No. ¶59. |
| 10. | During the 18-month procurement process, New World provided numerous demonstrations of the system and its functionality (at least one of which followed a script SRFECC provided to New World) and facilitated visits by SRFECC to other New World customer sites so that SRFECC could observe the software in action. | Nelson Dec. at, ¶¶ 14-19. | Undisputed.<br><br>*See* Obj. No. ¶61. |
| 11. | According to the RFP, only a portion of the scoring and award process was based on New World's responses to technical requirements; SRFECC also performed an overall analysis of each vendor's responsiveness, management capabilities, cost proposals, and demonstrations of their software product. | Exhibit 13 at pp. 19-22; Nelson Dec. at ¶¶ 20, 25 | Undisputed that the RFP advises bidders that proposals would be evaluated on "Responsiveness"; "Functional and Technical Compliance"; "Cost Proposal"; and "On-Site Demonstration and/or Site Visits." The category for technical responses constituted 30% of a bidder's score. *See, e.g.,* House Decl. ¶¶ 74-79. |

| | | | |
|---|---|---|---|
| | | | *See* Obj. Nos. ¶ 62-63, 66-69 |
| 12. | The Agreement provided for a standard software license for New World's CAD system, along with related services for its implementation, maintenance and support. | Exhibit 2 | Undisputed, except to the extent it seeks to use paraphrasing to obscure or otherwise limit the scope of its obligations set forth in the Agreement. *See* Pl. UF Nos. 21-26 (quoting provisions of the Agreement). |
| 13. | The Agreement recognized that this was a COTS project and obligated New World to provide only the standard software and certain "Standard Software Enhancements and/or Customer Software" that were expressly outlined in Exhibit B-3 to the Agreement. | Exhibit 2 at p. 37. | Undisputed that Exhibit B-3 states that Defendant agreed to provide "requested Standard Software Enhancements and/or Custom Software" pursuant to Exhibit B-3. The remainder of Defendant's assertion regarding the scope of its contractual obligations is legal argument, not fact, and Defendant fails to identify relevant contract provisions to support that these were its "only" obligations.<br><br>In any event, Plaintiff does not dispute that it sought a commercial off-the-shelf product that complied with the technical requirements identified in its RFP and incorporated into the Agreement through Exhibit N, nor does Plaintiff dispute that it specifically negotiated and paid for enhancements for certain features and functionalities that Defendant reported its COTS software did not comply with or only partially complied with. *See, e.g.*, the "Custom Software System Enhancements" listed in part 1(b) of Exhibit B-3 on page 12 of Exhibit 2.<br><br>To the extent Defendant is arguing in this assertion that it was not required to provide a system that complied with |

-5-

| | | | |
|---|---|---|---|
| | | | Exhibit N, or that these requirements were considered "enhancements" even though not listed on Exhibit B-3, Defendant is proffering a legal argument, not a fact, and fails to support such a theory by citing to any evidence or contract provision. |
| 14. | For modifications or enhancements, the Agreement contemplated an analysis and assessment to verify the scope of each modification and a revised cost and timing estimate for such modification. | Exhibit 2, p. 38. | Undisputed that the Agreement includes a "Methodology to Provide Enhancements and/or Custom Software." The remainder of this assertion is not supported by the page cited.  In any event, Plaintiff does not dispute that enhancements were priced separately. |
| 15. | Based on the revised estimate, SRFECC could determine whether it intended to proceed with a requested modification. | Exhibit 2, p. 38. | Unsupported, but not material. |
| 16. | Exhibit B-3 to the Agreement expressly provided that SRFECC would "be reasonable and flexible in not attempting to design the modifications to be more extensive than called for in the scope (cost and schedule) of this project." | Exhibit 2, p. 38. | Undisputed, but not material. |
| 17. | Exhibit B-3 to the Agreement also provided that SRFECC "agrees to cooperate in not making modifications and enhancements too extensive." | Exhibit 2, p. 38. | Undisputed, but not material. |
| 18. | The Agreement contained an express software warranty that warranted that "items coded 'Fully Compliant' in New World's Response to Customer's RFP will be met as described in Exhibit N." | Exhibit 2, p. 12. | Undisputed that the Agreement contains the quoted language. |
| 19. | "All items coded "Fully Complaint" (as qualified) in the New World Detail Response to Customer's RFP Questionnaire will be provided to Customer through currently existing Exhibit A software capabilities, Customer's use of 3rd Party software, | Exhibit 2, p. 70. | Undisputed that the Agreement contains the quoted language on page 70. |

