PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (SBN 54752)
philip.warden@pillsburylaw.com
CLARK THIEL (SBN 190212)
clark.thiel@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone: 415-983-1000
Facsimile: 415-983-1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
SYDNEY A. WARD (SBN 312615)
sydney.ward@pillsburylaw.com
2600 Capitol Avenue, Suite 300
Sacramento, CA 95816-5930
Telephone: 916-329-4700
Facsimile: 916-441-3583

KINGSLEY BOGARD
ROBERT E. KINGSLEY (SBN 59596)
Prosecuting Authority for Plaintiff
rkingsley@kblegal.us
600 Coolidge Drive
Suite 160
Folsom, CA 95630
Telephone: 916-932-2500

Attorneys for Plaintiff SACRAMENTO REGIONAL
PUBLIC SAFETY COMMUNICATIONS CENTER
D/B/A SACRAMENTO REGIONAL FIRE/EMS
COMMUNICATIONS CENTER

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER<br><br>Plaintiff,<br><br>vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California corporation<br><br>Defendant. | Case No. 2:18-cv-01792-KJM-KJN<br><br>PLAINTIFF'S REPLY TO DEFENDANT TYLER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION<br><br>Date:        September 19, 2018<br>Time:       2:00 p.m.<br>Courtroom: 3<br>Judge:      Hon. Kimberly J. Mueller |

-1-

PLAINTIFF'S REPLY TO TYLER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS ISO MOTION FOR PARTIAL SUMMARY ADJUDICATION
4816-2735-8322.v2                                                                                              Case No. 2:18-cv-01792-KJM-KJN

-2-

| | UNDISPUTED FACT[1] | RESPONSE AND SUPPORTING EVIDENCE | PLAINTIFF'S REPLY |
|---|---|---|---|
| 1. | SRFECC is a California Joint Powers Authority ("JPA"), formed under and in accordance with the laws of the State of California, Title 1, Division 7, Chapter 5, Section 6500 et seq., of the California Government Code. | Undisputed | Undisputed |
| 2. | Its member agencies include the City of Sacramento, the Sacramento Metropolitan Fire District, the City of Folsom, and the Cosumnes Community Services District. | Undisputed | Undisputed |
| 3. | SRFECC also provides services to the following six volunteer fire agencies as contract entities: Courtland Fire Protection District, Herald Fire Protection District, Isleton Fire Protection District, River Delta Fire Protection District, Walnut Grove Fire Protection District, and Wilton Fire Protection District. | Undisputed | Undisputed |
| 4. | SRFECC provides emergency dispatch services for approximately 1.5 million people in the greater Sacramento area. | Undisputed | Undisputed |
| 5. | It is one of the nation's largest fire and emergency medical services communication centers, providing public safety communications and dispatch services to the ten cities and districts, covering approximately 1,000 square miles. | Undisputed | Undisputed |
| 6. | It is the sole dispatching agency for all 9-1-1 emergency fire and medical aid service calls in Sacramento County. | Undisputed | Undisputed |
| 7. | In 2017 alone, SRFECC dispatched emergency units almost 205,000 times and answered over 350,000 emergency calls. | Undisputed | Undisputed |

---

[1] Defendant omitted Plaintiff's supporting evidence from this document.  To assist the Court, Plaintiff has copied its Supporting Evidence from its Separate Statement and pasted it underneath Plaintiff's Undisputed Facts for every fact that Defendant purports to dispute.

-2-

| # | Fact | Response | Reply |
|---|------|---------|-------|
| 8. | Defendant Tyler Technologies Inc. is a Delaware corporation qualified to do business in the State of California. | Undisputed | Undisputed |
| 9. | Defendant entered into a merger agreement with New World Systems Corporation ("New World"), a Michigan corporation, under which Defendant acquired 100% of the outstanding stock of New World, on or around October 1, 2015. | Undisputed | Undisputed |
| 10. | On or about November 17, 2015, Tyler completed the Merger and its acquisition of New World's stock. | Undisputed | Undisputed |
| 11. | New World filed a Certificate of Surrender of Right to Transact Intrastate Business with the Secretary of State of California on or around March 28, 2016. | Undisputed | Undisputed |
| 12. | On or before March 2014, SRFECC initiated efforts to upgrade and modernize its Northrop Grumman legacy computer aided dispatch system ("Legacy COBOL CAD System").<br><br>Thuesen Decl. ¶ 22 | Disputed. Declaration of Craig Nelson ("Nelson Dec.") at ¶ 7. | Mr. Nelson's "understanding and belief" is irrelevant. That paragraph lacks foundation and is incompetent. Purported dispute not material. |
| 13. | On or around March 18, 2014, SRFECC issued a Request For Proposals ("RFP") seeking bids from software vendors that could deliver, install, implement, and integrate a Replacement CAD System (hereafter, either "Replacement CAD System" or "Project").<br><br>Thuesen Decl. ¶ 25 | Disputed. The RFP (Exhibit 13 to the Motion) speaks for itself. Declaration of Kevin Flynn ("Flynn Dec.") at ¶¶ 9-13, 23, 28-35, 42-58; Declaration of David Bonini ("Bonini Dec.") at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 6, 14, and 24. | The RFP is admittedly unambiguous "speaks for itself".<br><br>The Parol Evidence Rule bars extrinsic evidence, prior or contemporary agreements to add to or modify the terms of unambiguous integrated written statement.<br><br>In addition, Mr. Flynn's quoted language is not admissible evidence. It is hearsay, lacks foundation. For example, no foundation for what was "Tyler's understanding of either industry standard or what was required by the parties' Agreement". Flynn Declaration ¶ 23. There is no foundation for the use of the "industry standard" and the hearsay statement about "Tyler's understanding" is speculative. The cited language from David |

-3-

| | | | |
|---|---|---|---|
| | | | Bonini violates the Parol Evidence Rule, lacks foundation and the statement that Tyler adopted the term "failure" "fails" or "failure" because "that was the term SRFECC employed" is an admission. Mr. Bonini's further statement about what "other representatives of Tyler . . . told SRFECC . . ." lacks foundation. Finally, with regard to Bonini, what Tyler "came to understand lacks foundation <u>and fails</u>. The quoted language from Mr. Nelson likewise violates the Parol Evidence Rule and lacks foundation. His statements about "common practice" is without any factual foundation as is the "context of industry standards" and is irrelevant. |
| 14. | The RFP identified and described the features and functions of the Replacement CAD System and sought assurances that the vendor would deliver a CAD system meeting those Technical Requirements.<br><br>Exh. 13 (RFP), pp. 13, 15-17, 23, 55-173, Thuesen Decl. ¶ 26 | Disputed. The RFP (Exhibit 13 to the Motion) <u>speaks for itself</u>. Flynn Dec. at ¶¶ 9-13, 23, 28-35, 42-58; Bonini Dec. at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 6, 14, and 24. | See Exhibits above. Violates the Parol Evidence Rule; lacks foundation; incompetent; irrelevant.<br>"Speaks for itself" is an admission. |
| 15. | SRFECC received three competitive bids. | Undisputed | Undisputed |
| 16. | It awarded the contract to the winning bidder, New World. | Undisputed | Undisputed |
| 17. | Defendant agreed to provide services and furnish licensed products, computer software and documentation for the delivery, installation, implementation, and integration of a Replacement CAD System pursuant to a Software License and Services Agreement ("Agreement").<br><br>*See* Exhibit 2 (Agreement), Declaration of Wendy Crosthwaite ("Crosthwaite Decl.") ¶ 8. | Disputed. The Agreement (Exhibit 2) speaks for itself. Flynn Dec. at ¶¶ 9-13, 23, 28-35, 42-58; Bonini Dec. at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 6, 14, and 24. | The "Agreement speaks for itself" is an admission, and the Parol Evidence Rule applies. The Parol Evidence Rule requires the exclusion of the 3 cited declarations. |

| # | | | |
|---|---|---|---|
| 18. | New World President Larry D. Leinweber signed the Agreement on behalf of New World on or around October 30, 2015. | Undisputed | Undisputed |
| 19. | Then-Chief Executive Director, Teresa Murray, signed the Agreement on behalf of SRFECC on or around November 6, 2015. | Undisputed | Undisputed |
| 20. | On November 6, 2015, SRFECC consented to the stock acquisition of New World by Tyler Technologies, Inc. in consideration of Tyler's ratification of its obligations under the Agreement. | Undisputed | Undisputed |
| 21. | Under the Agreement, Defendant promised to "design, deliver, install and integrate" a system that includes "(1) furnishing the Licensed Products; and (2) providing certain services described herein to Customer." <br><br> Exhibit 2, Recitation, p. 3 Crosthwaite Decl. ¶ 8. | It is undisputed that Exhibit 2, p. 3 contains the quoted language. What Tyler "promised" to do based on that language is in dispute. Flynn Dec. at ¶¶ 9-13, 23, 28-35, 42-58; Bonini Dec. at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 6, 14, and 24. | The declarations purport to explain the terms of the "Agreement" in violation of the Parol Evidence Rule. The Agreement was drafted by both parties, but using New World's form. The three quoted declarations lack foundation and should be stricken as irrelevant and incompetent. |
| 22. | The "Licensed Products" includes the Licensed Standard Software. | It is undisputed that Exhibit 2, p. 8 defines the quoted language as stated. | Undisputed |
| 23. | Defendant warranted that this system would meet the technical requirements of SRFECC's RFP that were marked "Fully Comply," as described in Exhibit N to the Agreement, i.e. existing software at a current customer's site for over one year. <br><br> Exhibit 2, Section 6.2, Crosthwaite Decl. ¶ 8. | Disputed. Exhibit 2, p. 70. | Defendant's understanding is not relevant. The document, Exhibit 2 speaks for itself and Defendant's attempts to modify the contract are unavailing and violate the Parol Evidence Rule. |
| 24. | Exhibit N provides that Defendant's response to SRFECC's RFP technical requirements is incorporated in the Agreement by reference. | It is undisputed that Exhibit 2, p. 70 incorporates by reference the technical responses to the RFP. *See also* Exhibit 2, p. 22. | Undisputed |

| # | | | |
|---|---|---|---|
| 25. | Defendant further agreed to "perform all of its obligations and provide all services and products to Customer as set forth in accordance with the timeline for the Project (see Exhibit D) and the provisions of this Agreement."<br><br>Exhibit 2, Section 4.1, Crosthwaite Decl. ¶ 8. | It is undisputed that Exhibit 2, p.11 contains the quoted language. It is disputed what that language required. Exhibit 2, pp. 22, 46, 70; Nelson Dec. at ¶ 22; Exhibit 18. | The notion that "it is disputed what that language required" is an attempt to violate the Parol Evidence Rule.<br><br>Mr. Nelson's Declaration, ¶ 22 lacks foundation, contains legal conclusions and his statement that "go live dates often change" lacks foundation and is irrelevant. |
| 26. | The Agreement specifies that "[t]ime is of the essence," and states that the parties must "strictly adhere to the timeline set forth in Exhibit D for the installation and integration of the System and shall strictly adhere to the timeline set forth for each milestone component (e.g. Installation) in Exhibit D, System Implementation Plan/GANTT Chart for that particular milestone component."<br><br>Exhibit 2 Sections 1.2-1.3 Crosthwaite Decl. ¶ 8. | It is undisputed that Exhibit 2, p. 9 contains the quoted language. It is disputed what that language required. Exhibit 2, pp. 22, 46, 70; Nelson Dec. at ¶ 22; Exhibit 18. | The attempts to construe Exhibit 2 on page 9 is a violation of the Parol Evidence Rule and Mr. Nelson's declaration violates the rule, lacks foundation. |
| 27. | Exhibit D provides that the "typical" implementation for a project "of this size and scope usually spans 18-24 months from contract signing through go live."<br><br>Exhibit D of Exhibit 2 to Crosthwaite Decl. ¶ 8 | It is undisputed that Exhibit 2, p. 70 contains the quoted language. It is disputed what that language required. Exhibit 2, pp. 22, 46, 70; Nelson Dec. at ¶ 22; Exhibit 18. | Admission that the language is in Exhibit 2. The attempt to dispute that language is a violation of the Parol Evidence Rule. Nelson's Declaration, ¶ 22, lacks foundation, contains expert testimony, which he is not qualified to give and his statements about industry standards are irrelevant. |
| 28. | The parties agreed that the Go-Live date would be November 6, 2017, or 24 months after execution of the Agreement.<br><br>House Decl. ¶¶ 14-16, Exhs. 4, 29, 31, 32 | Disputed. Exhibit 2, pp. 22, 46, 70; Nelson Dec. at ¶ 22; Exhibit 18. | See comments above. |
| 29. | After the start of the Project, Defendant failed to submit status reports each month as required by the Agreement.<br><br>House Decl. ¶ 18 | Disputed. Flynn Dec. at ¶ 14, 15, 18-20. | Flynn's discussion of 14 of "standard practices" lack foundation, is incompetent and irrelevant. 15 lacks foundation and is irrelevant. 18-20 lack foundation, contains legal conclusions. His statement that "no one at Tyler ever made a false statement" is lacking in any |

| | | | |
|---|---|---|---|
| | | | foundation or foundation showing personal knowledge.  19-20, same objections.  Flynn's attempt to vary the terms of the contract by unspecified non-contractual "standard practice" implementation" is irrelevant and lacks foundation. |
| 30. | The few status reports that were provided were not timely, and contained false and misleading information about Defendants' progress and Project completion.<br><br>House Decl. ¶¶ 18-20, Exhs. 27-28 | Disputed.  Flynn Dec. at ¶ 14, 15, 18-20. | Flynn's "standard practices (14) lacks foundation as does his entire Declaration.  The reference to a "Project Workbook" violates the Best Evidence Rule.  The statement that "all similar Tyler Projects and is typically updated multiple times a week" lacks foundation and is irrelevant.  15 lacks foundation and is irrelevant.  18-20 Flynn's statement "I believe that the status Tyler assigned a Project Workbook items was based on Tyler's good faith, legitimate assessment of the items based on contractual requirements" lacks foundation and is irrelevant.  Flynn has no knowledge of what SFRECC "refused to consider".  All of 19 and 20 lack foundation, the reference to "standard practice" is without any foundation and is ultimately irrelevant. |
| 31. | Because of these representations, SRFECC was led to believe that the project was progressing toward the anticipated Go-Live date, when in actuality, many components were not compliant.<br><br>House Decl. ¶ 18. | Disputed.  Flynn Dec. at ¶ 14, 15, 18-20; *see also* Flynn Dec. at ¶¶ 9-13, 23, 28-35, 42-58; Bonini Dec. at ¶¶ 10-12, 15; Nelson Dec. at ¶¶ 12-13; Exhibits 6, 14, and 24. | Unsupported by the cited evidence.  The declarations do not present admissible evidence, only conclusory statements unsupported by personal knowledge and based on speculation or hearsay. |
| 32. | The November 6, 2017 Go-Live was cancelled.<br><br>House Decl. ¶¶ 30-31, Exh. 18 | Disputed.  Exhibit 18; Flynn Dec. at ¶ 26. | Exhibit 18 speaks for itself as a contemporaneous exchange.  Mr. Finn's statement at 26 is an attempt to modify exhibit 18, which is irrelevant and lacks foundation. |

-7-

| # | | | |
|---|---|---|---|
| 33. | SRFECC's staff and consultants continued to meet with Defendants to list the remaining open items required to be performed by Defendants before a new System Go-Live date could be scheduled.<br><br>House Decl. ¶ 33. | Undisputed that the parties continued to meet to discuss open items after the go-live was postponed by mutual agreement, but disputed that these open items "were required to be performed" by Defendant before a new go-live date could be scheduled.  Flynn Dec. at ¶ 9-13, 23, 25-39; Exhibits 2, 13, 14. | Undisputed that the parties continued to meet.  The open items "required to be performed" is an attempt to vary the plain meaning of Exhibit 18 and the statements by Mr. Flynn is an attempt to violate the Parol Evidence Rule.  (See Exhibits 2, 13 and 14) |
| 34. | Because of the Go-Live cancellation, SRFECC sought assurances from Defendant that it would complete the Project in a timely manner.<br><br>House Decl. ¶ 37. | Disputed.  Exhibit 18; Flynn Dec. at , ¶¶ 23, 25-39. | Exhibit 18 is clear that Mr. Flynn's statements attempt to misconstrue the RFP language (lacks foundation, contains expert legal testimony).  Mr. Flynn's attempts to change the terms of the RFP lack foundation, contain expert legal analysis and are ultimately irrelevant and a violation of the Parol Evidence Rule.  Flynn goes on in ¶¶ 25-39 to try to back away from and change the precise terms of his admitted PowerPoint presentation, Exhibit 5. |
| 35. | Mr. Flynn made a presentation to SRFECC on December 7, 2017. | Undisputed. | Undisputed |
| 36. | During the presentation, Mr. Flynn admitted that "34 items ... failed to comply with the RFP requirement[;] 41 items that are warranty items (i.e. not working as designed, and will be resolved in a future release)[;] 7 items that are requests for enhancement to the application; [and] 79 items that may have not met the RFP requirements."<br><br>House Decl. ¶¶ 38-42, Exh. 5 | It is undisputed that Exhibit 5 contains the referenced quotations, but disputed as to the context, meaning and interpretation of the presentation.  Exhibit 5, Flynn Dec. at ¶¶ 28-40. | This is a bald attempt to change the terms of Exhibit 5. Mr. Flynn's admitted PowerPoint presentation presented to Plaintiff.  His ¶¶ 28-40 contain his undisclosed intentions, speculation on his part, lack foundation and ultimately fail to modify the terms of Exhibit 5. He also engages in attempting to provide expert legal analysis " . . . they were essentially insisting on a custom built system instead of COTS system they had agreed to purchase." |

| | | | |
|---|---|---|---|
| 37. | Mr. Flynn also went on to state that there were a "handful of items" that did not align with its "product strategy" and "have been eliminated from consideration." He admitted that Defendant would never be able to provide software that met at least four technical requirements.<br><br>House Decl. ¶¶ 38-43, Exh. 5 | It is undisputed that Exhibit 5 contains the referenced quotations, but this allegation is otherwise disputed. Exhibit 5, Flynn Dec. at ¶¶ 28-40. | " . . . the majority of the items were not required by the Parties' Agreement in the first instance." Mr. Flynn has no basis upon which to draw legal conclusions and this should be stricken and is a further violation of the Parol Evidence Rule. |
| 38. | Mr. Flynn estimated that Defendant's recovery plan for the "completion of these items given the capacity of the development team" would take 33,900 hours — and that Defendant's capacity for the entire public safety segment of its customer base was limited to only 3,000 hours of development time per year.<br><br>House Decl. ¶¶ 38-43, Exh. 5 | Disputed. Flynn Dec. at ¶¶ 37- 38. | The same objections as above. |
| 39. | Mr. Flynn estimated that Defendant could only commit between 1,500 to 2,000 hours per year to the SRFECC Project.<br><br>House Decl. ¶ 45 | Disputed. Flynn Dec. at ¶¶ 37- 38. | Mr. Flynn attempts to rewrite history and rewrite his own admitted PowerPoint presentation, which is irrelevant. |
| 40. | This means it would take Defendant between 17 years (33,900 ÷ 2,000) and 22 years (33,900 ÷ 1,500) to deliver a partial CAD system.<br><br>House Decl. ¶ 45 | Disputed. Flynn Dec. at ¶¶ 37-38. | Mr. Flynn's attempts to rely upon his "intent" and to reinterpret the Agreement is unavailing as a violation of the Parol Evidence Rule. Most of ¶ 37 are improper hypotheticals and should be stricken, and ¶ 38 relating to Mr. Flynn's personal goals is irrelevant, lacks foundation. |
| 41. | SRFECC's project manager Diane House continued to work with Defendant's project manager David Bonini to determine the extent of the system's failure to comply.<br><br>House Decl. ¶ 6, 25, 46-52, Exh. 20. | Disputed. Bonini Dec. at ¶¶ 15-16. | Bonini's Declaration is an admission that Tyler adopted the language of "fail." Bonini is "permitting the client to categorize the items in any way they wanted" is not something he can back away from over one year after the fact by telling us his undisclosed secret intentions. The quoted paragraphs are irrelevant. In ¶ 16 Mr. Bonini doesn't dispute that he and Ms. House did agree that a good many of the fails were in fact |

| | | | |
|---|---|---|---|
| | | | failed. His attempt to rewrite history is unavailing and irrelevant and contrary to the Parties' documentation. |
| 42. | Mr. Bonini and Ms. House exchanged a "reconciliation" spreadsheet where each inserted their comments on the RFP fails.<br><br>House Decl. ¶¶ 21-26, 28, 46, 50, Exhs. 22-24, 19, 26, 31, 20, 25, 6 | Disputed. Bonini Dec. at ¶¶ 15-16. | Mr. Bonini's attempt to vary the reconciliation spreadsheet is irrelevant and ultimately incompetent, while Ms. House's declaration is supported by a series of documents. Mr. Bonini chooses to ignore all of that documentation and his admissions contained in that, and simply baldly deny it. His Declaration should be stricken.<br><br>Paragraph 41's assertion that Bonini was "permitting the client to categorize the items in any way it wanted" is an admission. His Declaration fails to counter the extensive documentation previously agreed to by Bonini and Diane House.<br><br>42. The reconciliation spreadsheet is an admission by the defendant and Mr. Bonini's Declaration fails to dispute those documents, but instead makes various admissions as to the fact of certain failures. |
| 43. | Ms. House and Mr. Bonini, in the final iteration of the reconciliation document, agreed that there was a total of 239 "Fail" RFP items.<br><br>House Decl. ¶¶ 50-51, Exhs. 25, 6 | Disputed. Bonini Dec. at ¶¶ 15-16; Flynn Dec. at ¶¶ 24-16, 41-42; Exhibits 6, 8, 20. | Mr. Bonini admits that he "allowed SRFECC to characterize any item [the 239 RFP items] in any way it wanted to. This is an admission against interest and Mr. Bonini fails to effectively dispute it. Mr. Bonini participated in the creation of the documents cited and Exhibits 6, 8, 20. The reference to Flynn's Declaration at 24-16 doesn't make any sense. The ¶¶ 41-42 are irrelevant and do not appear to apply to the statement. ¶ 42 in attempting to explain Exhibit 7 has an incomplete, or at least ambiguous statement beginning at line 28. |

-10-

PLAINTIFF'S REPLY TO TYLER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF UNDISPUTED FACTS ISO MOTION FOR PARTIAL SUMMARY ADJUDICATION

4816-2735-8322.v2                                                                           Case No.: 2:18-cv-01792-KJM-KJN

| | | | |
|---|---|---|---|
| 44. | Ms. House compared the 239 "Fail" RFP items to Defendant's response to the RFP and determined that 172 items that had been marked "Fully Comply" were failed items.<br><br>House Decl. ¶ 53, Exh. 7 | Disputed. Flynn Dec. at ¶¶ 41-43. | Unsupported and not material. Mr. Flynn's declaration lacks personal knowledge and presents conclusory statements unsupported by any reference to specific facts. Moreover, whether he personally ever agreed that 239 items "failed" is not relevant (and is not asserted by Plaintiff). Mr. Flynn also asserts that software "bugs" should not be listed in Exhibit 7 because he promised to fix them before go-live; he fails to acknowledge that the go-live date had passed and that he projected it would take 17-22 years to fix the non-compliant issues. He also conclusorily asserts that Exhibit 7 is not accurate, but fails to address what is inaccurate or dispute that Ms. House says it is what it purports to be – a list of the RFP requirements that were marked "Fully Comply" that are identified on Exhibit 6 as items that Defendant agrees fails. The accuracy of this Exhibit is something that Defendant can independently confirm. In any event, whether accepted as accurate or not, Flynn acknowledged the existence of a number of failed items or items that did not work as warranted. |
| 45. | In responding to the RFP, each bidder was required to specify (concerning each RFP requirement) whether its Licensed Standard Software was: (1) Fully Comply; (2) Partially Comply; (3) Comply with Modifications; (4) Comply in Future; (5) Substitution; or (6) Exception. | It is undisputed that the RFP contains the cited language. Exhibit 14, pp. 20-21. | Undisputed. |
| 46. | A vendor Warranty of "Fully Comply" meant that the vendor's Licensed Standard Software currently provided the feature or functions as described in the RFP, and had been in use at existing client locations for a period of at least one (1) year from the date of | Disputed. Exhibit 2, p. 22, 70. | Defendant does not dispute what the language of the RFP is. It cites to the Agreement, not the RFP. |

-11-

| | | | |
|---|---|---|---|
| | proposal submission, not in beta testing. | | |
| 47. | On May 16, 2014, the date of its RFP response, New World falsely stated its system was "Fully Comply" for itemized technical requirements that did not comply.<br><br>See Exh. 14 (Response to RFP) Section 5, Thuesen Decl. ¶ 28<br><br>See House Decl. ¶ 53, Exh. 7 (identifying at least 172 items that were not "Fully Comply" that had been marked "Fully Comply"). | Disputed. Nelson Dec. at ¶¶ 12- 13, 26; Flynn Dec. at ¶¶ 41-57. | The RFP response is an admitted document. Mr. Flynn's attempt to rewrite the admitted document are unavailing. Mr. Flynn's Declaration contradicts Mr. Bonini's. For example, compare ¶ 45. The "information available to New World" lacks foundation. Mr. Flynn's statement about what Tyler did not believe lacks foundation, is speculation and is irrelevant. Mr. Flynn's statements as to what he might have done or would have done is just raw speculation, 47 contains an admission that the agreed upon functionality, which is supposed to be contained in "OTS" software was "scheduled for completion in 2018". The rest of the quoted sections of Flynn were simply an attempt to walk back the RFP response and are irrelevant.<br><br>Flynn admits in 52 that the functionality wouldn't be available until 2019. His hypothetical speculation that it "could have been delivered sooner" is without foundation and is irrelevant.<br><br>53 is likewise an admission that the RFP requirement 5.2.5.7G as requested would be delivered June 2018. It is puzzling that Mr. Flynn's presumed experience and education would not have anticipated that if the system did not contain all of the functionality in COTS software as promised, there would be problems.<br><br>55 is an admission that Tyler refused to modify 5.2.2.C.b. |

| # | | | |
|---|---|---|---|
| | | | 57 is Mr. Flynn's "belief" which lacks foundation and also contains inappropriate legal conclusions. |
| 48. | On November 6, 2015, Defendant warranted that its Licensed Standard Software met the items coded "Fully Comply" in New World's Response to SRFECC's RFP as described in Exhibit N to the Agreement, which incorporated New World's responses to the RFP technical requirements.<br><br>Exh. N to Exh. 2 (Agreement), Crosthwaite Decl. 8<br>See Exh. 14 (Response to RFP) Section 5, Thuesen Decl. ¶ 28 | Disputed. Exhibit 2, p. 12, 22, 70. | Defendant purports to dispute that Exhibit N incorporated the responses to the RFP, which set forth that the items marked "Fully Comply" were at existing client locations for over a year prior to Defendant's submission of its bid. Defendant fails to explain how this fact is disputed. However, even if it is disputed, it is not material, because its responses to the RFP unquestionably represented that its current COTS system was "Fully Comply" with certain technical requirements that Defendant later admitted did not comply, and this is sufficient for Plaintiff to prevail on the element of false representation. |
| 49. | At least 172 of these representations were false because years later Defendants admitted that their software did not "Fully Comply."<br><br>See Exh. 14 (Response to RFP) Section 5, Thuesen Decl. ¶ 28<br>See House Decl. ¶ 53, Exh. 7 (identifying at least 172 items that were not "Fully Comply" that had been marked "Fully Comply"). | Disputed. Nelson Dec. at ¶¶ 12-13, 26; Flynn Dec. at ¶¶ 41-57; Bonini Dec. at ¶¶ 15-16. | The two declarations failed to overcome the written RFP response and Mr. Bonini's and Mr. Flynn's several admissions noted above. |
| 50. | Had those 172 responses been recorded as not compliant, then SRFECC would not have awarded it the contract.<br><br>See Thuesen Decl. ¶¶ 41-44<br>House Decl. ¶¶ 72-79 | Disputed. Nelson Dec. at ¶¶ 20, 25; Flynn Dec. at ¶ 43; Exhibit 13, p. 19-22. | Neither Mr. Nelson nor Mr. Flynn would have any basis of knowing what SRFECC would have done in the hypothetical as posed. Lacks foundation, irrelevant. |
| 51. | SRFECC agreed to pay New World $2,755,985 for delivery, implementation, and service of a replacement CAD system pursuant to a payment schedule set forth in Exhibit A of the Agreement.<br><br>Exhibit A of Exhibit 2, Crosthwaite ¶ | It is undisputed that SRFECC agreed to pay $2,755,985 per the Agreement. What the Agreement required is in dispute. Flynn Dec. at ¶¶ 9-13, 23, 28-35, 42-58; Bonini Dec. at ¶¶ 10-12, 15; Nelson | The agreement is unambiguous and Mr. Flynn's, Mr. Bonini and Mr. Nelson's Declarations violate the Parol Evidence Rule and the several exhibits cited. |

-13-

|  | | | |
|---|---|---|---|
| | 8. | Dec. at ¶¶ 12-13; Exhibits 2, 6, 14, and 24. | |
| 52. | On or around November 14, 2015, Defendant invoiced SRFECC $761,440.00 for pre-paid standard software maintenance services. | Undisputed | Undisputed |
| 53. | SRFECC paid Defendants $761,440.00 on or around December 9, 2015 pursuant to this invoice. | Undisputed | Undisputed |
| 54. | On or around November 18, 2015, Defendants invoiced SRFECC $443,047.00, for Licensed Standard Software. | Undisputed | Undisputed |
| 55. | On or around that same day, Defendants invoiced SRFECC a total of $194,524.76 for purported third-party products, services, and the performance bond. | Undisputed | Undisputed |
| 56. | On or around December 9, 2015, SRFECC paid Defendants $443,047.00 and $194,524.76, respectively. | Undisputed | Undisputed |
| 57. | On or around May 6, 2016, Defendants invoiced SRFECC $443,048.00 for Licensed Standard Software.  On or around May 19, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. | Undisputed | Undisputed |
| 58. | On or around September 15, 2016, Defendants invoiced SRFECC $158,164.00.  On November 1, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. | Undisputed | Undisputed |
| 59. | On or around October 12, 2016, Defendants invoiced SRFECC $28,969.50.  On or around November 2, 2016, SRFECC paid Defendants the charged amount pursuant to this invoice. | Undisputed | Undisputed |
| 60. | On or around January 31, 2017, Defendants invoiced SRFECC $98,900.00 for a progress payment for purportedly completing GANTT Step 4 — Install and Standard Configuration.  On or around March 2 2017. | Undisputed | Undisputed |

-14-

| # | | | |
|---|---|---|---|
| 61. | On or around August 30, 2017, Defendants invoiced SRFECC $300.00 for a purported third-party product.<br><br>On or around that same day, SRFECC paid this invoiced amount. | Undisputed | Undisputed |
| 62. | Defendant has not certified that it has completed GANTT Steps 6, 8, or 10 nor invoiced SRFECC for same.<br><br>House Declaration ¶ 82. | It is undisputed that Tyler did not invoice SRFECC for all of Tyler's services. | Undisputed |
| 63. | To date, SRFECC has paid Defendants $2,128,393.26<br><br>*See* Chao Decl. ¶ 14-22 (sum of payments equals $2,128,393.26). | Undisputed that SRFECC has paid Tyler at least $2,128,393.26. | Undisputed |
| 64. | SRFECC obtained the specifications for the equipment and related components Defendant required and installed them so that they were available for use in advance of Defendant's delivery of its system.<br><br>House Decl. ¶ 84. | Undisputed, but Exhibit 2 speaks for itself as to the specific requirements. | Undisputed and an admission that Exhibit 2 "speaks for itself". |
| 65. | SRFECC provided a consistent Project Manager over the course of the project (as opposed to Defendant's use of three different managers), a CAD Build team, an IT team, and the involvement of an executive team through SRFECC's Command Staff.<br><br>House Decl. ¶ 85. | Disputed. Flynn Dec. at ¶¶ 7, 15-16; Nelson Dec. at ¶ 11. | None of the evidence cited addresses (much less supports a dispute concerning) this fact.<br><br>Flynn's ¶ 7 is predicated on an "understanding" and does not contain admissible evidence. Nelson's declaration lacks foundation and is irrelevant whether ATHENA was hired. |
| 66. | The Project Manager and Command Staff engaged in weekly calls with Defendant, provided timely responses to Defendant's requests for information, coordinated with Defendant on an agreed-upon schedule, and provided timely input on the design and use of the system.<br><br>House Decl. ¶ 86. | Disputed. Flynn Dec. at ¶ 7; Nelson Dec. at ¶ 11. | Flynn's statement is not supported by personal knowledge. Furthermore neither paragraph discusses "weekly calls" and are thus irrelevant. |
| 67. | SRFECC had qualified personnel available to be trained to use Defendant's system. | Disputed. Flynn Dec. at ¶¶ 15- 17; Nelson Dec. at ¶ 11. | Flynn's statements lack foundation, contain personal opinion and speculation and does not actually dispute the statement. Nelson likewise does not directly |

-15-

| | | | |
|---|---|---|---|
| | House Decl. ¶ 87. | | confront the statement but it is incompetent and irrelevant. |
| 68. | SRFECC had a full CAD Build team participate in every training and configuration event.<br><br>House Decl. ¶ 88. | Disputed.  Flynn Dec. at ¶¶ 15-17. | Flynn has no basis upon which to comment on the qualifications of plaintiffs CAD Building team.  The quoted statements do not directly dispute or raise no issue of fact about the statement. |
| 69. | Each member of the Build team had a "backup" so that a full team was available at all times.<br><br>House Decl. ¶ 89. | Disputed.  Flynn Dec. at ¶¶ 15-17. | Lacks foundation.  Flynn's declaration does not actually speak to the "backup."  Flynn's speculation of what individuals "did not understand" is without foundation, and is irrelevant. |
| 70. | SRFECC did not receive the Replacement CAD System that Defendant contracted to provide.<br><br>See House Decl. ¶¶ 45, 52, 54-71, 90. See Thuesen Decl. ¶¶ 36-39, 45 | Disputed.  Exhibits 2, 6, 13, 14, 20, 24; Flynn Dec. at ¶¶ 9-13, 15-17, 23, 28-35, 42-58; Nelson Dec. at ¶¶ 12-13. | There is no dispute that SRFECC never received a replacement CAD System as provided in the agreement and the RFP.  Flynn's statement is directly contrary to his own PowerPoint presentation to the Exhibit 6 and Exhibit 7 created by David Bonini and Diane House.  Flynn's statement that "standard practice are irrelevant and unsupported" contains legal conclusions that Mr. Flynn is not qualified to provide the Flynn PowerPoint Exhibit 5 as an admission against interest.  Flynn's attempt to contradict his own statements are unavailing and irrelevant.  Flynn lacks knowledge about Exhibit 7 which was prepared by Ms. House at the suggestion of David Bonini.  Paragraph 35 contains important admissions against interest "we recognize that our current system did not function in that manner."  Notably, Flynn states that he would "agree to deliver the functionality," but fails to specify when that would occur although that issue is specifically addressed in Mr. Flynn's PowerPoint Exhibit 5.  Much of the quoted language for example 43 is irrelevant to the statement. |

-16-

PLAINTIFF'S REPLY TO TYLER TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED FACTS ISO MOTION FOR PARTIAL SUMMARY ADJUDICATION

4816-2735-8322.v2                                                                                             Case No.:  2:18-cv-01792-KJM-KJN

| # | | | |
|---|---|---|---|
| | | | It also contains outright speculation (47), lacks foundation and ultimately fails to dispute the statement.  Paragraph 58 contains expert legal analysis and legal opinion and conclusions all of which is objectionable.  It should be stricken.  Nelson's declaration shows he lacks knowledge, (¶ 12) his statements about common practice are irrelevant and lack foundation.  Mr. Nelson also provides legal analysis of which he is not qualified.  His interpretation of the Agreement, Exhibit 2 and RFP violate the Parol Evidence Rule. |
| 71. | Because Defendant did not perform the contract, SRFECC has suffered the loss of the benefit of receiving the delivery, installation, implementation, and integration of the Replacement CAD System.<br><br>House Decl. ¶ 90.<br>Thuesen Decl. ¶ 45 | Disputed.  Exhibits 2, 6, 13, 14, 20, 24; Flynn Dec. at , ¶¶ 9-13, 15-17, 23, 28-35,42-58; Nelson Dec. at ¶¶ 12-13. | Plaintiff's motion does not seek to specify damages.  Flynn's declaration lacks foundation, purports to interpret the contract.  Mr. Flynn is not qualified to give legal advice.  The understanding of "numerous individuals" at SRFECC lacks foundation.  Ultimately Mr. Flynn fails to dispute statement.  Mr. Nelson's declaration does not controvert the paragraph but instead purports to interpret the agreement of the violation of Parol Evidence Rule. |
| 72. | SRFECC must continue to rely for several more years (at minimum) on its Legacy COBOL CAD System, gradually exposing the SRFECC to greater risk that its CAD system will "crash" in an environment where maintenance has become increasingly difficult due to programmer retirements and sheer age of the system.<br><br>Thuesen Decl. ¶¶ 45, 20-24 | Disputed.  Exhibits 2, 13, 14, 20, 24; Flynn Dec. at ¶¶ 9-13, 15-17, 23, 28-35, 42-58; Nelson Dec. at , ¶¶ 12-13. | Exhibit 2 does not support the existence of a dispute over this fact.<br>Mr. Flynn's and Mr. Nelson's declarations likewise fail to support the existence of any factual dispute and are inadmissible. |
| 73. | As a result of Defendant's breach, SRFECC will incur costs for the maintenance and upkeep of the existing Legacy COBOL CAD System in an amount that could range from $500,000 to $1,500,000. | Disputed.  Exhibits 2, 6, 13, 14, 20, 24; Flynn Dec. at ¶¶ 9-13, 15-17,23,28-35,42-58; Nelson Dec. at ¶¶ 12-13. | The evidence cited does not support the existence of a dispute over this fact. |

-17-

| Thuesen Decl. ¶ 46 | | |
|---|---|---|

Dated:  September 14, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Philip S. Warden*
PHILIP S. WARDEN
ROBERT E. KINGSLEY, Prosecuting Authority
Attorneys for Plaintiff
SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER