PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (SBN 54752)
philip.warden@pillsburylaw.com
CLARK THIEL (SBN 190212)
clark.thiel@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Telephone:  415-983-1000
Facsimile:  415-983-1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
SYDNEY A. WARD (SBN 312615)
sydney.ward@pillsburylaw.com
2600 Capitol Avenue, Suite 300
Sacramento, CA 95816-5930
Telephone:  916-329-4700
Facsimile:  916-441-3583

KINGSLEY BOGARD
ROBERT E. KINGSLEY (SBN 59596)
Prosecuting Authority for Plaintiff
rkingsley@kblegal.us
600 Coolidge Drive
Suite 160
Folsom, CA 95630
Telephone:  916-932-2500

Attorneys for Plaintiff SACRAMENTO REGIONAL
PUBLIC SAFETY COMMUNICATIONS CENTER
D/B/A SACRAMENTO REGIONAL FIRE/EMS
COMMUNICATIONS CENTER

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER<br><br>        Plaintiff,<br><br>   vs.<br><br>TYLER TECHNOLOGIES, INC., a Delaware corporation F/K/A NEW WORLD SYSTEMS CORPORATION, a Surrendered California corporation<br><br>        Defendant. | Case No.  2:18-cv-01792-KJM-KJN<br><br>RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION<br><br>Date:  September 19, 2018<br>Time:  2:00 p.m.<br>Courtroom:  3<br>Judge:  Hon. Kimberly J. Mueller |

Plaintiff, the Sacramento Regional Public Safety Communications Center d/b/a Sacramento Regional Fire/EMS Communications Center ("SRFECC"), responds to Defendant Tyler Technologies, Inc.'s ("Tyler") Objections to Evidence Submitted in Support of Plaintiff's Motion for Partial Summary Adjudication [Dkt. No. 40] as follows:

| EVIDENCE | OBJECTION | RESPONSE |
|---|---|---|
| Declaration of Joesph Thuesen ("Thuesen Dec.") ¶¶ 36; 39; 40; 41-43; 44, third sentence. | Speculative and not based on the personal knowledge of the declarant. FED. R. CIV. P. 56(c)(4) (requiring summary judgment declarations to be made based on personal knowledge); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient.") | The Thuesen Dec. demonstrates, among other things, that (1) the declarant, Mr. Thuesen, is "the Interim Chief Executive Director of Plaintiff, SRFECC (¶ 1); (2) he has personal knowledge of the statements in his Declaration (¶ 2); he is "a member of the CAD Build Team and the RFP Evaluation Committee" (¶ 7); he works daily with SRFECC's CAD system (¶ 8); he works "regularly as a dispatcher (¶ 8); he manages "the department (¶ 8); he provides advice to IT staff on  day-to-day operations (¶ 8); he "attended the meeting where the bids were evaluated and selected" (¶ 44).<br><br>Based on his own personal experiences and position with SRFECC, Mr. Thuesen's testimony demonstrates that he indeed has personal knowledge that "Ms. House further determined that 172 of these items had been marked "Fully Comply" in Defendant's response to the RFP" (¶ 40); "Using the spreadsheet the Evaluation Committee used to determine each vendor's score, one is able to calculate what Defendant's RFP score would have been if the answers that had been falsely marked 'Fully Comply' were marked 'Not Compliant; by changing the value from '3' to '0.'" (¶ 41); "Ms. House changed the values |

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

| | | |
|---|---|---|
| | | in the Evaluation Committee spreadsheet for the items that had been falsely marked "Fully Comply."  The spreadsheet automatically recalculated Defendant's score based on the formula" (¶ 42); "Defendant's total score decreased from 81.99% (the highest of the three competing scores) to 78.77% (the lowest score)" (¶ 43); "If New World had not scored the highest, SRFECC would not have awarded it the contract" (¶ 44, third sentence). |
| Thuesen ¶ 45 | Improperly contains the conclusory and unsupported statement that "Defendant failed to perform the contract." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir.1981) (conclusory statements unsupported by factual data are insufficient).<br><br>Speculative and not based on the personal knowledge of the declarant. FED. R. CIV. P. 56(c)(4) (requiring summary judgment declarations to be made based on personal knowledge); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient.") | The Thuesen Dec. demonstrates, among other things, that (1) the declarant, Mr. Thuesen, is "the Interim Chief Executive Director of Plaintiff, SRFECC (¶ 1); (2) he has personal knowledge of the statements in his Declaration (¶ 2); he is "a member of the CAD Build Team and the RFP Evaluation Committee" (¶ 7); he works daily with SRFECC's CAD system (¶ 8); he works "regularly as a dispatcher (¶ 8); he manages "the department (¶ 8); he provides advice to IT staff on  day-to-day operations (¶ 8); he "attended the meeting where the bids were evaluated and selected" (¶ 44).<br><br>Mr. Thuesen's testimony that "Defendant failed to perform the contract" is not conclusory and unsupported.  Indeed, Mr. Thuesen's testimony is substantiated by paragraphs 36-42 ("When the CAD Build Team reviewed the functionality of the replacement CAD system, it discovered that it did not satisfy many of the technical requirements set forth in the RFP. These failures were significant, because they increase the amount of time it takes to process emergency calls.  In an emergency, a delay of minutes or even seconds can |

-3-

mean the difference between life and death. Defendant's Vice President Kevin Flynn confirmed that its system did not meet numerous technical requirements during a presentation to SRFECC on December 7, 2017, which I attended.  Following his presentation, SRFECC Project Manager Diane House and Defendant's Project Manager David Bonini concluded that 239 items failed to meet RFP requirements. Ms. House further determined that 172 of these items had been marked "Fully Comply" in Defendant's response to the RFP. Using the spreadsheet the Evaluation Committee used to determine each vendor's score, one is able to calculate what Defendant's RFP score would have been if the answers that had been falsely marked "Fully Comply" were marked "Not Compliant" by changing the value from "3" to "0."  Ms. House changed the values in the Evaluation Committee spreadsheet for the items that had been falsely marked "Fully Comply."  The spreadsheet automatically recalculated Defendant's score based on the formula.").

Furthermore, based on his own personal experiences and position with SRFECC, Mr. Thuesen's testimony demonstrates that he indeed has personal knowledge that "Because Defendant failed to perform the contract, SRFECC has not obtained the benefit of the system it contracted to receive.  SRFECC must continue to rely on an aging system that is increasingly expensive to maintain and lacks the functionality of the system it sought to procure" (¶ 45).

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

| Thuesen ¶ 46 | Improperly contains the conclusory and unsupported statement that "as a result of Defendant's breach, SRFECC will incur costs." Speculative and not based on the personal knowledge of the declarant. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir.1981) (conclusory statements unsupported by factual data are insufficient). | The Thuesen Dec. demonstrates, among other things, that (1) the declarant, Mr. Thuesen, is "the Interim Chief Executive Director of Plaintiff, SRFECC (¶ 1); (2) he has personal knowledge of the statements in his Declaration (¶ 2); he is "a member of the CAD Build Team and the RFP Evaluation Committee" (¶ 7); he works daily with SRFECC's CAD system (¶ 8); he works "regularly as a dispatcher (¶ 8); he manages "the department (¶ 8); he provides advice to IT staff on  day-to-day operations (¶ 8); he "attended the meeting where the bids were evaluated and selected" (¶ 44).

Mr. Thuesen's testimony that "as a result of Defendant's breach.  SRFECC will incur costs" is substantiated by his his own personal experiences of CAD systems and position with SRFECC.

Tyler's purported authority for its objections are inapposite.  In *Taylor v. List*, 880 F.2d 1040, (9th Cir. 1989), facts were deemed "conclusory . . . . unsupported by factual data" because purported supporting affidavits failed to contain facts supported by personal knowledge of specific underlying acts and motives. *See id.* at 1045.  In *Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, (9th Cir. 1981), there was no "cit[ation to] any portion of the record that demonstrate[d] or even imply[ed] the validity of" the Government's assertion that it would be able to prove at trial that the plaintiff committed illegal acts such that there was a genuine issue of material dispute and summary judgment should not be decided in |

-5-

| | | |
|---|---|---|
| | | plaintiff's favor. *See id.* at 1299. |
| Declaration of Sherrill Diane House ("House Dec.") ¶ 18 | Improperly contains the conclusory and unsupported statement "Defendant falsely represented its completion of certain milestones and RFP requirements throughout the process." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir.1981) (conclusory statements unsupported by factual data are insufficient). | Ms. House's testimony that the "Defendant falsely represented its completion of certain milestones and RFP requirements throughout the process" is not conclusory and unsupported.  Indeed, Ms. House's testimony is substantiated by the subsequent paragraph.  *See* ¶ 19 ("For instance, in June 2017, I received a status report for May 2017 from Defendant that falsely represented that several tasks had been completed that I knew had not been completed.").  Ms. House's testimony if further substantiated, in extensive detail throughout her declaration.  *See e.g.*, ¶¶ 21-24 ("In June 2017, I created an Excel spreadsheet listing every RFP technical requirement in order to review the functionality of Defendant's system against the RFP in preparation for functional tests scheduled to occur in August 2017.  During June and July 2017, I met regularly with the SRFECC CAD Build team and we went through the Excel spreadsheet line by line and tested Defendant's software to confirm whether it met the requirements.  We completed this process on or around August 6, 2017.  I compiled the results of the review in the spreadsheet and a Microsoft Word Document, which I sent to David Bonini on or around August 6, 2017. Attached hereto are true and correct copies of the email (Exhibit 22), the attached spreadsheet (Exhibit 24), and the attached Word document (Exhibit 23) that I sent to David Bonini on August 6, 2017."); ¶¶ 36-52 ("Mr. Piper and Defendant's Solution Architect and Subject |

-6-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Matter Expert ('SME') Jerrold Emery, among other Tyler representatives, came on site on November 16, 2017 to continue reviewing failed RFP items. Because of the Go-Live cancellation, SRFECC sought assurances from Defendant that it would complete the project in a timely manner.  On December 1, 2017, Mr. Flynn sent Teresa Murray and myself four documents that are the result of the 'interim plan' developed by Defendant for performance of the contract.  He also copied David Bonini, Larry Piper, Bob Motzny, Brian Leary, Jerrold Emery, and Bryan Proctor.  The four documents include a PowerPoint presentation; two separate MS Project Plans; and an Excel spreadsheet identifying the unresolved items Defendant had identified as 'Priority-1' items.  A true and correct copy of Mr. Flynn's December 1, 2017 email and the attached PowerPoint presentation are included herein as Exhibits 21 and 5, respectively.  Mr. Flynn's email stated that a more detailed spreadsheet was available from me or from David Bonini. This referred to the Excel spreadsheet tracking all RFP items that David Bonini and I had been exchanging, discussed *supra* ¶¶ 21-26.  On December 7, 2017, Mr. Flynn gave a presentation at SRFECC regarding the status of the Project in response to SRFECC's request for assurances.  I was present for the entire presentation, which lasted about one hour.  Mr. Flynn used the PowerPoint presentation he had sent me on December 1, 2017 during the presentation.  During the presentation, Mr. Flynn admitted that '34 items . . . failed to comply with the RFP

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

requirement[;] 41 items that are warranty items (i.e. not working as designed, and will be resolved in a future release)[;] 7 items that are requests for enhancement to the application; [and] 79 items that may have not met the RFP requirements.' Mr. Flynn's presentation also identified a 'handful of items' that did not align with its 'product strategy' and 'have been eliminated from consideration.' Mr. Flynn admitted that Defendant would never be able to provide software that met at least four technical requirements. Mr. Flynn estimated that Defendant's recovery plan for the 'completion of these items given the capacity of the development team' would take 33,900 hours – and that Defendant's capacity for the entire public safety segment of its customer base was limited to only 3,000 hours of development time per year. Mr. Flynn estimated that Defendant could only commit between 1,500 to 2,000 hours per year to the SRFECC Project. This means it would take Defendant between 17 years (33,900 ÷ 2,000) and 22 years (33,900 ÷ 1,500) to deliver a partial CAD system. Following the presentation, I emailed Mr. Bonini to ask for the list of the 34 items that Mr. Flynn described as failed RFP items during his presentation. Mr. Bonini responded that those items corresponded to the RFP items that he and I had marked as 'Development' in the Defendant Status Column. A true and correct copy of this correspondence is attached as Exhibit 31. I also emailed Larry Piper and David Bonini to ask for assistance reconciling the problems identified in Mr. Flynn's presentation and to

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

4814-7466-2002.v1                                      Case No.:  2:18-cv-01792-KJM-KJN

note that SRFECC was still waiting for additional information from Mr. Flynn regarding projected completion of the contract. A true and correct copy of this correspondence is attached as Exhibit 20.  On December 13, 2017, Mr. Bonini and I had a telephone call where we reviewed the Excel spreadsheet listing each technical requirement and annotating whether the Defendant system met each requirement.  Mr. Bonini was having computer problems and asked me to manually enter changes to the document as we discussed them.  I did so, and sent him a copy of the updated spreadsheet at the conclusion of our call.  A true and correct copy of my email to Mr. Bonini is attached as Exhibit 25. A true and correct copy of the updated spreadsheet attached to the email is attached as Exhibit 6 (also Exhibit 6 to the Complaint).  This document identifies 239 RFP items that SRFECC and Defendant agree failed.  I reviewed each of these items and checked it against New World's Response to the RFP.  I discovered that of the 239 failed RFP items, New World had indicated that its system was 'Fully Comply' with 172 of them.") *see also*, ¶¶ 56-70.

Tyler's purported authority for its objections are inapposite.  In *Taylor v. List*, 880 F.2d 1040, (9th Cir. 1989), facts were deemed "conclusory . . . . unsupported by factual data" because purported supporting affidavits failed to contain facts supported by personal knowledge of specific underlying acts and motives. *See id.* at 1045.  In *Angel v. Seattle-First Nat. Bank*, 653

-9-

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

Case No.:  2:18-cv-01792-KJM-KJN

| | | |
|---|---|---|
| | | F.2d 1293, (9th Cir. 1981), there was no "cit[ation to] any portion of the record that demonstrate[d] or even imply[ed] the validity of" the Government's assertion that it would be able to prove at trial that the plaintiff committed illegal acts such that there was a genuine issue of material dispute and summary judgment should not be decided in plaintiff's favor. *See id.* at 1299. |
| House Dec. ¶ 20 | Improperly contains the conclusory and unsupported statement that items were "falsely marked 'completed'" on Exhibit 28. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir.1981) (conclusory statements unsupported by factual data are insufficient). | Ms. House's testimony that items were "falsely marked 'completed'" on Exhibit 28 is not conclusory nor unsupported. Indeed, Ms. House's testimony is substantiated by the preceding paragraph. *See* ¶ 19 ("For instance, in June 2017, I received a status report for May 2017 from Defendant that falsely represented that several tasks had been completed that I knew had not been completed."). Ms. House's testimony is further substantiated, in extensive detail throughout her declaration. *See e.g.*, ¶¶ 21-24 ("In June 2017, I created an Excel spreadsheet listing every RFP technical requirement in order to review the functionality of Defendant's system against the RFP in preparation for functional tests scheduled to occur in August 2017. During June and July 2017, I met regularly with the SRFECC CAD Build team and we went through the Excel spreadsheet line by line and tested Defendant's software to confirm whether it met the requirements. We completed this process on or around August 6, 2017. I compiled the results of the review in the spreadsheet and a Microsoft Word Document, which I sent |

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

to David Bonini on or around August 6, 2017. Attached hereto are true and correct copies of the email (Exhibit 22), the attached spreadsheet (Exhibit 24), and the attached Word document (Exhibit 23) that I sent to David Bonini on August 6, 2017."); ¶¶ 36-52 ("Mr. Piper and Defendant's Solution Architect and Subject Matter Expert ('SME') Jerrold Emery, among other Tyler representatives, came on site on November 16, 2017 to continue reviewing failed RFP items. Because of the Go-Live cancellation, SRFECC sought assurances from Defendant that it would complete the project in a timely manner.  On December 1, 2017, Mr. Flynn sent Teresa Murray and myself four documents that are the result of the 'interim plan' developed by Defendant for performance of the contract.  He also copied David Bonini, Larry Piper, Bob Motzny, Brian Leary, Jerrold Emery, and Bryan Proctor.  The four documents include a PowerPoint presentation; two separate MS Project Plans; and an Excel spreadsheet identifying the unresolved items Defendant had identified as 'Priority-1' items.  A true and correct copy of Mr. Flynn's December 1, 2017 email and the attached PowerPoint presentation are included herein as Exhibits 21 and 5, respectively.  Mr. Flynn's email stated that a more detailed spreadsheet was available from myself or from David Bonini. This referred to the Excel spreadsheet tracking all RFP items that David Bonini and I had been exchanging, discussed *supra* ¶¶ 21-26.  On December 7, 2017, Mr. Flynn gave a presentation at SRFECC regarding the status of the Project in response to

-11-

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

SRFECC's request for assurances. I was present for the entire presentation, which lasted about one hour. Mr. Flynn used the PowerPoint presentation he had sent me on December 1, 2017 during the presentation. During the presentation, Mr. Flynn admitted that '34 items . . . failed to comply with the RFP requirement[;] 41 items that are warranty items (i.e. not working as designed, and will be resolved in a future release)[;] 7 items that are requests for enhancement to the application; [and] 79 items that may have not met the RFP requirements.' Mr. Flynn's presentation also identified a 'handful of items' that did not align with its 'product strategy' and 'have been eliminated from consideration.' Mr. Flynn admitted that Defendant would never be able to provide software that met at least four technical requirements. Mr. Flynn estimated that Defendant's recovery plan for the 'completion of these items given the capacity of the development team' would take 33,900 hours – and that Defendant's capacity for the entire public safety segment of its customer base was limited to only 3,000 hours of development time per year. Mr. Flynn estimated that Defendant could only commit between 1,500 to 2,000 hours per year to the SRFECC Project. This means it would take Defendant between 17 years (33,900 ÷ 2,000) and 22 years (33,900 ÷ 1,500) to deliver a partial CAD system. Following the presentation, I emailed Mr. Bonini to ask for the list of the 34 items that Mr. Flynn described as failed RFP items during his presentation. Mr. Bonini responded that

-12-

those items corresponded to the RFP items that he and I had marked as 'Development' in the Defendant Status Column. A true and correct copy of this correspondence is attached as Exhibit 31. I also emailed Larry Piper and David Bonini to ask for assistance reconciling the problems identified in Mr. Flynn's presentation and to note that SRFECC was still waiting for additional information from Mr. Flynn regarding projected completion of the contract. A true and correct copy of this correspondence is attached as Exhibit 20.  On December 13, 2017, Mr. Bonini and I had a telephone call where we reviewed the Excel spreadsheet listing each technical requirement and annotating whether the Defendant system met each requirement.  Mr. Bonini was having computer problems and asked me to manually enter changes to the document as we discussed them.  I did so, and sent him a copy of the updated spreadsheet at the conclusion of our call.  A true and correct copy of my email to Mr. Bonini is attached as Exhibit 25. A true and correct copy of the updated spreadsheet attached to the email is attached as Exhibit 6 (also Exhibit 6 to the Complaint).  This document identifies 239 RFP items that SRFECC and Defendant agree failed.  I reviewed each of these items and checked it against New World's Response to the RFP.  I discovered that of the 239 failed RFP items, New World had indicated that its system was 'Fully Comply' with 172 of them."); *see also,* ¶¶ 56-70.

Tyler's purported authority for its objections are inapposite.  In

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

| | | |
|---|---|---|
| | | *Taylor v. List*, 880 F.2d 1040, (9th Cir. 1989), facts were deemed "conclusory . . . . unsupported by factual data" because purported supporting affidavits failed to contain facts supported by personal knowledge of specific underlying acts and motives. *See id.* at 1045.  In *Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, (9th Cir. 1981), there was no "cit[ation to] any portion of the record that demonstrate[d] or even imply[ed] the validity of" the Government's assertion that it would be able to prove at trial that the plaintiff committed illegal acts such that there was a genuine issue of material dispute and summary judgment should not be decided in plaintiff's favor. *See id.* at 1299. |
| House Dec. ¶¶ 52; 53; 54, first sentence; 56-58; 60-70; 73. | Speculative and not based on the personal knowledge of the declarant. Ms. House was not employed by SRFECC when the RFP was drafted or the Agreement was signed. *See* House Dec. at ¶ 11 (stating that Ms. House's first involvement with the project was in May 2016). As such, she is not qualified to testify regarding the meaning of specific technical requirements in those documents. FED. R. CIV. P. 56(c)(4) (requiring summary judgment declarations to be made based on personal knowledge); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient.") | Ms. House's testimony contained in the House Dec. paragraphs 52; 53; 54, first sentence; 56-58; 60-70; 73 is not speculative or lacking personal knowledge.  Ms. House's testimony demonstrates that she has extensive experience with CAD systems and their development (¶¶ 3-11); "[a]s Project Manager [she] reviewed and was familiar with the RFP and Defendant's Response to the RFP.  Attached hereto as Exhibits 13 and 14 are true and correct copies of the RFP and RFP Response" (¶ 12); "[a]s SRFECC's Project Manager, [she] worked directly with Defendant's Project Managers to oversee the performance of the contract.  [She] worked with three successive Project Managers designated by Defendant:  Jodi Foster, Jim Lucas, and David Bonini" (¶ 13); and "[she] reviewed the data and formula used by the |

-14-

Evaluation Committee to score each response to the RFP" (¶ 74-79) (detailing her review of the RFP evaluation process).

Moreover, Ms. House's knowledge that several RFP items failed, and the purpose of her testimony in part is to demonstrate Tyler admitted that it failed to comply with RFP technical requirements, which are not hearsay but admissions by a party opponent per Fed. R. Evid. 801(d)(2). *See* House Dec. ¶¶ 50-53 ("On December 13, 2017, Mr. Bonini and I had a telephone call where we reviewed the Excel spreadsheet listing each technical requirement and annotating whether the Defendant system met each requirement. Mr. Bonini was having computer problems and asked me to manually enter changes to the document as we discussed them. I did so, and sent him a copy of the updated spreadsheet at the conclusion of our call. A true and correct copy of my email to Mr. Bonini is attached as Exhibit 25. A true and correct copy of the updated spreadsheet attached to the email is attached as Exhibit 6 (also Exhibit 6 to the Complaint). This document identifies 239 RFP items that SRFECC and Defendant agree failed. I reviewed each of these items and checked it against New World's Response to the RFP. I discovered that of the 239 failed RFP items, New World had indicated that its system was 'Fully Comply' with 172 of them. I created a list of the 172 RFP items that Defendant agreed failed that correspond to "Fully Comply" responses in the RFP. A true and correct copy of this list is included as Exhibit 7.").

-15-

| House Dec. ¶ 72 | Improperly contains the conclusory and unsupported statement "Defendant's false representations during the RFP process resulted in it receiving a score higher than competing bids." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir.1981) (conclusory statements unsupported by factual data are insufficient).<br><br>Speculative and not based on the personal knowledge of the declarant. Ms. House was not employed by SRFECC when the RFP was drafted or the Agreement was signed. *See* House Dec. at ¶ 11 (stating that Ms. House's first involvement with the project was in May 2016). As such, she is not qualified to testify regarding the meaning of specific technical requirements in those documents. FED. R. CIV. P. 56(c)(4) (requiring summary judgment declarations to be made based on personal knowledge); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient.") | Ms. House's testimony "Defendant's false representations during the RFP process resulted in it receiving a score higher than competing bids" is not conclusory and unsupported. Ms. House testifies that, "[a]s Project Manager, [she] frequently reviewed and was familiar with the RFP and Defendant's Response to the RFP. Attached hereto as Exhibits 13 and 14 are true and correct copies of the RFP and RFP Response."). *See* House Dec. ¶ 12). Ms. House's testimony is substantiated, in extensive detail throughout her declaration. *See e.g.*, ¶¶ 21-24 ("In June 2017, I created an Excel spreadsheet listing every RFP technical requirement in order to review the functionality of Defendant's system against the RFP in preparation for functional tests scheduled to occur in August 2017. During June and July 2017, I met regularly with the SRFECC CAD Build team and we went through the Excel spreadsheet line by line and tested Defendant's software to confirm whether it met the requirements. We completed this process on or around August 6, 2017. I compiled the results of the review in the spreadsheet and a Microsoft Word Document, which I sent to David Bonini on or around August 6, 2017. Attached hereto are true and correct copies of the email (Exhibit 22), the attached spreadsheet (Exhibit 24), and the attached Word document (Exhibit 23) that I sent to David Bonini on August 6, 2017."); ¶¶ 36-52 ("Mr. Piper and Defendant's Solution Architect and Subject Matter Expert ('SME') Jerrold Emery, among other Tyler representatives, came on site on November 16, 2017 to continue |

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

reviewing failed RFP items. Because of the Go-Live cancellation, SRFECC sought assurances from Defendant that it would complete the project in a timely manner.  On December 1, 2017, Mr. Flynn sent Teresa Murray and myself four documents that are the result of the 'interim plan' developed by Defendant for performance of the contract.  He also copied David Bonini, Larry Piper, Bob Motzny, Brian Leary, Jerrold Emery, and Bryan Proctor.  The four documents include a PowerPoint presentation; two separate MS Project Plans; and an Excel spreadsheet identifying the unresolved items Defendant had identified as 'Priority-1' items.  A true and correct copy of Mr. Flynn's December 1, 2017 email and the attached PowerPoint presentation are included herein as Exhibits 21 and 5, respectively.  Mr. Flynn's email stated that a more detailed spreadsheet was available from me or from David Bonini. This referred to the Excel spreadsheet tracking all RFP items that David Bonini and I had been exchanging, discussed *supra* ¶¶ 21-26.  On December 7, 2017, Mr. Flynn gave a presentation at SRFECC regarding the status of the Project in response to SRFECC's request for assurances.  I was present for the entire presentation, which lasted about one hour.  Mr. Flynn used the PowerPoint presentation he had sent me on December 1, 2017 during the presentation.  During the presentation, Mr. Flynn admitted that '34 items . . . failed to comply with the RFP requirement[;] 41 items that are warranty items (i.e. not working as designed, and will be resolved in a future

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

4814-7466-2002.v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

release)[;] 7 items that are requests for enhancement to the application; [and] 79 items that may have not met the RFP requirements.' Mr. Flynn's presentation also identified a 'handful of items' that did not align with its 'product strategy' and 'have been eliminated from consideration.' Mr. Flynn admitted that Defendant would never be able to provide software that met at least four technical requirements. Mr. Flynn estimated that Defendant's recovery plan for the 'completion of these items given the capacity of the development team' would take 33,900 hours – and that Defendant's capacity for the entire public safety segment of its customer base was limited to only 3,000 hours of development time per year. Mr. Flynn estimated that Defendant could only commit between 1,500 to 2,000 hours per year to the SRFECC Project. This means it would take Defendant between 17 years (33,900 ÷ 2,000) and 22 years (33,900 ÷ 1,500) to deliver a partial CAD system. Following the presentation, I emailed Mr. Bonini to ask for the list of the 34 items that Mr. Flynn described as failed RFP items during his presentation. Mr. Bonini responded that those items corresponded to the RFP items that he and I had marked as 'Development' in the Defendant Status Column. A true and correct copy of this correspondence is attached as Exhibit 31. I also emailed Larry Piper and David Bonini to ask for assistance reconciling the problems identified in Mr. Flynn's presentation and to note that SRFECC was still waiting for additional information from Mr. Flynn regarding projected completion

-18-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of the contract. A true and correct copy of this correspondence is attached as Exhibit 20.  On December 13, 2017, Mr. Bonini and I had a telephone call where we reviewed the Excel spreadsheet listing each technical requirement and annotating whether the Defendant system met each requirement.  Mr. Bonini was having computer problems and asked me to manually enter changes to the document as we discussed them.  I did so, and sent him a copy of the updated spreadsheet at the conclusion of our call.  A true and correct copy of my email to Mr. Bonini is attached as Exhibit 25. A true and correct copy of the updated spreadsheet attached to the email is attached as Exhibit 6 (also Exhibit 6 to the Complaint).  This document identifies 239 RFP items that SRFECC and Defendant agree failed.  I reviewed each of these items and checked it against New World's Response to the RFP.  I discovered that of the 239 failed RFP items, New World had indicated that its system was 'Fully Comply' with 172 of them."); *see also,* ¶¶ 56-70.

Tyler's purported authority for its objections are inapposite.  In *Taylor v. List*, 880 F.2d 1040, (9th Cir. 1989), facts were deemed "conclusory . . . . unsupported by factual data" because purported supporting affidavits failed to contain facts supported by personal knowledge of specific underlying acts and motives. *See id.* at 1045.  In *Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, (9th Cir. 1981), there was no "cit[ation to] any portion of the record that demonstrate[d] or even

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE
4814-7466-2002.v1                                                                 Case No.:  2:18-cv-01792-KJM-KJN

imply[ed] the validity of" the Government's assertion that it would be able to prove at trial that the plaintiff committed illegal acts such that there was a genuine issue of material dispute and summary judgment should not be decided in plaintiff's favor. *See id.* at 1299.

Ms. House's testimony that "[t]he failed RFP items include mission critical requirements" (House Dec. ¶ 54, first sentence) and her testimony about the RFPs are not speculative or lacking personal knowledge.  Ms. House's testimony demonstrates that Ms. House has extensive experience with CAD systems and their development (¶¶ 3-11); "[a]s Project Manager [she] reviewed and was familiar with the RFP and Defendant's Response to the RFP.  Attached hereto as Exhibits 13 and 14 are true and correct copies of the RFP and RFP Response" (¶ 12); "[a]s SRFECC's Project Manager, [she] worked directly with Defendant's Project Managers to oversee the performance of the contract. [She] worked with three successive Project Managers designated by Defendant:  Jodi Foster, Jim Lucas, and David Bonini" (¶ 13); and "[she] reviewed the data and formula used by the Evaluation Committee to score each response to the RFP" (¶ 74-79) (detailing her review of the RFP evaluation process).

Moreover, Ms. House's knowledge that several RFP items failed, and the purpose of her testimony in part is to demonstrate Tyler admitted that it failed to comply with RFP

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

| | | technical requirements, which are not hearsay but admissions by a party opponent per Fed. R. Evid. 801(d)(2).  *See* House Dec. ¶¶ 50-53 ("On December 13, 2017, Mr. Bonini and I had a telephone call where we reviewed the Excel spreadsheet listing each technical requirement and annotating whether the Defendant system met each requirement.  Mr. Bonini was having computer problems and asked me to manually enter changes to the document as we discussed them.  I did so, and sent him a copy of the updated spreadsheet at the conclusion of our call.  A true and correct copy of my email to Mr. Bonini is attached as Exhibit 25. A true and correct copy of the updated spreadsheet attached to the email is attached as Exhibit 6 (also Exhibit 6 to the Complaint).  This document identifies 239 RFP items that SRFECC and Defendant agree failed.  I reviewed each of these items and checked it against New World's Response to the RFP.  I discovered that of the 239 failed RFP items, New World had indicated that its system was 'Fully Comply' with 172 of them.  I created a list of the 172 RFP items that Defendant agreed failed that correspond to "Fully Comply" responses in the RFP.  A true and correct copy of this list is included as Exhibit 7."). |
| House Dec. ¶ 90 | Improperly contains the conclusory and unsupported statement that "Because Defendant failed to perform the contract, SRFECC has not obtained the benefit of the system it contracted to receive." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th | Ms. House's testimony that "Because Defendant failed to perform the contract, SRFECC has not obtained the benefit of the system it contracted to receive" is not conclusory, unsupported, speculative, or lacking personal knowledge. Ms. House's testimony demonstrates that she has extensive experience with CAD |

-21-
4814-7466-2002.v1                                                                 Case No.:  2:18-cv-01792-KJM-KJN

| | | |
|---|---|---|
| | Cir.1981) (conclusory statements unsupported by factual data are insufficient).<br><br>Speculative and not based on the personal knowledge of the declarant. FED. R. CIV. P. 56(c)(4) (requiring summary judgment declarations to be made based on personal knowledge); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient.") | systems and their development (¶¶ 3-11); "[a]s Project Manager [she] reviewed and was familiar with the RFP and Defendant's Response to the RFP.  Attached hereto as Exhibits 13 and 14 are true and correct copies of the RFP and RFP Response" (¶ 12); "[a]s SRFECC's Project Manager, [she] worked directly with Defendant's Project Managers to oversee the performance of the contract.  [She] worked with three successive Project Managers designated by Defendant:  Jodi Foster, Jim Lucas, and David Bonini" (¶ 13); and "[she] reviewed the data and formula used by the Evaluation Committee to score each response to the RFP" (¶ 74-79) (detailing her review of the RFP evaluation process). |
| Exhibit 7 | Speculative, misleading, and not based on the personal knowledge of the declarant. Ms. House, who created Exhibit 7, was not employed by SRFECC when the RFP was drafted or the Agreement was signed. *See* House Dec. at ¶ 11 (stating that Ms. House's first involvement with the project was in May 2016. As such, she is not qualified to testify regarding the meaning of specific technical requirements in those documents. FED. R. CIV. P. 56(c)(4) (requiring summary judgment declarations to be made based on personal knowledge); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient.") | Exhibit 7 to the House Decl. is not speculative, misleading, or lacking personal knowledge. Ms. House's testimony demonstrates that she created Exhibit 7 (¶ 53); Exhibit 7 documents Tyler admits is true (¶ 53); Ms. House had extensive experience with CAD systems and their development (¶¶ 3-11); "[a]s Project Manager [she] reviewed and was familiar with the RFP and Defendant's Response to the RFP.  Attached hereto as Exhibits 13 and 14 are true and correct copies of the RFP and RFP Response" (¶ 12); "[a]s SRFECC's Project Manager, [she] worked directly with Defendant's Project Managers to oversee the performance of the contract.  [She] worked with three successive Project Managers designated by Defendant:  Jodi Foster, Jim Lucas, and David Bonini" (¶ 13); and "[she] reviewed the data and formula used by the Evaluation Committee to score |

-22-

each response to the RFP" (¶ 74-79) (detailing her review of the RFP evaluation process).

Furthermore, Ms. House's testimony demonstrates that Exhibit 7 was created based on Ms. House's knowledge that Tyler "falsely represented its completion of certain milestones and RFP requirements throughout the process" (House Decl. ¶ 18) and Tyler's own admissions substantiated in extensive detail throughout Ms. House's declaration. *See e.g.,* ¶¶ 21-24 ("In June 2017, I created an Excel spreadsheet listing every RFP technical requirement in order to review the functionality of Defendant's system against the RFP in preparation for functional tests scheduled to occur in August 2017. During June and July 2017, I met regularly with the SRFECC CAD Build team and we went through the Excel spreadsheet line by line and tested Defendant's software to confirm whether it met the requirements. We completed this process on or around August 6, 2017. I compiled the results of the review in the spreadsheet and a Microsoft Word Document, which I sent to David Bonini on or around August 6, 2017. Attached hereto are true and correct copies of the email (Exhibit 22), the attached spreadsheet (Exhibit 24), and the attached Word document (Exhibit 23) that I sent to David Bonini on August 6, 2017."); ¶¶ 36-52 ("Mr. Piper and Defendant's Solution Architect and Subject Matter Expert ('SME') Jerrold Emery, among other Tyler representatives, came on site on November 16, 2017 to continue reviewing failed RFP items. Because of the Go-Live

-23-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

cancellation, SRFECC sought assurances from Defendant that it would complete the project in a timely manner.  On December 1, 2017, Mr. Flynn sent Teresa Murray and myself four documents that are the result of the 'interim plan' developed by Defendant for performance of the contract.  He also copied David Bonini, Larry Piper, Bob Motzny, Brian Leary, Jerrold Emery, and Bryan Proctor.  The four documents include a PowerPoint presentation; two separate MS Project Plans; and an Excel spreadsheet identifying the unresolved items Defendant had identified as 'Priority-1' items.  A true and correct copy of Mr. Flynn's December 1, 2017 email and the attached PowerPoint presentation are included herein as Exhibits 21 and 5, respectively.  Mr. Flynn's email stated that a more detailed spreadsheet was available from myself or from David Bonini. This referred to the Excel spreadsheet tracking all RFP items that David Bonini and I had been exchanging, discussed *supra* ¶¶ 21-26.  On December 7, 2017, Mr. Flynn gave a presentation at SRFECC regarding the status of the Project in response to SRFECC's request for assurances.  I was present for the entire presentation, which lasted about one hour.  Mr. Flynn used the PowerPoint presentation he had sent me on December 1, 2017 during the presentation.  During the presentation, Mr. Flynn admitted that '34 items . . . failed to comply with the RFP requirement[;] 41 items that are warranty items (i.e. not working as designed, and will be resolved in a future release)[;] 7 items that are requests for enhancement to the application;

-24-

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

[and] 79 items that may have not met the RFP requirements.' Mr. Flynn's presentation also identified a 'handful of items' that did not align with its 'product strategy' and 'have been eliminated from consideration.' Mr. Flynn admitted that Defendant would never be able to provide software that met at least four technical requirements. Mr. Flynn estimated that Defendant's recovery plan for the 'completion of these items given the capacity of the development team' would take 33,900 hours – and that Defendant's capacity for the entire public safety segment of its customer base was limited to only 3,000 hours of development time per year. Mr. Flynn estimated that Defendant could only commit between 1,500 to 2,000 hours per year to the SRFECC Project. This means it would take Defendant between 17 years (33,900 ÷ 2,000) and 22 years (33,900 ÷ 1,500) to deliver a partial CAD system. Following the presentation, I emailed Mr. Bonini to ask for the list of the 34 items that Mr. Flynn described as failed RFP items during his presentation. Mr. Bonini responded that those items corresponded to the RFP items that he and I had marked as 'Development' in the Defendant Status Column. A true and correct copy of this correspondence is attached as Exhibit 31. I also emailed Larry Piper and David Bonini to ask for assistance reconciling the problems identified in Mr. Flynn's presentation and to note that SRFECC was still waiting for additional information from Mr. Flynn regarding projected completion of the contract. A true and correct copy of this correspondence is attached as

-25-

RESPONSE TO DEFENDANT'S OBJECTIONS TO EVIDENCE

Case No.: 2:18-cv-01792-KJM-KJN

| | | |
|---|---|---|
| | | Exhibit 20.  On December 13, 2017, Mr. Bonini and I had a telephone call where we reviewed the Excel spreadsheet listing each technical requirement and annotating whether the Defendant system met each requirement.  Mr. Bonini was having computer problems and asked me to manually enter changes to the document as we discussed them.  I did so, and sent him a copy of the updated spreadsheet at the conclusion of our call.  A true and correct copy of my email to Mr. Bonini is attached as Exhibit 25. A true and correct copy of the updated spreadsheet attached to the email is attached as Exhibit 6 (also Exhibit 6 to the Complaint).  This document identifies 239 RFP items that SRFECC and Defendant agree failed.  I reviewed each of these items and checked it against New World's Response to the RFP.  I discovered that of the 239 failed RFP items, New World had indicated that its system was 'Fully Comply' with 172 of them.") *see also*, ¶¶ 56-70. |

Dated:  September 14, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP

_/s/ Philip S. Warden_

By:  PHILIP S. WARDEN
ROBERT E. KINGSLEY, Prosecuting Authority
Attorneys for Plaintiff
SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER

-26-