1
PILLSBURY WINTHROP SHAW PITTMAN LLP
PHILIP S. WARDEN (SBN 54752)
2
philip.warden@pillsburylaw.com
CLARK THIEL (SBN 190212)
3
clark.thiel@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
4
San Francisco, CA 94111-5998
Telephone: 415-983-1000
5
Facsimile: 415-983-1200

6
PILLSBURY WINTHROP SHAW PITTMAN LLP
SYDNEY A. WARD (SBN 312615)
7
sydney.ward@pillsburylaw.com
2600 Capitol Avenue, Suite 300
8
Sacramento, CA 95816-5930
Telephone: 916-329-4700
9
Facsimile: 916-441-3583

10
KINGSLEY BOGARD
ROBERT E. KINGSLEY (SBN 59596)
11
Prosecuting Authority for Plaintiff
rkingsley@kblegal.us
12
600 Coolidge Drive
Suite 160
13
Folsom, CA 95630
Telephone: 916-932-2500
14

Attorneys for Plaintiff SACRAMENTO REGIONAL
15
PUBLIC SAFETY COMMUNICATIONS CENTER
D/B/A SACRAMENTO REGIONAL FIRE/EMS
16
COMMUNICATIONS CENTER

17
**UNITED STATES DISTRICT COURT**

18
**EASTERN DISTRICT OF CALIFORNIA**

19

| | |
|---|---|
| 20  SACRAMENTO REGIONAL PUBLIC<br>SAFETY COMMUNICATIONS CENTER<br>21  D/B/A SACRAMENTO REGIONAL<br>FIRE/EMS COMMUNICATIONS CENTER<br>22<br><br>Plaintiff,<br>23<br>vs.<br>24<br>TYLER TECHNOLOGIES, INC., a Delaware<br>25  corporation F/K/A NEW WORLD SYSTEMS<br>CORPORATION, a Surrendered California<br>26  corporation<br>27  Defendant. | Case No. 2:18-cv-01792-KJM-KJN<br><br>PLAINTIFF'S OBJECTIONS TO<br>EVIDENCE SUBMITTED BY<br>DEFENDANT TYLER TECHNOLOGIES IN<br>OPPOSITION TO PLAINTIFF'S MOTION<br>FOR PARTIAL SUMMARY<br>ADJUDICATION<br><br>Date: September 19, 2018<br>Time: 2:00 pm<br>Courtroom: 3<br>Judge: Hon. Kimberly J. Mueller |

28

-1-
_____
PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                    Case No. 2:18-cv-01792-KJM-KJN

Plaintiff, the Sacramento Regional Public Safety Communications Center d/b/a Sacramento Regional Fire/EMS Communications Center ("SRFECC"), submits the following objections to Defendant Tyler Technologies, Inc.'s ("Tyler") evidence submitted in opposition to Plaintiff's Motion for Partial Summary Adjudication:

| No. | EVIDENCE | OBJECTION |
|-----|----------|-----------|
| | **Declaration of David Bonini ("Bonini Dec.")** | |
| 1 | Bonini Decl. ¶6, "Lucas had significant experience in major project implementations of this nature, but it was my understanding that neither SRFECC nor Mr. Lucas felt encouraged by the state of their working relationship." | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Irrelevant (FRE 401, 402)<br><br>Speculative |
| 2 | Bonini Decl. ¶7, "When I joined the project, SRFECC and Tyler had been working on the implementation of the CAD system for approximately 18 months. Shortly before I joined, SRFECC had started challenging particular aspects of the project." My primary responsibility when I took over as Project Manager was to process SRFECC's concerns and to move the project forward in an efficient and effective manner. To do so, I participated in regular in-person and telephone meetings with representatives of SRFECC. We frequently met multiple times daily and/or weekly and were in regular contact over the course of the next five months. I viewed my role, in part, to be a neutral messenger between SRFECC and Tyler." | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Irrelevant (FRE 401, 402)<br><br>Speculative<br><br>"Neutral messenger" is vague and ambiguous and internally inconsistent with other testimony. (*See* Bonini Decl. ¶ 9) |
| 3 | Bonini Decl. ¶8 "In early August 2017, shortly after I took over as Project Manager, SRFECC's project manager, Diane House, sent me a spreadsheet that included 2065 line items that represented the technical specifications from SRFECC's Request for Proposal | Exhibit 22 speaks for itself (FRE 1002) |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                          Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | ("RFP") issued in March 2014. That spreadsheet is attached to SRFECC's Motion as Exhibit 24. At the time, based on the email Ms. House sent with the spreadsheet (Exhibit 22), SRFECC was taking the position that only 571 of the line items complied with the RFP, 508 were "failures," 205 required testing, and 107 required additional mobile configuration to determine compliance." |  |
| 4 | Bonini Decl. ¶9 "Following receipt of this document, and for the next several months, I participated in multiple meetings with Ms. House and other representatives of SRFECC to discuss the technical requirements on this list. As part of those efforts, I spent three weeks on site at SRFECC going through each technical requirement in detail. In addition, I typically participated in project calls with other individuals from Tyler and representatives of SRFECC at least twice a week." | Internally inconsistent with other testimony. (*See* Bonini Decl. ¶ 7). |
| 5 | Bonini Decl. ¶10 "During those discussions, SRFECC agreed that a large number of the 508 items that had been originally identified as "failures" were not, in fact, "failures." I continued to discuss other items on the list with Ms. House and others at SRFECC. Tyler adopted the term "Fail," "Failed" or "Failure" because that was the term SRFECC employed. I was aware that other representatives of Tyler, including Larry Piper and Kevin Flynn, told SRFECC that Tyler did not agree with SRFECC's characterizations of specific items as "Fails," and did not believe that SRFECC's interpretation of the technical requirements was industry standard, required by the RFP, or mandated by the parties' Agreement." | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Hearsay (FRE 801) |
| 6 | Bonini Decl. ¶11 "The parties' disagreements and ongoing discussions are documented on the various versions of | Lacks foundation<br><br>Lacks personal knowledge (FRE 602) |

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | the spreadsheet attached to SRFECC's Motion. The exchanges were even more numerous than what is reflected in those exhibits, but the exhibits are representative of the back-and-forth engaged in by the parties. Those spreadsheets contain numerous comments from both parties regarding the technical requirements and frequently establish that the parties' interpretations of the technical requirements were different, and that Tyler disagreed with SRFECC's classifications." | Document speaks for itself (FRE 1002) |
| 7 | Bonini Decl. ¶12 "It was clear to me that Tyler only came to understand—and could only have come to understand—SRFECC's interpretation of the RFP requirements at issue through these extensive exchanges of information and additional perspective. Although Tyler disagreed with SRFECC's interpretations of what the Agreement required, Tyler agreed to provide SRFECC with certain additional functionality in order to appease our customer. In instances where we agreed to provide the specific functionality, we did not dispute SRFECC's listing of these items as "Fails" because the issue was being addressed by providing additional enhancements or development. Tyler did not believe that these enhancements were required by the parties' Agreement, but agreed to provide them nonetheless." | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Speculative |
| 8 | Bonini Decl. ¶14 "On December 7, 2017, Tyler's Kevin Flynn presented a PowerPoint to SRFECC that attempted to address the outstanding items on SRFECC's spreadsheet that remained in dispute between the parties. That PowerPoint is Exhibit 5 to SRFECC's Motion. It was my understanding that Tyler's development team and various individuals that reported to Mr. Flynn | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Speculative |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION

4812-0577-3426.v3                                                                                   Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | discussed and analyzed each of the technical requirements with representatives of SRFECC." | |
| 9 | Bonini Decl. ¶15 "On December 13, 2017, I had another call with Ms. House to again review SRFECC's spreadsheet of technical requirements. At that time, SRFECC was taking the position that 239 RFP items had failed. I allowed SRFECC to characterize any item it wanted to as a "Fail" and did not try to talk SRFECC out of that position. I did not, however, state that Tyler agreed the 239 were fails. After permitting SRFECC to list any item they wanted as a "Fail" on their spreadsheet, I would ask how Tyler could address the issue. By doing so, I was merely permitting the client to categorize the items in whatever way it wanted. I was not agreeing to that characterization or admitting that Tyler could not or had not complied with the parties' Agreement. Indeed, at least SRFECC's own Exhibit 25 reflects the various categories the items were grouped into based on Tyler's insistence that SRFECC's "Fail" designation did not equate to a single meaning. Instead, Tyler insisted that many "Fail" items represented, for example, warranty issues that would be addressed prior to go-live, or functionality that Tyler provided but that SRFECC wanted to function in another way." | Lacks foundation

Lacks personal knowledge (FRE 602)

Irrelevant (FRE 401, 402) ("By doing so, I was merely permitting the client to categorize the items in whatever way it wanted. I was not agreeing to that characterization or admitting that Tyler could not or had not complied with the parties' Agreement.")

Speculative |
| 10 | Bonini Decl. ¶16 "During these discussions with Ms. House, we discussed the 34 items that had been identified in Mr. Flynn's PowerPoint as being in "non-compliance" with the RFP. For five of those items, Ms. House admitted that New World had only marked those RFP requirements as "Partially Comply" or "Substitute." As a result, Ms. House admitted those 5 items would not be considered "Fails."" | Hearsay (FRE 801) ("Ms. House admitted that New World had only marked those RFP requirements as "Partially Comply" or 'Substitute.'")

Lacks foundation

Speculative |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                    Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | | |
| | **Declaration of Kevin Flynn ("Flynn Dec.")** | |
| 11 | Flynn Decl. ¶7 "Prior to August 2017, I was generally aware of the ongoing implementation activities at SRFECC and had oversight responsibilities for the professional services team there. It is my understanding that during the initial phases of the implementation SRFECC's team was generally timely with responses and coordinated well with Tyler on scheduling and necessary tasks. However, once the project schedule was put in place, SRFECC frequently changed the tasks or activities defined by the project schedule and requested additional onsite services from Tyler (at Tyler's expense) that were not imbedded in the schedule. At least twice, SRFECC cancelled scheduled onsite visits." | Lacks foundation<br><br>Lacks personal knowledge (FRE 602) |
| 12 | Flynn Decl. ¶8 "In or around August 2017, I got more directly involved with implementation of a computer aided dispatch ("CAD") system at SRFECC. At that time, SRFECC and Tyler had been working on the implementation of the CAD system for approximately 18 months, and SRFECC had started to challenge certain features and functions of the software during functional testing." | Lacks foundation<br><br>Vague and ambiguous "started to challenge certain features and functions of the software during functional testing." |
| 13 | Flynn Decl. ¶ 10. "Item 5.2.1 of the SRFECC RFP (Exhibit 13 to SRFECC's Motion) specifically acknowledges 'the intention of SRFECC to purchase primarily 'off-the-shelf' or basic CAD software functionality, requiring the minimum amount of modifications in order to support necessary functions and interfaces . . . [.]" | The document speaks for itself (FRE 1002)<br><br>Rule of Completeness (A sentence is omitted that expressly qualifies the quoted portion and must be considered in conjunction with it in order to accurately reflect the contents of Item 5.2.1.) |
| 14 | Flynn Decl. ¶ 10. "The parties' Agreement (Exhibit 2 to SRFECC's Motion) recognized that this was a COTS project and obligated Tyler to provide only the standard software and certain | Lacks foundation<br><br>Improper opinion (FRE 701)<br><br>Misstates contents of Agreement |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION

| No. | EVIDENCE | OBJECTION |
|-----|----------|-----------|
| | 'Standard Software Enhancements and/or Customer Software' that were expressly outlined in the Exhibit B-3 to the Agreement." | The document speaks for itself (FRE 1002) |
| 15 | Flynn Decl. ¶ 10 "For those modifications or enhancements, the Agreement contemplated an analysis and assessment to verify the scope of the modification and a revised cost and timing estimate for such modification." | The document speaks for itself (FRE 1002) |
| 16 | Flynn Decl. ¶ 10 "Based on the revised estimate, SRFECC could determine whether it intended to proceed with the requested modification." | Lacks foundation<br><br>Improper opinion (FRE 701)<br><br>Misstates contents of Agreement<br><br>The document speaks for itself (FRE 1002) |
| 17 | Flynn Decl. ¶ 10 "Exhibit B-3 to the Agreement expressly provided that SRFECC would 'be reasonable and flexible in not attempting to design the modifications to be more extensive than called for in the scope (cost and schedule) of this project.'" | The document speaks for itself (FRE 1002) |
| 18 | Flynn Decl. ¶ 10 "Exhibit B-3 to the Agreement also provided that SRFECC 'agrees to cooperate in not making modifications and enhancements too extensive.'" | The document speaks for itself (FRE 1002) |
| 19 | Flynn Decl. ¶11 "After I got more directly involved with SRFECC, it quickly became clear to me that numerous individuals at SRFECC did not understand the nature of a COTS system, despite what their RFP and the parties' Agreement stated. Instead, SRFECC was continually requesting customization that was outside of the off-the-shelf functionality of Tyler's CAD system, and that was not contemplated by the parties' Agreement. Essentially, SRFECC wanted the Tyler CAD system to replicate the exact functionality of the SRFECC's | Lacks foundation<br><br>Improper opinion (FRE 701)<br><br>Speculative<br><br>Lacks personal knowledge (FRE 602) |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                    Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | legacy system, even though SRFECC had sought and contracted with Tyler for a Tyler CAD system." | |
| 20 | Flynn Decl. ¶12 "I recall one meeting, in November 2017, when Jerold Emery from Tyler was giving a presentation and using the term "COTS solution." One SRFECC CAD user thought he was using the term "COPS solution" to refer to a police station CAD system instead of a fire station CAD system. To me, this epitomized a lack of understanding among end users at SRFECC about the nature of the software being implemented.  I and others from Tyler spent a great deal of time attempting to explain to SRFECC that the parties' Agreement, which provided for the implementation of Tyler's CAD system based on its COTS functionality, did not envision the type of customization that would be required to meet SRFECC's newly detailed requests. We repeatedly tried to explain to them that the Tyler CAD system they contracted for was inevitably going to include some differences that SRFECC's end users were going to have to get used to, even as they enjoyed equivalent or improved functionality, product stability, and other significant benefits from the Tyler CAD system." | Lacks foundation<br><br>Irrelevant (FRE 401, 402) |
| 21 | Flynn Decl. ¶13 "Based on my review of SRFECC's Motion, SRFECC's misunderstanding about the nature of a COTS system continues. For example, in paragraph 86 of Diane House's declaration, she indicates that SRFECC "provided timely input on the design and use of the system." This is precisely the viewpoint that created problems between Tyler and SRFECC regarding this project. A COTS-based system is off-the-shelf software that is not "designed" by the client. The CAD system SRFECC | Hearsay<br><br>Lacks foundation<br><br>Irrelevant (FRE 401, 402) |

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | purchased had already been designed and functioned in a specific way. SRFECC's representatives, including Ms. House, routinely, however, expressed a desire to tell us how to "design" the software and how it should work." | |
| 22 | Flynn Decl. ¶14 "Based on Tyler's standard practices from the outset of the project, overall project information, including status reports and other information, was kept in a Project Workbook that was available to representatives of both Tyler and SRFECC on a common SharePoint site. This type of Project Workbook is maintained on all similar Tyler projects and is typically updated multiple times a week with the latest information on events, deliverables, action items and other project information." | Lacks foundation<br><br>Irrelevant (FRE 401, 402)<br><br>The document speaks for itself (FRE 1002) |
| 23 | Flynn Decl. ¶15 "When I first became involved with SRFECC directly, there was some disagreement about the status of certain items that were tracked in the Project Workbook. Specifically, Tyler and SRFECC had disagreements regarding whether certain activities were properly coded as complete. For example, Tyler conducted a 1-week mobile training that was intended to be for 10-12 Mobile users. SRFECC brought dozens of users to the training. Some of the additional users had technical difficulties completing the mobile training. SRFECC took the position that the training had not been completed, while Tyler maintained that it had completed this item." | Vague and ambiguous |
| 24 | Flynn Decl. ¶16 "This was not an unusual occurrence during the SRFECC project. On more than one occasion, SRFECC ignored our requirements and best practices for the number of attendees at training sessions and would send many more than the recommended number. | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Irrelevant (FRE 401, 402) |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                          Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | Tyler's model is typically to train the trainers, which allows our training instructors to train, in detail, a small number of necessary representatives who then are able to share that training with others in the organization. Sending large numbers of individuals to training over our objection can actually make the training sessions less interactive and effective." | Speculative<br><br>Improper opinion (FRE 701) |
| 25 | SRFECC's approach to other CAD team meetings was similar. Tyler's best practice on build team meetings, for example, was to have a few key Subject Matter Experts ("SMEs") at each session who have an understanding of what would best serve their end users. In this way, the build sessions have only a few experts with decision making power, not a large staff of people, all of whom may want something different out of the system. SRFECC's approach was to invite a large team to every build session. And, these individuals typically did not understand they were not designing a custom system. In Tyler's opinion, the participation of large numbers of individuals from SRFECC in build sessions was inefficient and resulted in numerous requests for additional extra-contractual functionality and modifications to the system.<br><br>Flynn Decl. ¶17 | Lacks foundation<br><br>Irrelevant (FRE 401, 402)<br><br>Speculative<br><br>Improper opinion (FRE 701) |
| 26 | Based on my knowledge of and involvement in this project, I believe that the status Tyler assigned to Project Workbook items was based on Tyler's good-faith, legitimate assessment of the item based on the contractual requirements. I do not agree with SRFECC's assertion that, simply because SRFECC took a different position on certain status designations, it can only mean that Tyler was falsely reporting that status. In fact, I disagree that Tyler made | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Irrelevant (FRE 401, 402)<br><br>Speculative<br><br>Improper opinion (FRE 701) |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                                                    Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | any false statements about the status of the project in the Project Workbook, in status reports, or otherwise. To my knowledge, no one at Tyler ever made a false statement about the project or falsely represented the completion of any milestone.<br><br>Flynn Decl. ¶18 |  |
| 27 | The items that Ms. House has identified on Exhibit 28 as "not complete" were all, to my knowledge, issues where Tyler believed in good faith that it had completed the specific deliverable. SRFECC apparently disagreed whether what was delivered was what SRFECC wanted, but that did not mean it was not delivered. For example, Item 171 on Exhibit 28 is the mobile training referenced above. In addition, the majority of the items marked as "not complete" by Ms. House on Exhibit 28 relate to tasks where Tyler was to "install and configure" or "upgrade" certain aspects of 26 the CAD software (e.g., 148, 451, 301, 291, 149, 305, 311, 308, 314, 317). SRFECC refused to consider any such items "complete" until SRFECC had thoroughly tested the functionality of the *installed* software and confirmed no issues existed. Tyler repeatedly explained that the project plan had distinct and separate tasks related to the testing of installed and configured software and to the remediation of any issues identified. Tyler identified the "install and configure" or "upgrade" tasks as complete when the software was actually installed, configured and/or upgraded. The functional testing came later, and was identified as a separate task on the project plan.<br><br>Flynn Decl. ¶19 | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Irrelevant (FRE 401, 402)<br><br>Speculative<br><br>The document speaks for itself (FRE 1002) |
| 28 | When disagreements regarding the status of items on a project plan arise, standard practice in a typical implementation | Lacks foundation<br><br>Irrelevant (FRE 401, 402) |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION

4812-0577-3426.v3                                                    Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | would be for the client and Tyler to work through those items at the project-leader level. Tyler tried to do that here. To my knowledge, SRFECC never expressed the belief that the status reports contained "false and misleading" information until this lawsuit was filed. SRFECC certainly never expressed that belief to me.<br><br>Flynn Decl. ¶20 | Speculative |
| 29 | In August 2017, shortly after I became directly involved in this project, SRFECC's project manager Diane House circulated a spreadsheet that included 2065 line items that represented the technical specifications from SRFECC's Request for Proposal ("RFP") issued in March 2014. That spreadsheet is attached to SRFECC's Motion as Exhibit 24. SRFECC's spreadsheet used the term "Fail" for technical requirements that SRFECC claimed did not meet the technical specifications in the RFP following the functional testing process described in the RFP Response (Exhibit 14, p. 233- 42). Although Tyler disagreed with the substantive suggestion that any item had "Failed" in the way SRFECC was using the term, Tyler adopted SRFECC's semantics to streamline the conversation and focus on addressing the issues SRFECC had identified so that the parties could move towards go-live.<br><br>Flynn Decl. ¶21 | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Irrelevant (FRE 401, 402)<br><br>Speculative<br><br>The document speaks for itself (FRE 1002) |
| 30 | During these meetings and in related written communications, SRFECC's representatives, including Ms. Murray, Mr. Thuesen, and Ms. House, provided additional details regarding how they were interpreting the RFP's language and, for the first time, explained their additional and/or specific expectations for the software. During these discussions, it became clear that SRFECC was interpreting a number of technical | Speculative |

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | requirements in a manner that was not Tyler's understanding of either industry standard or what was required by the parties' Agreement. The Tyler team frequently explained to individuals at SRFECC, including Ms. Murray, and Ms. House, that what SRFECC was seeking in connection with the software was beyond the scope of the COTS system, the Agreement, and the RFP requirements. SRFECC's interpretations would require modifications beyond that contemplated by the Agreement that would be costly and time consuming. SRFECC consistently refused to acknowledge that its requests were more akin to a fully customized system than a COTS system.<br><br>Flynn Decl. ¶23 |  |
| 31 | SRFECC refused to engage in that assessment with Tyler. Instead, SRFECC, through Ms. House and others, was adamant that all of the issues identified on their spreadsheet be addressed prior to go-live—even issues that Tyler did not agree to designate as "Fails." As a result, in September 2017, the parties jointly agreed that the previously scheduled November 6, 2017 go-live I would need to be postponed. Exhibit 18 to SRFECC's Motion is the email that I sent to SRFECC confirming the postponement. That email confirms that SRFECC was requiring all items to be addressed prior to go live. In response to my email, SRFECC's Executive Director Teresa Murray stated: "[W]e understand we need to push the go live date" and "we understand Tyler/New World will be collaborating internally on a new project schedule with a timeline which will be presented to SRFECC at a date yet to be determined." *See* Exhibit 18.<br><br>Flynn Decl. ¶26 | The document speaks for itself (FRE 1002) |
| 32 | Following the postponement of the go- |  |

-13-
PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | live date, the parties continued discussing the items that were identified as "Fails" on SRFECC's spreadsheet and that SRFECC was insisting on modifying in the COTS solution prior to go-live. The parties' disagreements and ongoing discussions were documented in numerous versions of the spreadsheet that were exchanged during this time, including the various versions of the spreadsheet attached to SRFECC's Motion (*see, e.g.*, Exhibits 6 and 24). Those spreadsheets contain comments from both parties regarding the technical requirements and established that the parties' interpretations of those technical requirements were not shared, and that their views differed on whether the software complied.<br><br>Flynn Decl. ¶27 | The document speaks for itself (FRE 1002) |
| 33 | Internally at Tyler, because SRFECC refused to prioritize its own issues, my team was assessing each of the items that SRFECC was insisting on having prior to go-live and attempting to develop a reasonable plan to address those items. Following our review and analysis, I prepared the PowerPoint that is Exhibit 5 to SRFECC's Motion. The purpose of the presentation was to propose a project completion plan that would allow SRFECC to go-live as soon as possible.<br><br>Flynn Decl. ¶28 | The document speaks for itself (FRE 1002) |
| 34 | At the time the presentation was prepared, Tyler believed there were 161 items that had been identified by SRFECC, through Ms. House and others, during the course of discussions that SRFECC insisted on addressing. I did not then, and never did, agree that all 161 items were "Fails" in the way SRFECC has co-opted the term. Instead, my presentation categorized these 161 items into four categories. Forty-one items on the list were "warranty" items, | Lacks foundation |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                    Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|-----|----------|-----------|
| | meaning that Tyler agreed there were "bugs" in the software identified during functional testing. These types of "bugs" are not unusual to find in testing, and I consistently committed to SRFECC—as I would to any other client—that those "bugs" would be resolved prior to go-live.<br><br>Flynn Decl. ¶29 | |
| 35 | My presentation noted seven items that I understood SRFECC had requested as specific enhancements. An enhancement means a customized feature or functionality outside of the COTS product. In identifying those items as enhancements, SRFECC was acknowledging they were outside the scope of the project, and therefore not contemplated by the parties' Agreement. To the extent these items were going to come in scope, they would need to be part of an amended scope of work agreed to and executed by all parties as a formal amendment to the Agreement.<br><br>Flynn Decl. ¶30 | Lacks foundation |
| 36 | With regard to 34 of the requirements, my presentation stated that those items "failed to comply with the RFP requirement" as those items were being interpreted by SRFECC. My team had reached this conclusion based on extensive discussions between our subject matter experts and SRFECC's representatives over the course of the implementation, and specifically after the completion of functional testing and the exhaustive process of exchanging multiple versions of the spreadsheet referenced above.<br><br>Flynn Decl. ¶33 | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Hearsay (FRE 801) |
| 37 | The RFP requirements frequently gave very short descriptions of very complex technical functionalities. Our multiple exchanges and discussions with SRFECC's technical representatives gave us, for the first time, the understanding | Lacks foundation |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                                 Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | that SRFECC was interpreting those 34 requirements in a way much different than Tyler had when responding to the RFP, and much different than the black-and-white language of the corresponding requirement. As a result, at the time of my presentation, Tyler had a clearer picture of how SRFECC was interpreting the specific RFP requirements and applying those requirements to the software. In many instances, SRFECC was interpreting the RFP requirements in a manner that was inconsistent with industry standards and unlike any other Tyler customers had done before.<br><br>Flynn Decl. ¶34 |  |
| 38 | Once I had broken out these four categories, Tyler prioritized those items that would require additional software modifications. We prioritized all of the 161 items SRFECC had put at issue by the time of my presentation. In an effort to be a good partner to SRFECC, we did not limit this analysis and effort to the 34 items discussed above. In all events, our prioritization represented Tyler's best, educated assessment as to how SRFECC would have prioritized the items, if they had been willing to do so. As noted above, SRFECC, through Ms. House and others, had refused to provide us with their own prioritization, instead simply stating that all items were required before go-live. My presentation provides an estimate for the number of development hours that would be required to complete all of the 161 enhancements/ modifications based on the prioritization assigned by Tyler.<br><br>Flynn Decl. ¶36 | Lacks foundation |
| 39 | I never intended to suggest in my presentation, and do not agree with the characterization, that Tyler would require an additional 17 years and 40,000 hours to deliver the COTS-based CAD software | Speculative |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | required under the Agreement. The estimates in my presentation represent the level of effort it would have taken Tyler to develop the nuanced, customized specifications SRFECC detailed to Tyler for all 161 items. The parties' Agreement, however, did not require a completely customized CAD system, which SRFECC was insisting on. Had Tyler been implementing the COTS-based CAD system that was the subject of the parties' Agreement, the additional development time would have been significantly less. If, for example, Tyler had been required to develop modifications/enhancements for only the 34 items that Tyler was willing to treat as within the scope of the Agreement, the development effort would have taken far less time. Moreover, had SRFECC been willing to prioritize items, those enhancements/modifications could have been accelerated. My presentation actually suggested to SRFECC that we set a June 2018 go-live date for the CAD system.<br><br>Flynn Decl. ¶37 | |
| 40 | My goal in presenting this information in this manner was to highlight for SRFECC that they were essentially insisting on a custom-built system instead of the COTS system they had agreed to purchase. I also wanted to emphasize that it would be a sounder decision, at many levels, to go live with less than all of the SRFECC-mandated 161 items completed and then continue to enhance the system thereafter. This was especially true give the fact that the majority of the items were not required by the parties' Agreement in the first instance.<br><br>Flynn Decl. ¶38 | Improper opinion (FRE 701) ("This was especially true give the fact that the majority of the items were not required by the parties' Agreement in the first instance.") |
| 41 | The concept of implementing additional functionality after go-live is referred to as "continuous improvement." Clients | Lacks foundation<br><br>Lacks personal knowledge (FRE 602) |

-17-
PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION

Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | routinely go-live and continue to receive additional features and functionality to the software through planned new releases and/ or specific development efforts. I expected that if I presented the information in this way to SRFECC, SRFECC would appreciate the benefits of this model and recognize the negative, unnecessary impacts of their all-or-nothing approach to the 161 items they had been insisting on receiving prior to go-live.<br><br>Flynn Decl. ¶39 | Speculative |
| 42 | SRFECC maintains that all 172 items should have been coded "Non-Compliant" in the RFP Response. Tyler disagrees with that characterization. According to SRFECC, if the 172 items had been coded "Non-Compliant," New World's RFP score would have been reduced and New World would not have been awarded the contract. However, even if you take SRFECC's interpretations of what the RFP requested as a given (which Tyler strongly disputes), the 172 items would have been at least "Compliant as Modified" or "Partially Compliant," warranting at least 1 or 2 points, according to Ms. House. Based on this, it is unclear what New World's score would have been and whether it would still have exceeded the score of the other bidders in the RFP. Moreover, it is my understanding that the technical scores were not the only criteria for awarding the RFP. SRFECC has not made available the scoring sheets for Tyler (New World) or the other bidders, so it is impossible for me—or anyone—to fully analyze the scoring.<br><br>Flynn Decl. ¶43 | Speculative<br><br>Lacks foundation<br><br>Lacks personal knowledge (FRE 602) |
| 43 | Ms. House's declaration references just 14 specific RFP items that SRFECC contends were marked "Fully Comply" in | Irrelevant (FRE 401, 402)<br><br>Improper opinion (FRE 701) |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                                 Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | the RFP response and that SRFECC contends "Failed." With regard to the other 158 RFP items on Exhibit 7, I am not aware of anywhere in the record where SRFECC has explained the basis for its concerns or why that item was supposedly a "Fail."<br><br>Flynn Decl. ¶44 |  |
| 44 | With respect to the 14 items on which Ms. House elaborates, Tyler disagrees with the assertion that these items "Failed," as SRFECC uses the term, and believes that, based on the information available to New World at the time of the RFP response, a response of "Fully Comply" was appropriate.<br><br>Flynn Decl. ¶45 | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Irrelevant (FRE 401, 402)<br><br>Improper opinion (FRE 701) |
| 45 | For example, requirement 5.2.5.6.C.a. in the RFP states: "The CAD system *may* also in addition to soundex utilize other appropriate look-up aids *such as* type ahead. *If* type ahead is utilized, the system shall only display as possible matches those streets on which the numeric address that has been entered is a valid address (i.e., if the initial entry is 175 S. MA -- the type ahead drop down would not show S. Main St, unless 175 was a valid address on S. Main St.)." Based on the use of the terms "may" and "if" and the phrase "appropriate look-up aids such as type ahead," Tyler did not believe that type ahead itself was required by the RFP. Tyler's CAD system included other look-up aids and did comply with the language of the RFP. In contrast, Ms. House's declaration claims that the CAD system "*must* be able to provide type ahead functionality." SRFECC's evolving insistence on type ahead functionality instead of "other appropriate look-up aids" is not consistent with the RFP as written. In any event, type ahead functionality was added | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Improper opinion (FRE 701)<br><br>Misstates contents of Agreement |

-19-
PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                                    Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | to Tyler's software for other customers in March 2018, and could have/would have been provided to SRFECC as well.<br><br>Flynn Decl. ¶46 | |
| 46 | Requirements 5.2.5.6.D and 5.2.5.9.D state that "A list of possibilities should be displayed when a partial spelling or misspelling of a street name is entered" and "[t]he call taker shall be able to enter partial street names on both intersection streets." Tyler's CAD software had this functionality, but SRFECC did not like the way it worked and wanted modifications. Tyler agreed to modify the system to meet SRFECC's specific requests at no charge. SRFECC complains that my December 7, 2017 presentation projected the completion date for these modifications to be 2020. That estimate, however, was based on Tyler's own prioritization of development tasks. Had SRFECC identified this issue as "mission critical," as Ms. House's declaration now states, Tyler could have prioritized this item and completed the development effort much sooner.<br><br>Flynn Decl. ¶47 | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Improper opinion (FRE 701)<br><br>Speculative |
| 47 | Requirement 5.2.5.6.F.b. states "[u]pon entry of the incident location, the CAD application software shall provide a look-up to the geographic database (geofile) to validate the location of the incident. The process shall facilitate validation of the incident's location. The location/geofile must support multiple 'aliases' for: Intersections." Requirement 5.2.5.6.F.c. requests the same look-up capability for "commonplace names." As evidenced by Ms. House's declaration, SRFECC's complaint about these requirements was that Tyler' look-up functionality did not have the ability to address "multiple venues" at a given location, which SRFECC referred to as "community | Lacks foundation<br><br>Improper opinion (FRE 701) |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION

4812-0577-3426.v3                                                                 Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|-----|----------|-----------|
|  | codes." The RFP does not mention the possibility of multiple venues at a given location or the use of "community codes." Tyler's CAD software fully complied with the RFP and provided look-up functionality that was in use in numerous other agencies. SRFECC's after-the-fact addition of the need to address "multiple venues" is a modification to the RFP requirements that no other client had ever requested of Tyler. Nonetheless, in order to address this modified RFP item, Tyler offered to develop the requested additional functionality.<br><br>Flynn Decl. ¶48 |  |
| 48 | Requirement 5.2.5.1.2.D.h in the RFP states that "the system must display the coordinates in the State designated format (DMS, Decimal degrees, or UTM)." During the time of this specific RFP response, New World had just completed a new version of its CAD software. The older version was able to process and display the coordinates as specified in the RFP, while the newer version was able to accept coordinates in the state format, but did not display them in that format. As soon as Tyler determined that the newer software contained different formatting, Tyler agreed to provide this functionality and the item was scheduled for completion in 2018. Like other issues, if SRFECC had prioritized this issue, it could have been developed and delivered more quickly.<br><br>Flynn Decl. ¶49 | Speculative<br><br>Lacks foundation |
| 49 | RFP requirement 5.2.5.6.B states: "The CAD shall utilize a "soundex", "megaphone", and/or other appropriate look-up aids for street names, intersections, commonplace names, landmarks, or street or highway route numbers. (Windows type ahead is not | Lacks foundation |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | soundex nor a metaphone).” The requirement expressly permits the use of “other aids”. The Tyler CAD system allows the use of “wildcards” in searching street and other names, which provides a display of names that contain a sequence of characters anywhere within the name. This functionality is very similar to soundex and certainly would qualify as an “other aid” in compliance with the RFP.<br>Flynn Decl. ¶50 |  |
| 50 | Requirement 5.2.5.6.T states: “The system shall allow for a street name to be entered without a block range and/or city and return all possible ranges with City and location to be used to query the caller as to which is the correct choice.” Tyler’s CAD software requires an address to be entered.  It complies with the requirement because it does not require a block range or city to be entered. Ms. House declaration explains how SRFECC now would like this functionality to work: “if a caller reports an emergency on Folsom Blvd, the dispatcher should be able to enter “Folsom Blvd” and  see possible locations that the dispatcher can then list to the caller to help them ascertain their location.” After SRFECC explained in more detail what it was looking for in connection with this  requirement, Tyler agreed that it would develop the requested additional functionality. Ms. House’s declaration expresses a  concern about not having this functionality until 2019, but, as I indicated before, if SRFECC had agreed to prioritize the requested  development tasks, this functionality  could have been delivered sooner.<br><br>Flynn Decl. ¶52 | Speculative<br><br>Lacks foundation |
| 51 | RFP requirement 5.2.5.7.G states: “If the common place is a multi-unit structure with common places names associated | Speculative<br><br>Lacks foundation |

PLAINTIFF’S OBJECTIONS TO TYLER TECHNOLOGIES’ EVIDENCE IN SUPPORT OF OPPOSITION

4812-0577-3426.v3                                                                                    Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|-----|----------|-----------|
| | with the sub units the system shall display a list of additional common-places that the operator may choose from." Tyler's CAD system provided this functionality, but SRFECC did not like the way it functioned. Nonetheless, Tyler agreed to develop the functionality in the manner requested by SRFECC and the functionality would have been delivered in June 2018, but for SRFECC's termination of the Agreement.<br><br>Flynn Decl. ¶53 | |
| 52 | Requirements 5.2.6.4.B.1 and 5.2.12.8 state: "The CAD software shall provide the following basic functions/information when a call for service is retrieved for dispatch: Geofile information, to include: Latitude and Longitude" and "Once an incident location is entered into the proposed CAD system, the location verification step shall add the coordinates of the incident's location to the incident record and display an incident icon on the tactical map display." The Tyler CAD system provides this capability, as described by Ms. House in her declaration: "The user must open the mapping client, find the location of the incident manually, hover over the location with the mouse, then read the coordinates from the temporary label." The functionality is in compliance with the RFP. SRFECC, however, would prefer that this functionality worked slightly differently than it currently does. The Tyler team repeatedly told SRFECC that Tyler had complied with the RFP and that this item should not be characterized as a "Fail."<br><br>Flynn Decl. ¶54 | Hearsay (FRE 801)<br><br>Lacks foundation |
| 53 | In summary, I believe that New World correctly represented the capabilities of the software given the descriptions within the RFP. The software Tyler delivered to | Lacks foundation<br><br>Lacks personal knowledge (FRE 602) |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION

4812-0577-3426.v3                                                      Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | SRFECC complied with the written requirements of the RFP, the Agreement, and with the vast majority of the requirements as further defined by SRFECC during the implementation. The large majority of the requirements deemed by SRFECC to be "Fails" are desires on the part of SRFECC to have the Tyler software work in a way that closely mimics the current SRFECC system. SRFECC repeatedly ignored and continues to ignore Tyler's position on those items.<br><br>Flynn Decl. ¶57 | Irrelevant (FRE 401, 402)<br><br>Improper opinion (FRE 701) |
| 54 | Tyler's system, however, is a COTS software package, to which the parties' Agreement and the RFP required only "minor customization." SRFECC's large number of requests to modify the software, and the significant amount of work required to make those changes, constituted an expansive, wide-ranging, and wholesale set of SRFECC-specific customizations not contemplated by the parties' Agreement. Even for the small number of requirements that Tyler was willing to agree did not "comply" with the RFP, SRFECC's specific requirements and unique interpretation of the RFP requirements only came to light after much discussion and explanation from SRFECC. In these cases, Tyler agreed to modify the software to address each of SRFECC's issues, but SRFECC refused to prioritize the items in a meaningful way in order to work toward their delivery.<br><br>Flynn Decl. ¶58 | Lacks foundation<br><br>Vague and ambiguous ("SRFECC refused to prioritize the items in a meaningful way in order to work toward their delivery.") |
| | **Declaration of Craig Nelson ("Nelson Dec.")** | |
| 55 | Prior to SRFECC issuing the RFP, sometime in 2013, I met with Teresa Murray, who I understood to be the Chief Executive Director for SRFECC. I had known Ms. Murray when she was | Lacks foundation<br><br>Irrelevant (FRE 401, 402)<br><br>Vague and ambiguous ("never actually executed |

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | employed in a similar role in Roseville, California. Roseville had implemented New World's CAD system, and Ms. Murray was familiar with the system's functionality, and had supervised its implementation in Roseville. During our 2013 meeting, Ms. Murray indicated that SRFECC had been attempting for several years to replace its COBAL-based CAD system. It is my understanding and belief that SRFECC had issued multiple prior RFPs, and had even awarded the work to at least one vendor as a result of those prior efforts, but had never actually executed a contract for a new system because there was reluctance on the part of the dispatchers to change to a new system.<br><br>Nelson Decl. ¶7 | a contract for a new system because there was reluctance on the part of the dispatchers to change to a new system.")<br><br>Hearsay (801) |
| 56 | At this same meeting, Ms. Murray indicated that the SRFECC dispatchers did not want to change from their existing CAD system and were reluctant to implement a new system. She suggested that Bob Rausch, a colleague of mine at New World who was involved in the Roseville sales effort, and I would need to help her convince the dispatchers that a new system was needed. Based on her suggestion, and as a result of a meeting requested and coordinated by her, Bob and I spent two full days with the dispatchers in an effort to understand their needs and attempt to explain to them why they should upgrade their legacy system.<br><br>Nelson Decl. ¶9 | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Hearsay (801) |
| 57 | Ms. Murray also indicated to me, at this same meeting, that SRFECC had limited technical resources and knowledge. As a result, I called Bruce Kelling, the founder of Athena Networks, from Ms. Murray's office and suggested on that phone call that SRFECC hire Athena to provide technical consulting expertise. It is my | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Irrelevant (FRE 401, 402)<br><br>Hearsay (801) |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION

Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | understanding that SRFECC did in fact enter into a contract with Athena to assist them with certain technical aspects of moving to a new system. Later, Athena's role expanded to include consulting regarding project management.<br><br>Nelson Decl. ¶11 |  |
| 58 | On May 16, 2014, New World submitted a response to SRFECC's RFP, which provided significant details about New World's CAD system. Michael Hargrove, who reported to me, was the individual at New World who directly supervised the team providing New World's response to each of the over 2000 specific technical requests in the RFP. Kathy Fant was also responsible for coordinating the responses to the technical requests. I was generally aware of the substance of the RFP response, but did not have primary responsibility for preparing or submitting it.<br><br>Nelson Decl. ¶12 | Lacks personal knowledge (FRE 602) |
| 59 | Based on my extensive experience in the industry, it is common practice when responding to an RFP to evaluate each functional requirement in the context of industry standards, market norms and generally established client expectations. This is especially true where RFPs contain only limited language describing the technical functional requirements.<br><br>Nelson Decl. ¶ 13 | Relevance (Rule 401) and lack of personal knowledge (Rule 602). Nelson's generalizations about what he thinks is common practice when responding to an RFP lack foundation and demonstrate no personal knowledge of New World's response to this RFP. Mr. Nelson was not responsible for and did not prepare Defendant's response to the RFP. *See* Nelson Decl. ¶¶ 5-6.<br><br>Lacks foundation<br><br>Improper opinion (FRE 701)<br><br>Misstates contents of Agreement |
| 60 | At the time, New World had extensive experience implementing similar CAD systems at similar agencies across the country. New World's responses were based on its extensive experience. | Lacks personal knowledge (FRE 602) Mr. Nelson was not responsible for and did not prepare Defendant's response to the RFP. *See* Nelson Decl. ¶¶ 5-6.<br><br>Lacks foundation |

-26-

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | Nelson Decl. ¶ 13 | |
| 61 | For example, beginning on July 25, 2014, New World provided three full days of demonstrations of certain technical capabilities. These demonstrations were recorded by video. New World loaded mobile software directly onto one of SRFECC's mobile data terminals in order to do the demonstrations. We provided both SRFECC-scripted demonstrations of specific functionality and also engaged in extensive discussions regarding implementation, data conversions and interfaces. During the demonstrations, representatives of SRFECC stated that New World was the only vendor that followed SRFECC's demonstration script to the exact letter.<br><br>Nelson Decl. ¶15 | Lacks foundation<br><br>Hearsay (801) |
| 62 | At that meeting Linda Luis stated to me that "dispatch didn't vote for" New World, but that the fire chiefs wanted to go with New World.<br><br>Nelson Decl. ¶ 20 | Hearsay (801) |
| 63 | I was also later told by Teresa Murray that the fire chiefs did not want to award the bid to New World, but that Ms. Murray had convinced them to do so.<br><br>Nelson Decl. ¶ 20. | Hearsay (801) |
| 64 | After the Agreement was executed, the Tyler and SRFECC teams put together an initial project plan, which targeted a go-live date of November 6, 2017. That date was a target and not a contractually-mandated deadline.  Go-live dates often change based on each individual client's unique circumstances, resource constraints and requirements, as contemplated by the Agreement.<br><br>Nelson Decl. ¶22 | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Improper opinion (FRE 701) |
| 65 | Bryan Proctor, Greg Sebastian, and Chief | Lacks foundation |

-27-

| No. | EVIDENCE | OBJECTION |
|---|---|---|
|  | Diemer and I met with Assistant Chief Maurice Johnson of the Sacramento Metropolitan Fire District and Deputy Chief Chris Costamagna of the Sacramento Fire Department in mid-to-late December 2017. At that meeting, we suggested that they participate in site visits, again, to Roseville and Kern County in order to see the software operating live. During our meeting with the chiefs, they indicated that they had lost confidence in Teresa Murray. The chiefs indicated that they would get more involved directly in the implementation. It is my understanding that the chiefs visited Roseville, but that they did not go to Kern County.<br><br>Nelson Decl. ¶24 | Irrelevant (FRE 401, 402)<br><br>Vague and ambiguous ("The chiefs indicated that they would get more involved directly in the implementation.")<br><br>Hearsay (801) |
| 66 | In addition, it is my recollection that, at that meeting, the chiefs indicated that, during the RFP selection process, Ms. Murray had tried to rush a vote through and take more control of the vote for herself and her staff, as opposed to the fire chiefs.<br><br>Nelson Decl. ¶ 25 | Hearsay (Rule 801).<br><br>Lack of personal knowledge (Rule 602).<br><br>Relevance (Rule 401). |
| 67 | The chiefs indicated that they had stepped into the process and redistributed how the votes were cast and counted.<br><br>Nelson Decl. ¶ 25 | Hearsay (Rule 801).<br><br>Lack of personal knowledge (Rule 602).<br><br>Relevance (Rule 401). |
| 68 | To me, this seemed to be in line with the comment Linda Luis made to me at the board meeting when the bid was awarded to New World.<br><br>Nelson Decl. ¶ 25 | Hearsay (Rule 801).<br><br>Lack of personal knowledge (Rule 602).<br><br>Relevance (Rule 401).<br><br>Improper Opinion (FRE 701)S |
| 69 | As a result, I believe that the contract was awarded to New World based on more than just the specific scoring of the technical requirements in the RFP Response done at the project-team level. | Hearsay (Rule 801).<br><br>Lack of personal knowledge (Rule 602).<br><br>Relevance (Rule 401). |

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION

4812-0577-3426.v3                                                    Case No.:  2:18-cv-01792-KJM-KJN

| No. | EVIDENCE | OBJECTION |
|---|---|---|
| | Nelson Decl. ¶ 25 | Improper opinion (FRE 701) |
| 70 | I understand that SFRECC has accused New World of lying to SRFECC in the New World RFP Response. I am not aware of any effort or intent by anyone at New World, including the RFP team, to mislead SRFECC or mischaracterize the functional abilities of our software. Instead, I believe that both New World and later Tyler were responsive to SRFECC's needs and attempted to provide the information requested to their best ability and based on their reasonable, good faith understanding of what was being requested.<br><br>Nelson Decl. ¶26 | Lacks foundation<br><br>Lacks personal knowledge (FRE 602)<br><br>Irrelevant (FRE 401, 402)<br><br>Speculative |

Dated: September 14, 2018

PILLSBURY WINTHROP SHAW PITTMAN LLP

/s/ Philip S. Warden

By: PHILIP S. WARDEN
ROBERT E. KINGSLEY, Prosecuting Authority
Attorneys for Plaintiff
SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER D/B/A SACRAMENTO REGIONAL FIRE/EMS COMMUNICATIONS CENTER

PLAINTIFF'S OBJECTIONS TO TYLER TECHNOLOGIES' EVIDENCE IN SUPPORT OF OPPOSITION
4812-0577-3426.v3                                                                Case No.:  2:18-cv-01792-KJM-KJN