UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO REGIONAL PUBLIC SAFETY COMMUNICATIONS CENTER,<br><br>Plaintiff,<br><br>v.<br><br>TYLER TECHNOLOGIES, INC.,<br><br>Defendant. | No. 2:18-cv-1792-KJM-KJN<br><br>ORDER |

Having reviewed the allegations of the complaint and the parties' briefing, the court orders as follows:

I.     MOTION TO DISMISS

    A.     <u>Breach of Contract</u>

The essential elements of a breach of contract claim are: (1) the existence of a valid contract, (2) plaintiff's performance of the contract or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff caused by defendant's breach. *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014) (citation omitted); Jud. Council of Cal. Civil Jury Instr. 303 (2003, revised Dec. 2016) (Breach of Contract – Essential Factual Elements).

Defendant's motion to dismiss attacks only the breach element, arguing plaintiff "does not point to any specific section of the Agreement that has allegedly been breached . . . .

and [defendant] is genuinely left to guess how it breached the Agreement." *See* Mot., ECF No. 11, at 23-24. To the extent plaintiff's claim proceeds on defendant's alleged submission of invoices despite knowing it could not complete the project in a timely manner, defendant argues the Agreement does not contain "a specific completion date that could serve as the basis of a breach of contract claim." *Id.* at 23.

The court disagrees with both arguments. The heart of plaintiff's claim is that defendant agreed it would provide software it identified as fully compliant with plaintiff's technical requirements in a timely manner, but defendant failed to do so and thus breached the parties' agreement. To that end, plaintiff alleges: The parties entered into a November 6, 2015 agreement following defendant's response to plaintiff's call for bids, Compl. ¶¶ 5, 37; *see* Agreement, *id.* Ex. 2, ECF No. 1-1 at 18-88; the agreement incorporated by reference defendant's responses to plaintiff's call for bids, Compl. ¶ 22; *see id.* Ex. N, ECF No. 1-1 at 86; the agreement contained a "time is of the essence" clause and an express agreement to "strictly adhere to the timeline" established in the parties' agreed-to timeline, *id.* ¶ 24; *see* Agreement §§ 1.2, 1.3; the parties agreed to a November 6, 2017 go-live date, *id.* ¶ 7; *see* Agreement Ex. 4, ECF No. 1-1 at 92-95 (project scheduling setting Nov. 6, 2017 go-live date); and defendant did not submit timely status reports or make substantial progress toward completion of the project, Compl. ¶ 25. To date, plaintiff has paid defendant $2,128,393.26 without receiving the benefit of the parties' bargain, namely, "the Replacement CAD System that Defendants contracted to provide," *id.* ¶ 46; and defendant represents it can deliver a system that meets the parties' agreement only with twenty years' additional work, *id.* ¶ 33.

These allegations are sufficient to put defendant on notice of plaintiff's claim. Defendant's motion to dismiss the breach of contract claim is DENIED.

    B.    <u>Rule 9(b)</u>

For fraud claims, Federal Rule of Civil Procedure 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To meet this requirement, a plaintiff must allege "the who, what, when, where, and how" of the allegedly fraudulent misconduct, not just the "neutral facts necessary to identify the transaction."

*Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and internal quotation marks omitted). Plaintiff's allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotation marks omitted). This heightened pleading standard applies not only to allegations sounding in fraud, but also to facts alleged to constitute fraud, "even if the word 'fraud' is not used." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation and quotation marks omitted). Rule 9(b) thus governs California False Claims Act ("CFCA") claims alleging fraud, *United States v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 810 (N.D. Cal. 2014), and claims alleging fraud under California's Unfair Competition Law ("UCL"), *Kearns*, 567 F.3d at 1127.

Defendant moves to dismiss plaintiff's fraud, CFCA and UCL claims, arguing plaintiff has not "allege[d] what, specifically, was false about [defendant's] response of 'Fully Comply' on each [of the 172 RFP line items indicating plaintiff's technical requirements]" and "why a response of 'Fully Comply' was false." Mot. at 14. In other words, defendant argues plaintiff has not sufficiently alleged the necessary "what" and "how" of the allegedly fraudulent conduct. *See Vess*, 317 F.3d at 1106.

The court disagrees. Plaintiff's allegations go beyond the "neutral facts necessary to identify the transaction," *see In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds as recognized in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011), and put defendant on "notice of the particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that [it] ha[s] done anything wrong," *see Bly–Magee v. California*, 236 F.3d at 1019. Plaintiff has identified each item it contends defendant falsely designated "Fully Comply." *See* Compl. Exs. 6-7. Exhibit 7 identifies the specific technical requirement at issue, while Exhibit 6 describes the technical item and plaintiff's reasons for believing the item is a "Fail." *See, e.g.*, *id.* Ex. 7, ECF No. 1-1 at 177 (identifying defendant's "Fully Comply" response to technical requirement 5.3.5.10.2 B as a "Failed" item); *id.* Ex. 6, ECF No. 1-1 at 165 (entry 2870 with corresponding

technical requirement requiring "All self-initiated dispatch events shall be routed to the pending call areas of controlling dispatchers" and providing plaintiff's responses, including "FAIL – mobile does not address verify. Where will the call route to?").

Although defendant complains that some items are unclear and may amount to no more than the parties' good faith differences of interpretation, that argument is better reserved for summary judgment. Plaintiff's pleading, not its proof, is at issue here, and the court concludes that by identifying the relevant technical requirement and providing plaintiff's explanation as to why defendant's "Fully Comply" designation was false, plaintiff has put defendant on notice of the misconduct alleged and therefore has satisfied Rule 9(b). *See Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987), *overruled on other grounds as stated in Flood v. Miller*, 35 Fed. App'x 701, 703 n.3 (9th Cir. 2002) (finding plaintiff met Rule 9(b) by identifying "[e]ach alleged misstatement . . . by content, date, and the document or announcement in which it appeared" and "specif[ying] the exact dollar amount of each alleged overstatement, and the manner in which such representations were false and misleading"); *United States ex rel. Durkin v. Cty. of San Diego*, 300 F. Supp. 3d 1107, 1122 (S.D. Cal. 2018) (finding allegations identifying content of FAA Advisory Circular and regulations with which defendant allegedly falsely certified compliance, and explanation of how each Advisory Circular rendered defendant's statement false, satisfied Rule 9(b)).

The balance of defendant's motion under Rule 9(b) also is unpersuasive. First, plaintiff has sufficiently alleged intent. *See* Mot. at 16-17 (arguing plaintiff has not sufficiently alleged intent because intent requires more than a defendant's "errors or negligence"). Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see McMillan v. Lowe's Home Centers, LLC*, No. 115CV00695DADSMS, 2016 WL 2346941, at *3 (E.D. Cal. May 4, 2016). Plaintiff generally alleges knowledge and intent. *See, e.g.*, Compl. ¶¶ 58-59 (alleging defendant knew its software did not "Fully Comply" with certain of plaintiff's technical requirements and knew it could not deliver a fully compliant system within a reasonable timeframe, but nonetheless intentionally stated its software "Fully Compl[ied]"). Second, although defendant argues plaintiff cannot rely

4

on defendant's alleged breach of contract to sustain a fraud claim, that argument is misplaced. Unlike the cases defendant relies on, plaintiff is not merely alleging that defendant never planned to perform; rather, plaintiff is alleging defendant induced plaintiff to enter into a contract by representing defendant already had in its possession technology it in fact lacked. *See* Mot. at 17 (citing, *inter alia*, *Richardson v. Reliance Nat. Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *5 (N.D. Cal. Mar. 9, 2000) (rejecting plaintiffs' allegation "that defendants' later termination of plaintiff's employment and its tapping of his phones somehow indicates that defendants' statements were false at the time they were made"); *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153 (S.D. Cal. 2001) (observing a plaintiff cannot "simply point[] to a defendant's statement, not[e] that the content of the statement conflicts with the current state of affairs, and then conclud[e] that the statement in question was false when made").

Defendant's motion to dismiss plaintiff's fraud claims for failure to comply with Rule 9(b) is DENIED.

C. <u>California Unfair Competition Law (UCL)</u>

The UCL, prohibits in relevant part "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. There are three UCL prongs, "unlawful," "unfair" and "fraudulent," and each provides a separate and distinct theory of liability. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

Defendant contends that, even if plaintiff's allegations satisfy Rule 9(b), plaintiff has not stated a claim under the UCL. Mot. at 19-21 (arguing plaintiff's UCL "claim looks nothing like a proper claim under California's Unfair Competition Law"). Here, the court agrees.

Plaintiff's UCL allegations are sparse. *See* Compl. ¶¶ 49-53. Plaintiff incorporates by reference the first 48 paragraphs of its complaint, alleges it "has suffered significant losses" due to defendant's misconduct and that defendant violated the UCL by "[f]ailing to fulfill their [sic] contractual agreements," "asserting that they were and are [sic] capable of performing . . . under the Agreement in a timely manner," and "[g]iving greater consideration to their [sic] own interests than to those of" plaintiff and the public plaintiff serves. *Id.* ¶¶ 50-51. Plaintiff rounds out its claim by alleging defendant acted without justification and

"in bad faith," causing plaintiff to lose its replacement CAD system and approximately $2,128,393.26, and alleging defendants "will likely continue to engage in unfair business tactics" in working on "public safety systems, and continue to create an imminent danger to the public, even death." *Id.* ¶ 53. These allegations, plaintiff simply contends, "adequately allege[] a violation of the UCL under each of the three prongs." Opp'n, ECF No. 42, at 23.

Plaintiff's allegations are not sufficient and cannot be cured by the additional information contained in plaintiff's opposition brief. If plaintiff wishes to proceed under each UCL prong, it must meet the pleading standards for each. *See Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1199 (N.D. Cal. 2016) (dismissing UCL claim where it was unclear which UCL claim plaintiff intended to pursue). Accordingly, defendant's motion to dismiss plaintiff's UCL claim is GRANTED, with leave to amend if amendment is possible subject to Federal Rule of Civil Procedure 11.

D. California False Claims Act (CFCA)

The California False Claims Act was enacted to prevent fraud on the public treasury. *State of California v. Altus Finance*, 36 Cal. 4th 1284, 1296 (2005). As relevant here, the CFCA establishes liability for one who "[k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval." Cal. Gov't Code § 12651(a)(1); *see* Compl. ¶ 74. Because the CFCA closely resembles the federal False Claims Act, courts look to federal False Claims Act authorities to interpret the CFCA. *San Francisco Unified Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc.*, 182 Cal. App. 4th 438, 446 (2010), *as modified on denial of reh'g* (Mar. 25, 2010) ("*Contreras*"); *United States ex rel. O'Neill v. Somnia, Inc.*, No. 115CV00433DADEPG, 2018 WL 4292234, at *4 (E.D. Cal. Sept. 7, 2018).

In addition to arguing plaintiff's CFCA claim does not meet Rule 9(b)'s pleading standard, defendant argues plaintiff has not sufficiently alleged materiality and lacks standing to pursue a CFCA claim. Mot. at 21-23. Again, the court above has rejected defendant's Rule 9(b) challenge. The court rejects the balance of defendant's arguments here as well.

The CFCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money, property, or services." Cal. Gov't Code

§ 12650(b)(4). Under the federal False Claims Act, the materiality element turns on "whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016). This "demanding" standard is not satisfied "merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement of payment." *Id.* at 2003. Here, plaintiff alleges defendant falsely represented its ability to provide the system plaintiff required in the timeframe plaintiff required, but nonetheless invoiced and received $2,128,393.26 by misrepresenting its progress on the project. Compl. ¶¶ 10, 39-46, 56-58, 60, 63, 66-67, 72-74. These allegations are sufficient to meet the materiality element at this juncture. *See, e.g.*, *Contreras*, 182 Cal. App. 4th at 457 (finding allegations defendant "failed to repair [school] buses that 'allowed diesel exhaust into the passenger compartment' . . . are clearly of sufficient seriousness to satisfy the materiality element at the demurrer stage").

As to standing, California Government Code § 12652 provides that CFCA claims may be brought by the Attorney General, the prosecuting authority of a political subdivision, or a private party in a qui tam action. *See* Cal. Gov't Code § 12652; *Los Angeles Memorial Coliseum Commission v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 819-21 (2015). The CFCA defines "political subdivision" as "any city, city and county, county, tax or assessment district, or other legally authorized local governmental entity with jurisdictional boundaries." Cal. Gov't Code § 12650(b)(6). It defines "prosecuting authority" as "the county counsel, city attorney, or other local government official charged with investigating, filing, and conducting civil legal proceedings on behalf of, or in the name of, a particular political subdivision." *Id.* § 12650(b)(8). The prosecuting authority of a political subdivision may pursue recovery when its own political subdivision funds or where both its own and state funds are at issue. *Id.* § 12652(b)(1); *see State ex rel. Dockstader v. Hambyi*, 162 Cal. App. 4th 480, 490 (2008); *State ex rel. Harris v. PricewaterhouseCoopers, LLP*, 39 Cal. 4th 1220, 1227 (2006).

Defendant argues that neither plaintiff nor its counsel qualify as a "prosecuting authority" under the CFCA and therefore plaintiff lacks standing to pursue a CFCA claim. Mot. at 22-23. Defendant identifies only one authority for this proposition, *Los Angeles Mem'l*

*Coliseum Com. v. Insomniac, Inc.*, *supra*. *Id.* at 822. There, a county coliseum commission and its affiliated public benefit corporation filed a complaint that did not so much as "imply" that it had prosecuting authority under the CFCA. *Id.* Accordingly, the appellate court affirmed the trial court's dismissal for lack of standing, noting it need not reach whether an attorney working for a government agency or subdivision may act as a CFCA prosecuting authority. *Id.* at 822, 837 n.15 (citing Cal. Gov't Code § 12650(b)(8)).

Here, plaintiff alleges it is a joint powers authority ("JPA") formed under California Government Code § 6500, et seq. Compl. ¶ 12; *see United States v. S. California Intergovernmental Training & Dev. Ctr.*, No. 2:15-CV-00619MCE-CKD, 2017 WL 1495095, at *3 (E.D. Cal. Apr. 26, 2017) (explaining "Cal. Gov't Code §§ 6500–6599.3[ ] allows two or more public agencies to create a separate governmental agency for the purpose of jointly exercising common powers") (citations omitted); *People v. Parmar*, 86 Cal. App. 4th 781, 799 (2001) (JPAs "are governmental agencies and not private parties"). Plaintiff further alleges it is authorized to direct its counsel to prosecute this action under the CFCA and that it passed a resolution endowing its counsel with such authority. Compl. ¶¶ 13-14. Defendant provides the court with no basis to conclude plaintiff is not a "legally authorized local governmental entity with jurisdictional boundaries." *See* Cal. Gov't Code § 12650(b)(6); *cf. Cal. Statewide Cmtys. Dev. Auth. v. All Persons Interested*, 40 Cal. 4th 788, 794 (2007) (noting JPAs may "issue tax exempt revenue bonds to finance construction projects that provide a public benefit and are located within the geographical boundaries of its member public agencies."). A fellow district court addressing a similar issue has conducted an exhaustive analysis of the CFCA's text, purpose and context and concluded the CFCA's definitions of "prosecuting authority" and "local government official" are entitled to "a broad interpretation." *See Sierra View Local Health Care Dist. v. Influence Health, Inc.*, No. 115CV00689DADSAB, 2017 WL 220304, at *3-6 (E.D. Cal. Jan. 19, 2017). In that case, the court concluded the plaintiff's allegation that it had authority to proceed as a CFCA prosecuting authority sufficed at the pleading stage. *See id.* at *6. This court reaches the same conclusion here.

Defendant's motion to dismiss plaintiff's CFCA claim is DENIED.

## II. MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded[,] . . . . [and] '[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." 5C Charles A. Wright, et al., Fed. Prac. & Proc. Civ. § 1382 (3d ed.). "'[S]candalous' matter is that which improperly casts a derogatory light on someone, most typically on a party to the action." *Id.*

Defendant moves to strike as "impertinent and scandalous" plaintiff's allegations that defendant's actions "ha[ve] put the lives of people and first responders who service the Sacramento region at risk" by delaying implementation of a modern system, which "may be the difference between life and death," Compl. ¶ 11, and defendants' practices "will likely . . . continue to create an imminent danger to the public, even death," for plaintiff and other public agencies, *id.* ¶ 53. Mot. at 24-25. Defendant argues these allegations "paint [defendant] as a villain" and harm its reputation while adding nothing to plaintiff's claims. *Id.* at 25.

The court will not speculate as to the merits of plaintiff's allegations. But the court cannot conclude at this early stage that plaintiff's allegations are entirely irrelevant to its claims for relief. *See* Compl. ¶ 78 (seeking punitive damages); *see also* Fed. Prac. and Proc. § 1382, at 706–07, 711 (3d ed.) ("[I]t is not enough that the matter offends the sensibilities of the objecting party or the person who is the subject of the statements in the pleading, if the challenged allegations describe acts or events that are relevant to the action.").

Defendant's motion to strike is DENIED.

## III. MOTION FOR SUMMARY JUDGMENT

Under Rule 56(d), when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "Where [] a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity

to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-74 (9th Cir. 2003) (citing, inter alia, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (noting "the Supreme Court has restated [Rule 56(f)] as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'")).

Invoking Rule 56(d), defendant requests the court either deny as premature or defer consideration of plaintiff's motion for partial summary adjudication. Req. to Continue ("Req."), ECF No. 41; *see* Motion for Partial Summary Adjudication Mem., ECF No. 10-13. As defendant notes, plaintiff filed its motion for summary judgment 35 days after filing its complaint, four days before defendant filed its motion to dismiss and well ahead of the court's Rule 16 initial scheduling conference. Req. at 2. When plaintiff filed its motion, no discovery had taken place. *Id.* Defendant further outlines in detail the discovery it says it requires to marshal a response to plaintiff's motion, accompanied by a declaration from its counsel explaining defendant's need for discovery. *See id.* at 2-3; Petronio Decl., ECF No. 41-1.

At hearing, plaintiff requested the court re-review certain exhibits before ruling on defendant's Rule 56(d) motion, arguing these exhibits show plaintiff is entitled to summary judgment and discovery could not possibly change that result. The court has again reviewed plaintiff's exhibits 5, 14, 20, 30, 31 and 32 and still finds defendants' representations regarding the discovery it needs are reasonable and satisfy Rule 56(d). *See* Fed. R. Civ. P. 56(d). Defendant identifies multiple issues it needs to explore in discovery to fully respond to plaintiff's motion. *See, e.g.*, Petronio Decl. ¶ 8 (explaining defendant seeks discovery on December 2017 meeting at which defendant provided PowerPoint presentation that forms primary basis for plaintiff's proof of defendant's breach); *id.* ¶ 9 (noting live dispute as to the parties' interpretations of plaintiff's technical requirements in the bidding process and identifying defendant's need for discovery on demonstrations of defendant's software to establish parties' interpretations).

/////

The court therefore DENIES plaintiff's motion for summary judgment without prejudice to resubmission after completion of the discovery defendant identifies in its Rule 56(d) request.

IV. CONCLUSION

For the reasons explained above, the court GRANTS defendant's motion to dismiss plaintiff's UCL claim but denies the balance of that motion. The court further DENIES defendant's motion to strike and DENIES plaintiff's motion for partial summary adjudication.

This resolves ECF Nos. 10, 11.

IT IS SO ORDERED.

DATED: March 19, 2019.

UNITED STATES DISTRICT JUDGE