| | | | |
|---|---|---|---|
| | custom programming provided by New World and/or future enhancements to Exhibit A software provided under Exhibit C." | | |
| 20. | Exhibit N of the Agreement also expressly stated: "If the terms and conditions of the New World Detail Response to the specifications of the RFP and this Agreement are in conflict, the governing terms and conditions shall be this Agreement." | Exhibit 2, p. 70. | Undisputed that the Agreement contains the quoted language on page 70. |
| 21. | In addition, Section 19.1 of the Agreement provides: "This Agreement is the entire agreement between the parties and supersedes all other communications, written or oral, between the parties relating to the subject matter of this Agreement." | Exhibit 2, p. 70. | Undisputed that this quotes a portion of Section 19.1, but it appears on p. 22 of Exhibit 2, not page 70. |
| 22. | The only other warranties in the Agreement were that the "Licensed Products will perform as specified in the user manuals based on the then-current release of the Licensed Software" and that New World possessed the necessary intellectual property rights to license the software. | Exhibit 2 at pp. 12-13. | Undisputed that Section 6 contains a provision that states: "Except as warrantied in 6.1, 6.2, 6.3 and 6.4 New World expressly disclaims any express or implied warranties, including but not limited to, the licensed products' condition, merchantability, fitness for a particular purpose, or any implied warranty arising from course of performance, course of dealing or usage of trade."  Exhibit 2 at p. 13, Section 6.6. |
| 23. | Otherwise, the Agreement "expressly disclaims any express or implied warranties." | Exhibit 2, p. 13. | Same as above. |
| 24. | The Agreement provided that, to the extent SRFECC contended that there has been a breach of warranty, New World would "correct the defect so that it conforms to the warranties" and, only if New World was not able to do so, could SRFECC pursue actual damages for breach of a specific warranty item. | Exhibit 2 at p.13. | Unsupported.  There is no support for this assertion on page 13.  However, page 17 states that if "any Licensed Software provided under this Agreement is not performing in accordance with the warranties set forth in this Agreement, New World will correct the defect so that it conforms to the warranties in Section 6. of this Agreement.  If New World is unable or unwilling to correct the non- |

| | | | |
|---|---|---|---|
| | | | conformity within thirty (30) calendar days, then Customer may recover its actual damages subject to the limits set forth in subparagraph 11.2 below. For any other claim arising under or in connection with this Agreement, Customer may recover its actual damages subject to the limits set forth in subparagraph 11.2 below." *See* Exh. 2, p. 17, Section 11.1.<br><br>This is not material to the claims at issue, which concern Defendant's failure to provide the system it contracted to provide by the date agreed upon. Moreover, Defendant admitted that its system failed multiple requirements and that it could not or would not remedy the defects for at least 17-22 years for some requirements, and would not remedy others at all. Pl. UF Nos. 35-40; Exh. 5, pp. 6-7. |
| 25. | New World's liability pursuant to the Agreement is limited, and SRFECC is contractually prohibited from recovering, under any legal theory, "special, incidental, consequential, or punitive damages, including lost profits." | Exhibit 2 at pp. 17-18. | This is legal argument, not fact. Furthermore, while it is undisputed that the Agreement contains the quoted language, it is not material to the Motion for Partial Summary Adjudication, which does not attempt to measure damages. |
| 26. | Although SRFECC had the right to terminate the Agreement, the termination provisions did not provide for a refund of amounts previously paid other than as provided for in the warranty provisions. | Exhibit 2 at p. 17. | Unsupported and not material.<br><br>The cited evidence does not support this assertion, which is not material in any event because this motion for partial summary adjudication does not seek an award of damages. |
| 27. | The Agreement did not actually provide a date certain by which the implementation of the CAD system | Exhibit 2 at p. 46. | Undisputed that the Agreement contemplates that appropriate dates for the |

| | | | |
|---|---|---|---|
| | would be completed. Instead, Exhibit D to the Agreement provided a "sample Project Plan." | | project would be decided upon contract signing or thereafter, as shown in Exhibit D, which references a sample project plan. |
| 28. | In 2017, as the parties were engaged in implementation activities, it became apparent to Tyler that SRFECC had expectations that went beyond a COTS system, were not industry standard, and were inconsistent with the requirements of both the RFP and the Agreement. | Flynn Dec. ¶ 10. | Unsupported and not material. The cited evidence does not support the assertions in Defendant's UF No. 28. Regardless, Flynn's opinion on SRFECC's "expectations" are not material to whether Tyler failed to perform the contract or whether it made a false statement (particularly since scienter is not at issue on this motion).<br><br>Furthermore, these conclusory generalizations do not present a triable, genuine dispute of evidentiary fact and fail to specifically identify any particular evidence in support thereof.<br><br>*See* Obj. Nos. ¶¶13-18. |
| 29. | In August 2017, following the functional testing process described in the RFP Response, SRFECC began circulating a spreadsheet listing 2065 technical requirements from the RFP and characterizing a number of the requirements as "Fails." | Exhibit 14 at p. 233-42; Exhibit 24. | Undisputed, except that functional testing did not cease in August 2017. *See* House Decl. ¶¶ 21-29; Pl. UF Nos. 42-43. |
| 30. | Tyler disagreed with the substantive suggestion that any item had "Failed" in the way SRFECC was using the term, Tyler adopted SRFECC's semantics to streamline the conversation and focus on addressing the issues SRFECC had identified so that the parties could move towards go-live. | Flynn Dec. at ¶ 17. | Unsupported by the cited evidence. Moreover, the PowerPoint presentation Flynn gave does not support this purported fact (e.g., PowerPoint distinguishes between items that "failed," items that "may" have failed," items that were "not working as designed," and items that were considered "enhancements"). *See* Exhibit 5, pp. 3, 9 (expressing disagreement with Plaintiff's characterization of 40+ items and stating that consequently Defendant did not include |

| | | | |
|---|---|---|---|
| | | | them in the list of fails, possible fails, "warranty" items, or enhancements described on p. 3); Pl. UF Nos. 35-40.<br><br>Defendant has failed to identify any specific, triable facts with citations to particular parts of the record pursuant to Federal Rule of Civil Procedure Rule 56(c)(1)(A), and certainly has not presented sufficient evidence to create a genuine dispute. |
| 31. | For the next several months, representatives of Tyler and SRFECC participated in multiple meetings and calls so that SRFECC could try to clarify its perspective on the technical requirements at issue. | Flynn Dec. at ¶ 18. | Undisputed that Defendant's and Plaintiff's representatives participated in multiple meetings and calls (*see* Pl. UF No. 33; House Decl. ¶¶ 22-29); Flynn's characterization of the purpose of those calls is not material and not supported by the evidence cited.<br><br>*See* Obj. No. ¶26 |
| 32. | During these discussions, SRFECC's representatives provided additional details regarding how they were interpreting the RFP's language and, for the first time, explained to Tyler certain additional and/or specific expectations for the software. | Flynn Dec. at ¶ 19. | Unsupported and not material.  Defendant does not cite to any admissible evidence in support of these purported facts.  Moreover, Defendant admitted that its system failed requirements that were incorporated into the contract, not "additional" requirements. *See* Exhibit 5, p. 3.<br><br>*See* Obj. No. ¶27 |
| 33. | Tyler's representatives frequently explained that what SRFECC was describing was not a COTS system. | Flynn Dec. at ¶ 19. | Unsupported and not material.  Defendant does not identify any admissible evidence in support of this generalization and purported fact.  Additionally, this is not material to whether Defendant failed to provide a COTS system that met the requirements identified in the RFP, or whether it made a false statement when it |

| | | | |
|---|---|---|---|
| | | | represented that its COTS system met those requirements.<br><br>*See* Obj. No. ¶27 |
| 34. | SRFECC's interpretations expanded the scope of the Agreement, would have required more than minor modifications, and would have been costly and time consuming. | Flynn Dec. at ¶ 19. | Unsupported. The cited material does not provide evidence in support of this assertion. Moreover, it is conclusory and fails to present any specific, triable facts with citation to particular parts of materials in the record pursuant to Federal Rule of Civil Procedure Rule 56(c)(1)(A).<br><br>*See* Obj. No. ¶27 |
| 35. | SRFECC wanted their end users to be able to change the fonts on their individual workstations. | Flynn Dec. at ¶ 28. | Not supported by the evidence cited, but undisputed. Plaintiff does not dispute that Defendant's system did not allow it to increase the font size for status updates and alerts, among other fields.<br><br>*See* Obj. No. ¶33 |
| 36. | Tyler's CAD software allows the end user to change the fonts on the vast majority of the workstation screens. | Flynn Dec. at ¶ 28. | Not supported by the cited evidence.<br><br>Undisputed for the purposes of this motion, but not material.<br><br>*See* Obj. No. ¶33 |
| 37. | A small percentage of the time, however, permitting an end user to change the font would actually alter the integrity of the software itself. Tyler's CAD system is not designed to allow for those alterations. | Flynn Dec. at ¶ 28. | Not supported by the cited evidence, but also not disputed. Defendant admits that its system was not designed to allow font alterations "[a] small percentage of the time." Plaintiff agrees that its system did not allow font alterations for a small number of fields.<br><br>*See* Obj. No. ¶33 |
| 38. | SRFECC ignored Tyler's feedback, and insisted that Tyler's CAD software "Failed" the font requirement because it did not provide 100% font-configurability. | Flynn Dec. at ¶ 28. | Not supported by the cited evidence, but also not disputed. Defendant responded that its system was "Fully Comply" with this requirement, rather than |

-11-

| | | | |
|---|---|---|---|
| | | | "Partially Comply." See Exh. 14, p. 56.<br><br>See Obj. No. ¶33 |
| 39. | In instances where requested modifications were so outside the industry norm and market demand, and/or threatened the integrity of the software itself, Tyler advised SRFECC that it could not modify the software to meet SRFECC's request. | Flynn Dec. at ¶ 28. | The premise that Plaintiff requested "modifications," or that such requests were outside "industry norm" or "market demand," is unsupported by any evidence in the record.<br><br>Plaintiff does not dispute that Defendant advised Plaintiff that it would not provide several technical requirements that in Defendant's judgment did not align with its "product strategy" and were "eliminated from consideration." Pl. UF Nos. 35-40; Exh. 5, pp. 6-7, 15.<br><br>See Obj. No. ¶33 |
| 40. | In order to attempt to address SRFECC's other issues, Tyler requested that SRFECC prioritize the so-called "Fails" so that Tyler could develop a plan to address the most important issues first. | Flynn Dec. at ¶ 21. | Unsupported by the cited evidence.<br><br>Not material. Whether or not Defendant asked Plaintiff to "prioritize" the order in which Defendant addressed the numerous failed items after the Go-Live date is not material to the breach of contract claim or the false statement claim.<br><br>See Obj. No. ¶29 |
| 41. | Tyler suggested that, as is common in software implementations of this nature, the most important modifications be addressed prior to go-live and other, less critical issues be addressed in due course after the system went live. | Flynn Dec. at ¶ 21. | Unsupported by the cited evidence.<br>Not material. Whether or not Defendant wanted Plaintiff to agree to go-live with a defective system and rely on Defendant to correct problems "in due course" is not material to the breach of contract claim or false statement element at issue here.<br><br>See Obj. No. ¶29 |
| 42. | SRFECC refused both suggestions, instead contending that all of the issues | Flynn Dec. at ¶ 22. | Unsupported by the evidence cited. |

-12-

| | | | |
|---|---|---|---|
| | SRFECC identified as "Fails" had to be addressed prior to go-live. | | Not material. Defendant does not assert (nor could it), that Plaintiff was required to "Go-Live" with a system that failed multiple requirements (and was inferior in key respects to its current software). Indeed, Plaintiff could not have done so without jeopardizing the safety of the residents of Sacramento County and leaving itself entirely dependent on Defendant's mercy to provide compliant software that it had already failed to provide and which it had falsely warranted was already in existence. |
| 43. | In September 2017, the parties jointly agreed that the previously scheduled November 6, 2017 go-live would need to be postponed. | Exhibit 18. | Undisputed that Defendant emailed Plaintiff's representatives confirming that the Go-Live date scheduled for November 6, 2017 would be postponed due to the number of unresolved issues identified during the functional review process, and that Plaintiff responded that it understood that the date would need to be postponed "due to Tyler New Worlds failure to meet the proposed project schedule coupled with the 75 outstanding issues. . ." *See* Exhibit 18.<br><br>Not material. Defendant admitted in December 2017 that it would take 17-22 years to resolve the issues identified, except for a number of issues it could not or would not resolve ever. Pl. UF Nos. 35-40; Exh. 5, pp. 6-7, 15.<br><br>Note: Defendant fails to acknowledge that it filed a Motion to Dismiss two weeks ago in which it represented to the Court that |

-13-

| | | | |
|---|---|---|---|
| | | | "[T]he decision not to proceed to go live was entirely SRFECC's, and, by its own admission, was based on its unilateral and unyielding assessment of software functionality . . . ." (ECF Dkt. No. 11, p. 7, lines 19-22). |
| 44. | In agreeing to the postponement, SRFECC's Executive Director Teresa Murray stated: "[W]e understand we need to push the go live date" and "we understand Tyler/New World will be collaborating internally on a new project schedule with a timeline which will be presented to SRFECC at a date yet to be determined." | Exhibit 18. | Undisputed that these are portions of the response, the full text of which is contained in exhibit 18.<br><br>Not material. Defendant admitted in December 2017 that it would take 17-22 years to resolve the issues identified, except for a number of issues it could not or would not resolve ever. Pl. UF Nos. 35-40; Exh. 5, pp. 6-7, 15. |
| 45. | In December 2017, in yet another attempt to educate SRFECC on the scope of the Agreement and the options for the project, Tyler prepared a PowerPoint presentation for the SRFECC project team. | Exhibit 5; Flynn Dec. at ¶¶ 24-34. | Undisputed that Defendant prepared a PowerPoint presentation for SRFECC in or around December 2017. Their motives for doing so are immaterial.<br><br>See Obj. Nos. ¶¶31-37 |
| 46. | In the December 2017 presentation, Tyler did not, as SRFECC contends, agree that there were 239 "Fail" items. Instead, as the presentation makes clear, Tyler believed there were only 161 items even at issue. | Flynn Dec. at ¶ 25. Exhibits 6, 8, 20, p. 3. | Unsupported. First, this "fact" is based on a false premise. Plaintiff does not contend that Defendant agreed there were 239 "Fail" items during the December 2017 presentation. See, e.g., Pl. UF Nos. 36 (fails acknowledged in presentation); 41-43 (fails acknolwedged following presentation). Second, paragraph 25 of Flynn's declaration does not support this assertion. Last, even if Flynn believed during his presentation that there were "only" 161 items "at issue," which is not supported by the cited evidence, this is not material to either the breach |

-14-

| | | | or false statement claims.<br><br>Not material. Defendant's position on whether its system failed 161 items, or 239 items, or whether it made these admissions on December 7 or December 13, is not material. The material fact is that Defendant failed to provide the system it was contractually obligated to provide. |
|---|---|---|---|
| 47. | Of these, 41 were warranty items that represented "bugs" in the software that were being fixed prior to go- live; seven were significant enhancement requests; and 79 were items that SRFECC claimed were "Fails" and Tyler disagreed. | Flynn Dec. at , ¶¶ 25-27. | Unsupported by the cited evidence.<br><br>Plaintiff agrees that Defendant characterized 41 items as "warranty" items "i.e. not working as designed"; that 79 items "may have not met the RFP requirements"; that 7 items were "requests for enhancement to the application." Exhibit 5 (Mr. Flynn's presentation) does not identify any items that Tyler disagreed were "Fails." The presentation does note that Defendant declined to characterize 40+ "reporting" items as non-compliant because it assumed it would complete the reports before a future Go-Live date, but these 40+ items were not part of the 161 items identified by the PowerPoint or addressed in this purported fact.<br><br>*See* Obj. Nos. ¶¶31-32 |
| 48. | Of the 161 items in Tyler's presentation, only 34 of those were items that Tyler agreed did not meet the RFP requirements based on SRFECC's additional explanation of how it was interpreting those requirements. | Flynn Dec. at ¶ 29. | Undisputed that at the time this presentation was given, Defendant agreed 34 items were "fails"; 41 items were characterized as "warranty" items because they were "not working as designed"; 7 items were characterized as requests for enhancement; and 79 items "may have not met the RFP requirements." |

-15-

| # | | | |
|---|---|---|---|
| | | | The remainder of this assertion is not supported by the cited evidence.<br><br>*See* Obj. No. ¶21 |
| 49. | Tyler agreed to characterize them as "fails" only based on extensive discussions between Tyler's subject matter experts and SRFECC's representatives over the course of the implementation, after the completion of functional testing and the exhaustive process of discussing the functionality in painstaking detail. | Flynn Dec. at ¶ 29. | Undisputed that Defendant agreed that these items were fails after extensive discussions between Tyler's subject matter experts and SRFECC's representatives over the course of implementation, functional testing, and discussing the functionality in painstaking detail. The assertion that these were the "only" reasons is unsupported by the cited evidence, and in any event, is not material.<br><br>*See* Obj. No. ¶21 |
| 50. | The list of "agreed fails" was later reduced to 29 by agreement. | Declaration of David Bonini ("Bonini Dec.") at ¶16; Exhibit 8. | Not material – whether the number was 34 or 29, Defendant breached the Agreement.<br><br>*See* Obj. No. ¶10 |
| 51. | With regard to those items, Tyler was either already developing the functionality for release in upcoming software updates or agreed to devote time and resources to develop functionality that SRFECC was requesting. | Flynn Dec. at ¶ 31. | Unsupported by the cited evidence and not material. |
| 52. | Tyler's presentation also attempted to prioritize all of the 161 items SRFECC had put at issue. | Flynn Dec. at ¶ 32. | Undisputed that Defendant assigned priorities to certain items identified in Defendant's presentation, except for items that it decided it would never provide. *See* Exh. 5 pp. 15 |
| 53. | In an effort to be a good partner to SRFECC, Tyler did not limit its analysis and effort to the 34 items Tyler agreed to address. Instead, Tyler prioritized and attempted to estimate how much development and enhancement time would be required for all 161 items. | Flynn Dec. at ¶ 32. | Unsupported by the cited evidence and not material. |
| 54. | The purpose, from Tyler's perspective, was to educate SRFECC on the level of | Flynn Dec. at ¶ 33. | Unsupported by the cited evidence and not material. |

| | | | |
|---|---|---|---|
| | time and effort it would take to develop the nuanced, customized specifications SRFECC requested. | | *See* Obj. No. ¶36 |
| 55. | Tyler wanted SRFECC to understand that what they were requesting was more of a custom-built CAD system and was inconsistent with the primary purpose of the Agreement-the purchase of a COTS system with minimal modifications. | Flynn Dec. at ¶ 33. | Unsupported by the cited evidence and not material. *See* Obj. No. ¶36 |
| 56. | Tyler's presentation was also intended to emphasize to SRFECC the concept of "continuous improvement," which is standard in the software industry. | Flynn Dec at ¶ 35. | Unsupported by the cited evidence and not material. |
| 57. | Clients routinely go-live and then continue to receive additional software updates, features and functionality through planned new releases and/ or specific development efforts. | Flynn Dec. at ¶ 35. | Unsupported by the cited evidence and not material. |
| 58. | Tyler hoped that SRFECC would appreciate the benefits of this model and recognize the negative, unnecessary impacts of their all-or-nothing approach. | Flynn Dec. at ¶ 35. | Unsupported by the cited evidence and not material. |

Dated:  September 14, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Philip S. Warden*
By:  PHILIP S. WARDEN
ROBERT E. KINGSLEY, Prosecuting Authority
Attorneys for Plaintiff
SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER